```
    J7j6secc

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x
 3  U.S. SECURITIES AND EXCHANGE
    COMMISSION,
 4
                Plaintiff,
 5
           v.                                 19 CV 5244(AKH)
 6
    KIK INTERACTIVE, INC,
 7
                Defendant.
 8
    ------------------------------x
 9                                            New York, N.Y.
                                              July 19, 2019
10                                            11:00 a.m.

11  Before:

12                      HON. ALVIN K. HELLERSTEIN,

13                                            District Judge

14                              APPEARANCES

15  SEC
         Attorneys for Plaintiff
16  BY:  STEPHAN J. SCHLEGELMILCH
         DAVID S. MENDEL
17
    COOLEY, LLC
18       Attorneys for Defendant
    BY:  PATRICK E. GIBBS
19       SARAH M. LIGHTDALE

20

21

22

23

24

25
```

J7j6secc

1          (Case called)
2          THE COURT:  Mr. Schlegelmilch, tell me what is going
3  on in this case.
4          MR. SCHLEGELMILCH:  Would you like me to from the
5  table or the podium, your Honor?
6          THE COURT:  From the podium.
7          MR. SCHLEGELMILCH:  Your Honor, the Commission filed
8  this case in early June.  I think June the 4th.  The gravamen
9  of the Commission's case is that between May and September of
10 2017, Kik Interactive participated, offered and sold an
11 unregistered security.
12         THE COURT:  And that security was?
13         MR. SCHLEGELMILCH:  It was a digital token called Kin,
14 K-i-n.
15         THE COURT:  A crypto currency?
16         MR. SCHLEGELMILCH:  That's one term that can be used.
17         THE COURT:  How would you term it?
18         MR. SCHLEGELMILCH:  I refer to it as a digital token
19 or a block key enabled token.
20         THE COURT:  A what?
21         MR. SCHLEGELMILCH:  Block key enabled token.  It's a
22 token that trades on a block chain on a distributed ledger.
23         THE COURT:  On a what?
24         MR. SCHLEGELMILCH:  Distributed ledger.
25         THE COURT:  Distributed ledger?

1           MR. SCHLEGELMILCH:  Yes, your Honor.

2           THE COURT:  I don't know what that is.

3           MR. SCHLEGELMILCH:  It's a series of computers that
4   all record transactions at the same time.  Distribute it
5   decentralized.  Therefore, it makes it theoretically very
6   difficult to hack because each computer records the same
7   transaction in a decentralized way.

8           THE COURT:  So this supposedly is a secure type of
9   coin that people can buy and sell and store?

10          MR. SCHLEGELMILCH:  Yes, your Honor.

11          THE COURT:  What is the argument that it is a
12  security?

13          MR. SCHLEGELMILCH:  Your Honor, the argument that it
14  is a security is that the Supreme Court in what everyone now
15  calls the Howey test, but in the *Howey* case, the Supreme Court
16  decided what is an investment contract.  The Commission submits
17  that this digital token meets the requirements for an
18  investment contract.

19          THE COURT:  I am familiar with *Howey*, H-o-w-e-y.

20          MR. SCHLEGELMILCH:  Yes.

21          THE COURT:  That is the argument?

22          MR. SCHLEGELMILCH:  Yes, your Honor.

23          THE COURT:  What is the position of the defendant?

24          MR. GIBBS:  Your Honor, our position is that the facts
25  and circumstances leading up to the sale of the Kin token do

not amount to an investment contract under *Howey*, and I am happy to go into more detail on that.

THE COURT: Are there other cases that have dealt with situations like your client's?

MR. GIBBS: There are a small number of cases that have been handled largely in preliminary stages like motions to dismiss, TROs, and preliminary injunctions.

THE COURT: Are there opinions?

MR. GIBBS: There are some.

THE COURT: District Court or higher?

MR. GIBBS: District Court.

THE COURT: No circuit court.

MR. SCHLEGELMILCH: Not yet, your Honor.

THE COURT: No Court of Appeals?

MR. SCHLEGELMILCH: No, sir.

THE COURT: There have been a few District Court decisions?

MR. SCHLEGELMILCH: Yes, your Honor. This court twice, District of New Jersey, Eastern District of New York, Northern District of Georgia, Southern District of Florida, and the Southern District of California have all determined -- and Mr. Gibbs is correct -- the varying stages of procedure that Howey test can apply to digital tokens and in each of those cases they found it is presumptively a token. Although, more discovery occurs.

