UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

U.S. SECURITIES AND EXCHANGE      :
COMMISSION,
                                  :

           Plaintiff,         :

    vs.                       :         Civil Action No. 19-cv-5244 (AKH)

KIK INTERACTIVE INC.,         :

          Defendant.         :

-------------------------------------- X

**KIK INTERACTIVE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR RECONSIDERATION OF
<u>ORDER DENYING LETTER MOTION FOR DISCOVERY</u>**

## TABLE OF CONTENTS

**Page**

RELEVANT FACTUAL BACKGROUND ..................................................................... 5

ARGUMENT ........................................................................................................................ 9

    I.     Because Kik's Affirmative Defense is an As-Applied challenge, it Raises Questions of Fact and Reconsideration Is Warranted. ........................................... 9

    II.    Kik's Affirmative Defense of Void for Vagueness *As Applied* Requires a Fact-Specific Inquiry that cannot be decided without discovery. ......................... 10

         A.    Kik Asserted an As-Applied, Not a Facial Challenge to the Law. .......... 10

         B.    As-Applied Challenges Should Not be Decided Without Complete Fact Discovery. ........................................................................................ 11

         C.    Whether the Term "Investment Contract" Provides People of Ordinary Intelligence a Reasonable Opportunity to Understand What Conduct it Prohibits is a Fact-Specific Inquiry. ............................. 14

         D.    How the Statute Was *In Fact Applied and Enforced* is Relevant to Kik's Vague As Applied Defense. ........................................................... 18

         E.    The Discovery Sought by Kik is Well Within the Bounds of Rule 26. ................................................................................................... 19

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cohen v. Cohen*,
    2015 WL 4469704 (S.D.N.Y. June 29, 2015) ..........................................................19

*Copeland v. Vance*,
    893 F.3d 101 (2d Cir. 2018).................................................................................11

*Cracco v. City of New York*,
    2015 WL 8484562 (S.D.N.Y. Dec. 9, 2015) ...................................................11, 12

*Cunney v. Bd. of Trs. of Grand View*,
    660 F.3d 612 (2d Cir. 2011).............................................................................11, 18

*Dickerson v. Napolitano*,
    604 F.3d 732 (2d Cir. 2010)................................................................................11

*Gay Men's Health Crisis v. Sullivan*,
    733 F. Supp. 619 (S.D.N.Y. 1989).............................................................. *passim*

*General Elec. Co. v. EPA*,
    53 F.3d 1324 (D.C. Cir. 1995)..........................................................................16

*Hayes v. New York Attorney Grievance Comm.*,
    672 F.3d 158 (2d Cir. 2012).......................................................11, 12, 17, 18

*Hayes v. Zakia*,
    327 F. Supp. 2d 224 (W.D.N.Y. 2004), *reversed on other grounds*, 672 F.3d ....................12

*Jones v. Schneiderman*,
    No. 11-cv-08215-KMW-GWG, ECF 74 ...........................................................18

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)...........................................................................................19

*Perez v. Hoblock*,
    368 F.3d 166 (2d Cir. 2004)..............................................................................14

*In re PHC, Inc. S'holder Litig.*,
    762 F.3d 138 (1st Cir. 2014)............................................................................13

*Resolution Tr. Corp. v. N. Bridge Assocs., Inc.*,
    22 F.3d 1198 (1st Cir. 1994)............................................................................13

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*SEC v. Collins & Aikman Corp.*,
   256 F.R.D. 403 (S.D.N.Y. 2009) ...................................................................................15, 19

*SEC v. Kovzan*,
   2012 WL 4819011 (D. Kan. Oct. 10, 2012) .........................................................................20

*Shamis v. Ambassador Factors Corp.*,
   187 F.R.D. 148 (S.D.N.Y. 1999) ...........................................................................................9

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995)......................................................................................................9

*Strougo v. Barclays PLC*,
   334 F. Supp. 3d 591 (S.D.N.Y. 2018)....................................................................................9

*Tutor Time Learning Centers, LLC v. KOG Indus., Inc.*,
   2013 WL 12363550 (E.D.N.Y. Apr. 5, 2013) .....................................................................19

*United States v. Chrysler Corp.*,
   158 F.3d 1350 (D.C. Cir. 1998)............................................................................................16

*United States v. Coonan*,
   938 F.2d 1553 (2d Cir. 1991)...............................................................................................10

*United States v. Rybicki*,
   354 F.3d 124 (2d Cir. 2003)..................................................................................................11

*United States v. S. Ind. Gas & Elec. Co.*,
   245 F. Supp. 2d 994 (S.D. Ind. 2003) ..................................................................................16

*United States v. Smith*,
   985 F. Supp. 2d 547 (S.D.N.Y. 2014)............................................................................10, 11

*United States v. Zaslavskiy*,
   2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018) .....................................................................11

*Upton v. SEC*,
   75 F.3d 92 (2d Cir. 1999) ........................................................................................14, 15, 18

