

**SECURITIES AND EXCHANGE COMMISSION**
**DIVISION OF ENFORCEMENT**
**100 F Street, N.E.**
**WASHINGTON, DC 20549**

**Stephan J. Schlegelmilch**
**Supervisory Trial Counsel**
**Trial Unit, Mail Stop 5977**
**(202) 551-4935 (t)**
**(301) 623-1184 (f)**
**SchlegelmilchS@SEC.gov**

November 22, 2019

**By ECF and UPS**

Honorable Alvin K. Hellerstein
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: ***SEC v. Kik Interactive Inc.*, SDNY Case No. 19-cv-5244 (AKH)**

Dear Judge Hellerstein:

Pursuant to Local Rule 37.2 and Rule 2(E) of Your Honor's Individual Rules of Practice, the parties write to request the Court's intervention regarding a discovery dispute concerning Defendant Kik Interactive Inc.'s ("Kik") responses to three of the U.S. Securities and Exchange Commission's ("SEC") August 23, 2019 Requests for Production of Records. The relevant discovery requests are attached hereto as Exhibit A.

The SEC submits that the parties have met and conferred regarding this dispute before bringing the issue before the Court. The parties have discussed the first discovery issue for weeks and the second for months. Given the short discovery schedule that Kik requested, as well as the depositions that are presently occurring, the SEC believes that these issues are ripe for the Court's intervention.

Kik disagrees that the SEC has complied with this obligation. Neither of these issues has been fully discussed by the parties, and the SEC has not responded to many of the concerns raised in Kik's most recent correspondence. The simple fact that these disputes first arose months or weeks ago does not dictate whether they are ripe for the Court's intervention. In reality, the circumstances and terms of these negotiations, described below, have been evolving over time as different arguments are raised – and the SEC continues to do so in this very brief. (*See* Exhibit J, p. 5.) Recognizing this, in its November 8, 2019 correspondence to the SEC (*See* Exhibits E and G), Kik offered to meet and confer about both of these issues, but rather than reply, the SEC presented this motion. Understanding that the SEC plans to nonetheless bring this issue before the Court at this time, the parties set forth their respective positions regarding the discovery below.

**STATEMENT OF THE SEC**

**1. The SEC's Request No. 5: Kik's Undisclosed Compensation of at Least One Witness**

On August 23, 2019, the SEC served its requests for production of documents to Kik. *See* Exhibit A. In the SEC's Request No. 5, we asked for Kik to produce the following:

> All documents concerning any oral or written contracts or agreements entered into between any Kik employee, officer, director, or agent identified in Kik's Rule 26 Initial Disclosures and Kik, including, but not limited to, any severance or cooperation agreements.

*See id.* at Request No. 5. In response to the SEC's request, after a page of boilerplate objections, Kik stated it would produce all such "contracts or agreements":

> [T]o the extent any documents exist, Kik will produce non-privileged and responsive documents sufficient to show the matters sought by the Request that Kik is able to locate pursuant to a reasonably diligent search.

*See* Exhibit B at 10. Kik did not state that it was withholding documents in response to this request. Notably, in response to most of the SEC's other requests, Kik refused to produce any records unless the SEC first sought and obtained a meet-and-confer conference with Kik (a prerequisite imposed by Kik which was itself problematic given the highly compressed discovery period that Kik had requested for the case). With respect to Request No. 5, however, Kik did not demand a meet-and-confer before Kik would produce responsive documents. *Compare id.* at 8-9 (Kik's response to Request No. 4, discussed below) with *id.* at 9-10 (Kik's response to Request No. 5).

After a series of unexplained delays, on October 28, 2019, Kik made its first production of records in response to the SEC's August 23 requests, consisting of 190 documents.[1] Because Kik did not indicate that it was withholding any responsive documents and the production included employment and severance agreements with certain witnesses, the SEC staff assumed that Kik had complied – albeit belatedly – with its discovery obligations with respect to this request.

On November 5, 2019, the SEC conducted its first deposition of a witness identified on Kik's Rule 26 initial disclosures – Mr. Ben-Ari, a former Kik executive who left the company in January 2018. Mr. Ben-Ari testified that, since 2018, he has had an agreement with Kik to pay all of his legal fees and travel costs relating to the SEC's investigation and litigation, and Kik has also agreed to compensate him for his time testifying and preparing to testify in this matter at the rate of $1,111 to

[1] The SEC did not receive any other responsive documents from Kik until November 12, when Kik produced certain other, discrete records requested by the SEC in August (*e.g.*, Kik's 2018 tax return and several months of banks statements), consisting of 209 pages.

$1,481 (Canadian) per day. *See* Exhibit C at 212-20.[2] Mr. Ben-Ari also testified that his longstanding agreement with Kik regarding this compensation is memorialized "through email":

Q. Are you being compensated for your time today?

A. Just reasonable, you know, air fare and hotel, and having a meal or something. And for the days that I am not at work.

Q. Are you getting --

A. I have to take days off.

Q. Are you getting a per diem for the days that you have to take off from work?

A. Yes.

Q. How much are you receiving?

A. I don't remember how much I asked last time, but basically I took my salary and divided by the number of days that I work in a year and the number of days that I'm here is multiplied by that rate.

Q. Is that like just an informal agreement or is it on paper?

A. Through e-mail.

Q. Have you paid any legal bills related to the SEC's investigation or this lawsuit?

A. No.

Q. Do you have an understanding who is covering those bills?

A. Yes.

Q. Who?

A. Kik.

. . . .

Q. Okay. Is it your testimony – again a detail about the compensation that you are getting for providing deposition testimony today. Is that compensation coming from Kik Interactive, Inc.?

MR. DEJARNETTE: Objection.

THE WITNESS: I don't know. I haven't --

BY MR. MENDEL:

Q. Well, who is going to pay, who is going to write you the check?

A. I think Kik, yes.

Q. And did Kik pay you last year? Did the money come from Kik last year when you provided investigative testimony?

[2] These sums are derived from an on-the-record discussion of Mr. Ben-Ari's current salary at his present employer. The SEC has redacted this testimony from the filed exhibit but will provide an unredacted version to the Court by UPS.

A. Yes.

*See id.* at 212-13, 218-19.

Notwithstanding the witness's testimony, none of the email or evidence of payment was produced to the SEC in response to our request. Kik also did not inform the SEC that these documents were being withheld, or even that they existed.

Immediately following the deposition, on November 6, the SEC followed up with Kik in writing and requested, by or before Friday, November 8, the following documents regarding the undisclosed compensation agreement with Mr. Ben-Ari and any other Kik-sponsored witness:

1. All email to, from, or between Kik and any of its agents (including Cooley and Kirkland & Ellis) and Mr. Ben-Ari between his departure from Kik until his deposition;
2. All other records relating to any agreement concerning Mr. Ben-Ari's testimony in the investigation or this litigation;
3. All documents concerning any and all agreements between "any Kik employee, officer, director, or agent identified in Kik's Rule 26 Initial Disclosures and Kik"; and
4. All evidence of any and all payments (other than payments of salary) to or made on behalf of any and all persons identified on Kik's amended Rule 26 disclosures who are not currently Kik employees.

