EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**U.S. SECURITIES AND EXCHANGE COMMISSION,**

                                                   **Plaintiff,**

     **v.**

**KIK INTERACTIVE INC.,**

                                                   **Defendant.**

---

**Case No. 1:19-cv-05244 (AKH)**

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**
**TO DEFENDANT KIK INTERACTIVE INC.**

Pursuant to Federal Rules of Civil Procedure 26(b) and 34, Plaintiff U.S. Securities and Exchange Commission ("SEC") submits the following requests for production of documents to defendant Kik Interactive Inc. ("Kik"). All responsive documents within the possession, care, custody, and/or control of Kik and/or its representatives, as described below, are to be delivered to: David Mendel, Esq., Securities and Exchange Commission, Mail Stop 5971, 100 F Street, N.E., Washington, D.C. 20549-5971, within thirty (30) days of being served with the instant requests.

## DEFINITIONS

1.     The definitions set forth in the Local Rules for the United States District Court for the Southern District of New York, Local Civil Rule 26.3, Uniform Definitions in Discovery Requests, are adopted and incorporated herein.

2.     "Kik" means the corporation and all employees, officers, directors, agents, and representatives, and those acting on their behalf, of Kik Interactive Inc.

3.     "You" and "your" means Kik and any agent, representative, attorney, or person acting or purporting to act on its behalf.

1

4.      "Investigation" and "Investigative" refer to the SEC staff's investigation conducted under File No. HO-13388.

5.      "Action" means the civil action that the SEC filed in the United States District Court for the Southern District of New York on June 4, 2019, captioned *U.S. Securities and Exchange Commission v. Kik Interactive Inc.*, Case No. 1:19-cv-5244 (AKH).

6.      "Persons" means natural persons, and any other entity or organization including partnership, trust, foundation, proprietorship, association, corporation or group of natural persons, and all employees, directors, officers, attorneys, representatives, or agents thereof.

7.      "Complaint" means the complaint filed by the SEC in this Action.  *See* ECF. No. 1.

8.      "Answer" means the answer to the Complaint that you filed in this Action.  *See* ECF No. 22.

9.      "Requests" means all discovery requests and requests for admission that have been, or will be, submitted by the SEC in this Action.

## INSTRUCTIONS

1.      These instructions incorporate by reference the instructions set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure, in addition to the specific instructions set forth below.

2.      All documents responsive to the Requests shall be produced as they are kept in the ordinary course of business, including in their native electronic format, or organized and labeled to correspond to each separately numbered Request.  Documents responsive to the Requests shall be produced in such a way as to identify the applicable file folder and/or source from which each responsive document came or was obtained.

3.      Documents responsive to the Requests, including electronically stored information and its associated metadata, shall be produced in the form specified by the SEC's Data Delivery

Standards, a copy of which was previously provided to Kik during the Investigation and will be provided again upon request.

4.      Documents produced in response to these Requests shall be produced in their entirety, including all attachments and all enclosures referred to in the documents.

5.      These Requests include documents within your possession, care, custody, or control, including documents within the possession, care, custody, or control of persons with whom you associate, including business associates, attorneys, representatives, and agents.

6.      If any document (or category of documents) requested herein has been lost, destroyed, or otherwise disposed of, please furnish a log identifying each such document (or category of documents) and state the following information:  (i) the type of document (e.g., letter or memorandum); (ii) the date of the document; (iii) the title of the document; (iv) the author(s) of the document; (v) the intended and actual recipients of the document; (vi) the general subject matter of the document; and (vii) the circumstances of the destruction of the document, including the date on which the document was lost, destroyed or otherwise disposed of, the name of the person who ordered or authorized its destruction or disposition, the conditions of or reasons for such destruction or disposition, and all persons having knowledge of its contents.

7.      In each instance where you claim a privilege, state the basis for the privilege in sufficient detail to enable the Court to adjudicate the claim.  Please answer every discovery request fully to the extent you do not raise objections.

8.      If you do not possess any documents responsive to one of the Requests, so state in writing.

9.      If you previously produced all documents responsive to one of the Requests to SEC staff during the Investigation, so state in writing and identify the responsive Bates range(s).  To the

extent previously produced and so stated, you need not produce documents previously produced during the Investigation in response to the Requests.

10.     These document Requests are continuing in nature, so as to require you to submit supplementary responses, and to produce additional documents, if you obtain additional or different information.

