EXHIBIT G



November 8, 2019

Patrick Gibbs
1 650-843-5535
pgibbs@cooley.com

Stephan J. Schlegelmilch
David Mendel
Laura D'Allaird
U.S. Securities and Exchange Commission
100 F. Street, N.E.
Mail Stop 5973
Washington D.C., 20549-5973

Re:    *U.S. Securities & Exchange Commission v. Kik Interactive Inc., No. 19-cv-05244*

Counsel:

I write in response to your October 31, 2019, email regarding Request Nos. 4 and 7 (the "Requests"), which request:

> 4. All electronic mail sent and received from the Kik email account of any Kik employee, officer, director, or agent identified in Kik's Rule 26 Initial Disclosures prior to June 4, 2019 that concerns any allegations in the Complaint and/or your responses or defenses thereto.
>
> 7. All documents concerning any communications that you have had with any person concerning the Investigation and/or the allegations set forth the Complaint, or your responses or defenses thereto, prior to June 4, 2019. As examples, but without limitation, this request includes: all correspondence (including email), cover letters, subpoenas, witness statements, declarations, affidavits, memoranda, summaries, or notes, and any drafts and versions of the foregoing, sent to, or received from, any witness or potential witness.

You acknowledge that these Requests "broadly, call for Kik's production of Kik's and its employees' and agents' (including Cooley's and Kirkland's) non-privileged emails and other communication." Your Requests are disproportionate to the needs of the case and exceed the scope of discovery allowed under Federal Rule of Civil Procedure 26. Further, your purportedly "narrowed" document categories do not meaningfully limit the scope of these Requests, nor do they resolve Kik's objections to the production of these documents. Your refusal to engage in reasonable negotiations to narrow the scope of these Requests, particularly considering the extensive discovery Kik has already produced, strongly suggests that these Requests are aimed, more than anything else, at harassing and burdening Kik.

Your demand for immediate and absolute compliance with the Commission's broad discovery requests is particularly inappropriate in light of the Commission's own handling of discovery. We receive your demands at a time when Kik continues to be substantially prejudiced by your own failure to meet the most basic discovery obligations. As described in detail in Kik's October 11, 2019, letter and the parties' joint letter to the Court on October 28, 2019, the Commission refuses to provide *any* of the communications sought by Kik in its discovery requests. Despite acknowledging that it has identified communications with third parties responsive to Kik's RFPs (*See* Response to Request No. 1 at 9, 11), the Commission decided not to produce any of these communications, or even a privilege log. Further, the Commission has failed to address its deficient responses to RFP Nos. 1, 3, 9, 20, 25, 26, 27, and 31-35, which raise blanket objections without stating whether the Commission will stand on its objections, as is required by the Federal Rules. Fed. R. Civ. P. 34(b)(2)(C) (responding party must "state whether any responsive materials are being withheld on the basis of that objection"). Perhaps most troubling, over two months after receiving



November 8, 2019
Page 2

Kik's RFP's, in the more than two months the Commission has had these Requests, and more than a month after agreeing to produce certain documents, the Commission *still* has failed to provide the rest of its investigative file (RFP No. 1) or even respond to Kik's request for documents evidencing informal agreements between the SEC and any person or entity from whom the Commission gathered information in connection with its investigation (RFP No. 8).

The Commission's responses to Kik's RFA's are similarly deficient to the point of absurdity. For example, you have claimed the terms "aware" and "received" are so ambiguous that you *cannot answer* Requests 1, 6- 8, 11, 13, 15, 17, 19, 21, 23, 35, 36. Yet the Commission used these same terms repeatedly in its own RFAs (*See, e.g.*, SEC RFA Request Nos. 57-60, 69, 70, 74, 82, 97, 132, 140). The Commission also claims it lacks sufficient knowledge to admit that a current Commissioner made specific statements on the Commission's letterhead on a date certain. As you are surely aware, Rule 36(a)(4) requires you to make a reasonable inquiry and swear that you have done so. The Commission has simply ignored this discovery obligation without explanation. Likewise, the Commission refused to admit that it declined to pursue an enforcement in connection with the conduct at issue in the DAO Report, notwithstanding the DAO Report's own language to that effect. (*Compare* Response to Request No. 29 (asserting that the terms "pursue" and "enforcement action" are "vague and ambiguous"), *with* DAO Report at 1 ("The Commission has determined ***not to pursue an enforcement action*** in this matter[.]").

