**EXHIBIT B**

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, </br></br> Plaintiff, </br></br> v. </br></br> KIK INTERACTIVE INC., </br></br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 1:19-cv-05244

## AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION

To:   See Attached Certificate of Service

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff Securities and Exchange Commission ("SEC") will take the deposition upon oral examination of one or more officers, directors, agents, or other persons who shall be designated to testify on behalf of Defendant Kik Interactive Inc. ("Kik") regarding all information known or reasonably available to Kik with respect to the topics identified in Exhibit A. The deposition will take place on Wednesday, January 15, 2020 at 9:00 a.m. at the SEC's offices, located at 100 F Street, N.E., Washington, DC 20549, or at such other time or location agreed to by the parties. The deposition will be recorded by a stenographer and videographer, and will continue from day to day until completed.

Dated: December 8, 2019                    Respectfully submitted,

                                          _/s/ Stephan J. Schlegelmilch_
                                          Stephan J. Schlegelmilch
                                          Attorney for Plaintiff
                                          U.S. SECURITIES & EXCHANGE COMMISSION

# EXHIBIT A

This Amended Notice incorporates by reference the definitions set forth in Plaintiff SEC's First Request for Admission to Defendant Kik.

## TOPICS

1. Kik's corporate structure, ownership and offices between January 1, 2017 and the present.

2. Kik's current financial condition and operations.

3. Kik's plan for the Kin token offering, including:

    a. Kik's plan for the use of the Kin token offering proceeds;

    b. Kik's planned time frame for the Kin token offering, including the timing of any sales of Kin to the public, and any changes to this time frame and reasons therefore.

4. Kik's announcement and marketing of Kin to potential purchasers, including Kik's knowledge of the dissemination of video recordings relating to Kin on the internet, either by Kik or third parties.

5. Public statements and presentations by Kik executives, employees, representatives and/or agents relating the Kin token offering, including, but not limited to:

    a. All statements made by Kik executives, employees, representatives and/or agents on social media relating to Kin, including, but not limited to, Twitter, Slack, and Medium;

    b. Statements of persons including Kik CEO Edward Livingston at the "Token Summit" in New York, New York on May 25, 2017. (*See* recording produced at SEC-KIK-LIT-E-0000333; transcripts produced at SEC-KIK-LIT-E-0000181 to SEC-KIK-LIT-E-0000189, and SEC-KIK-LIT-E-0000260);

    c. Statements of persons including Kik CEO Edward Livingston and Kik board member Fred Wilson in a video recording made publicly available on the website AVC.com as of May 27, 2017.  (*See* recording produced at SEC-KIK-LIT-E-0000339; transcript produced at SEC-KIK-LIT-E-0000248 to SEC-KIK-LIT-E-0000253, and SEC-KIK-LIT-E-0000269);

    d. Statements of persons including Kik CEO Edward Livingston at "TechCrunch Shenzen" in the People's Republic of China on June 20, 2017.  (*See* recording produced at SEC-KIK-LIT-E-0000305; transcripts produced at SEC-KIK-LIT-E-000031 to SEC-KIK-LIT-E-0000044, and KIK-LIT-E-0000264);

    e. Statements of persons including Kik CEO Edward Livingston at the "San

        Francisco Bitcoin Meetup" in San Francisco, California, on June 27, 2017. (*See* recording produced at SEC-KIK-LIT-E-0000277; transcripts produced at SEC-KIK-LIT-E-0000133 to SEC-KIK-LIT-E-0000162, and SEC-KIK-LIT-E-0000254);

   f. Statements of persons including Kik CEO Edward Livingston on the "Finance Magnate's Blockchain Podcast" on August 1, 2017. (*See* recording produced at SEC-KIK-LIT-E-0000272; transcripts produced at SEC-KIK-LIT-E-0000119 to SEC-KIK-LIT-E-0000132, and SEC-KIK-LIT-E-0000256);

   g. Statements of persons including Kik CEO Edward Livingston and an individual named William Mougayar at the "Fintech Canada Bitcoin Ethereum Summit," on August 14, 2017. (*See* recording produced at SEC-KIK-LIT-E-0000275; transcripts produced at SEC-KIK-LIT-E-0000077 to SEC-KIK-LIT-E-0000090, and SEC-KIK-LIT-E-0000258);

   h. Statements of persons including Kik CEO Edward Livingston at a public gathering sponsored by Spotify called the "Ethereum NYC Meetup" on September 7, 2017. (*See* recording produced by the SEC to Kik in this Action at SEC-KIK-LIT-E-0002353 and in the electronic Web Capture folder "HO-13388 233083 07-03-19," as listed in the Addendum to SEC August 16, 2019 Index of Produced Documents: List of Web Captures; transcripts produced at SEC-KIK-LIT-E-0002275 to SEC-KIK-LIT-E-0002310);

   i. Statements of persons including Kik CEO Edward Livingston during an interview on CNBC on or about May 25, 2017. (*See* recording produced by the SEC to Kik in this Action at SEC-KIK-LIT-E-0002351; transcripts produced at SEC-KIK-LIT-E-0002269 to SEC-KIK-LIT-E-0002274);

   j. Any statements by Kik or Kik executives, employees, representatives and/or agents that Kin would be available on digital asset exchanges, including any such statements on social media;

   k. Any statements by Kik or Kik executives, employees, representatives and/or agents "that Kin would be integrated with the use of stickers" as stated in Kik's Answer to Paragraph 132 of the Complaint; and

   l. Whether Kik made public statements on or before September 26, 2017, about goods or services that it would sell in exchange for Kin, and the content of any such public statements.

