**EXHIBIT C**



Patrick E. Gibbs
+1 650 843 5535
pgibbs@cooley.com

December 18, 2019

**VIA EMAIL**

Stephan Schlegelmilch
U.S. Securities and Exchange Commission
100 F Street, N.E.
Mail Stop 5977
Washington D.C., 20549-5973

**Re:  U.S. Securities and Exchange Commission v. Kik Interactive, Inc., No. 19-cv-05244**

Dear Stephan:

This letter follows our letter of November 27, 2019 regarding the U.S. Securities and Exchange Commission's ("SEC") 30(b)(6) deposition notice (the "Notice") to Kik Interactive, Inc. ("Kik"), your email response dated December 8, 2019 attaching an amended 30(b)(6) notice (the "Amended Notice"), and our phone conversation on December 11, 2019.

First, as I said on the December 11 call, Kik is not refusing to appear for a 30(b)(6) deposition.  Kik is willing to prepare and present a witness to testify under Rule 30(b)(6), but only in response to topics complying with Rule 30(b)(6).  As discussed below, the topics in your Amended Notice still do not comply with the Rule.  If you are willing to clarify and narrow the topics in the Amended Notice such that Kik could reasonably prepare a witness to testify to them, however, Kik will present a witness for a 30(b)(6) deposition.  Relatedly, your December 8 email says that the email is "one final effort" to resolve the parties' impasse, and on our December 11 call, you expressed a concern about Kik "moving the goalposts."  But ever since our very first meet and confer call on this subject (which preceded your December 8 email), Kik has consistently noted its concerns about the scope, breadth, and lack of specificity in the SEC's proposed Rule 30(b)(6) topics.  It has not "moved the goalposts" at all.  Moreover, your December 8 email marks the first time the SEC has agreed even to consider revising any of the topics identified in the original Notice.  That concession comes nearly three weeks after the parties' meet and confer call on this same topic, and ten days after Kik sent you a proposed joint letter to the Court.

Turning to the substance of the topics in the Amended Notice, Kik still has many of the same concerns it has raised repeatedly about the cumulative and sweeping nature of the topics, which prevents Kik from reasonably preparing a witness to testify.

First, as we discussed on the call on December 11, the Amended Notice renumbers and combines dozens of subtopics, but fails to meaningfully narrow their scope or provide any additional specificity to address the concerns Kik raised with respect to the initial Notice.  While you have eliminated certain topics, the vast majority of your changes involved simply deleting enumerated sub-topics which by their own terms were not exhaustive (*i.e.*, "including but not limited to"), without eliminating the umbrella topic.  This is the case for Amended Topic Nos. 3, 5, 6, 7, 8, 9, 11, and 12.

Second, your Amended Notice does not address Kik's concerns about the overbreadth of several topics.  For example, Amended Topic 1 still refers to "Kik's corporate structure, ownership, and offices between January 1, 2017 and the present."  It is unclear what information is being sought, as each of these terms encompasses a wide range of potential inquiry.  Under that general topic, for example, you might ask



Stephan Schlegelmilch
December 18, 2019
Page Two

questions about the duties and responsibilities of employees and the executive team, or you might ask about investors and amounts of investment in specific rounds of financing, or you might ask the witness to identify every office Kik maintained during that period, where it was located, how many people worked there at various points in time, which employees worked there, when the location opened, when it closed, etc. This isn't even an exhaustive list, but it illustrates why it would be impossible for Kik to prepare an individual to testify about all of the potential questions you might choose to ask under this general topic.  Surely, by now, you have a list of specific facts you think you need to know about Kik's corporate structure, Kik's ownership, or its offices from January 1, 2017 to the present.  Most of those facts, I suspect, would be more easily provided in writing, rather than through testimony, but in any event, without knowing what those questions are, it is not feasible for us to prepare a person to answer all of the potential questions you might ask.  *See Murphy v. Kmart Corp.*, 255 F.R.D. 497, 505-06 (D.S.D. 2009) (finding that topics of "the corporate history or four corporate entities [and] the corporate relationship between these entities" covered a "tremendous amount of information" and ordering noticing party to amend notice to reasonably narrow or clarify the lines of inquiry); *see also Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019) (explaining that topics must be stated with enough specificity to allow the corporation to designate and prepare a representative to testify).

