**EXHIBIT E**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>KIK INTERACTIVE INC., )<br><br>Defendant. ) | Case No. 1:19-cv-05244 |

**AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION**

To:  See Attached Certificate of Service

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff Securities and Exchange Commission ("SEC") will take the deposition upon oral examination of one or more officers, directors, agents, or other persons who shall be designated to testify on behalf of Defendant Kik Interactive Inc. ("Kik") regarding all information known or reasonably available to Kik with respect to the topics identified in Exhibit A. The deposition will take place on ~~Tuesday, November 26, 2019~~Wednesday, January 15, 2020 at 9:00 a.m. at the SEC's offices, located at 100 F Street, N.E., Washington, DC 20549, or at such other time or location agreed to by the parties. The deposition will be recorded by a stenographer and videographer, and will continue from day to day until completed.


Dated: ~~October 25~~December 8, 2019                                    Respectfully submitted,


                                                                /s/ ~~Laura K. D'Allaird~~ Stephan J. Schlegelmilch
                                                                ~~Laura K. D'Allaird~~
                                                                Stephan J. Schlegelmilch
                                                                Attorney for Plaintiff
                                                                U.S. SECURITIES & EXCHANGE COMMISSION

## EXHIBIT A

This Amended Notice incorporates by reference the definitions set forth in Plaintiff SEC's First Request for Admission to Defendant Kik.

## TOPICS

1. Kik's corporate structure, ownership and offices between January 1, 2017 and the present.

2. Kik's current financial condition and operations.

3. ~~The performance of Kik since January 1, 2015, including, but not limited to:~~

    a. ~~Kik's financial performance;~~

    b. ~~The performance of Kik Messenger, including, but not limited to, Kik Messenger's user base;~~

    c. ~~Any efforts to monetize Kik Messenger;~~

    d. ~~Any efforts to sell Kik; and~~

    e. ~~Projections relating to Kik's financial "runway" or the amount of time before which Kik would run out of funds.~~

4. ~~Kik's reasons for deciding to create and offer Kin.~~

~~5.~~3. Kik's plan for the Kin token offering, including ~~but not limited to~~:

    a. ~~Kik's conduct of market research, including hiring of consultants and deliverables;~~

    b. ~~Kik's understanding of market conditions for initial coin offerings from January 1, 2017 through September 26, 2017;~~

    c. ~~Consideration of plans relating to the Kin token offering by the Kik Board of Directors;~~

    d. ~~Kik's planned structure of the Kin token offering, including, but not limited to, Kin tokens sold pursuant to SAFTs and Kin sold directly to the public;~~

    e. ~~Kik's plans for allocating the Kin it created;~~

    f. ~~The amount of funds Kik targeted to raise from the Kin token offering;~~

    ~~g.~~a. Kik's plan for the use of the Kin token offering proceeds;

~~h.~~b. Kik's planned time frame for the Kin token offering, including~~, but not limited to,~~ the timing of any sales of Kin to the public, and any changes to this time frame and reasons therefore~~; and~~.

~~i.   The drafting of any registration statements or other materials to be filed with the U.S. Securities and Exchange Commission in relation to the Kin token offering.~~

~~6.   Kik's announcement and marketing of Kin to potential purchasers, including, but not limited to:~~

~~a.   Kik's plans to market Kin;~~

~~b.   Kik's "communication strategy" as referred to in Kik's Answer to Paragraph 59 of the Complaint;~~

~~c.   Any "roadshow" or other effort that involved promoting the awareness of Kin in different geographic locations, including Kik's "Participant Roadshow" as referred to referred to in Kik's Answer to Paragraph 59 of the Complaint;~~

~~d.   Kik's May 25, 2017 announcement of Kin; and~~

~~e.~~4.   Kik's knowledge of the dissemination of video recordings relating to Kin on the internet, either by Kik or third parties.