J7j6secc

1             THE COURT:  Presumptively it is a security?
2             MR. SCHLEGELMILCH:  Yes, your Honor.  I have citations
3    in your Honor is interested.
4             THE COURT:  Give it to us afterwards.
5             MR. SCHLEGELMILCH:  Yes, your Honor.
6             THE COURT:  Let Mr. Gibbs see it as all.
7        How are we going to proceed in the case?
8             MR. SCHLEGELMILCH:  We don't have the benefit of
9    knowing Kik's answer.  We haven't seen Kik's answer or how it
10   is--
11            THE COURT:  Do you plan to move, your Honor?
12            MR. GIBBS:  No, your Honor.  We plan to answer
13   probably within the next week or so.
14            THE COURT:  And then what is going to come after that,
15   discovery?
16            MR. SCHLEGELMILCH:  Yes, your Honor.
17            THE COURT:  Mr. Gibbs.
18            MR. GIBBS:  Yes, your Honor.  To back up a bit, the
19   SEC is has been investigating this matter since about September
20   of 2017.  There has already been a fairly massive document
21   production by my client.  So in our view once we answer and
22   take care of what I expect to be some very limited written
23   discovery, we think we can hit right into depositions.
24            THE COURT:  How should I handle the case?
25            MR. SCHLEGELMILCH:  Your Honor, I don't want to speak

1   for Mr. Gibbs but from the Commission's view, you should set a

2   discovery schedule and the parties -- I suspect that both

3   parties will want to move for summary judgment because I think

4   both sides view it as a --

5           THE COURT:  How detailed a schedule do you want?

6           MR. SCHLEGELMILCH:  I think the Commission and

7   Mr. Gibbs's firm are pretty sophisticated.  I don't know that

8   we need a very detailed schedule.  If you would like to impose

9   one, we will obviously comply with one.

10          THE COURT:  I don't want to impose anything on you.

11  You are both very competent and know what you want to do.  At

12  the same time, I need to manage the case.

13          MR. SCHLEGELMILCH:  Of course, your Honor.

14          THE COURT:  Should I just give you a date by which

15  discovery should be finished?

16          MR. SCHLEGELMILCH:  From the Commission's perspective,

17  that works for us, your Honor.

18          THE COURT:  Do you want to take a minute off the

19  record and speak with Mr. Gibbs and give me a date.  I don't

20  think a civil case management plan is useful here.

21          MR. SCHLEGELMILCH:  Well, your Honor, we discussed a

22  quite a number of times over the last two weeks in leading up

23  to this, and the parties are at loggerheads about how long we

24  need to do discovery.

25          THE COURT:  How long do you think?

J7j6secc

|  |  |
|---|---|
| 1 | MR. SCHLEGELMILCH:  From the Commission's perspective, |
| 2 | we would like six months. |
| 3 | THE COURT:  Six months? |
| 4 | MR. SCHLEGELMILCH:  Yes, your Honor. |
| 5 | THE COURT:  Mr. Gibbs, how much do you want? |
| 6 | MR. GIBBS:  We think we can get it done by |
| 7 | mid-November, your Honor. |
| 8 | THE COURT:  Earlier? |
| 9 | MR. GIBBS:  Yes, your Honor. |
| 10 | THE COURT:  If it takes longer is your client |
| 11 | prejudiced? |
| 12 | MR. GIBBS:  We think so, your Honor.  As I said we've |
| 13 | been dealing with the costs and the uncertainty of having a |
| 14 | SEC's investigative activity going on for two years already. |
| 15 | THE COURT:  You need an earlier disposition? |
| 16 | MR. GIBBS:  Very much so, your Honor. |
| 17 | THE COURT:  Why do you think you cannot finish by |
| 18 | mid-November, Mr. Schlegelmilch? |
| 19 | MR. SCHLEGELMILCH:  Your Honor, I think first and |
| 20 | foremost Kik hasn't answered.  We have no idea what facts they |
| 21 | are going to contest and which they won't. |
| 22 | THE COURT:  You do. |
| 23 | MR. SCHLEGELMILCH:  In addition to that, Kik is a |
| 24 | Canadian company with operations in Canada, the United States |
| 25 | and in Israel.  Mr. Gibbs has volunteered to provide current |

J7j6secc

1   and a few former employees in the United States for deposition
2   but those witnesses will be beyond the Court's subpoena power
3   for trial.
4          THE COURT:  We'll solve that very easily.  You will
5   take your depositions.
6          MR. SCHLEGELMILCH:  Exactly, your Honor.
7          THE COURT:  You will take a depositions in Canada and
8   Israel.
9          MR. SCHLEGELMILCH:  That's exactly right.
10         THE COURT:  Canada is not a problem, but Israel may
11  offer you some difficulties.  You should provide for the right
12  of your counsel to participate in the deposition.  Take it away
13  from the magistrate court.  They operate under the European
14  system, the French system, and that will not be a record you
15  can use at trial.
16         MR. SCHLEGELMILCH:  Yes.  With Canada because
17  Mr. Mendel and I are federal government lawyers, we have to
18  provide the Canadian government with four weeks' notice before
19  we can enter the country.
20         THE COURT:  How about bringing your witnesses into you
21  the United States.
22         MR. GIBBS:  We have already volunteered to do that,
23  your Honor.  We only discussed three with specific witnesses,
24  two of whom are current employees of Canada who have agreed to
25  come to the U.S. and one is a former employee also of Canadian