*VIP of Berlin, LLC v. Town of Berlin*,
   593 F.3d 179 (2d Cir. 2010)..................................................................................................11

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992)..................................................................................................9

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Statutes**

15 U.S.C. § 77..........................................................................................................4, 5

Securities Act of 1933....................................................................................4, 5, 10, 15

**Other Authorities**

*Digital Asset Transactions: When Howey Met Gary (Plastic)*, William Hinman
  (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418..........................17

Fed. R. Civ. P.
  Rule 26.....................................................................................................19
  Rule 30(b)(6)................................................................................................7

*Gov't Taking Increasing Interest in Crypto, SEC Chairman Says*, Law360,
  Christopher Cole (October 23, 2019)......................................................................16

Hester Peirce, "How We Howey," Securities Enforcement Forum, East Palo Alto,
  California (May 9, 2019) .................................................................................5, 6

Interview by Nicole Kim with Commissioner Hester Peirce (Aug. 8, 2019) .................................5

Local Rules Rule 6.3.......................................................................................4

*Renegade Pandas: Opportunities for Cross Border Cooperation in Regulation of
  Digital Assets*, Hester M. Peirce (July 30, 2019)......................................................8

Pursuant to Rule 6.3 of the Local Rules of the Southern District of New York, Defendant Kik Interactive, Inc. ("Kik") respectfully requests that the Court reconsider its October 29, 2019 Order denying Letter Motion for Discovery (the "Order") (ECF 30) and order Plaintiff U.S. Securities and Exchange Commission ("SEC") to produce the SEC witnesses noticed for depositions and the documents responsive to Kik's Requests for Production of Documents.  Both of these categories of discovery are critical for Kik's affirmative defense that the phrase "investment contract," as applied to Kik's offer and sale of Kin tokens in 2017, is unconstitutionally vague.  To be clear, Kik is not asserting a "facial" challenge to the law.  Rather, Kik's defense is only that the phrase "investment contract" is unconstitutionally vague *as applied to the facts at hand*.  That is, as the SEC has applied the law to Kik, it does not provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, and is so lacking in clear standards that it authorizes or encourages arbitrary and discriminatory enforcement by the SEC.  Without testimony from the witnesses involved in shaping and applying the SEC's policies relating to cryptocurrencies, and the documents related to those policies and enforcement decisions, this Court will not be able to fully adjudicate Kik's affirmative defense.

In the Order denying Kik's request for discovery, the Court stated that Kik's affirmative defense "raises an issue of law, not of fact."  ECF 30.  Respectfully, that conclusion was a clear error, and the Order will result in manifest injustice to Kik because the SEC is uniquely able to provide the facts proving that its application of the law was unconstitutionally vague.  Further, because the Order was based on very limited letter briefing, the Court did not have the benefit of many authorities recognizing that an "as applied" challenge (such as Kik's defense here) raises inherently factual questions that warrant precisely the type of discovery that Kik sought.  Accordingly, Kik respectfully seeks reconsideration of that Order and the other requested relief.

## RELEVANT FACTUAL BACKGROUND

The SEC filed this enforcement action in June 2019.  The SEC's Complaint asserts that Kik's offer and sale of Kin cryptocurrency tokens in 2017 was to an unregistered sale of securities. In particular, the SEC claims that Kik's offer and sale of Kin amounted to "investment contracts" within the definition of a "security" under the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77b(a)(1).  *See* Complaint, ECF 1.  The SEC's Complaint asserts a single cause of action for violation of the registration requirement of Section 5 of the Securities Act, which is a technical, strict liability violation.  *See* 15 U.S.C. § 77e.  The SEC does not allege that Kik acted intentionally or even negligently.  *See* Complaint, ECF 1.  In its Answer, Kik asserted an affirmative defense that, as applied to Kik's offer and sale of Kin in 2017, the phrase "investment contract" is unconstitutionally vague.  Answer, ECF 22, at 118.  To be clear, Kik did not challenge the law as vague on its face, but only *as applied* to Kik's offer and sale of Kin in 2017.

Kik's affirmative defense relies on allegations that the SEC has failed to provide people of ordinary intelligence a reasonable opportunity to understand how to comply with the law (as the SEC interprets it), and its numerous and abrupt changes in policy in this area.  As SEC Commissioner Hester Peirce recognized this year, "It is [ ] our duty as a regulator to provide the public with clear guidance as to how people can comply with our law.  ***We have not yet fulfilled this duty***."  Hester Peirce, "How We Howey," Securities Enforcement Forum, East Palo Alto, California (May 9, 2019), https://www.sec.gov/news/speech/peirce-how-we-howey-050919.[1]  As detailed in pages 118-128 of its Answer (which are excerpted and attached as Exhibit A to this Motion), Kik's affirmative defense is based on the SEC's failures as the regulator responsible for

---

[1]  *See also* Interview by Nicole Kim with Commissioner Hester Peirce (Aug. 8, 2019), https://dragonchain.com/blog/-hester-peirce-us-securities-exchange-commission/ ("We [the SEC] really need to be proactive . . . in providing clear rules and guidance so that people know what it is they have to comply with.  Then we can hold them accountable for not complying with it.").

providing Kik and others with clear guidance about how to comply with the Securities Act.