*See* Exhibit D. The SEC staff also asked Kik to "[e]xplain why the agreement between Kik and Mr. Ben-Ari, described in Mr. Ben-Ari's deposition, was not disclosed to the SEC in Kik's response to the SEC's document requests." *See id.*

In response, Kik's counsel dismissed Kik's secret payments to Mr. Ben-Ari as "trivial" and confirmed, albeit indirectly, that Kik's non-disclosure was not an oversight. *See* Exhibit E. Kik also argued that the emails memorializing the compensation agreement between Mr. Ben-Ari and Kik – which Kik confirmed exist – are not within Kik's "possession, custody, or control" because they are held by Kik's lawyers (who are also Mr. Ben-Ari's lawyers) and not Kik itself – an apparent argument that discovery obligations can be avoided by giving material to one's agent or by having the agent conduct otherwise-responsive communications.[3] *See id.* at 3. And, Kik argued that it need not produce the agreements because they were, fortuitously, memorialized in email, which Kik declined to produce for the reasons discussed below. Kik also declined to produce or identify similar agreements to pay other witnesses. *See id.*

The SEC submits that Kik's arguments for withholding the records requested by its Request No. 5 are without merit, and the SEC requests that the Court order Kik to promptly produce the

[3] This argument is hard to square with Mr. Ben-Ari's testimony that he received (and expected to receive) compensation – thousands of dollars above and beyond his travel costs – *from Kik* for testifying and preparing to testify. *See* Exhibit C at 218-19. Clearly, Kik was the counterparty to the compensation agreement with Mr. Ben-Ari, and records of such agreement should, therefore, be its possession, custody, or control.

following categories of records, each of which is called for in the SEC's Request No. 5, including all non-privileged records held by Kik's attorneys and other agents:

1. All records relating to any agreement concerning Mr. Ben-Ari's testimony in the investigation or this litigation;
2. All documents concerning any and all agreements between "any Kik employee, officer, director, or agent identified in Kik's Rule 26 Initial Disclosures and Kik"; and
3. All evidence of any and all payments (other than payments of salary) to or made on behalf of any and all persons identified on Kik's amended Rule 26 disclosures who are not currently Kik employees

**2. The SEC's Requests Nos. 4 and 7: Kik's Refusal to Produce Non-Privileged Communications**

Prior to learning that Kik was paying at least one witness in this action, the SEC expected that it would not be necessary to conduct discovery regarding communications drafted after the filing of the Complaint on June 4, 2019. At the same time, the SEC still sought all agreements between Kik and its witnesses (discussed above) and relevant communications exchanged by Kik before June 4, 2019, to the extent not already provided during the SEC's investigation that preceded this case.[4] Consequently, on August 23, 2019, the SEC also propounded the following requests for production of records on Kik:

> All electronic mail sent and received from the Kik email account of any Kik employee, officer, director, or agent identified in Kik's Rule 26 Initial Disclosures prior to June 4, 2019 that concerns any allegations in the Complaint and/or your responses or defenses thereto.
>
> All documents concerning any communications that you have had with any person concerning the Investigation and/or the allegations set forth the Complaint, or your responses or defenses thereto, prior to June 4, 2019. As examples, but without limitation, this request includes: all correspondence (including email), cover letters, subpoenas, witness statements, declarations, affidavits, memoranda, summaries, or notes, and any drafts and versions of the foregoing, sent to, or received from, any witness or potential witness.

*See* Exhibit A at Request Nos. 4 and 7. In response, on September 23, 2019, Kik informed the SEC that it would not produce *any* documents responsive to these requests unless and until the SEC met-and-conferred with Kik regarding the requests – again, an approach that had the effect of making it more difficult to complete discovery during the limited discovery period. *See* Exhibit B at 8-9, 11. On September 4, 2019, Kik also propounded similar requests for production of records on the SEC, though they were not limited in time to the period before June 4, 2019. *See, e.g.*, Exhibit F at Requests Nos. 2, 4, and 5.

[4] In an effort to minimize the burden, the SEC made clear that Kik "need not produce documents previously produced during the Investigation in response to the Requests." *See* Exhibit A at 3-4.

The SEC promptly and repeatedly requested a telephonic meeting with Kik, which Kik eventually agreed to schedule on October 19, 2019 – after nearly another month had passed. During the October meet-and-confer, Kik asked that the SEC narrow the subject matter of the correspondence called for in the requests. In addition, Kik asked whether the SEC would, instead of seeking Kik's production of relevant communications, simply agree that all such correspondence was not discoverable from either side – save for certain communications between the SEC staff and the staff of the Ontario Securities Commission ("OSC") that Kik still demanded that it receive in response to its written discovery.

In suggesting that the SEC agree that all such correspondence not be discoverable, Kik stated that it wanted to revisit a high-level discussion regarding the discoverability of email, which the parties had on July 8, prior to the hearing before the Court. Specifically, during that discussion, the SEC broached the issue of the discoverability of non-privileged emails written by the lawyers in this case – the SEC staff, Kik's in-house counsel, and Kik's outside counsel – to all third parties. The SEC asked whether the parties should agree that such emails not be subject to discovery because of the burden and expense of conducting a privilege review. The SEC also asked whether a similar agreement could be reached regarding correspondence created after the filing of the Complaint on June 4, 2019.[5] Kik stated that it would take the issue under advisement and would contact the SEC if it wanted to pursue the issue further. However, Kik never responded. Instead, as stated above, Kik thereafter served its own written discovery requests calling for email written by SEC attorneys, and Kik's discovery demands were not bounded by any temporal limitations.[6] *See* Exhibit F.

Kik did not again mention the issue raised by the SEC during the July 8 call until the October 19 meet-and-confer regarding the SEC's request for records to Kik, nearly a month after it had responded to the SEC's discovery requests and well over a month after it had served its own discovery requests calling for similar records. After another ten days of silence, and in an email sent just days prior to Mr. Ben-Ari's deposition, Kik tried to unilaterally "accept" the "proposal" supposedly made by the SEC in July, but by that time there was nothing for Kik to accept: the issue lapsed when Kik (a) failed to respond in any way to the SEC's July overture, and (b) acted in a manner inconsistent with the issue by serving discovery requests for similar emails, which the SEC committed significant resources to assembling. Moreover, again, the SEC has learned that Kik possesses (but withheld) correspondence memorializing an agreement to compensate at least one of its witnesses in connection with his testimony – evidence that goes directly to the reliability and potential bias of the witness.[7]

[5] During the call, these issues were, collectively, referred to euphemistically as the "mutually assured destruction proposal."