## **REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

1.     All documents described in Section II of Defendant's Rule 26 Initial Disclosures.

2.     Calendars, journals, notes, and other documents concerning the performance of official duties concerning any allegations in the Complaint or any defense or response thereto by any Kik employee, officer, director, or agent identified in Section I of Defendant's Rule 26 Initial Disclosures.

3.     Edward Livingston's business and/or travel expense reports and submissions from February 16, 2017[1] through September 26, 2017.

4.     All electronic mail sent and received from the Kik email account of any Kik employee, officer, director, or agent identified in Kik's Rule 26 Initial Disclosures prior to June 4, 2019 that concerns any allegations in the Complaint and/or your responses or defenses thereto.

5.     All documents concerning any oral or written contracts or agreements entered into between any Kik employee, officer, director, or agent identified in Defendant's Rule 26 Initial Disclosures and Kik, including, but not limited to, any severance or cooperation agreements.

6.     All joint defense or common interest agreements relating to this Action or the Investigation.

---

[1] In his letter to Brent Mitchell dated February 26, 2018, Mr. Gibbs stated that "the first mention of Kin at the Board level was on February 16, 2017." If you are now aware of an earlier date, please use such earlier date for this Request.

7.      All documents concerning any communications that you have had with any person concerning the Investigation and/or the allegations set forth the Complaint, or your responses or defenses thereto, prior to June 4, 2019.  As examples, but without limitation, this request includes: all correspondence (including email), cover letters, subpoenas, witness statements, declarations, affidavits, memoranda, summaries, or notes, and any drafts and versions of the foregoing, sent to, or received from, any witness or potential witness.[2]

8.      All documents memorializing or evidencing any agreement, whether written or oral, with the "third party contractor, hired by Kik" described in Kik's Answer to paragraph 177 of the Complaint.

9.      All recordings or transcripts of public statements made by you or on your behalf on or before September 26, 2017 in connection with or regarding the offer or sale of Kin.

10.     All statements on social media made by you or on your behalf on or before September 26, 2017 – including but not limited to, any statements on Slack, Twitter, Telegram, Medium, Facebook, and any other social media pages or platforms used by Kik or its agents – in connection with or regarding the offer or sale of Kin.

11.     All documents memorializing, evidencing or concerning the "body of over thousands of statements, made in hundreds of speaking engagements, conferences, interviews, blog posts, articles, and other public communications," as alleged in Kik's Answer to paragraph 9 of the Complaint.

12.     To the extent not included in your response to the preceding Request, all documents memorializing, evidencing or concerning any non-public statements you made to any purchaser or potential purchaser of Kin regarding the offer or sale of Kin via SAFT agreement or otherwise.

---

[2] This request shall be deemed to exclude from its scope communications exclusively between you and your attorneys of record in this Action.

13.     All documents memorializing, evidencing or concerning every instance in which Kik or its agents stated publicly or to any purchaser or potential purchaser of Kin that Kik "could not guarantee value with Kin," as alleged in Kik's Answer to paragraph 9 of the Complaint.

14.     To the extent not provided in response to the preceding Requests, any other statement or communication by Kik made in connection with or concerning the offer or sale of Kin prior to September 26, 2017.

15.     Documents sufficient to identify all social media usernames or handles used by you or others working on your behalf, beginning in May 2017 to the present.

16.     All documents memorializing, evidencing, or concerning communication with any purchaser or potential purchaser of Kin, via SAFT agreement or otherwise including, but not limited to, the communication upon which you premise your allegation that there was "millions more in interest," as alleged in Kik's Answer to paragraph 1 of the Complaint.

17.     Documents sufficient to identify each person with whom you discussed the offer and sale of Kin on or before September 26, 2017.

18.     All documents memorializing, evidencing, or concerning communications with developers regarding Kin from May 1, 2017 through September 26, 2017.

19.     All documents concerning Kik's decision to "structure the pre-sale as a sale to accredited investors exempt from registration with the Commission under SEC Regulation D," as stated in Kik's Answer to paragraph 1 of the Complaint.

20.     All documents memorializing, evidencing, or concerning the "projects and business models" that Kik "began to experiment with," as alleged in Kik's Answer to paragraph 5 of the Complaint.

21.     All documents memorializing, evidencing, or concerning the "technology companies" that "expressed significant interest in acquiring Kik," as stated in Kik's Answer to paragraph 6 of the Complaint.

22.     All documents memorializing, evidencing, or concerning Kik's "expect[ation] that it could sustain operations well past the date when the TDE eventually occurred," as referenced in Kik's Answer to paragraph 6 of the Complaint.