In addition to the Commission's refusal to meaningfully comply with its own discovery obligations, it is transparent that the Commission's relentless discovery campaign toward Kik is solely designed to harass and burden Kik. These Requests seek documents that are unquestionably irrelevant to the SEC's sole claim: whether Kik's 2017 transactions related to Kin were unregistered offerings of securities. Nor are they remotely relevant to Kik's affirmative defense, which does not relate to or involve Kik employees' discussions of *Howey* or the application of securities laws to Kin *months* after completion of the TDE, and after the Commission's investigation had already begun. Further, identifying the documents sought by your "narrowed" Requests would still require Kik to review thousands – and potentially hundreds of thousands – of communications. Kik (and several third parties) already produced tens of thousands of Kik's documents, and this additional burden is not at all proportional to the needs of the case. Moreover, the Commission's suggestion that Kik is responsible for any delay with respect to its own "mutually assured destruction" proposal is unfounded, as the Commission has repeatedly moved the target and undermined the parties' ability to have productive discovery negotiations.

Notwithstanding the Commission's one-sided approach to discovery in this case, Kik remains willing to meet and confer regarding these Requests in order to reach agreement on a reasonable scope and timeframe for producing responsive documents. To that end, we offer the following thoughts about the document categories outlined in your October 31 email.

I.      **Kik has already engaged in burdensome, voluminous discovery throughout the investigation and the litigation, and produced tens of thousands of documents regarding the TDE and the months immediately following.**

To begin, I note that your October 31 email badly mischaracterizes the events that preceded it. First, as you know, during the course of the Commission's investigation, Kik engaged in a voluminous, burdensome, and comprehensive production of documents. Kik provided the Commission with documents from over 20 custodians, spanning from June 2016 to January 2018—more than 3 months after the time when documents would be relevant to the Commission's claim. Kik ultimately produced approximately 40,000 documents, and provided additional information to the Commission through dozens of letters, presentations, and responses to written discovery requests. In setting our expedited fact discovery schedule, the Court clearly took this history into account.

Notwithstanding Kik's comprehensive production of documents and information during the Commission's investigation, the Commission has launched a barrage of overbroad and overlapping discovery requests at



November 8, 2019
Page 3

Kik, as if the Commission were starting from scratch. During this litigation, for example, Kik has provided responses to the Commission's *eighty-five* Requests for Productions ("RFP's"), including multiple productions of documents, and *one-hundred and fifty* Requests for Admission. As a further show of good faith, although several of your document requests were clearly more properly framed as either requests for admission or interrogatories, Kik did not stand on its objections to those requests, but instead Kik agreed to provide narrative responses to the Commission's RFP's in order to streamline discovery for both parties. It is disappointing that Kik's efforts in this regard have been met with indignation and vitriol from your team.

Second, with respect to both Requests, your characterization of the record as to these Requests is, again, inaccurate. Your original Requests were overbroad and vague as written, so Kik objected in multiple different formats: first, in Kik's response to these Requests, and second, in Kik's October 15, 2019 letter in response to your October 4, 2019 correspondence. On our October 17, 2019 meet-and-confer call, you agreed to narrow Request No. 4 and provide reasonable responsiveness criteria, and we agreed to confer with our client with respect to Request No. 7 to confirm whether we wished to accept your "mutually assured destruction" proposal, which is addressed below. Weeks later, you – for the first time – provided your purportedly "narrow[ed]" version of the subject matter sought by these Requests. Kik is providing this response almost exactly one week later, despite having to contend with a myriad of other discovery grievances levied by the Commission in the interim.

With this understanding, Kik is willing to continue good faith efforts to meet-and-confer regarding the scope of these Requests, but requests that the Commission reciprocate and agree to conduct itself in a professional and appropriate manner in trying to reach a mutually agreeable solution.

II. **The Commission has not meaningfully narrowed its vague and unintelligible Requests, which continue to seek information that is irrelevant and outside the scope of the Commission's initial document requests.**

The Commission's superficial "narrowing" of its Requests does not meaningfully address Kik's concerns about their overbreadth and the disproportionate burden imposed by responding. As you know, the Commission's claims rely solely on the facts and circumstances surrounding Kik's 2017 pre-sale pursuant to SAFT agreements and subsequent sale of Kin. It is well established that your claim must be established only by reference to facts available at the time of these transactions. *See Danner v. Himmelfarb*, 858 F.2d 515, 520 (9th Cir. 1988) (whether transaction is an investment contract should be "determined at the time of issuance, rather than at some subsequent time."); *Gallagher v. Roberts*, 2017 WL 1365792, at *5 (S.D. Cal. April 14, 2017) (granting motion to dismiss where complaint failed to allege an expectation of profits "at the time of the offer and sale of the alleged security").[1] Kik has already provided documents extending well past the end of the relevant time period. Moreover, each of the suggested criteria you elaborated in your October 31, 2019 email is improper and irrelevant to the Commission's claims, as set forth below.