6. Kik's consideration of whether the offer and sale of Kin was an offer and sale of an investment contract under the federal securities laws, including:

   a. Kik and Kik executives' review of the DAO Report;

   b. Kik executive and employee communications with the Ontario Securities Commission relating to whether the offer and sale of Kin was an offer and sale of an investment contract; and

  c. Kik's efforts, if any, to contact the SEC about Kin on or before September 26, 2017.

7. Kik's efforts to enter into SAFTs, including the dates and terms of the SAFTs, including the ability of purchasers to cancel and/or withdraw from the SAFTs.

8. Details and circumstances of the development of the "Minimum Viable Product" ("MVP") of Kin as referred to in Kik's Answer to Paragraph 100 of the Complaint, including:

  a. Kik's marketing of the MVP before sales of Kin to the public; and

  b. The status of the MVP as of September 12, 2017.

9. The details of Kik's public sale of Kin in September 2017, and Kik's efforts during the public sale, including:

  a. Kik's disclosures about Kin to potential purchasers and/or purchasers;

  b. Kik's sales, including but not limited to the terms of the sales, and the consideration paid by purchasers;

  c. Kik's structure of the public sale, including, but not limited to, multiple rounds of sales, as well as caps on purchase amounts;

10. The delivery and allocation of Kin tokens to SAFT participants, public sale purchasers, Kik, the Kin Foundation, and/or any other individual or entity in September 2017.

11. Kik's planned and actual use of the Kin token offering proceeds, including, but not limited to:

  a. Bank accounts, digital wallets, or any other location where Kik kept or maintained the Kin token offering proceeds;

  b. Kik's plan for the use of the proceeds;

  c. Kik's actual use of the proceeds; and

  d. Kik's public statements prior to the public sale in September 2017 about how it would use the Kin token offering proceeds.

12. The development, creation and operation of the Kin Ecosystem, including, but not limited to, the following:

  a. Attributes of the Kin Ecosystem that existed as of May 25, 2017;

  b. All the ways in which "Kin's fundamental utility as a digital currency existed on the date of the TDE" and how "Kin owners could use Kin for peer-to-peer

    transactions" as of September 26, 2017, as stated in Kik's Answer to Paragraph 16 of the Complaint;

  c. All the ways in which "Kin was integrated into Kik Messenger" at the time of the public sale in September 2017, as stated in Kik's Answer to Paragraphs 132 and 140 of the Complaint;

  d. All the ways in which "the Kin economy existed," and "the Kin economy was functional" as of the date of the September 26, 2017 distribution as stated in Kik's Answers to Paragraphs 61, 126, 132, 140, 175 of the Complaint;

  e. Kik's knowledge of goods or services that could be purchased in exchange for Kin as of September 26, 2017;

  f. The availability of any "use cases" described in Kik's white paper as of September 26, 2017;

  g. Whether and the extent to which Kik had enabled Kin transactions among users of Kik Messenger on the Ethereum blockchain, as of September 26, 2017;

  h. Kik's awareness of commercial developers who engaged in Kin transactions on the Ethereum blockchain as of September 26, 2017;

  i. The extent to which the Kin Rewards Engine was operational on September 26, 2017;

  j. Kik's plans for the future development of the Kin Rewards Engine as of September 26, 2017;

  k. All developers to whom Kik provided a "software developer kit" before the September 26, 2017 distribution, and all instances of a developer using, or trying to use, the software developer kit as of September 26, 2017, as referred to in Kik's Answer to Paragraph 140 of the Complaint; and

  l. The operability of Kin on the Ethereum blockchain as of September 26, 2017.

13. The topics covered by your letter dated November 17, 2017;

14. The topics covered by the stipulation dated November 12, 2019;

15. The topics covered by your letter dated November 4, 2019;

16. Kik's responses to the SEC's Requests for Admission Nos. 51, 77, 86, 99, 107, 109-114, 117-129, 132-136, 144-148; and

17. Testimony Exhibit 206.

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2019, true and correct copies of the foregoing were served by email on the following:

Patrick E. Gibbs
pgibbs@cooley.com
Brett de Jarnette
bdejarnette@cooley.com
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130

Luke T. Cadigan
lcadigan@cooley.com
Cooley LLP
500 Boylston Street
Boston, MA 02116-3736

Kenneth R. Lench
kenneth.lench@kirkland.com
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005-5793

*Attorneys for Defendant Kik Interactive Inc.*

                                                 */s/ Stephan J. Schlegelmilch*
                                                  Counsel to Plaintiff