The same is true for the other Amended Topics to which you made no change other than renumbering the topic and its subparts.  Questioning under Amended Topic 2, "Kik's current financial condition and operations," could potentially cover every possible business transaction and event that falls under "operations."  Moreover, the temporal scope of this topic is impermissible, as Kik's financial conditions and operations in 2019 and 2020 (when you propose the deposition take place) are not relevant to whether its 2017 sales of Kin tokens were sales of securities.  *See Edwards*, 331 F.R.D. at 122 (striking 30(b)(6) topics about company policies before the specific relevant time period).  Amended Topic 4 now seeks testimony about "Kik's knowledge of the dissemination of video recordings relating to Kin on the internet, either by Kik or third parties."  As drafted, this would require Kik's witness to interview potentially dozens of former employees about any awareness of any video that even mentions Kin, and is available anywhere on the internet, regardless of who created the video, where it is posted, or when it was created.  If you seek to understand whether certain key decision makers or executives at Kik were aware of particular videos or recordings about the sale of Kin before the SAFT or public sale, Kik would be much better able to prepare its witness if you identified the videos or statements and whose knowledge or awareness you seek.  And again, these topics may be more easily provided by written stipulation, furthering Rule 30(b)(6)'s purpose of streamlining discovery.  *See Edwards*, 331 F.R.D. at 121.

The references to certain documents, transcripts, and videos that you added to Amended Topic 5 do not solve the problem with the original topic: this Amended Topic 5 purports to seek Kik's testimony about *all* "public statements and presentations by Kik executives, employees, representatives and/or agents[.]"  There is simply no way that Kik can reasonably prepare a witness to testify to the range of statements of every Kik executive or employee made on a litany of social-media sites (personal or otherwise) or at any number of conferences and events.

Amended Topic 6 continues to seek largely privileged material that is cumulative of prior discovery.  The umbrella topic of "Kik's consideration of whether the offer and sale of Kin was an offer and sale of an investment contract under the federal securities laws" contemplates questions about legal analysis by Kik and legal advice it received from inside and outside counsel.  The subtopics open the door to questions about potentially every employee at Kik who read the DAO Report and what his or her interpretation was (regardless of relevance), legal analysis about implications of the DAO Report, privileged discussions about contacting the Ontario Securities Commission ("OSC"), preparing for meeting with the OSC with Canadian and US counsel, and discussions during and after the OSC meeting and subsequent conversations with the OSC.  Even beyond the privilege concerns this topic raises, the SEC has now deposed every Kik



Stephan Schlegelmilch
December 18, 2019
Page Three

representative at the meeting with the OSC, an OSC official, and Kik's outside Canadian counsel.  As you know, the SEC also obtained testimony from Kik's in-house counsel during the investigation and canceled an additional deposition of Kik's outside US counsel earlier this year.  A Rule 30(b)(6) notice is intended to streamline discovery; it is not a vehicle to seek an additional deposition of a percipient witness or as a catch-all to reexamine the universe of information already produced.  *See Edwards*, 331 F.R.D. at 121.

In another example, Amended Topic 9 refers to "Kik's efforts during the public sale." Although you list three general subtopics, "Kik's efforts" is vague and overbroad and could conceivably encompass any work undertaken by any Kik employee, consultant, or board member over the course of many months in 2017.  You could ask about Kik's efforts to promote the public sale, Kik's efforts to develop the minimum viable product, Kik's efforts to grow the messenger, Kik's efforts to ensure pre-sale purchasers complied with the SAFT terms, and innumerable other topics that would potentially fall under this category.

Under the current Amended Topic 10 ("The delivery and allocation of Kin tokens to SAFT participants, public sale purchasers, Kik, the Kin Foundation, and/or any other individual or entity in September 2017"), you could ask technical questions about how any specific pre-sale or public-sale purchaser received Kin, how the board and executive team decided to allocate Kin to Kik or the Foundation, or the technical mechanics of doing so.  Preparing for such a broad potential range and detail of questioning would likely involve participation across a range of people with different expertise and involvement at Kik.  Similarly, under the Amended Topic 11, you theoretically could ask about *any* statement before September 2017 made by a Kik employee, executive, board member, or representative about the possible future use of Kin token offering proceeds; or you could ask for accounting-level detail about how the proceeds have been allocated and used since September 2017.  We continue to believe these topics are improper because you have had ample opportunity to obtain the information through Kik's written documents and prior depositions.  *See Edwards*, 331 F.R.D. at 122 (limiting 30(b)(6) topics where plaintiff already had copies of relevant documents and deposed the percipient witnesses).  However, at the very least, we cannot reasonably prepare a witness to testify about this "tremendous amount of information" without further specificity from the SEC.  *See Murphy*, 255 F.R.D. at 505-06.  As we have told you previously, Kik is willing to consider verifying or adopting certain statements of company executives if the SEC identifies specific statements from testimony or public statements for Kik to consider.