~~7.   Roles played by Kik employees in the Kin token offering, including but not limited to, Kik CEO Edward Livingston.~~

~~8.~~5.   Public statements and presentations by Kik executives, employees, representatives and/or agents relating the Kin token offering, including, but not limited to:

   a.   All statements made by Kik executives, employees, representatives and/or agents on social media relating to Kin, including, but not limited to, Twitter, Slack, and Medium;

   b.   Statements of persons including Kik CEO Edward Livingston at the "Token Summit" in New York, New York on May 25, 2017. (*See* recording produced at SEC-KIK-LIT-E-0000333; transcripts produced at SEC-KIK-LIT-E-0000181 to SEC-KIK-LIT-E-0000189, and SEC-KIK-LIT-E-0000260);

   c.   Statements of persons including Kik CEO Edward Livingston and Kik board member Fred Wilson in a video recording made publicly available on the website AVC.com as of May 27, 2017.  (*See* recording produced at SEC-KIK-LIT-E-0000339; transcript produced at SEC-KIK-LIT-E-0000248 to SEC-KIK-LIT-E-0000253, and SEC-KIK-LIT-E-0000269);

   d.   Statements of persons including Kik CEO Edward Livingston at "TechCrunch Shenzen" in the People's Republic of China on June 20, 2017.  (*See* recording produced at SEC-KIK-LIT-E-0000305; transcripts produced at SEC-KIK-LIT-E-000031 to SEC-KIK-LIT-E-0000044, and KIK-LIT-E-0000264);

e. Statements of persons including Kik CEO Edward Livingston at the "San Francisco Bitcoin Meetup" in San Francisco, California, on June 27, 2017. (*See* recording produced at SEC-KIK-LIT-E-0000277; transcripts produced at SEC-KIK-LIT-E-0000133 to SEC-KIK-LIT-E-0000162, and SEC-KIK-LIT-E-0000254);

f. Statements of persons including Kik CEO Edward Livingston on the "Finance Magnate's Blockchain Podcast" on August 1, 2017. (*See* recording produced at SEC-KIK-LIT-E-0000272; transcripts produced at SEC-KIK-LIT-E-0000119 to SEC-KIK-LIT-E-0000132, and SEC-KIK-LIT-E-0000256);

g. Statements of persons including Kik CEO Edward Livingston and an individual named William Mougayar at the "Fintech Canada Bitcoin Ethereum Summit," on August 14, 2017. (*See* recording produced at SEC-KIK-LIT-E-0000275; transcripts produced at SEC-KIK-LIT-E-0000077 to SEC-KIK-LIT-E-0000090, and SEC-KIK-LIT-E-0000258);

h. Statements of persons including Kik CEO Edward Livingston at a public gathering sponsored by Spotify called the "Ethereum NYC Meetup" on September 7, 2017. (*See* recording produced by the SEC to Kik in this Action at SEC-KIK-LIT-E-0002353 and in the electronic Web Capture folder "HO-13388 233083 07-03-19," as listed in the Addendum to SEC August 16, 2019 Index of Produced Documents: List of Web Captures); transcripts produced at SEC-KIK-LIT-E-0002275 to SEC-KIK-LIT-E-0002310);

i. Statements of persons including Kik CEO Edward Livingston during an interview on CNBC on or about May 25, 2017. (*See* recording produced by the SEC to Kik in this Action at SEC-KIK-LIT-E-0002351; transcripts produced at SEC-KIK-LIT-E-0002269 to SEC-KIK-LIT-E-0002274);

j. Any statements by Kik or Kik executives, employees, representatives and/or agents that Kin would be available on digital asset exchanges, including any such statements on social media;

k. Any statements by Kik or Kik executives, employees, representatives and/or agents "that Kin would be integrated with the use of stickers" as stated in Kik's Answer to Paragraph 132 of the Complaint; and

l. Whether Kik made public statements on or before September 26, 2017, about goods or services that it would sell in exchange for Kin, and the content of any such public statements.

9. The creation, maintenance and use of the following documents, as well as any statements made therein:

a. The Kin white paper (KIK000001-28);

b. The "Frequently Asked Questions" document created by Kik (KIK0000029-36);