J7j6secc

1    residence who has also agreed to come to the U.S.
2             THE COURT:  How about the guy in Israel?
3             MR. GIBBS:  I don't know who they want to talk to in
4    Israel.
5             MR. SCHLEGELMILCH:  Mr. Levavich.
6             MR. GIBBS:  If he is a current employee, we will bring
7    them to the U.S.
8             MR. SCHLEGELMILCH:  That will go a long way, your
9    Honor.
10            THE COURT:  Assuming you get the fellas you want in
11   the United States, let's set the end of November as a date.
12            Assuming, Mr. Gibbs, that you will give your full
13   cooperation.
14            MR. GIBBS:  Of course, your Honor.
15            THE COURT:  And the Israeli fellow also.  Because
16   there is a lot of waste of time in travel.
17            So all discovery must be finished by November 29.
18            MR. SCHLEGELMILCH:  Understood, your Honor.
19            THE COURT:  Why don't I meet with you on December 6.
20   We'll pick up any problems and set a schedule for summary
21   judgment.
22            MR. SCHLEGELMILCH:  Thank you, your Honor.
23            THE COURT:  Does that make sense, Mr. Gibbs?
24            MR. GIBBS:  It does.
25            One quick clarification.  The November 29th date is

1 for the end of all fact discovery?
2     THE COURT: Will you have experts, too?
3     MR. SCHLEGELMILCH: Yes, your Honor.
4     THE COURT: What will you do with the experts?
5     MR. GIBBS: We would propose picking up with expert
6 discovery immediately after fact discovery so we can begin
7 early December.
8     THE COURT: Let's keep the meeting and we'll then deal
9 with the experts.
10     MR. SCHLEGELMILCH: After meeting with your Honor?
11     THE COURT: Yes.
12     MR. SCHLEGELMILCH: Yes, your Honor.
13     THE COURT: Set a schedule for that and summary
14 judgment will follow.
15     Is that okay, Mr. Gibbs?
16     MR. GIBBS: That's fine, your Honor.
17     THE COURT: We're going to see each other on
18 December 6 at 10:00. I normally conduct as you have seen my
19 status conferences off the record. I feel the exchange is more
20 fruitful that way. Since it is the SEC, that's not encompassed
21 by my usual plans. Would you prefer this to be on the record
22 or off the record?
23     MR. SCHLEGELMILCH: The Commission is fine having it
24 on the record.
25     THE COURT: How about off the record?

1    MR. SCHLEGELMILCH:  That's fine.

2    THE COURT:  10:00 then on December 6th.

3    MR. SCHLEGELMILCH:  Thank you, your Honor.

4    THE COURT:  It will be an informal discussion.

5    MR. SCHLEGELMILCH:  Thank you, your Honor.

6    THE COURT:  Thank you, gentlemen.

7    MR. GIBBS:  Thank you, your Honor.

8    MR. SCHLEGELMILCH:  I would say for the record, we
9  have had a number of very fruitful although -- well, maybe
10 fruitful is not the right way to put it.  We have had a number
11 of very professional and somewhat pretty productive meetings
12 precharge.  I think that may be accurate, your Honor.

13   THE COURT:  I don't think it has to do with
14 professional courtesy.  I think it has to do with the nature of
15 the subject matter.  The SEC is not giving up on this issue.

16   MR. SCHLEGELMILCH:  Oh, no, your Honor.

17   THE COURT:  Unless the defendants want to give in and
18 you would offer a plan with no settlement.  If they want do an
19 offering plan, there might be a settlement.

20   MR. SCHLEGELMILCH:  Yes, your Honor.

21   THE COURT:  Do I state it fairly?

22   MR. GIBBS:  I would say I feel like we have pretty
23 fully explored whatever settlement is feasible and here we are.

24   THE COURT:  I understand that.  I think a settlement
25 is only possible if you want to comply with Section 5.

J7j6secc

1           MR. GIBBS:  Correct, and we do not intent to do that.
2           MR. SCHLEGELMILCH:  Thank you, your Honor.
3           MR. GIBBS:  Thank you, your Honor.
4           MR. SCHLEGELMILCH:  How would you like me to provide
5   law clerk with the citations?
6           THE COURT:  Come up and put it on a sheet of paper.
7                                o0o