In particular, Kik alleges that after years of silence and non-enforcement, the SEC abruptly (and without public notice) changed its policy and began applying the securities laws to cryptocurrency issuers.  *See* Ex. A at 118-20.  When the SEC contacted Kik in September 2017, it did not take the position that the Kin tokens sold involved the offer or sale of an investment contract.  *Id.* at 122.  That was followed by public statements of SEC officials wavering between "there are cryptocurrencies that do not appear to be securities" to "I believe every ICO I've seen is a security," to stating that a product can somehow evolve from being a security to later not being a security.  *Id.* at 123-23 (quoting SEC Chairman Jay Clayton and Director William Hinman).  A more recent statement by Commissioner Peirce highlights the absurdity and ambiguity created by these statements, when she noted the SEC's approach to these issues would result in Starbucks gift cards and Chuck E. Cheese tokens qualifying as securities.  *Id.* at 124.

The SEC also has foregone typical formal rulemaking and instead engaged in arbitrary and inconsistent enforcement actions against issuers of cryptocurrencies, including Kik.  *See* Ex. A, at 126–28.  In April 2019, well after the Kin distribution at issue in this matter, the SEC staff released a "framework" of 38 factors purporting to assess whether a sale of a token constitutes an investment contract, but the staff took care not to bind the SEC to the framework, making it clear that it "is not a rule, regulation, or statement of the Commission, and the Commission has neither approved nor disapproved its content."  SEC.gov, *Framework for 'Investment Contract' Analysis of Digital Assets*, (Apr. 3, 2019), https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets at n.1.  Indeed the staff declined even to bind itself, noting that the framework was "not intended to be exhaustive in evaluating whether a digital asset is an

investment contract." *See id.* at 126–27.[2]  This did nothing to clarify or formalize the SEC's statement in the DAO Report from July 2017 that "[w]hether or not a particular transaction involves the offer and sale of a security—regardless of the terminology used—will depend on the facts and circumstances, including the economic realities of the transaction."  *See* Ex. A at 120 (quoting DAO Report of Investigation at 17–18).

To gather evidence in support of these allegations (and other aspects of Kik's defense), Kik sought discovery from the SEC about its regulatory and enforcement activities in this area. *See* Exhibit B (deposition notices to three SEC officials and a 30(b)(6) witness);[3] Exhibit C (SEC's Responses to Kik's First Request for Production of Documents); Exhibit D (SEC's Responses to Kik's First Request for Admissions); Exhibit E (Kik's Interrogatories).  The SEC flatly refused to provide Kik with any of this discovery regarding its affirmative defense.  Kik offered to negotiate narrowed requests, but the SEC has been unwilling to identify any terms to which it would agree. It refused to produce any witness for a deposition or any internal documents other than a subset of its investigative file (with the SEC balking at providing documents for as few as three custodians). It also declined to answer many of Kik's requests for admissions on relevance grounds.

What few answers the SEC did provide highlight the SEC's refusal or inability to define

---

[2] This "framework" and arbitrary application of the law to Kik is exactly the conduct that has been the subject of recent criticism and an Executive Order requiring agencies to "act transparently and fairly with respect to all affected parties" and ordering that "no person should be subjected to a civil administrative enforcement action or adjudication absent prior public notice of both the enforcing agency's jurisdiction over particular conduct and the legal standards applicable to that conduct."  Executive Order 13892, Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication, Oct. 9 2019.

[3] With respect to the depositions that were the subject of the Order, Kik sought to take the testimony of William Hinman (Director of the SEC's Division of Corporation Finance), Valerie Szczepanik (Associate Director of the Division of Corporation Finance and Senior Advisor for Digital Assets and Innovation), Jonathan Ingram (Deputy Chief Counsel of the Division of Corporation Finance), and a Fed. R. Civ. P. Rule 30(b)(6) representative to be designated by the SEC.

its policy or guidelines for cryptocurrency issuers in general and Kik in particular.  For example, the SEC admitted that it "has not proposed or adopted any rules that relate solely and specifically to Digital Assets or Virtual Currencies[.]"  Ex. D, Response to Request No. 31, at 20.  It also refused to answer even the most basic questions about its policy: for example, when asked to confirm that not all "digital assets are securities," the SEC refused to answer on grounds of "governmental deliberative process and law enforcement privileges."  Ex. D, Response to Request No. 30, at 19.  And when asked to confirm the contents of a letter from SEC Chairman Clayton to a U.S. Congressman discussing the criteria for determining whether a digital asset is an investment contract, the SEC refused to answer, claiming it did not have sufficient knowledge to confirm the contents of the Chairman's letter.  Ex. D, Response to Request No. 58, at 30.