[6] The SEC is prepared to produce non-privileged email between the SEC staff and third parties and the non-privileged communication it has had with the staff of the OSC. With respect to the former, we have proposed a simultaneous exchange with Kik, but Kik has rejected this proposal. With respect to the communication with the OSC, the SEC staff has provided the relevant, non-privileged (under U.S. law) materials to the Canadian officials to review, as contemplated by the Securities Exchange Act of 1934. After such review, the pace of which the SEC cannot control, and with the consent of the OSC, the SEC has offered to promptly provide the email to Kik.

[7] Kik appears to contend that the temporal limitations of these two requests (Request Nos. 4 and 7) excuses Kik's failure to respond to Request No. 5 (which has no such limitation), because Kik's witness compensation agreement(s) happen to be memorialized in email correspondence. We submit that

In an effort to resolve the issue, following the October 19 telephone conference, the SEC narrowed the subject matter of the correspondence and communication sought in Requests Nos. 4 and 7 to the following:

> (a) whether Kik's offer and sale of Kin in September 2017 was an offer or sale of a security, (b) the *Howey* test, (c) the testimony of any witness identified on Kik's amended Rule 26(a) initial disclosures, (d) steps or actions Kik did, would, or could take to increase the demand for Kin, and/or (e) discussions with or regarding any purchaser of Kin concerning the reason for such purchaser's decision to purchase Kin, the price of Kin, plans or efforts to sell Kin, or plans or efforts to profit from Kin.

Now, Kik claims that the SEC has somehow waived its right to discovery on these topics because it raised the issue of limiting discovery in July – again, a suggestion that Kik ignored and constructively rejected. Furthermore, Kik refuses to produce not just lawyer emails – the subject of the SEC's July suggestion – but also *emails of all other Kik personnel and agents*. Kik claims that the cost and inconvenience of immediately gathering, reviewing, and producing responsive records at this point in discovery are simply too high. Any such burden, however, is wholly self-inflicted; Kik – not the SEC – waited until now to address the discovery sought by the SEC in August, more than three months ago. Meanwhile, the SEC, having already produced to Kik the majority of its investigative file consisting of over 90,000 documents, has gathered and stands ready to produce over 10,000 additional documents consisting of non-privileged SEC lawyer emails.

More recently, Kik has also challenged the relevance of the above-listed subjects, but there is nothing irrelevant about the discovery the SEC seeks – each subject goes to a central issue in this case. Statements by senior Kik personnel regarding whether Kik, in fact, offered and sold an unregistered security when it offered and sold Kin in 2017 may be admissible as an admission of Kik and are highly relevant given Kik's defense of this matter. *See* Fed. R. Evid. 801(d)(2)(D). Statements by these same persons discussing Kik's representations to Kin buyers before September 26, 2017, for similar reasons, are also highly relevant. And communications with Kin purchasers regarding their bases for purchasing Kin will likely shed light on whether such purchasers had been "led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946). Furthermore, the SEC's third subject was, unfortunately, quite prescient given Kik's nondisclosure with respect to Mr. Ben-Ari, discussed above. The SEC would even be willing to limit the subject matter further – to only topics "(a)," "(c)" and "(e)" – if the Court so orders, though we submit that each of the original five topics is relevant and proportional in this matter. Indeed, given recent developments, the requested evidence seems of critical importance to determining whether there is witness bias.

Accordingly, because Kik has failed to produce any records whatsoever in response to these requests, we ask the Court to order Kik to promptly respond to the SEC's Requests Nos. 4 and 7, as limited. Given recent arguments made by Kik's counsel with respect to Kik's agreement with Mr. Ben-Ari, we also request that the Court make clear that Kik "possession, custody, and control" includes non-privileged communication had by its attorneys and other agents on Kik's behalf.

---

such an argument is incorrect; the SEC's separate requests should not be read so as to cancel one another out.

**3. The SEC's Response to the Statement of Kik, Below**

In its statement, below, Kik makes a number of assertions that require correction or clarification.

First, Kik contends that "the SEC launched a barrage of overbroad and overlapping discovery requests[, which] included eighty-five Requests for Productions ("RFPs") to which Kik made multiple productions of documents. . . ." (below, p. 13, emphasis omitted). In response to the SEC's RFPs, despite months of meeting-and-conferring, Kik has produced only 503 pages of documents in two tranches, one on October 28 and one on November 12. It is the paucity and repeated delay of Kik's responses that now bring this matter before the Court.

Second, Kik's complaints regarding the SEC's discovery compliance are without merit. Kik appears to contend that the SEC has wrongfully withheld "communications with third parties responsive to Kik's RFPs between the SEC and third parties regarding Kik, including communications with percipient witnesses" (below, p. 16). However, the SEC has repeatedly offered to provide approximately 10,000 pages of non-privileged, pre-complaint emails to Kik if Kik will simultaneously provide the SEC with the email communication requested by the SEC's RFPs, discussed above. Kik has heretofore declined that invitation. The SEC has also previously informed Kik (and does so herein again) that there are no agreements, informal or otherwise, "between the SEC and any person or entity from whom the SEC gathered information in connection with its investigation" (below, p. 17). The SEC has agreed to pay the deposition travel costs of one witness identified by Kik as having relevant information that Kik intends to use to support its defense, but SEC counsel carbon copied Kik's counsel on the email exchange memorializing the agreement so that the agreement would be fully disclosed. Kik has also never requested a meet-and-confer regarding the SEC's responses to its Requests for Admission, and we note that the Court has twice ruled that the information sought by those requests is irrelevant.

**STATEMENT OF KIK**

The SEC's choice to bring these issues before the Court is improper for a number of reasons, which are addressed below. Most fundamentally, however, the SEC has refused to engage with Kik in an appropriate manner to resolve these issues without the Court's intervention. The parties have had a number of conversations and have exchanged a handful of letters and emails. The SEC has continued to alter its position on these issues over time, and Kik recently responded with detailed and thorough letters explaining its perspective. These letters very much left open the possibility of – and were directed toward – reaching a resolution between the parties without the Court's involvement. (*See* Exhibits D, E, and G.) But rather than address any of the issues raised in Kik's response, the SEC responded with the instant letter brief, asserting the very same arguments raised its original letters and insisting that the matter be presented to the Court within days. In so doing, the SEC has completely ignored Kik's repeated offers to continue meeting and conferring, and repeatedly mischaracterized the positions Kik articulated in its own letters to the SEC. The SEC's own statement above implicitly acknowledges that these issues are not ripe for briefing to the Court: Among other things, the SEC felt the need to offer, in its letter brief to the Court, to further narrow certain of its prior requests to Kik (above, p. 7), effectively dragging the Court into an ongoing meet and confer process. And more telling, the SEC has *continued* to narrow its requests even in drafts being exchanged amongst the parties while finalizing this motion. (*See* Exhibit J, p. 5.) For example, the SEC's first

draft requested production of all four categories of documents sought in its November 6, 2019 letter, whereas its second draft only included three. This proposal was never brought to Kik during this purported "meet and confer" process, nor did Kik have the opportunity to respond to it. But even setting aside the SEC's failure to meet and confer, for the reasons set forth below, the SEC's Requests should be denied.