23.     All documents memorializing, evidencing, or concerning Kik's "belie[f] that it could have obtained traditional financing or other potential strategic transactions if it wanted to," as referenced in Kik's Answer to paragraph 6 of the Complaint.  *See also* Kik's Answer to paragraph 7 of the Complaint.

24.     All documents memorializing, evidencing, or concerning Kik's decision to "go all in on a business model centered around a cryptocurrency," as alleged in Kik's Answer to paragraph 40 of the Complaint.

25.     All documents memorializing, evidencing, or concerning the advertisers that Kik alleges "were concerned about Kik Points losing their value entirely," as alleged in Kik's Answer to paragraph 7 of the Complaint.

26.     All documents memorializing, evidencing, or concerning "Kin's fundamental utility" as of September 26, 2017, including, but not limited to, documents relating to all "premium content" available as of September 26, 2017, documents identifying all "peer-to-peer transactions" of Kin as of September 26, 2017, and documents relating to the "sunglass company" that accepted Kin as a form of payment and any other such vendor, as stated in Kik's Answer to paragraph 16 of the Complaint.

27.     Documents sufficient to identify all goods or services that were available to be purchased and/or sold with Kin as of September 26, 2017.

7

28.     All documents memorializing, evidencing, or concerning the status of the Kin Rewards Engine as of September 26, 2017.

29.     All documents memorializing, evidencing, or concerning Kik's allegation that "Kik still made significant efforts to understand and comply with all applicable laws and regulations, and did its best to 'anticipate where the rules will land and provide … the most thoughtful, buttoned up way to not only do a token distribution event but also to build one of these decentralized networks'," as alleged in Kik's Answer to paragraph 17 of the Complaint.

30.     All documents memorializing, evidencing, or concerning the "third-party auditor['s]" "confirm[ation] that Kin was analogous to 'inventory'," as alleged in Kik's Answer to paragraph 17 of the Complaint.

31.     All documents memorializing, evidencing, or concerning all discussion(s) or communication(s) between the Ontario Securities Commission and Kik or its attorneys or other agents regarding the offer and sale of Kin.

32.     All documents memorializing, evidencing, or concerning any discussion or communication between the SEC and Kik or its attorneys or other agents regarding the offer and sale of Kin prior to September 26, 2017.

33.     All documents memorializing, evidencing, or concerning Mr. Livingston's public statement in August 2017 that the DAO Report "made 'complete sense to [Kik] and [was] fully expected' that the SEC would determine that the DAO was a security because, among other things, the token at issue in the DAO Report entitled participants to vote and receive 'rewards,' which the DAO co-founder compared to 'buying shares in a company and getting . . . dividends,'" as referenced in your Answer to paragraph 17 of the Complaint.

34.     All documents memorializing, evidencing, or concerning Kik's reaction to the DAO Report, including, but not limited to, the "reassurance" that the report provided to Kik as referenced in your Answer to paragraph 17 of the Complaint.

35.     All documents memorializing, evidencing, or concerning the allegation that "Kik felt secure in its assessment that the TDE would not constitute an investment contract," as alleged in Kik's Answer to paragraph 106 of the Complaint.

36.     All documents memorializing, evidencing, or concerning the allegation that "Kik was confident that its sale of a digital currency would not implicate the federal securities laws," as alleged in Kik's Answer to paragraph 96 of the Complaint.

37.     All documents memorializing, evidencing, or concerning the allegation that "[a]t the time of the TDE, Kik did not have adequate notice of whether its offer and sale of Kin would constitute an 'investment contract'," as alleged on page 122 of Kik's Answer.

38.     All documents memorializing, evidencing, or concerning any legal or other professional advice or opinion provided to Kik prior to or "at the time of the TDE" regarding "whether [Kik's] offer and sale of Kin would constitute an 'investment contract'," as alleged on page 122 of Kik's Answer.

39.     To the extent not provided in response to the above Requests, all documents memorializing, evidencing, or concerning Kik's efforts to understand and comply with all applicable laws and regulations, including the federal securities laws, including, but not limited to, the efforts described in Kik's Answer to paragraphs 17 and 96 of the Complaint.

40.     All documents memorializing, evidencing, or concerning the May 24, 2017 meeting referenced in Kik's Answer to paragraph 89 of the Complaint.

41.     All documents memorializing, evidencing, or concerning Kik's denial of paragraph 85 of the Complaint.

42.     All documents memorializing, evidencing, or concerning the allegation that "the white paper did not lead readers to expect an investment opportunity, but instead the opportunity to participate in this new digital economy," as alleged in Kik's Answer to paragraph 120 of the Complaint.