1. **Whether Kik's offer and sale of Kin in September 2017 was an offer or sale of a security; and the *Howey* test.**

These categories of documents are improper as the Commission is effectively requesting *any* communication involving any of Kik's executive team – current and former – at any time before the complaint was filed, regarding the application of securities laws to Kik's sale of Kin. The Commission has not provided any justification for why such communications are relevant at all, much less for documents dated more than a *year* after the TDE was completed. The opinions of each and every employee about a legal question are

---

[1] Nor are these documents relevant to Kik's vagueness defense. Even if Kik employees' beliefs regarding whether "Kik's offer and sale of Kin in September 2017 was an offer or sale of a security" or "the *Howey* test" were relevant to the issue of whether the term "investment contract" was vague as applied to Kik (they are not), they are *certainly* not relevant months after the TDE had already been completed, and after the Commission's investigation had already begun.



November 8, 2019
Page 4

wholly irrelevant to whether Kik's sale of Kin was in fact an offering of securities, which as you know, is a strict-liability offense. If such communications exist, they are unquestionably irrelevant after the events at issue in the complaint took place. Kik already provided non-privileged communications related to this subject matter extending through January 2018, well past the period during which they would be arguably relevant. Moreover, to identify these documents, Kik would need to collect thousands of documents and apply broad, far-reaching search terms such as "securities" or "*Howey*," which would necessarily implicate mostly privileged communication with Kik's attorneys. As such, this burden required to undertake this review is not proportional to the needs of the case or the relevance of the documents sought.

Kik will not produce documents in response to this Request unless you clarify and narrow your position within the bounds of your originally asserted Requests and limit its scope to information relevant to the claims at issue in this matter.

2. **The testimony of any witness identified on Kik's amended Rule 26(a) initial disclosures.**

As a preliminary matter, this effectively is an entirely new category that was not part of either of the Commission's original Requests. Given that the deadline for such written requests has passed, this expansion of discovery is inappropriate and Kik is not obligated to respond to an informal request not made by a Request for Production of Documents.

In addition to being procedurally improper, this Request is vague and incoherent. For example, it is unclear what your use of the term "testimony" refers to: are you seeking documents related to the *investigative* or *trial* testimony of Kik employees? As you know, the SEC is the only party that has taken "testimony" in this matter. And if you are seeking documents *relating* to the investigative or trial testimony of Kik employees, to the extent these documents exist, they are likely privileged and not subject to discovery in any event.

Kik will not produce documents in response to this Request unless you clarify and narrow your position within the bounds of your originally asserted Requests and limit its scope to information relevant to the claims at issue in this matter.

3. **Steps or actions Kik did, would, or could take to increase the demand for Kin.**

As with the previous category, this is an entirely new request styled as a "narrowing" of your previous Requests, which the Commission was required to assert via a formal Request for a Production of Documents. This discovery request is inappropriate and Kik is not obligated to respond.

Again, even ignoring the belated and improper nature of this Request, it seeks discovery that is irrelevant to the Commission's claims and not proportional to the needs of the case. As stated previously, any of Kik's purported "steps or actions" to increase demand for Kin that occurred *after* the TDE (even assuming such steps or actions were contemplated or occurred) are irrelevant to the issue of whether the TDE was an investment contract as a matter of law. As stated above, this issue is determined solely based on what Kik *offered or promised* to TDE participants.

This Request is also incoherent and unintelligible. Kik cannot reasonably ascertain the meaning of "steps or actions" that Kik "would, or could take." Kik's business model with respect to Kin has been abundantly clear to the Commission and the public at large since its very first public announcement. The nature of the documents sought by this newly-asserted Request are entirely unclear, and therefore Kik is unable to respond.

Kik will not consider this Request unless you clarify and narrow your position within the bounds of your originally asserted Requests and limit its scope to information relevant to the claims at issue in this matter. If you refuse to do so, Kik will not consider this Request any further.


    **4.    Discussions with or regarding any purchaser of Kin concerning the reason for such purchaser's decision to purchase Kin, the price of Kin, plans or efforts to sell Kin, or plans or efforts to profit from Kin.**

As with the previous two categories, this is an entirely new request styled as a "narrowing" of your previous Requests, which the Commission was required to assert via a formal Request for a Production of Documents. This discovery request is inappropriate and Kik is not obligated to respond.