We are further concerned with the entirely new topics you added now numbered 13-17:

13. The topics covered by your letter dated November 17, 2017;
14. The topics covered by the stipulation dated November 12, 2019;
15. The topics covered by your letter dated November 4, 2019;
16. Kik's responses to the SEC's Requests for Admission Nos. 51, 77, 86, 99, 107, 109-114, 117-129, 132-136, 144-148; and
17. Testimony Exhibit 206.

Kik is aware of no legal basis for the SEC to *add* topics to an existing deposition notice weeks after it has been served.  But setting that aside, these additional topics encompass dozens of *additional subtopics* that are cumulative and duplicative of prior discovery, and essentially are seeking discovery about Kik's discovery responses.  What is more, many of the original subtopics you purport to have omitted from the original Notice are now captured by the sweeping categories included in Amended Topics 13-17.

On their face, these new topics request "discovery about discovery" in that they seek testimony about letters drafted by counsel, Kik's responses to the SEC's requests for production of documents, Kik's responses to Requests for Admission, and stipulations entered into by the parties.  This "discovery about discovery" is appropriate only where a party's efforts to comply with discovery are reasonably called into question.



Stephan Schlegelmilch
December 18, 2019
Page Four

*See Edwards*, 331 F.R.D. at 126 (prohibiting 30(b)(6) deposition about defendant's discovery responses as "irrelevant and not important to resolve the case" and because "the burden of requiring defendant to prepare a witness to testify about these matters outweighs the likely benefit"). There is no such question here that would require Kik to prepare a corporate representative to testify about the company's responses to discovery.

Additionally, these new topics have the same problems that we raised about the original Notice. They do not describe with reasonable particularity the matters for examination, and do not give Kik notice of the actual likely areas of inquiry so it can adequately prepare. *See* Fed. R. Civ. P. 30(b)(6); *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010). Topic 13 alone references Kik's responses to the SEC's Requests for Admission and accordingly includes testimony about 30 distinct categories. Amended Topic 15 now calls for testimony concerning Kik's responses to 11 requests for production of documents covering many distinct facts and topics. And perhaps most egregious of all is Amended Topic 17, which calls for unspecified testimony on any topic covered in "Testimony Exhibit 206"—Kik's responses to more than 80 Requests for Admission during the investigation. Among the subject areas in that document alone about which the SEC is now seeking 30(b)(6) testimony are: the documents you purport to omit from Topic 9 in the original Notice; Kik's sale of Kin during the public sale; Kik's screening, KYC, and AML processes for purchasers; Kik's sale of SAFTs from June to September 2017; Kik's use of revenue from the public sale; the banks in which Kik deposited that revenue; and the structure and conduct of the Kin Ecosystem Foundation. Again, this list is not exhaustive, and you already have Kik's sworn responses to these topics. By including "Testimony Exhibit 206" as an Amended Topic, the SEC has superficially cut certain topics from the Amended Notice, apparently to make the Notice seem more reasonable, without actually narrowing the substantive scope of the Notice. That approach is not productive or conducive to resolving this dispute.

This letter in no way exhausts the deficiencies in the topics now listed in the Amended Notice, but is intended only to highlight the most concerning topics and illustrate how we believe they continue to be overbroad, irrelevant, and cumulative, as described above. Kik reserves all rights to continue to object to specific topics and questions not identified in this letter and to seek a protective order from the Court if the parties are not able to reach an agreement. Notwithstanding Kik's objections, we are prepared to continue to negotiate in good faith about Rule 30(b)(6) topics that are not duplicative of prior testimony and identified with reasonable particularity. We are hopeful we can resolve this without requiring the Court's intervention, but cannot do so unless the SEC is prepared to significantly narrow the scope of its deposition topics.

Sincerely,

/s/ *Patrick Gibbs*
Patrick Gibbs