> ~~c. The private placement memorandum Kik provided to SAFT participants (KIK000037-65);~~
>
> ~~d. The Kin SAFT (KIK000066-72);~~
>
> ~~e. The Form D that Kik filed with the U.S. Securities and Exchange Commission on or about September 11, 2017 (KIK000073-78);~~
>
> ~~f. The "User Registration Guide" drafted by Kik for sales of Kin to the public (KIK000098-108);~~
>
> ~~g. Kik's audited financial statements for the fiscal year that ended June 30, 2016 (KIK 00007193-7229);~~
>
> ~~h. Kik's audited financial statements for the fiscal year that ended June 30, 2017 (KIK00007243-7279);~~
>
> ~~i. Kik's records of individuals and entities that entered into the SAFTs with Kik (*see* KIK001187; KIK000283);~~
>
> ~~j. Kik's records of individuals and entities who purchased Kin tokens in the public sale portion of the Kin token offering (*see* KIK001188); and~~
>
> ~~k. Any document produced by Kik in the Investigation that recorded the participants in the SAFTS and the public sale of Kin.~~

~~10.~~ ~~The details and circumstances of private meetings between Kik or Kik executives, employees, representatives and/or agents and potential public sale purchasers.~~

~~11.~~ ~~The details and circumstances of private meetings between Kik or Kik executives, employees, representatives and/or agents and persons and/or entities that might enter into SAFTs with Kik.~~

~~12.~~6. Kik's consideration of whether the offer and sale of Kin was an offer and sale of an investment contract under the federal securities laws, including ~~but not limited to~~:

> ~~a. The "substantial efforts Kik undertook to ensure compliance with the federal securities laws," and the basis on which "Kik was confident that its sale of a digital currency would not implicate the federal securities laws," as stated in Kik's Answer to Paragraph 96 of the Complaint;~~
>
> ~~b. Communications among Kik executives and employees, including, but not limited to, Kik's Board of Directors relating to whether the offer and sale of Kin was an offer and sale of an investment contract;~~
>
> ~~c. Communications with consultants, including, but not limited to, any communications with CoinFund relating to whether the offer and sale of Kin was an offer and sale of an investment contract;~~

> > d.a. Kik and Kik executives' review of the DAO Report; and
> >
> > e.b. Kik executive and employee communications with the Ontario Securities Commission relating to whether the offer and sale of Kin was an offer and sale of an investment contract.; and
> >
> > f.c. Kik's efforts, if any, to contact the SEC about Kin on or before September 26, 2017.
>
> 13. Kik's efforts to enter into SAFTs, including but not limited to:
>
> > a. The parties to whom Kik offered the SAFTs;
> >
> > b. Documents used to market the SAFTs, including, but not limited to, term sheets, referred to in Paragraph 90 of the Complaint, as well as the private placement memorandum (KIK000037-65);
>
> c.7. Thethe dates and terms of the SAFTs, including the ability of purchasers to cancel and/or withdraw from the SAFTs;.
>
> > d. The individual SAFTS entered into with each counterparty;
> >
> > e. Consideration paid by SAFT participants;
> >
> > f. The aggregate amount of funds Kik raised through SAFTs, including, but not limited to, the aggregate of all funds and the aggregate of funds raised from participants residing in the United States and New York; and
> >
> > g. Communications with potential participants and/or participants concerning restrictions on the re-sale or trading of Kin tokens, and the use of the proceeds raised in the Kin token offering.
>
> 14.8. Details and circumstances of the development of the "Minimum Viable Product" ("MVP") of Kin as referred to in Kik's Answer to Paragraph 100 of the Complaint, including but not limited to:
>
> > a. Reasons for developing the MVP;
> >
> > b. Development of digital stickers;
> >
> > c. Consideration of alternatives to the MVP;
> >
> > d. Representations in the private placement memorandum provided to SAFT purchasers relating to the MVP;
> >
> > e.a. Kik's marketing of the MVP before sales of Kin to the public; and
> >
> > f.b. The status of the MVP as of September 12, 2017.
>
> 15.9. The details of Kik's public sale of Kin in September 2017, and Kik's efforts during

the public sale, including ~~but not limited to~~:

a. ~~Kik's announcements concerning the public sale;~~

b. ~~Kik's assessment of potential purchasers, including Kik's conduct or arrangement for a Know Your Customer ("KYC") process;~~

~~c.~~a. Kik's disclosures about Kin to potential purchasers and/or purchasers;

~~d.~~b. Kik's sales, including but not limited to the terms of the sales, and the consideration paid by purchasers;