Kik seeks information relating to the SEC's internal decisions and policies for regulating cryptocurrencies, including investigations of sales of other cryptocurrencies.  Facts showing the SEC's early awareness of other cryptocurrencies (such as Bitcoin, Ether, and dozens of other offerings), and its decision to let the industry to develop without providing any prospective guidance are directly relevant to Kik's affirmative defense.  The SEC is uniquely able to provide the facts relating to its own refusal, inability, or failure to concretely define its policy for cryptocurrency issuers.  This includes its total lack of public enforcement before Kik announced its sale of Kin, which would have signaled to Kik that its sale would be subject to securities laws.[4] The parties submitted a joint letter to this Court on October 28, 2019 about depositions of SEC staff members.  Joint Letter Motion, ECF 27.

---

[4] Even SEC Commissioner Peirce acknowledged that no such policy exists today when she recently criticized the United States for not being "more forward-leaning in establishing a regulatory regime with discernible parameters" with respect to cryptocurrencies.  *Renegade Pandas: Opportunities for Cross Border Cooperation in Regulation of Digital Assets*, Hester M. Peirce (July 30, 2019), https://www.sec.gov/news/speech/speech-peirce-073019.

While the parties were separately conferring about the SEC's refusal to collect and produce documents, this Court decided both issues on October 29, 2019.  The Court granted the SEC's request for a protective order while denying Kik's request that the SEC produce documents relevant to its affirmative defense, reasoning that the "affirmative defense raises an issue of law, not of fact."  ECF 30.

## ARGUMENT

Reconsideration of this Court's Order denying Letter Motion for Discovery is appropriate for two reasons.  First, Kik's affirmative defense that the law was unconstitutionally vague *as applied in this context* raises issues of fact and cannot be resolved as a matter of law.  Courts regularly treat such as-applied challenges as fact-specific inquiries that require discovery of the underlying facts.  Second, the tests for whether a law is vague as applied highlight the specific need in this case for the discovery requested by Kik.  Kik's defense is based on the SEC's inconsistent and confusing statements and policies, and its seemingly arbitrary enforcement and application of the securities laws to cryptocurrencies and digital assets including Kin.  As a result, the vast majority of the evidence directly relevant to this defense resides within the SEC's possession.  Denying Kik deposition testimony and documents from the SEC would severely hamper Kik's ability to pursue its affirmative defense, and Kik respectfully asks that the Court reconsider the Order and compel the SEC to comply with Kik's deposition notices and Request for Production of Documents.

## I.    BECAUSE KIK'S AFFIRMATIVE DEFENSE IS AN AS-APPLIED CHALLENGE, IT RAISES QUESTIONS OF FACT AND RECONSIDERATION IS WARRANTED.

Reconsideration is warranted where necessary to correct a clear error or prevent manifest injustice. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Where there are factual issues or precedent, including additional case law, that the court may not

have adequately considered, and that might reasonably be expected to alter the court's conclusion, such reconsideration is appropriate.  *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (agreeing with district court's reconsideration of earlier ruling in light of additional relevant case law and legislative history); *Strougo v. Barclays PLC*, 334 F. Supp. 3d 591, 595, 597 (S.D.N.Y. 2018) (granting motion to reconsider denial of summary judgment on grounds that factual matters put before the court on underlying motion were misconstrued); *Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (granting defendant's motion to reconsider denial of summary judgment where court had not addressed relevant law).

The question of whether Kik's affirmative defense raised purely legal or factual issues was not squarely addressed by the parties in the SEC's Joint Letter Motion for Discovery.  ECF 27. Kik is not asserting that the term "investment contract" is unconstitutionally vague on its face, but rather that *as applied* to the 2017 offers and sales of Kin, the term "investment contract" in the Securities Act is void for vagueness due to the lack of clarity in the limited guidance the SEC had provided before 2017.  Thus, it would be clear error and manifestly unjust to rule that Kik's affirmative defense raises only an issue of law, not an issue of fact, and deny Kik relevant discovery to properly support its affirmative defense.

## II.    KIK'S AFFIRMATIVE DEFENSE OF VOID FOR VAGUENESS *AS APPLIED* REQUIRES A FACT-SPECIFIC INQUIRY THAT CANNOT BE DECIDED WITHOUT DISCOVERY.

### A.    Kik Asserted an As-Applied, Not a Facial Challenge to the Law.

The principal difference between a defense that a law is vague as-applied instead of on its face is that, in evaluating an as-applied challenge, courts must "address only the application of a challenged statute to the person challenging the statute based on the charged conduct," while a facial challenge involves addressing application of the statute to all others based on hypothetical conduct.  *United States v. Smith*, 985 F. Supp. 2d 547, 592–93 (S.D.N.Y. 2014); *see also United*

10

*States v. Coonan*, 938 F.2d 1553, 1562 (2d Cir. 1991) (stating that vagueness challenges are evaluated based on the "particular application of the statute," not whether it conceivably may be applied unconstitutionally in other situations).