**1. The SEC's Request No. 5**

The SEC purports to be seeking the Court's intervention to enforce its Document Request No. 5. Oddly, however, the SEC's request for relief does not ask the Court to order production of documents responsive to Request No. 5. Instead, the SEC asks the Court to order Kik to produce documents responsive to an entirely different set of document requests set forth in the SEC's November 6, 2019 letter to Kik.[8] The difference is important and revealing, as it undermines the central theory behind the SEC's request for relief: The documents that the SEC wants the Court to order produced were not called for by the document request that the SEC purports to be enforcing here. This alone is reason enough to deny the requested relief, because a motion to compel is not a proper vehicle for propounding new discovery requests, especially not when those requests were made long after the deadline for serving such requests. But even setting that problem aside, the SEC's request should be denied for several other, independent reasons.

First, the SEC has not come close to properly meeting and conferring about this issue. To be clear: the SEC is asking the Court to compel production of documents revealing information that the SEC already knows, or that Kik has already offered to discuss producing as part of the meet and confer process. This is not "secret." During his deposition, Mr. Ben-Ari testified that he was being reimbursed for airfare, hotel costs, meals, and per diem for days he was required to take off work in connection with his deposition, and that Kik had been paying his legal bills. Moreover, in testimony that the SEC omitted from its portion of the letter brief, Mr. Ben-Ari explained in great detail exactly how much per diem he received, the methodology he used to calculate his daily rate, and how he was required to use vacation days from his existing job to attend. *See* Exhibit C, p. 212:1 – 220:3. In letters exchanged after Mr. Ben-Ari's deposition (which are attached hereto as Exhibits D and E), Kik noted

[8] Tellingly, the SEC had originally framed its request for relief from the Court as seeking "***the records requested in the SEC's November 6, 2019 letter***," rather than the documents requested in Request No. 5. (*See* Exhibit J, p. 5.) Likely realizing this amounted to a concession that the documents it is seeking were not within the scope of Request No. 5 as originally drafted, the SEC since amended its request to ask for categories documents it superficially claims were encompassed within Request No. 5. (*See id.*) But in reality, these categories were merely copied over from its November 6, 2019 letter, and classifying them as "Request No. 5" does not make it so. In reality, only one of these categories (category 2) was even arguably encompassed by Request No. 5 as drafted. Category 1 refers to "any agreement concerning Mr. Ben-Ari's testimony in the investigation or this litigation," whereas Request No. 5 only seeks documents concerning agreements between Mr. Ben-Ari and *Kik*, which were already produced. Moreover, there is no agreement between Mr. Ben-Ari (or any other employee) and Kik concerning their "testimony." Mr. Ben-Ari was simply reimbursed for his expenses. Category 3 seeks "evidence of payments" made to or on behalf of Kik employees identified on Kik's Rule 26 disclosures, regardless of whether they have anything to do with an "agreement" between Kik and such persons. This is plainly outside the scope of Request No. 5, which requests only documents concerning "agreements." And as Mr. Ben-Ari testified, there was no "agreement" between him and Kik other than his severance agreement. (*See* Exhibit C, p. 212, lines 1-7.) The fact that Kik reimbursed him for expenses in connection with his deposition does not mean (as the SEC assumes) that there was a "contract or agreement" to that effect. And in any event, even if there were an "agreement," "evidence of payments" would not "concern" the agreement itself. Put simply, despite the SEC's efforts to paper over this concession, the fact that the SEC had to re-frame this request, first in its November 6 letter and then in this letter brief, shows that the documents now sought by the SEC are not actually called for by Request No. 5. Otherwise, the SEC would have simply asked the Court to enforce Request No. 5.

that Mr. Ben-Ari had described the arrangement in some detail during his deposition, and offered to provide the SEC with any non-privileged documents in its possession that were properly within the scope of the SEC's original request. The SEC ignored Kik's offer, sent Kik a draft of this joint letter on November 13, and demanded that Kik provide its own portion of the joint letter by Monday, November 18. Simply put, there was no need for the Court's intervention, and certainly not on the timeframe the SEC demanded.

Second, setting aside the SEC's rush to bring this matter to Court, the SEC's substantive position is without merit. The SEC repeatedly accuses Kik of "withholding" documents, and of failing to "disclose" that it was withholding documents responsive to the SEC's Document Request No. 5. This is nonsense. In response to Request No. 5, Kik properly objected that the Request is vague, ambiguous, and capable of multiple interpretations, and – ***subject to those objections*** – Kik agreed to produce documents responsive to the Request as Kik understood it. In that regard, Kik understood the request to be calling for formal, legal documents ("contracts or agreements"), not emails for other communications, and so Kik conducted a reasonable search and produced all agreements in its possession between Kik and Mr. Ben-Ari, including his severance agreement. Kik's reading of Request No. 5 is fully consistent with the language of the Request. The Request itself calls only for "contracts or agreements," and does not reference emails or communications at all. Moreover, the specific examples cited in the Request — "any severance or cooperation agreements" — reinforced Kik's reading of the Request as calling for formal, legal documents, rather than emails or other communications.[9]

In its submission, the SEC cites Mr. Ben-Ari's deposition testimony for the proposition that there was a "longstanding agreement with Kik regarding this compensation" which was "memorialized 'through email'" between Mr. Ben-Ari and his lawyers at Cooley. But the SEC's submission badly mischaracterizes Mr. Ben-Ari's testimony on this point. In fact, in testimony that the SEC carefully omitted from the quote cited in its letter brief, Mr. Ben-Ari testified that his severance agreement (which Kik produced to the SEC long ago) is the only "agreement" between Mr. Ben-Ari and Kik following his departure. Immediately after discussing Mr. Ben-Ari's severance agreement, the SEC asked him: "Q. Are there any other agreements between you and Kik following your departure?" Mr. Ben-Ari answers: "A. ***No***." Then, the SEC asked him: "Q. Are you being compensated for your time today?" and Mr. Ben-Ari answered: "A. Just reasonable, you know, airfare and hotel, and having a meal or something." (*See* Exhibit C, p. 212, lines 1-7.) Thus, far from supporting the SEC's position, Mr. Ben-Ari's testimony (accurately quoted) undermines it. What is "memorialized" in emails between Mr. Ben-Ari and Cooley is not some "secret" or "undisclosed" "agreement," but simply the fact that Kik is reimbursing Mr. Ben-Ari for expenses in connection with his deposition.