43.     All communications between you and William Mougayar, including, but not limited to, any communications relating to the Kin Foundation and/or the offer and sale of Kin.

44.     All documents memorializing, evidencing, or concerning any contract or agreement, whether oral or written, between you and William Mougayar.

45.     Financial records sufficient to support the allegation that Kik "was profitable in fiscal year 2018," as stated in Kik's Answer to paragraph 38 of the Complaint, including, but limited to, the source(s) of such revenue.

46.     All documents memorializing, evidencing, or concerning the survey referenced in footnote 3 of Kik's Answer.

47.     All documents memorializing, evidencing, or concerning Kik's allegation that "Mr. Livingston had personally been investigating the potential for a cryptocurrency-based business model since 2011," as alleged in Kik's Answer to paragraph 44 of the Complaint.

48.     All documents memorializing, evidencing, or concerning the allegation that "Kik had other options," including, but not limited to, documents sufficient to identify the "other options," as alleged in Kik's Answer to paragraph 45 of the Complaint.

49.     All documents memorializing, evidencing, or concerning Kik's statement to "the reporter" as quoted in Kik's Answer to paragraph 76 of the Complaint.

50.     All documents consisting of, or concerning, the "numerous other tweets and public statements stating that exchange listings were 'up to the exchange,'" as alleged in Kik's Answer to paragraph 83 of the Complaint.

51.     All documents memorializing, evidencing, or concerning any communications between you and representatives of any digital asset trading platforms and/or exchanges on or before September 26, 2017.

52.     All documents memorializing, evidencing, or concerning any efforts by Kik to have any digital asset trading platforms and/or exchange list Kin.

53.     Documents sufficient to identify all transactions in Kin within the first twenty-four (24) hours of Kik's distribution of Kin on September 26, 2017.

54.     All documents memorializing, evidencing, or concerning the manner in which "the Kin economy existed," as stated in Kik's Answer to paragraph 61 of the Complaint.

55.     All documents memorializing, evidencing, or concerning "Kik['s] realiz[ation] that Ethereum contained technological limitations that could potentially cause issues with a digital token used for a high volume of transactions," and/or Kik's knowledge "that there was potential for Kin to overburden the Ethereum network if it was used as intended," as referenced in Kik's Answer to paragraph 136 of the Complaint.

56.     All documents memorializing, evidencing, or concerning the allegation that "shortly after the TDE, Kin purchasers could earn and spend Kin within Kik on the Ethereum blockchain," as alleged in Kik's Answer to paragraph 140 of the Complaint.

57.     All documents concerning Kik's denial of the SEC's allegation that, as of September 26, 2017, "no company or person – not even Kik – had told the public about any good or service that it would sell in exchange for Kin," as alleged in paragraph 126 of the Complaint.

58.     All documents concerning Kik's denial of the SEC's allegation that "[t]here was, simply, nothing to purchase with Kin at the times Kik sold the tokens through September 26, 2017, or even when Kik distributed the tokens on that date," as alleged in paragraph 126 of the Complaint.

59.     All documents concerning Kik's denial of the SEC's allegation that "when Kik distributed Kin on September 26, 2017, none of the 'use case' examples suggested by the white paper were available," as alleged in paragraph 132 of the Complaint.

60.     All documents memorializing, evidencing, or concerning Kik's allegation that "roughly 20 percent of the thousands of TDE purchasers linked their wallets to their Kik accounts, and participants applauded the Company for implementing Kin into Kik online," as alleged in Kik's Answer to paragraph 102 of the Complaint.

61.     All documents memorializing, evidencing, or concerning the allegation that "Kik frequently described examples of potential use cases in the months leading up to the TDE – many of which involved stickers," as alleged in Kik's Answer to paragraph 105 of the Complaint.

62.     Documents sufficient to identify all developers to whom Kik provided the "software developer kit" cited in Kik's Answer to paragraph 140 of the Complaint by or before September 26, 2017.

63.     Documents sufficient to identify all developers who purchased Kin via SAFT or otherwise.

64.     All documents concerning Kik's denial of the SEC's allegation that "Kik also expressly told investors that the Rewards Engine would not be created until after the public sale," as alleged in paragraph 147 of the Complaint.

65.     All documents concerning Kik's denial of the SEC's allegation that "on September 26, 2017, the Rewards Engine was not operational, and basic decisions about how the Rewards Engine would operate were still unresolved," as alleged in paragraph 149 of the Complaint.