Again, moreover, this Request is vague, incoherent, and overbroad. For example, as written, this request seeks information related to "any purchaser of Kin," irrespective of whether that purchaser participated in the TDE. As you know, purchases after the TDE, including on the secondary market through exchanges, have no relationship whatsoever to the issue of whether the 2017 TDE was an investment contract. Moreover, Kik has no reasonable means of identifying communications with such purchasers and would have no information related to their reason for purchasing Kin tokens. And even to the extent this Request seeks information related to TDE purchasers, these individuals' intentions with respect to purchasing, selling, or profiting from Kin have no bearing on whether Kik "offered or promised" an arrangement resembling an "investment contract." Nor would any discussions between Kik employees and a purchaser of Kin about the price of Kin, which is exceedingly broad and untethered to the claims at issue in this case.

Kik will not consider this Request unless you clarify and narrow your position within the bounds of your originally asserted Requests and limit its scope to information relevant to the claims at issue in this matter.

### III. The Commission's rendition of its purported "mutually assured destruction" proposal has been inconsistent and unclear, and its current version is absurd, self-serving, and improper.

I also write to clarify the record of the parties' meet and confer discussions regarding the proposal you referred to as "mutually assured destruction." Since July of this year, the Commission has repeatedly moved the target, and has continually misrepresented and altered the terms of its proposal. In July 2019, on its own accord, the Commission proposed a "mutually assured destruction" arrangement in which both parties would agree *not* to require the production of communications with third parties relating to the subject matter of the investigation, in the period before the Complaint was filed. (In so doing, you made clear that, for communications with third parties after the Complaint was filed, the Commission would consider all such communications to be protected work product and that the Commission would never willingly agree to produce such communications.). As you know, the parties agreed to revisit your proposal after the scope of discovery had been developed by the parties. Then, without consulting Kik, the Commission served Request No. 7 (along with 84 other document requests), seeking documents that would be subject to this proposal. With the understanding that our discussion of this proposal was ongoing, Kik therefore propounded a similar request on the Commission in order to place the parties on an equal footing.

On the parties' October 17, 2019 meet-and-confer call, you were indignant at Kik's reciprocal request for communications with third parties. As we explained on that call, our request was necessary to establish a critical aspect of your "mutually assured destruction" arrangement – that the destruction be "mutually assured." We offered to continue meeting and conferring about the arrangement. During that discussion, you informed us for the first time that you expected this proposal to apply to the SEC's written communications with the Ontario Securities Commission ("OSC"), so that Kik's agreement to the proposal would foreclose any further discovery into those communications, and that even without a "mutually assured destruction" arrangement, you would not agree to produce any communications with the OSC. As this was not our understanding of the proposal you had made back in July, we told you that we needed time to confer with our client as to whether this newly framed proposal was acceptable, along with a number of other document requests the Commission propounded. Without waiting for Kik's response, however, you sent a letter on October 31, 2019, suggesting that you could unilaterally bind Kik to your preferred terms with respect to the production of these documents. The next day, Kik agreed to the Commission's mutually assured destruction proposal (as it had been revised on the parties' October 17, 2019, meet-and-confer



November 8, 2019
Page 6

call), meaning that *neither party* would produce any of its pre-complaint communications with third parties regarding the subject matter of the investigation or complaint.

At that point, we understood the parties were in agreement on this issue, but on November 4, 2019, you *again* unilaterally changed the terms of your proposal by limiting it (for the first time) to communications between counsel for the parties, on the one hand, and third party witnesses, on the other hand. But as modified, the proposal is absurd: given that a majority of the SEC Staff is comprised of lawyers, or various agents acting on their behalf, the proposal amounts to saying the Commission will produce nothing, while Kik would have to review tens of thousands of emails covering a roughly eighteen month period in order to identify and potentially produce communications between non-lawyer employees or representatives of Kik and third parties. Kik would never have seriously considered such a one-sided proposal, and Kik does not accept it now. (To be clear, however, this does not mean that Kik agrees to produce these documents, as the Commission's requests for them are objectionable on many other grounds.) But in any event, your attempt to blame Kik for the delay in resolving this matter is unfounded.

The parties will likely continue to disagree about the events leading to the present disputes. Nonetheless, Kik continues to believe that these issues can be resolved without the Court's intervention. If the Commission would like to meet and confer on these matters, please let us know so we can schedule a time to discuss.

Sincerely,

Cooley LLP

Patrick Gibbs

cc: Kenneth Lench (kenneth.lench@kirkland.com)