~~e.~~c. Kik's structure of the public sale, including, but not limited to, multiple rounds of sales, as well as caps on purchase amounts;

f. ~~The aggregate amount raised through the public sale, including, but not limited to, the aggregate of all funds raised and the aggregate of funds raised from purchasers residing in the United States and New York;~~

g. ~~Communications with potential purchasers and/or purchasers concerning restrictions on the re-sale or trading of Kin tokens, and the use of the Kin token offering proceeds; and~~

h. ~~Any contractual or other obligations of public sale purchasers with respect to Kin purchased, including, but not limited to, any obligation to help create, build, or support the Kin Ecosystem or otherwise to create demand or increase the value of Kin as referred to in Paragraph 184 of the Complaint.~~

~~16.~~10. The delivery and allocation of Kin tokens to SAFT participants, public sale purchasers, Kik, the Kin Foundation, and/or any other individual or entity in September 2017.

~~17.~~ ~~The attributes of Kin delivered in September 2017, including, but not limited to, different classes of Kin, and whether the re-sale or use of Kin was restricted in any way.~~

~~18.~~11. Kik's planned and actual use of the Kin token offering proceeds, including, but not limited to:

a. Bank accounts, digital wallets, or any other location where Kik kept or maintained the Kin token offering proceeds;

b. Kik's plan for the use of the proceeds;

c. Kik's actual use of the proceeds; and

d. Kik's public statements prior to the public sale in September 2017 about how it would use the Kin token offering proceeds.

19.12.  The development, creation and operation of the Kin Ecosystem, including, but not limited to, the following:

    a.  Attributes of the Kin Ecosystem that existed as of May 25, 2017;

    b.  All the ways in which "Kin's fundamental utility as a digital currency existed on the date of the TDE" and how "Kin owners could use Kin for peer-to-peer transactions" as of September 26, 2017, as stated in Kik's Answer to Paragraph 16 of the Complaint;

    c.  All the ways in which "Kin was integrated into Kik Messenger" at the time of the public sale in September 2017, as stated in Kik's Answer to Paragraphs 132 and 140 of the Complaint;

    d.  All the ways in which "the Kin economy existed," and "the Kin economy was functional" as of the date of the September 26, 2017 distribution as stated in Kik's Answers to Paragraphs 61, 126, 132, 140, 175 of the Complaint;

    e.  Kik's knowledge of goods or services that could be purchased in exchange for Kin as of September 26, 2017;

    f.  The availability of any "use cases" described in Kik's white paper as of September 26, 2017;

    g.  Whether and the extent to which Kik had enabled Kin transactions among users of Kik Messenger on the Ethereum blockchain, as of September 26, 2017;

    h.  Kik's awareness of commercial developers who engaged in Kin transactions on the Ethereum blockchain as of September 26, 2017;

    i.  The extent to which the Kin Rewards Engine was operational on September 26, 2017;

    j.  Kik's plans for the future development of the Kin Rewards Engine as of September 26, 2017;

    k.  All developers to whom Kik provided a "software developer kit" before the September 26, 2017 distribution, and all instances of a developer using, or trying to use, the software developer kit as of September 26, 2017, as referred to in Kik's Answer to Paragraph 140 of the Complaint; and

    l.  The operability of Kin on the Ethereum blockchain as of September 26, 2017.

13.  The development, creation topics covered by your letter dated November 17, 2017;

14.  The topics covered by the stipulation dated November 12, 2019;

15.  The topics covered by your letter dated November 4, 2019;

16. Kik's responses to the SEC's Requests for Admission Nos. 51, 77, 86, 99, 107, 109-114, 117-129, 132-136, 144-148; and ~~operation~~

17. Testimony Exhibit 206.

**CERTIFICATE OF SERVICE**

~~20.~~ I hereby certify that on December 8, 2019, true and correct copies of the ~~Kin Foundation.~~ foregoing were served by email on the following:

Patrick E. Gibbs
pgibbs@cooley.com
Brett de Jarnette
bdejarnette@cooley.com
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130

Luke T. Cadigan
lcadigan@cooley.com
Cooley LLP
500 Boylston Street
Boston, MA 02116-3736

Kenneth R. Lench
kenneth.lench@kirkland.com
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005-5793

*Attorneys for Defendant Kik Interactive Inc.*

/s/ Stephan J. Schlegelmilch
Counsel to Plaintiff