A law may be unconstitutionally vague as applied for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, and second, if it is so lacking in clear standards that it authorizes or encourages arbitrary and discriminatory enforcement.  *See Copeland v. Vance*, 893 F.3d 101, 113 (2d Cir. 2018); *Cunney v. Bd. of Trs. of Grand View*, 660 F.3d 612, 621 (2d Cir. 2011).  To succeed on an as-applied vagueness challenge, the party must show that the law "failed to provide *them* with notice" that their conduct was prohibited, or the law failed to sufficiently limit the discretion of the agency that enforced it.  *Dickerson v. Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010) (italics in original); *see also VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 189 (2d Cir. 2010) (explaining that courts considering as-applied challenges should analyze litigant's *actual conduct*, not whether hypothetical conduct or situations violate the law).

### B.    As-Applied Challenges Should Not be Decided Without Complete Fact Discovery.

Courts routinely recognize that as-applied challenges present factual issues, not pure legal issues.  *See Hayes v. New York Attorney Grievance Comm.*, 672 F.3d 158, 161 (2d Cir. 2012) (noting denial of summary judgment to resolve issues of fact regarding as-applied vagueness challenge); *United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003) (collecting cases stating that as applied challenges are determined "in light of the specific facts of the case at hand" (internal citations omitted)); *Smith*, 985 F. Supp. 2d at 606 n.20-21 (declining to dismiss indictment, and noting that evidence at trial could open the door to as-applied challenge, which was a "jury question"); *Cracco v. City of New York*, 2015 WL 8484562, at *3 (S.D.N.Y. Dec. 9, 2015)

11

(denying motion to dismiss affirmative defense because the "as-applied" vagueness challenge raised "factual questions not ripe for adjudication"); *Gay Men's Health Crisis v. Sullivan*, 733 F. Supp. 619, 639 (S.D.N.Y. 1989) (denying motions for summary judgment and noting government was ordered to produce documents related to the agency's guidelines).[5]

Not surprisingly, courts typically will not decide the merits of an as-applied challenge until after the parties have had the opportunity to take discovery regarding this defense. *See Hayes*, 672 F.3d at 161; *Cracco*, 2015 WL 8484562, at *3; *Gay Men's Health Crisis*, 733 F. Supp. at 639. Indeed, testimony from a regulating agency has been dispositive in resolving an as-applied defense. For example, in *Hayes*, trial testimony from the enforcing agency led the Second Circuit to conclude the agency's rule was void as applied where the agency could not "clarify the content of the rule." *Hayes*, 672 F.3d at 170. The agency's lawyer testified that he did not think the agency was obligated to set forth an objective standard for complying with the rule, and acknowledged that others within the agency might apply differing standards. *Id.* This testimony was elicited at trial only after the district court had denied summary judgment on the as-applied vagueness challenge because there were questions of fact about whether the agency had promulgated "explicit standards," "vacillated in its position regarding what [ ] is specifically and actually required by the rule," and whether enforcement of the rule was "somewhat arbitrary and inconsistent." *Hayes v. Zakia*, 327 F. Supp. 2d 224, 232 (W.D.N.Y. 2004), *reversed on other grounds*, 672 F.3d at 170.

Other courts have recognized the importance of documentary discovery in resolving an as-applied challenge and allowed a party asserting an as-applied challenge to obtain documents from

---

[5] Even the case cited by the SEC supports the notion that an as-applied challenge requires a fact intensive analysis. *See United States v. Zaslavskiy*, 2018 WL 4346339, at *9 (E.D.N.Y. Sept. 11, 2018) (denying motion to dismiss criminal complaint, and noting that defendant's vagueness challenge was insufficient to warrant dismissal "***at this juncture***" (emphasis added)).

a regulating agency.  *See Gay Men's Health Crisis*, 733 F. Supp. at 637, 641.  The court in *Gay Men's Health Crisis* denied summary judgment and ordered discovery on plaintiffs' as-applied vagueness challenge against two federal agencies.  *Id.* at 637.  The court explained that, "[t]his discovery, especially the retrieval and examination of [government guidelines], should continue in order for the parties and the Court to gain a better sense of how the [government guidelines] are applied, and consequently what effect this application has upon plaintiffs."  *Id.* at 637.

In adjudicating Kik's affirmative defense, the Court and/or jury will need to consider the facts surrounding the application of the term "investment contract" to the sale of Kin.  Among other things, the Court and/or jury would consider whether the SEC had promulgated clear and explicit standards or vacillated in its position regarding what is specifically and actually required by law, if the SEC's enforcement of the rule had been arbitrary and inconsistent, and how the law is actually applied.  The Court and/or jury would also consider whether the SEC intentionally failed to clarify the standard (despite repeated public criticism from an SEC Commissioner, members of Congress, and others) to preserve as much latitude in its charging decisions as possible.  Ms. Szczepanik, one of the staff members most responsible for shaping the SEC's policy in this area, even suggested that the SEC's failure to provide clear guidance was deliberate, commenting that if the SEC attempted to issue prescriptive guidance, "not only would you probably waste a lot of time, you would probably create a road map to get around [the law]."  *See* Answer, ECF 22, at 126.  Kik's noticed depositions and other discovery are designed to elicit evidence on these very points.  Without this discovery, Kik will be significantly prejudiced and unable to present facts

essential to defend itself at summary judgment or trial against the SEC's intentionally inconsistent enforcement of a vague standard for a charge that carries strict liability.[6]

### C.     Whether the Term "Investment Contract" Provides People of Ordinary Intelligence a Reasonable Opportunity to Understand What Conduct it Prohibits is a Fact-Specific Inquiry.