Kik explained all of this during the meet and confer process, telling the SEC that Kik did not understand this request to call for the documents now at issue (and offering to meet and confer further about the issue). (*See* Exhibit E ("To resolve this issue, we are willing to meet and confer with you to see if we can reach a mutual understanding of your Request. If there are non-privileged documents within that agreed-upon scope in Kik's possession, Kik will agree to produce them.").) As such, it is

[9] The SEC never followed up to discuss Kik's vagueness objections, or to more clearly articulate what the SEC intended to request. Nor did the SEC seek to clarify Kik's understanding of the request even after receiving Kik's production, which did not include any documents or communications related to reimbursement of expenses.

deeply misleading for the SEC to frame the issue in terms of Kik "withholding" documents or failing to "disclose" that it was doing so. Indeed, for the reasons stated above, Kik still believes the Request is properly read as calling for formal legal documents ("contracts or agreements"), not emails discussing an informal arrangement to reimburse expenses of a third-party witness. (In sharp contrast, the SEC's portion of this letter does not even try to explain why Request No. 5 called for production of these emails – it simply assumes it to be so.) Indeed, if the SEC wanted communications or other documents pertaining to reimbursement of third-party witnesses, it could have (and should have) crafted a more specific request. This is clear from the SEC's own follow up requests, which seek (among other things) "[a]ll email to, from, or between Kik and any of its agents (including Cooley and Kirkland & Ellis) and Mr. Ben-Ari between his departure from Kik until his deposition," and "[a]ll evidence of any and all payments (other than payments of salary) to or made on behalf of any and all persons identified on Kik's amended Rule 26 disclosures who are not currently Kik employees." *See* Exhibit D.

Also misleading is the SEC's characterization of Kik's position about possession, custody and control of Cooley's communications with Mr. Ben-Ari. Kik has never argued that Kik could shield documents from discovery simply by "giving material to one's agent or by having the agent conduct otherwise-responsive communications." (The SEC's use of the word "communications" in this sentence is telling: The Request did not ask for "communications." It asked for "all documents concerning any oral or written contracts or agreements.") Rather, Kik has pointed out that, when lawyers from Cooley communicated with Mr. Ben-Ari about his deposition (including about reimbursement for his expenses), Cooley was acting as Mr. Ben-Ari's counsel, not as Kik's "agent," and when Cooley is acting in its capacity as counsel for clients other than Kik (such as Mr. Ben-Ari or other client), Cooley's communications with those other clients do not belong to Kik, and are not within *Kik's* possession, custody or control. This would be beyond dispute if Mr. Ben-Ari had hired a different law firm to represent him as a third-party witness, even if Kik were paying the law firm's fees. There is no reason why Mr. Ben-Ari's choice to work with Cooley, rather than with a different firm, should change the analysis at all.

Third, in any event, setting aside the question of possession, custody or control, the emails that Mr. Ben-Ari referenced in his deposition – emails with his lawyers on the subject of his deposition – are privileged. Kik's counsel pointed this out in the meet and confer process, too (*see* Exhibit E), but the SEC simply ignores the point, presumably because it has no argument for why the attorney-client privilege would not apply. Indeed, the SEC's own request for relief refers to "non-privileged" records, a category that Kik had already agreed to discuss with the SEC when the SEC peremptorily brought this matter to the Court.

The SEC's unduly combative approach to this issue comes with especially ill grace given that the arrangement in question was entirely for the SEC's benefit. Mr. Ben-Ari is a third party, and former employee of Kik, who lives in Toronto, Canada. It was at the SEC's request that Mr. Ben-Ari agreed to travel, twice, from his home in Canada to Washington, D.C., to provide testimony at the SEC's home office. He was under no obligation to appear voluntarily at all, much less twice, and in making those trips he gave up vacation time and incurred significant out of pocket expenses. For its part, Kik was under no obligation to facilitate Mr. Ben-Ari's travel by reimbursing him for his expenses. It was the SEC, after all, not Kik, that was seeking his testimony. But in any event, under the circumstances, it was entirely proper for Kik to do so. *See Prasad v. MML Investors Services, Inc.*, 2004 WL 1151735, at *5 (S.D.N.Y. May 24, 2004) ("[F]ederal courts . . . are generally in agreement that a witness may properly receive payment related to the witness' expenses and reimbursement for

time lost associated with the litigation."). Indeed, this Court recently directed the parties to reimburse third-party witnesses for travel expenses for depositions (ECF No. 32), and the SEC has offered to do precisely that for at least one third-party witness. Given that background, it is all the more inappropriate for the SEC to attack Kik for having absorbed those expenses itself rather than forcing the SEC to pay them or to go through the expense and burdensome letters rogatory process.

Kik requests that the Court deny the SEC's attempt at prolonging discovery by asserting new, expanded discovery requests at the final hour. As Kik has already told the SEC, Kik remains willing to meet and confer with the SEC to determine whether it has any documents reasonably within the scope of the SEC's original Request No. 5. However, Kik requests that the Court deny the SEC's motion with respect to Request No. 5 as written, as it remains unduly vague and overbroad, and deny the SEC's motion with respect to the SEC's new requests as well.

**2. The SEC's Request Nos. 4 and 7**

With Request Nos. 4 and 7, the SEC seeks documents that bear no reasonable relation to the matters at issue, without regard for the burden imposed. To that end, the SEC grossly mischaracterizes the record with respect to these Requests and the SEC's own "mutually assured destruction" proposal. In reality, Kik has already given the SEC voluminous documents bearing on the question of whether Kik's 2017 sale of Kin constituted an investment contract. Still, the SEC seeks communications and documents that were created over a year after the token sale was completed – long past the relevant time frame – relating to subject matter that has no bearing on the central issue of this case. Notably, during the investigation, Kik already produced documents through January 2018 relating to all of the substantive categories the SEC is now requesting. This means the SEC already has these documents for the time period leading up to the token sale and afterwards, but is now seeking the same documents stretching far past that period. This is not at all necessary or proportional to the needs of the case. Moreover, the SEC's suggestion that Kik is responsible for any delay with respect to its own "mutually assured destruction" proposal is unfounded, as the SEC has repeatedly moved the target and undermined the parties' ability to conduct productive discovery negotiations.