66.     All documents concerning Kik's denial of the SEC's allegation that the Kin Foundation "had no operations independent from Kik, no employees, and no cash or other assets

(except for the Kin it received on September 26, 2017) to fund operations," as alleged in paragraph 154 of the Complaint.

67.     All documents concerning Kik's allegation that there were "vast differences" between the "pre-sale" and "TDE," as alleged in Kik's Answer to paragraph 159 of the Complaint.

68.     All documents memorializing, evidencing, or concerning any decision by Kik to delay the TDE, as referenced in Kik's Answer to paragraph 92 of the Complaint.

69.     All documents memorializing, evidencing, or concerning each and any instance in which "Kik executives contacted a number of TDE purchasers who had indicated an interest in purchasing large amounts of Kin," as alleged in Kik's Answer to paragraph 165 of the Complaint.

70.     All documents concerning Kik's denial of the allegation that at the time of Kik's offer and sale of Kin, that Kin did not operate on "a blockchain capable of processing transactions between buyers and sellers at the volume and speed necessary for running consumer applications," as alleged in paragraph 175 of the Complaint.

71.     All documents evidencing, memorializing, or concerning Kik's allegation that it possesses "knowledge" that "some Kin owners sold Kin, and that some sold at a price that was higher than the value as of the time of the transaction," as alleged in Kik's Answer to paragraph 182 of the Complaint.

72.     All documents concerning Kik's denial of the allegations set forth in paragraph 187 of the Complaint.

73.      Documents sufficient to identify all Kik employees who worked on the Kin Rewards Engine, as alleged in Kik's Answer to paragraph 144 of the Complaint.

74.     Documents sufficient to identifying all Kin Foundation employees, board members, officers or agents as of September 26, 2017, including documents identifying each individual's title and dates of employment.

75.     All monthly or other periodic statements from the "two Kik bank accounts" referenced in Kik's Answer to paragraph 186 of the Complaint.

76.     Documents sufficient to identify Kik's use of the proceeds of its sale of Kin via SAFT and otherwise.

77.     Documents sufficient to identify any taxes Kik paid on the proceeds of its sale of Kin via SAFT and otherwise.

78.     Documents sufficient to identify the custodian of Kik's "Ether wallet" described in Kik's Answer to paragraph 186 of the Complaint.

79.     Documents sufficient to identify the geographic location of the Ethereum blockchain nodes that processed the distribution of Kin on September 26, 2017.

80.     Documents sufficient to identify the geographic location of the Ethereum blockchain nodes that processed the "nearly $50 million in Ether received by Kik in the TDE," as referenced in Kik's Answer to paragraph 174 of the Complaint.

81.     To the extent not produced in response to the above Requests, all documents referenced in Kik's Answer to the Complaint.

82.     All transcripts, recorded testimony, verbatim notes, declarations, affidavits, or witness statements concerning the subject matter of this Action.

83.     All facts or data considered by any testifying expert.

84.     All documents memorializing, evidencing, or concerning any communication you had with any law enforcement, governmental agency or regulator relating to the facts alleged in the Complaint.

85.     To the extent not previously produced by Kik during the Investigation, all documents that were requested by the SEC's January 18, 2018 subpoena to Kik.

Dated:  August 23, 2019                    Respectfully submitted,

                                           _/s/ Stephan J. Schlegelmilch_____
                                           Stephan J. Schlegelmilch
                                           David S. Mendel
                                           Laura M. D'Allaird
                                           U.S. Securities and Exchange Commission
                                           100 F Street, N.E.
                                           Washington, DC  20549-5971
                                           202.551.4935 (Schlegelmilch)
                                           SchlegelmilchS@SEC.gov
                                           *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2019, a true and correct copy of the above document,

Plaintiff's First Request for Production of Documents to Defendant Kik Interactive Inc., was served

by email on the following:

Patrick E. Gibbs
pgibbs@cooley.com
Brett de Jarnette
bdejarnette@cooley.com
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130

Sarah Lightdale
slightdale@cooley.com
Cooley LLP
55 Hudson Yards
New York, NY 10019

Luke T. Cadigan
lcadigan@cooley.com
Cooley LLP
500 Boylston Street
Boston, MA 02116-3736

Kenneth R. Lench
kenneth.lench@kirkland.com
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793

*Attorneys for Defendant Kik Interactive Inc.*

　　　　　　　　　　　　　　 */s/ David Mendel*
　　　　　　　　　　　　　　 David S. Mendel