Due process requires that a statute provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, and courts will consider, among other things, the specific context in which the regulation was enforced against the defendant. *See Perez v. Hoblock*, 368 F.3d 166, 175–76 (2d Cir. 2004) (explaining that court must consider context in which regulation was enforced and defendant's conduct by reference to the norms of the community). This due process requirement incorporates notions of fair notice or warning. *See Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1999). When the SEC sanctions someone pursuant to "a substantial change in its enforcement policy that was not reasonably communicated to the public," it violates these notions of fair notice and warning. *Id.*; *see also Perez*, 368 F.3d at 175–76. The court in *Upton* vacated sanctions for a violation of an SEC rule based on facts that could be established only from the enforcing agency. Specifically, the court relied on testimony from an evidentiary hearing that "there was substantial uncertainty in the Commission's interpretation" of the rule, the SEC was aware firms were skirting the rule for two years before instituting an enforcement action against the defendant, and that the SEC "took no steps to advise the public" that certain conduct was questionable until after the defendant had engaged in it. *Id.*

---

[6] *Cf. In re PHC, Inc. S'holder Litig.*, 762 F.3d 138, 145 (1st Cir. 2014) (vacating grant of summary judgment where "despite [party's] perseverant efforts, minimal discovery in the conventional sense took place" resulting in party "faulted by a summary judgment motion for lacking evidence"); *Resolution Tr. Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1209 (1st Cir. 1994) (same, noting that "government went too far, frustrating appellants' legitimate discovery initiatives by playing keepaway.").

Without a similar opportunity to obtain discovery from the SEC in this case, Kik will not have a fair opportunity to establish facts regarding the changes in the SEC's interpretation of the relevant law or enforcement policy, or confirm the extent of the SEC's inaction that shape the context for how the agency seeks to enforce the law against Kik.  When Kik announced the Kin project in May of 2017, neither the SEC nor any other regulator nor any court had ever deemed the offer or sale of any cryptocurrency (including Bitcoin and Ether, two cryptocurrencies widely known to the SEC for years by then) to be an "investment contract" under the federal securities laws.  *See* Answer, ECF 22 at 119.  The release of the DAO Report by the SEC in July 2017 contributed to the context in which Kik sold Kin.  The Report encouraged Kik and others that securities laws would *not* apply to Kin because multiple features of the DAO token rendered it sharply different from Kin.  *Id.* at 120.  The SEC's enforcement approach was unknown to the industry at this time.  Indeed, in the Report itself, the SEC denied that the Report was widely applicable to other cyrptocurrencies when it said, "whether or not a particular transaction involves the offer and sale of a security . . . will depend on the facts and circumstances, including the economic realities of the transaction."  *Id.* (quoting DAO Report of Investigation at 17–18).  Now that the SEC has apparently committed an about-face by seeking to apply the Securities Act against Kik, Kik seeks discovery from the SEC relating to its policies, guidance, and communications that shaped the context of whether the securities laws should be applied to or enforced against issuers of cryptocurrencies prior to (and after) Kik's distribution of Kin.[7]

---

[7] The SEC's refusal to answer Kik's Requests for Admission highlight Kik's need for documents and deposition testimony.  The SEC has refused to answer basic questions about the Commission's knowledge or awareness of something as basic as the offering of Bitcoin, claiming that it "is unclear what the undefined term 'aware' means," and that to answer would "require the Commission to inquire and determine what each of its thousands of employees, or any other person indirectly employed by the Commission or otherwise 'connected' to the Commission, may or may not be 'aware' of."  Ex. D, Response to Request No. 1, at 6.  Testimony from staff members of the

### 1. Evidence of Inconsistent Positions Within the Enforcing Agency is Relevant to the Vagueness Inquiry.

When assessing an as-applied challenge, evidence regarding the inconsistent positions the enforcing agency has taken *both internally and externally* is squarely relevant. *See Gay Men's Health Crisis*, 733. F. Supp. at 637, 641 (discussing importance of discovery into how government agency applied its own guidelines); *United States v. S. Ind. Gas & Elec. Co.*, 245 F. Supp. 2d 994, 1011 (S.D. Ind. 2003) ("Confusion within the enforcing agency as to the proper interpretation of a regulation is … relevant evidence to show a lack of fair notice.").[8]  Members of Congress and even an SEC Commissioner have criticized the confusing and inconsistent guidance from the SEC. Answer, ECF 22, at 125.  Several members of Congress wrote to Chairman Clayton asking the SEC to "clarify the criteria used to determine when offers and sales of digital tokens should properly be considered 'investment contracts'" because the standard was "unclear" in that it did not "aid market participants in better understanding how these factors should be applied." *Id.*  The SEC now claims it cannot confirm the contents of Chairman Clayton's response.  *See* Ex. D, Response to Request No. 58, at 30.  And Ms. Szczepanik indicated that the refusal to provide guidance was deliberate.  *See* Answer, ECF 22, at 126.[9]