**A. The Requests seek documents extending over a year and a half past the relevant time frame, and as such should be rejected out of hand.**

As an initial matter, the SEC cannot possibly justify the breadth of the discovery sought. The SEC's sole claim is, in essence, that Kik's 2017 sale of Kin tokens and its pre-sale pursuant to SAFT agreements were, together, an unregistered offering of securities. *See* Complaint, ¶ 1. To succeed, the SEC must prove that Kin purchasers "(1) [invested] money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others." *SEC v. R.G. Reynolds Enterprises, Inc.*, 952 F.2d 1125, 1130 (9th Cir. 1991). It is well-settled that this objective inquiry should be "***determined at the time of issuance, rather than at some subsequent time***." *Danner v. Himmelfarb*, 858 F.2d 515, 520 (9th Cir. 1988) (emphasis added); *see also Gallagher v. Roberts*, 2017 WL 1365792, at *5 (S.D. Cal. April 14, 2017) (granting motion to dismiss where complaint failed to allege an expectation of profits "***at the time of the offer and sale*** of the alleged security") (emphasis added). This is because the *Howey* test focuses on "the terms of the [alleged] offer, the plan of distribution, and the economic inducements held out to the prospect." *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 352-53 (1943). Accordingly, Courts routinely hold that document discovery should be cut off at, or soon after, the time the sale was completed. *See GGCC, LLC v. Dynamic Ledger Solutions, Inc.*, ECF No. 223, Case No. 17-cv-06779-RS (N.D. Cal. June 10, 2019) ("It is difficult to imagine documents created months after the [token sale] that are relevant to whether the [tokens] constituted "securities" at the time of the July 2017 ICO."). In other words, *Howey* precedent dictates that discovery is properly limited in scope to the time of the alleged securities offering.[10] The SEC offers no explanation for why it is entitled to documents so far beyond the time of the token sale.

Further, the SEC does not dispute that it already has all such documents. Over the course of the SEC's investigation, Kik engaged in a voluminous, burdensome, and comprehensive production of documents – not to mention the tens of thousands of documents produced by third parties. Kik provided the SEC with documents from over 20 custodians, including documents encompassing the subject matter being sought in these requests, spanning from June 2016 to January 2018 – already more than 3 months after the time when the SEC claims an investment contract was formed. Kik ultimately produced approximately 40,000 documents, as well as dozens of letters, presentations, and responses to written discovery requests, and the SEC did not challenge the completeness of these productions. This history was presented to the SEC and the Court at our initial conference, with the hope that the SEC would take it into account and streamline its discovery efforts during the expedited fact discovery period. And yet, as if it were starting from scratch, the SEC launched a barrage of overbroad and overlapping discovery requests. This included ***eighty-five*** Requests for Productions ("RFP's"), to which Kik has made multiple productions of documents, and ***one-hundred and fifty*** Requests for Admission. The SEC has yet to articulate why the same categories of documents, created over a year and a half after the sale, have any bearing on their claim. To the contrary: these new requests appear to have the sole purpose of harassing Kik and further delaying discovery, as they are irrelevant, overbroad, ambiguous, and outside the scope of the SEC's original RFPs. As such, the SEC's motion should be rejected wholesale.

---

[10] Kik's vagueness defense also cannot justify the SEC's sweeping discovery requests. The Court has recently made clear its view that this defense may only be presented based on "objective" facts and is not the proper subject of discovery between the parties. The Court should similarly refuse to permit discovery as to subjective communications, months after the token sale completed, as to their musings on the *Howey* test or otherwise.

**B. The SEC has not meaningfully narrowed its vague and unintelligible Requests, which continue to seek irrelevant information.**

Putting aside Kik's objection as to the relevant time range, the scope of discovery sought is untenable and the SEC's justifications do not hold weight. In its September 23, 2019 response, Kik objected to these requests as vague, overbroad, and ambiguous (among other things), and offered to meet-and-confer in order to find a mutually agreeable solution. On the parties' October 17 call, the SEC agreed to narrow Request No. 4 and provide reasonable responsiveness criteria. Kik also volunteered to draft a letter to the SEC describing various facts sought by the SEC's discovery requests in order to narrow the issues raised, which Kik provided on November 4, 2019 (without any response from the SEC). Then, weeks later, the SEC – for the first time – provided its purportedly "narrow[ed]" version of the subject matter sought by these Requests, and described a number of categories of documents Kik was to produce. Kik responded almost exactly one week later, explaining in detail why the SEC's newly styled requests were objectionable, but offering to meet and confer. (*See* Exhibit G ("Kik continues to believe that these issues can be resolved without the Court's intervention. If the Commission would like to meet and confer on these matters, please let us know so we can schedule a time to discuss.").) The SEC responded with the instant motion, without taking any of Kik's objections into account. As a result, each of the SEC's suggested criteria remains improper and irrelevant to its claims, and the burden of searching for and producing these documents is wildly disproportionate to the needs of the case.

**1. "Whether Kik's offer and sale of Kin in September 2017 was an offer or sale of a security; and the *Howey* test."**

As written, this category seeks *any* communication involving any of Kik's executive team – current or former – at any time before the complaint was filed, regarding the application of securities laws to Kik's sale of Kin. Notably, Kik already provided non-privileged communications related to this subject matter extending through January 2018, well past the period during which they could even arguably be relevant. The SEC has not provided any justification for why such communications are relevant at all, much less for documents dated more than a *year* after the TDE was completed. The opinions of non-lawyer employees about a legal question are wholly irrelevant to whether Kik's sale of Kin was in fact an offering of securities, which is a strict-liability offense. The SEC claims – in a conclusory fashion – that statements by senior Kik personnel regarding whether or not its sale of Kin was a security are relevant solely because they are, potentially, admissible pursuant to Fed. R. Evid. 801(d)(2)(D) as Kik's statements. But as the Court is well aware, the applicability of a hearsay exception does not automatically mean that given discovery is proper, relevant, or proportionate to the needs of the case. The SEC also asserts that "[s]tatements by these same persons discussing Kik's representations to Kin buyers before September 26, 2017, for similar reasons, are also highly relevant." This assertion is conclusory and rings hollow. First, it does not match the Request, which actually purports to seek a much broader set of documents relating to *any* employees' opinion about whether its sale of Kin was a securities offering – not just observations about statements given at the time. Second, the question of whether Kik "offered or promised" an investment contract to the public is an objective question. Employees' opinions about such statements – expressed over a year after the statements were made – are irrelevant.

Moreover, not only are such documents highly unlikely to exist, the effort required to identify these documents would be extremely burdensome. Kik would need to collect thousands of documents and apply broad, far-reaching search terms such as "securities" or "*Howey*," which would

necessarily implicate privileged communications with Kik's attorneys. As such, this burden required to undertake this review is not proportional to the needs of the case or the relevance of the documents sought.