---

Division responsible for assisting companies with interpreting the SEC rules and recommending new rules and revisions to existing rules to the Commission, as well as the production of SEC internal bulletins and communications, would surely address the SEC's awareness and policy towards Bitcoin.  The SEC's objection to the breadth of the request is preposterous given that Kik has repeatedly offered to negotiate limited custodians and search terms, and has sought depositions only of three SEC staffers and a 30(b)(6) designee of the SEC's choosing.  *See SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 417–18 (S.D.N.Y. 2009) (criticizing the SEC for a similar approach to discovery).

[8] *See also General Elec. Co. v. EPA*, 53 F.3d 1324, 1332 (D.C. Cir. 1995) ("[I]t is unlikely that regulations provide adequate notice when different divisions of the enforcing agency disagree about their meaning."); *see also United States  v. Chrysler Corp.*, 158 F.3d 1350, 1356 (D.C. Cir. 1998) ("an agency is hard pressed to show fair notice when the agency itself has taken action in the past that conflicts with its current interpretation of a regulation").

The SEC's muddled guidance and inconsistent positions have continued into this litigation. On the one hand, the SEC claims that every Kin token that was offered and sold through September 26, 2017 was a security. *See* Ex. D, Response to Request No. 50, at 27.  And on the other hand, it refuses to say whether it is asserting that every offer or sale of Kin constitutes an offer or sale of a security, while seeking discovery about purchasers' expectations and other circumstances surrounding the sales. *Id.* at Response 46, at 26.  At the same time, the SEC acknowledges the statements of Director Hinman that even if a cryptocurrency is not itself a security, it can still be *offered as a security* depending on "how it is being sold and the reasonable expectations of purchasers." *Digital Asset Transactions: When Howey Met Gary (Plastic)*, William Hinman (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418; *see* Ex. D, Response to Request No. 53, at 28.  These evidently inconsistent public positions are strongly supportive of Kik's vagueness defense, but without the requested discovery from the SEC, Kik will be deprived of a fair opportunity to develop a full evidentiary record in support of this defense.

## 2. Testimony from the Enforcing Agency is Relevant to the Vagueness Inquiry.

In evaluating the merits of a void-for-vagueness defense, testimony from the persons tasked with enforcing the rule at issue is relevant to whether a reasonable person could discern the law's contours, and to whether the law provided sufficiently clear standards. *See Hayes*, 672 F.3d at 161. In *Hayes*, the Second Circuit determined that a rule about lawyer advertising was

---

[9] As an additional example of some of the public inconsistent statements by SEC staff, Chairman Clayton recently stated that a cryptocurrency could be considered a currency while at the same time it is a security, which is itself an inconsistency given that the securities laws clearly exempt currencies from the definition of securities. *See Gov't Taking Increasing Interest in Crypto, SEC Chairman Says*, Law360, Christopher Cole (October 23, 2019) https://www.law360.com/articles/1212772/gov-t-taking-increasing-interest-in-crypto-sec-chairman-says (quoting Clayton statement at financial technology conference); *see also* 15 U.S.C. § 78c(a)(10) (defining "security" to exclude currency).

unconstitutionally vague as applied.  *Id.* at 169–70.  In doing so, it considered testimony from the enforcing agency about what standard it applied, how others in the agency may have interpreted the standard differently, and whether the agency had issued advisory guidance.  *Id.*  The Second Circuit noted, among other things, that the agency had not "clarif[ied] the content of the rule," and different individuals at the agency "appl[ied] a different standard" when considering what constituted a violation.  *See id.* at 170; *accord Jones v. Schneiderman*, No. 11-cv-08215-KMW-GWG, ECF 74, Second Amended Discovery Plan at 2 (S.D.N.Y. March 17, 2014) (noting plaintiffs' intention to depose certain regulators in connection with "vagueness claim issues").

Here, Kik is seeking to take the testimony of a limited number of those individuals most aware of, and responsible for shaping, the SEC's policies regarding the application and enforcement of the securities laws with respect to cryptocurrencies, and the decisions not to issue clear guidance in this area.  They are also among those most likely to be aware of the consistency and inconsistency of the positions the SEC has taken internally and publicly.  As *Hayes*, *Upton*, and *Gay Men's Health Crisis* make clear, such testimony and other evidence is clearly relevant, if not necessary, to Kik's as-applied defense.