**2. "The testimony of any witness identified on Kik's amended Rule 26(a) initial disclosures."**

In addition to being procedurally improper,[11] this category is vague and incoherent. For example, it is unclear what the term "testimony" refers to – investigative, deposition, or trial testimony? It is also unclear whether this category seeks production of any actual testimony, or communications regarding testimony. As the SEC is the only party to have taken any testimony in this action, it of course has equal access to any testimony given thus far. To the extent the SEC is seeking documents *relating* to the investigative or trial testimony of Kik employees, if any such documents exist, they are likely privileged and are not subject to discovery in any event. Requiring Kik to engage in a burdensome document review of Kik's privileged communications regarding its employees' testimony is a clear waste of resources with little chance of yielding discoverable information.

**3. "Steps or actions Kik did, would, or could take to increase the demand for Kin."**

This category seeks discovery that is irrelevant to the SEC's claims and not proportional to the needs of the case. Any of Kik's purported "steps or actions" to increase demand for Kin that occurred *after* the TDE (even assuming such steps or actions were contemplated or occurred) are irrelevant as a matter of law to the issue of whether the TDE was an investment contract. The only question is what Kik *offered or promised* to TDE participants, and whether, before purchasing, they were given an expectation that Kik would take certain "steps or actions" to increase demand for Kin. *See Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) (courts "must focus [the] inquiry on ***what purchasers were offered or promised***" and will "***conduct an objective inquiry into the character of the instrument or transaction offered based on what purchasers were 'led to expect'***") (emphasis added). This Request is also incoherent and unintelligible. Kik cannot reasonably ascertain the meaning of "steps or actions" that Kik "would, or could take." Kik's business model with respect to Kin has been abundantly clear to the SEC and the public at large since its very first public announcement of Kin. Kik's efforts to integrate Kin within Kik have all been publicly documented. As such, this newly-asserted request is not only unduly vague, it is also wasteful.

**4. "Discussions with or regarding any purchaser of Kin concerning the reason for such purchaser's decision to purchase Kin, the**

[11] As a preliminary matter, this and the following three categories are effectively entirely new document requests that were not encompassed within either of the SEC's original requests. Kik is not making any argument that the SEC "waived" a right to pursue these categories, but rather, that they are not encompassed within the SEC's original document requests. It is improper, however, for the SEC to use this motion as a means of asserting wholly new document requests after the deadline to do so has passed. Kik is not obligated to respond to an informal request not made by a Request for Production of Documents, nor is it proper for the SEC to ask the Court to compel a response to requests it did not make.

**price of Kin, plans or efforts to sell Kin, or plans or efforts to profit from Kin."**

This Request is similarly vague, incoherent, and overbroad. For example, as written, this request seeks information related to "any purchaser of Kin," irrespective of whether that purchaser participated in the TDE or purchased Kin from Kik. Purchases after the TDE, including on the secondary market through exchanges, have no relationship whatsoever to the issue of whether the 2017 TDE was an investment contract. Moreover, Kik has no reasonable means of identifying communications with such purchasers and would have no information related to their reason for purchasing Kin tokens. The SEC makes no effort at clarifying this issue.

And even to the extent this Request seeks information related to TDE purchasers, these communications are not relevant, particularly over a year after the token sale was completed. Notably, Kik has already searched for and produced communications with TDE purchasers, to the extent any existed, leading up through January 2018. Nonetheless, these individuals' intentions with respect to purchasing, selling, or profiting from Kin have no bearing on whether Kik "offered or promised" an arrangement resembling an "investment contract." Nor would any discussions between Kik employees and a purchaser of Kin about the price of Kin, which is exceedingly broad and untethered to the claims at issue in this case. Again, the SEC's purported justification for this request is highly conclusory, merely claiming that such communications "will likely shed light on whether such purchasers had been 'led to expect profits solely from the efforts of the promoter or a third party.'" But as stated above, such an inquiry is objective, based on the materials Kik held out to purchasers before buying Kin. And to the extent the SEC wishes to present evidence about the reasons for purchasers' decisions to purchase Kin, the price of Kin, their efforts to sell Kin, or otherwise, it is entitled to request such information from the many, many witnesses it has identified.

This roundabout method of seeking this evidence is not only highly unlikely to yield responsive documents, it is imposes an undue burden on Kik that is not proportional to the needs of this case.

### C. The SEC's "mutually assured destruction" proposal has been a continually moving target, and its current version is absurd, self-serving, and improper.

As set forth above, all of the SEC's Requests are objectionable and improper, and Kik should not be obligated to produce any additional documents. With respect to communications with third party witnesses, the SEC has also made a number of allegations regarding its "mutually assured destruction" arrangement, with the apparent goal of blaming Kik for some purported delay. This is not so. To be clear: this issue exists solely because of the SEC repeatedly misrepresented (or altered) the terms of its own proposal, each time setting conversations back.

The events leading to this dispute are as follows: in July 2019, on its own accord, the SEC proposed a "mutually assured destruction" arrangement in which both parties would agree *not* to require the production of communications with third party witnesses relating to the subject matter of the investigation, in the period before the Complaint was filed.[12] In so doing, the SEC made clear that

[12] The SEC claims this included "all third parties," which was not Kik's understanding at the time this offer was made. Kik understood this offer to include third party percipient witnesses whom the SEC

it would assert privilege over all communications with third parties after the Complaint was filed. At this time, the parties agreed to revisit this proposal after the scope of discovery had been developed by the parties. Then, the SEC served Request No. 7 (along with 84 other document requests), seeking documents that would be subject to this proposal. Kik propounded a similar request on the SEC in order to place the parties on an equal footing. The first time the SEC shifted its proposal was on the parties' October 17, 2019 meet-and-confer call, when the SEC informed Kik for the first time that its proposal would apply to the SEC's written communications with the Ontario Securities Commission ("OSC"), meaning that Kik's agreement to the proposal would foreclose any further discovery into those communications.[13] As this was not Kik's understanding of the SEC's original July proposal, Kik agreed to consider whether this newly framed proposal was acceptable, along with a number of other document requests the SEC propounded. Without waiting for Kik's response, the SEC sent a letter on October 31, 2019, suggesting that the SEC could unilaterally bind Kik to the SEC's preferred terms and require Kik's production of these documents. The next day, Kik accepted the SEC's mutually assured destruction proposal (as it had been revised on the parties' October 17, 2019, meet-and-confer call), meaning that *neither party* would produce any of its pre-complaint communications with third party witnesses regarding the subject matter of the investigation or complaint.

At that point, Kik understood the parties were in agreement on this issue, but on November 4, 2019, the SEC ***again*** unilaterally changed the terms of the SEC's proposal by limiting it (for the first time) to communications between ***counsel*** for the parties, on the one hand, and third party witnesses, on the other hand. But as modified, the proposal is absurd: given that a majority of the SEC Staff is comprised of lawyers, or various agents acting on their behalf, the proposal amounts to saying the SEC will produce nothing, while Kik would have to review tens of thousands of emails covering a roughly eighteen month period in order to identify and potentially produce communications between non-lawyer employees or representatives of Kik and third parties. Kik would never have seriously considered such a one-sided proposal, and Kik does not accept it now. (To be clear, however, this does not mean that Kik agrees to produce these documents, as the SEC's requests for them are objectionable on many other grounds.) But in any event, any delay caused by this mutually assured destruction proposal cannot reasonably be attributed to Kik.