### D.   How the Statute Was *In Fact Applied and Enforced* is Relevant to Kik's Vague As Applied Defense.

The second test for vagueness asks whether the statute authorizes or encourages arbitrary and discriminatory enforcement.  Evidence that the regulator *did in fact interpret the law in multiple ways* is an indication that the regulation is unconstitutionally vague.  *See Upton*, 75 F.3d at 98, *Cunney*, 660 F.3d at 622, *Hayes*, 672 F.3d at 161.  On this point, Kik is entitled to fact discovery into the SEC's inconsistent and seemingly arbitrary regulation and enforcement of this area.  As noted above, the SEC had been aware of cryptocurrencies for years but had not taken action.  When the SEC first contacted Kik in September of 2017, it never took the position that the

token distribution event involved the offer or sale of an investment contract.  Answer, ECF 22, at 122.  While the SEC must have been aware of the dozens of token offerings that had already taken place, as of the date of Kin's distribution, the SEC had not taken action with respect to any of them.[10]  This total non-enforcement cannot be squared with Chairman Clayton's statement a couple of months after Kin's distribution that every initial coin offering he had seen was a security.  *See* Answer, ECF 22, at 123.

Kik's deposition and other discovery requests seek information that will shed light on how the SEC's inconsistent application of the standard and its refusal to clarify it has allowed and resulted in arbitrary enforcement.  The SEC's awareness of cryptocurrencies and offerings, and the action and inaction it has taken regarding them, are directly relevant.  Unless the SEC is ordered to comply with Kik's discovery requests, Kik will be denied the best and direct evidence regarding the multiple ways in which the SEC has interpreted or applied the "investment contract" standard.

### E.      The Discovery Sought by Kik is Well Within the Bounds of Rule 26.

A party is entitled to discovery relevant to any claim *or defense* that has not been stricken by the court.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978); *see also Cohen v. Cohen*, 2015 WL 4469704, at *3 (S.D.N.Y. June 29, 2015) (internal quotation marks omitted) ("[A]ny possibility that the sought-after information may be relevant to the subject-matter of the action will satisfy Rule 26(b)(1)'s requirements.").  And courts recognize that challenges to an affirmative defense are not an appropriate means of denying relevant discovery.  *See Tutor Time Learning Centers, LLC v. KOG Indus., Inc.*, 2013 WL 12363550, at *2 (E.D.N.Y. Apr. 5, 2013) (compelling discovery over plaintiff's objection that "essentially challenges the merit of Defendants' affirmative defense" because that was an issue for dispositive motion practice or trial).

---

[10] The sole arguable exception would have been the DAO Report, where no enforcement action was taken and the facts were clearly distinguishable.

This includes from the SEC when it is a party. *See Collins & Aikman Corp.*, 256 F.R.D. at 414 (noting that "[w]hen a government agency initiates litigation, it must be prepared to follow the same discovery rules that govern private parties" and compelling the SEC to produce documents, including policies related to the subject matter of the enforcement action); *SEC v. Kovzan*, 2012 WL 4819011, at *5 (D. Kan. Oct. 10, 2012) (ordering the SEC to produce documents over its objection that they were not relevant to a void for vagueness affirmative defense).

The same day this Court issued the Order denying Kik's discovery, it properly denied the SEC's motion to strike Kik's affirmative defense, leaving it to be resolved on the merits at a later date. As discussed above, Kik's defense is that the standard as applied is unconstitutionally vague, a defense that must be decided as a matter of fact, not law. The denial of any opportunity to depose SEC officials and obtain documents relevant to Kik's affirmative defense severely hampers Kik's ability to establish this defense.[11]

## CONCLUSION

For the foregoing reasons, Kik respectfully requests that this Court reconsider its Order denying Kik's request for discovery and granting the SEC's motion for a protective order, and enter an Order permitting Kik to depose William Hinman, Valarie Szczepanik, Jonathan Ingram, and the SEC's 30(b)(6) designee, and compelling the SEC to comply with Kik's First Request for Production of Documents. A proposed order is attached hereto as Exhibit F.

---

[11] To the extent the Court has concerns about the breadth of any of Kik's discovery requests, Kik remains willing to negotiate reasonable limitations with the SEC.

Dated: November 8, 2019           Respectfully submitted,


By: /s/ *Patrick E. Gibbs*

Patrick E. Gibbs (*Pro Hac Vice*)
Brett H. De Jarnette (*Pro Hac Vice*)
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
Phone: (650) 843-5000
Fax:    (650) 849-7400
Email: pgibbs@cooley.com;
bdejarnette@cooley.com

Sarah M. Lightdale (SL7122)
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6374
Fax:    (212) 479-6275
Email: slightdale@cooley.com

Luke T. Cadigan (*Pro Hac Vice*)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA  02116-3736
Phone: (617) 937-2425
Email: lcadigan@cooley.com;

Kenneth R. Lench (*Pro Hac Vice
forthcoming*)
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Phone: (202) 879-5270
kenneth.lench@kirkland.com

Attorney for Defendant
KIK INTERACTIVE INC.