In light of this history, Kik requests that the Court compel the SEC to comply with the terms of its own proposal, and order that neither party is obligated to produce communications with third party witnesses, including communications involving non-lawyers, before or after the filing of the Complaint. Notably, Kik has already produced all communications the SEC requested between its employees or agents and third parties leading up through January 2018, and in Kik's view, such communications are not at issue now. In the alternative, if Kik is ordered to produce any communications with third parties after January 2018, Kik requests that the SEC be likewise ordered to produce its communications with third party witnesses. As the SEC has consistently framed this issue as a two-way street, fairness demands that the parties be treated equally in whatever resolution the Court finds appropriate.

---

and/or Kik had discussed the subject matter of the investigation. The SEC later claimed that this offer would include its communications with the OSC.

[13] The SEC also expressed, for the first time, that even without a "mutually assured destruction" arrangement, it would not agree to produce any communications with the OSC.

### D. Not only are the SEC's requests improper, the SEC has failed to comply with many of its own discovery obligations, depriving Kik of valuable discovery to which it is entitled.

Finally, the SEC's Requests directly contradict the SEC's position on its own discovery obligations in this matter, and Kik requests that the Court place the parties on equal footing. On September 4, 2019, Kik served its requests for production of documents to the SEC, which included a request for the SEC to produce all documents and communications with third parties concerning Kik and/or Kin. *See* Exhibit F, RFP Nos. 1, 2, 4. Despite acknowledging that it has identified communications with third parties responsive to Kik's RFPs between the SEC and third parties regarding Kik, including communications with percipient witnesses, the Commission has refused to provide ***any*** of the communications sought by Kik in its discovery requests. (*See* Exhibit H, p. 3, n.4.)[14] The SEC's claim that it has "repeatedly offered to provide approximately 10,000 pages of non-privileged, pre-complaint emails to Kik" is misleading. In fact, the SEC has offered to produce communications with certain individuals, subject to terms that are grossly one-sided and not consistent with the terms that the SEC initially proposed, and it has refused to provide Kik with any of its communications with the OSC, citing baseless privilege claims. The SEC claims, for example, that communications with third parties are somehow protected by the work product doctrine, and that Freedom of Information Act protections relating to information sharing between foreign agencies apply to federal actions brought by the SEC, notwithstanding the contrary plain language of the provision in question, as the SEC's own published guidance acknowledges.[15]

Particularly noteworthy here, despite repeated requests from Kik, the SEC still has failed to confirm whether it has produced the entirety of its investigative file or even respond to Kik's request for documents evidencing informal agreements between the SEC and any person or entity from whom the SEC gathered information in connection with its investigation. Nor has the SEC been willing to produce so much as a privilege log, which would at least allow Kik to understand or challenge the documents the SEC is withholding. Taken together with the SEC's improper initial disclosures, in which the SEC claims it may rely on testimony from ***approximately 100 purported witnesses***, including over 20 TDE purchasers for whom they have not provided any contact information other than a physical address, Kik is left without any clue whatsoever about the scope of the SEC's investigation or the evidence it plans to present at trial. Flouting its obligation to conduct a "reasonable inquiry" pursuant to Rule 26(a)(1)(A)(i), the SEC instead provided a laundry list of witnesses without any differentiating information, many of whom had not even been made aware that the SEC was contemplating calling them as a witness. This approach is improper, as Kik has pointed out on multiple occasions. *See Sender v. Mann*, 225 F.R.D. 645, 651 (D. Colo. 2004) (Parties must "conduct a reasonable inquiry in advance of making Rule 26(a) disclosures," and if unwilling to do so,

---

[14] Notably, the SEC claims that it has produced 90,000 documents to Kik, however nearly half of this production consists of the documents that ***Kik originally produced to the SEC***, and the remaining portion consists of documents that were produced by other third parties, as well as testimony videos, transcripts, and exhibits. This hardly constitutes an extraordinary effort on the SEC's part. If anything, this reveals the wealth of documentary evidence already at the SEC's disposal. Given that it already collected nearly 90,000 documents from Kik and dozens of other parties, it is all the more absurd for the SEC to seek documents well past the time period in which the SEC claims an investment contract was formed.

[15] SEC International Enforcement Assistance, *available at* https://www.sec.gov/about/offices/oia/oia_crossborder.shtml.

"that party cannot defeat the purposes of Rule 26(a)(1) simply by providing a laundry list of undifferentiated witnesses."). In short, the SEC's opaque approach to its own discovery obligations is not conducive to an efficient or effective discovery process.

The SEC's failure to meet its most basic discovery obligations is not limited to Kik's document requests. The SEC's responses to Kik's Requests for Admission are similarly deficient to the point of absurdity. *See* Exhibit I. For example the SEC refused to admit that the Commission declined to pursue an enforcement in connection with the conduct at issue in the DAO Report—a document cited repeatedly in the Complaint—notwithstanding the DAO Report's own language to that effect. (*Compare* Exhibit I, Response to RFA No. 29 (asserting that the terms "pursue" and "enforcement action" are "vague and ambiguous"), *with* DAO Report at 1 ("The Commission has determined not to pursue an enforcement action in this matter[.]"). The SEC also refused to admit or deny the contents of letters or statements made by identified SEC officials on a date provided. *See* Exhibit I, Response to RFA Nos. 32, 45. Moreover, the SEC refuses to admit or deny the date when it became aware of the Kin project because "aware," a term used by the SEC in over a dozen of its own RFAs, is somehow vague and ambiguous.

Thus far, discovery in this matter has been entirely one-sided. In addition to denying the SEC's attempt to further burden Kik with unnecessary discovery, Kik respectfully requests that the Court order the SEC to comply with its own discovery obligations: namely, (1) requiring the SEC to provide Kik with a privilege log, (2) ordering the SEC to substantively and in good faith respond to Kik's Requests for Admission (*see, e.g.*, Exhibit I, Response to RFA Request Nos. 7, 35), (3) ordering the SEC to affirmatively state whether it has produced the entirety of its investigative file, and if not, what it has withheld, and/or (4) amend its initial disclosures to provide Kik with some notice of who it believes it may use as a witness at trial. Moreover, if the Court orders Kik to produce any communications with third parties after January 2018, Kik requests that the Court honor the parties' mutually assured destruction arrangement and likewise require the SEC to provide the same communications with third parties.

Thank you in advance for your attention to these matters.

Very truly yours,

*/s/ Stephan J. Schlegelmilch*

Stephan J. Schlegelmilch

cc: All counsel of record (by ECF)