K1m1secc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

U.S. SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

            v.                          19 Civ. 5244 (AKH)

KIK INTERACTIVE INC.,

                    Defendant.          Conference

-------------------------------x

                                        New York, N.Y.
                                        January 22, 2020
                                        2:42 p.m.

Before:

                    HON. ALVIN K. HELLERSTEIN,

                                        District Judge

                          APPEARANCES

U.S. SECURITIES AND EXCHANGE COMMISSION
DIVISION OF ENFORCEMENT
     For Plaintiff
BY:  STEPHAN J. SCHLEGELMILCH, Asst. Chief Litigation Counsel
     DAVID S. MENDEL, Asst. Chief Litigation Counsel
     LAURA D'ALLAIRD, Counsel

COOLEY LLP
     Attorneys for Defendant
BY:  PATRICK GIBBS, ESQ.
     LUKE T. CADIGAN, ESQ.
     JULIANNE LANDSVIK, ESQ.

K1m1secc

1              THE COURT:  Securities and Exchange Commission is

2      represented here by Stephan Schlegelmilch.

3              MR. SCHLEGELMILCH:  That's correct, your Honor.

4              THE COURT:  Good afternoon.

5              David Mendel?

6              MR. MENDEL:  Yes, your Honor.

7              THE COURT:  Good afternoon.

8              MR. MENDEL:  Good afternoon.

9              THE COURT:  And Laura D'Allaird.

10             MS. D'ALLAIRD:  Yes, your Honor.

11             THE COURT:  Good afternoon.

12             MS. D'ALLAIRD:  Good afternoon.

13             THE COURT:  And KIK Interactive is represented by

14     Patrick Gibbs.

15             MR. GIBBS:  Yes, your Honor.

16             THE COURT:  Good afternoon, Mr. Gibbs.

17             And Mr. Cadigan.

18             MR. CADIGAN:  Yes, your Honor.

19             THE COURT:  Good afternoon.

20             I called you in because with all the pages of fighting

21     that you described in your joint letter of January 14, I really

22     didn't understand the discovery dispute.  We're supposed to end

23     discovery this week, right, Mr. Schlegelmilch?

24             MR. SCHLEGELMILCH:  I believe, your Honor, it's the

25     28th, so a week from yesterday.

K1m1secc

1          THE COURT:  Okay.  A 30(b)(6) deposition will not let

2     you finish by the 28th.

3          MR. SCHLEGELMILCH:  That's correct, your Honor.

4          THE COURT:  So why should I allow it?

5          MR. SCHLEGELMILCH:  Well, your Honor, we have been

6     seeking this deposition since -- it was first noticed for

7     November, the week of Thanksgiving, and we've been in

8     disagreement about it sort of ever since, trying to --

9          THE COURT:  So that's what my job is, isn't it, to

10    resolve disputes?

11         MR. SCHLEGELMILCH:  Yes, your Honor.

12         THE COURT:  If you don't bring the dispute to me, I

13    can't resolve it, can I?

14         MR. SCHLEGELMILCH:  Well, then we would ask for relief

15    from your scheduling order so we can complete the deposition.

16         THE COURT:  You're not getting it.  The purpose of

17    discovery is to prepare for trial.  You've had enough time.  In

18    fact, I think it was you who set the schedule.

19         MR. SCHLEGELMILCH:  We did jointly, your Honor, with

20    the understanding -- and that letter, which we submitted to

21    your Honor last week, cites this outstanding discovery issue

22    that we would bring before you.

23         THE COURT:  How many depositions have you taken so

24    far, roughly?

25         MR. SCHLEGELMILCH:  Roughly?  I think five.  No.  You

K1m1secc

1    mean collectively, your Honor?

2                   THE COURT:  You.

3                   MR. SCHLEGELMILCH:  Five.  Around five.  Five or six.

4    Mr. Mendel probably could --

5                   THE COURT:  Why is that not sufficient to make your

6    case?

7                   MR. SCHLEGELMILCH:  Your Honor, the case law that we

8    put in front of the Court makes clear that Rule 30(b)(6)

9    depositions are a unique animal.

10                  THE COURT:  I know what 30(b)(6) depositions are.  The

11   point is, why didn't you make your case out of the five

12   depositions you took?  Or schedule a 30(b)(6) earlier?  Or

13   start with a 30(b)(6)?  You're using, as Mr. Gibbs points out,

14   30(b)(6) as like a request for admission.

15                  MR. SCHLEGELMILCH:  Well, your Honor, I mean, as you

16   well know, the rules permit the parties to use a 30(b)(6)

17   deposition --

18                  THE COURT:  It's with my discretion.  And exercising

19   my discretion, I think you've taken long enough.  If there's

20   anything in particular, you might dissuade me, but generally,

21   which is what you're doing, you don't dissuade me.

22                  MR. SCHLEGELMILCH:  I'm not quite sure how to respond

23   to that, your Honor.  We would just submit that we tried to

24   bring this matter before your Honor as expeditiously as

25   possible, while at the same time trying to resolve it without

K1m1secc

1  court intervention, and this was when we were able to bring it

2  before your Honor, and I apologize for the delay.  That was not

3  our intent.  I think our hope was that we could --

4          THE COURT:  You're not answering my question.  What

5  specifically do you need?

6          MR. SCHLEGELMILCH:  Specifically, KIK has made a

7  number of arguments in its answer, and in places like that,

8  your Honor, that the Commission has been cherry-picking

9  statements of KIK.

10          THE COURT:  So what?

11          MR. SCHLEGELMILCH:  Well, it's difficult to refute an

12  argument of cherry-picking if KIK won't confirm the universe of

13  public statements that KIK has made regarding the offerings

14  against which our supposedly cherry-picked statements are to be

15  judged.  So a number of the topics in the 30(b)(6) that's in

16  front of your Honor today deal with nailing down exactly what

17  public statements KIK made regarding the offerings, to rebut

18  KIK's contention, in its answer and otherwise, that the

19  Commission simply cherry-picked statements regarding the

20  offerings.

21          THE COURT:  If you cherry-pick, KIK statements are

22  irrelevant.  Cherry pick means that you had any number, you had

23  an array of cases from which to choose and you decided to go

24  after KIK for some arbitrary reason.

25          MR. SCHLEGELMILCH:  I think KIK's argument, as I

K1m1secc

1    understand it, regarding cherry-picking has to do with which

2    statements we identified in the complaint, which statements of

3    KIK's we identified in the complaint, that --

4              THE COURT:  Pick any ones you want.  The question of

5    this case is whether what they're doing is a security or not,

6    right?

7              MR. SCHLEGELMILCH:  Absolutely, your Honor.

8              THE COURT:  And what's cherry-picking got to do with

9    that?

10             MR. SCHLEGELMILCH:  Because one of the indicia that

11   your Honor will consider in whether KIK marketed, offered, and

12   sold the security was what they said about the token when they

13   sold it.  KIK's contention, as I understand it from their

14   answer --

15             THE COURT:  You know all the statements they made when

16   they sold it.

17             MR. SCHLEGELMILCH:  That's exactly what we don't know,

18   and which KIK has so far not confirmed, and KIK has rebuffed

19   discovery on that.  They say we cherry-picked, but we don't

20   know the universe of statements from which we're supposed to

21   draw --

22             THE COURT:  I don't understand how you could be

23   accused of cherry-picking and --

24             MR. SCHLEGELMILCH:  I'm in agreement with that, your

25   Honor.

K1m1secc

1          THE COURT:  Let's say they made 15 statements, of

2     which two fit into the kinds of statements you're interested

3     in, offering to sell a security.  What do you care about the

4     other 13?

5          MR. SCHLEGELMILCH:  I don't --

6          THE COURT:  Or let's say 15 were made that way and you

7     picked two.  What's the difference?

8          MR. SCHLEGELMILCH:  I think that's exactly the right

9     way to look at it.  What I'm --

10          THE COURT:  Then you don't need depositions.

11          MR. SCHLEGELMILCH:  We also have, in the depositions

12     of individuals that we have conducted, been confronted with, as

13     you are in any deposition of individuals, lapses in memory.  A

14     great example of this is Mr. Livingston's testimony during the

15     investigation.

16          THE COURT:  Who is Mr. Livingston?

17          MR. SCHLEGELMILCH:  Mr. Livingston is KIK's CEO.

18          THE COURT:  Okay.  What did he not remember?

19          MR. SCHLEGELMILCH:  During that deposition we asked --

20     or that testimony we asked Mr. Livingston about his appearance

21     on CNBC on the day that KIK announced the token offering, and

22     Mr. Livingston stated that he could not recall being on CNBC.

23          THE COURT:  Presumably you have a transcript of what

24     he said.

25          MR. SCHLEGELMILCH:  We have the transcript and we have

K1m1secc

1    a video.

2            THE COURT:  What do you care if he remembers or not?

3    Apparently you can use it as a means of impeaching him if he

4    ever testifies.

5            MR. SCHLEGELMILCH:  That is correct, your Honor.

6            THE COURT:  What else do you need?  So far you haven't

7    convinced me.

8            MR. SCHLEGELMILCH:  The other topic which I understand

9    last night KIK offered to provide would be information

10   regarding KIK's present status as an entity, as a business, how

11   much cash they have, what they're up to, what they're doing.

12   As you'll recall from the complaint, KIK still controls

13   30 percent of the outstanding float of the tokens, 3 trillion

14   coins, and your Honor, if we do prevail, if we prevail and you

15   find this is a security, that it was an unregistered offering,

16   we'll be asking the Court to enter an injunction.  One of the

17   showings we'll need to make to your Honor is that there is a

18   risk of a violation in the future, and your Honor, we --

19           THE COURT:  They've been selling up to date, haven't

20   they, or you don't know?

21           MR. SCHLEGELMILCH:  I don't know, your Honor.  My

22   understanding is that they still own the 3 trillion tokens, but

23   I would -- that's my understanding, and I would like to be able

24   to ask questions about what their plans are for the 3 trillion

25   tokens.

K1m1secc

1          THE COURT:  Have you asked witnesses that question?

2          MR. SCHLEGELMILCH:  The witnesses that we have asked,

3     that we have conducted depositions of to date, from the last

4     time we were in here till present, are not current employees of

5     KIK, so they don't know.

6          THE COURT:  Why did you not take a deposition of

7     current employees?

8          MR. SCHLEGELMILCH:  Because we were hoping to take a

9     Rule 30(b)(6) deposition on November 26th --

10          THE COURT:  Who would know the answer to that

11     question?

12          MR. SCHLEGELMILCH:  I expect that Mr. Livingston would

13     know the answer to that question.  I expect that --

14          THE COURT:  Well, get Mr. Livingston back.

15          MR. SCHLEGELMILCH:  If he would appear for a

16     deposition, yes, your Honor.

17          THE COURT:  All right.  Anything else you want to ask

18     Mr. Livingston?

19          MR. SCHLEGELMILCH:  Not that I haven't covered, your

20     Honor.

21          THE COURT:  Well, Mr. Gibbs, could we have

22     Mr. Livingston come back and testify to the issues that

23     Mr. Schlegelmilch has outlined?

24          MR. GIBBS:  Well, if so ordered, but I don't think

25     it's necessary, for a few reasons.  First of all, I told

K1m1secc

Mr. Schlegelmilch directly, repeatedly, that KIK still owns the

3 trillion Kin.  They haven't sold any since this whole process

began.

THE COURT:  But you're not a witness.  You don't want

to be a witness, do you?

MR. GIBBS:  Excuse me?

THE COURT:  You don't want to be a witness, do you?

MR. GIBBS:  I don't, but it's a simple fact and we can

stipulate to it.  They don't need to convene a deposition and

force me to travel to DC and force my client to travel --

THE COURT:  They don't need to stipulate to your

version of the facts.  That's not right.

MR. GIBBS:  But my version of the facts --

THE COURT:  Who do you not want to travel to

Washington, DC?

MR. GIBBS:  Me and the CEO, neither of whom lives in

Washington, DC.

THE COURT:  Where does he live?

MR. GIBBS:  He lives in Canada, outside of Toronto; I

live and work in California.

It's a simple question.  We can put it under oath.

It's a fact.

THE COURT:  Anybody else who would be able to testify

who lives more closely to DC?

MR. GIBBS:  I'm sure there are other people who could

K1m1secc

1   testify.  None of them live near Washington, DC.  They would

2   all have to travel for -- if it really is limited to this

3   issue, it's a ten-minute deposition.  I can't for the life of

4   me understand why that's worth the cost to all parties when

5   it's a simple fact.

6           THE COURT:  Would you like to have the deposition

7   taken in Buffalo, New York?

8           MR. GIBBS:  I would have to check whether that travel

9   is more convenient.  I suspect it is, but I don't know.

10          THE COURT:  Probably not.  There are probably lots of

11   planes going from Toronto to Washington DC, more so than

12   Buffalo.  Doesn't snow as much in Washington DC.

13          MR. GIBBS:  We'd love to host everybody out in

14   California.  The weather is very nice.

15          THE COURT:  Maybe next week.  Is there a date next

16   week you can have Mr. Livingston come in?

17          MR. GIBBS:  I don't know what his schedule is.

18          THE COURT:  How about Wednesday?

19          MR. GIBBS:  Your Honor, I don't know.

20          THE COURT:  Well, seems to me he might need to make

21   himself available.

22          MR. GIBBS:  Could we do it telephonically?  It's a

23   simple question --

24          THE COURT:  Nothing is so simple.  You want to do it

25   telephonically?

K1m1secc

1          MR. GIBBS:  That would be vastly preferable for us,

2    but honestly, your Honor, do they hold the 3 trillion Kin?

3    Yes.  Do they have a plan for what to do with it?  The answer

4    is, not yet, they don't know what they're going to do with it

5    because we don't know what they can do.  Simple question.

6          I should note, by the way, your Honor, they had

7    noticed Mr. Livingston's deposition; my team and I had already

8    flown, and Mr. Livingston had already flown, to Washington, DC

9    to prep him, and the SEC decided at the last minute to withdraw

10   that notice.  They made that decision.  They know full well he

11   could have answered these questions.

12         THE COURT:  Mr. Schlegelmilch, can you explain that.

13         MR. SCHLEGELMILCH:  Yes, your Honor.  That is correct.

14   We had tried to negotiate a stipulation to cancel

15   Mr. Livingston's deposition the week earlier but couldn't make

16   it work.  So that's correct.  But I will say that we agreed to

17   cancel Mr. Livingston's deposition with the understanding that

18   we had at that time already noticed KIK's 30(b)(6) deposition

19   for November the 26th.

20         THE COURT:  Well, that wasn't right.  He was there.

21         MR. SCHLEGELMILCH:  Well, I didn't know he was there

22   already.  But --

23         THE COURT:  You didn't know he was in Washington?

24         MR. SCHLEGELMILCH:  I did not, your Honor.

25         THE COURT:  You thought he was still in Toronto when

K1m1secc

1   you canceled?

2          MR. SCHLEGELMILCH:  I did, your Honor.  I canceled it

3   so he wouldn't have to travel.

4          THE COURT:  Take the deposition on Wednesday in DC or

5   a proximate date that's reasonably convenient to

6   Mr. Livingston.

7          MR. SCHLEGELMILCH:  I know I'm looking a gift horse in

8   the mouth.  May I have one additional request.  And that would

9   be that Mr. Livingston be prepared to talk about all of these

10  issues, the issues of the KIK's current condition --

11         THE COURT:  KIK's current condition.

12         MR. SCHLEGELMILCH:  Yes, your Honor.

13         THE COURT:  Do you have someone else that would know

14  more than Mr. Livingston, Mr. Gibbs?

15         MR. GIBBS:  Probably, but I don't know what

16  Mr. Schlegelmilch means by "current condition."

17         THE COURT:  He wants to know what your business is

18  right now, what you're doing right now.  You have the CEO, you

19  take the CEO.  If he doesn't know, you'll come back to me and

20  I'll give you somebody else.  Take the CEO, take

21  Mr. Livingston, on Wednesday or a date proximate to that or

22  some other person who you can convince Mr. Schlegelmilch that

23  would know.

24         MR. GIBBS:  I was just going to ask that, your Honor.

25  We're here to talk about a 30(b)(6) notice.  If that's the

K1m1secc

1    case, I think we should be able to designate whoever we want,

2    as long as they can answer the questions, as best we understand

3    them.  I still think it's too vague.

4              THE COURT:  Take Mr. Livingston's.  He's the CEO.  He

5    should know what's going on.  If he doesn't know, that's an

6    interesting point.

7              MR. GIBBS:  He'll know --

8              THE COURT:  He doesn't have to study.  He doesn't have

9    to prepare.  You have to prepare.  He doesn't have to prepare.

10             MR. GIBBS:  It's because of Mr. Schlegelmilch that we

11   will make sure we prep him because he wants to be able to come

12   back and say we didn't prep him if there are any questions he

13   didn't answer.  That's exactly the exposure he's going to set

14   up for us.

15             THE COURT:  You do what you want with your witness.

16   If you want to prepare him, prepare him.  If you don't want to,

17   don't prepare him.  If he doesn't want to be prepared, he won't

18   be prepared.  He's your client.

19             MR. GIBBS:  He'll be prepared.

20             THE COURT:  A Wednesday deposition, or let Mr. Gibbs

21   give you another date say within ten days of that date.

22             MR. GIBBS:  And just to be clear, your Honor, this is

23   limited to the question of KIK's current conditions and

24   financial conditions and operations, including the two specific

25   questions that Mr. Schlegelmilch has identified here in court.

K1m1secc

1          THE COURT:  Define what you want.

2          MR. SCHLEGELMILCH:  KIK's current -- what is KIK doing

3     as a business currently, what is it working on.  I understand

4     that there is a new entity that's been formed under Canadian

5     law called Code Inc.  What is the relationship between Code

6     Inc. and KIK?  What assets does KIK have that could satisfy a

7     disgorgement order or a penalty that we would ask your Honor to

8     impose --

9          THE COURT:  That's supplementary proceedings.  That's

10    not this.

11         MR. SCHLEGELMILCH:  And what would be KIK's -- what

12    is --

13         THE COURT:  When is the last time you know something

14    about KIK's business?

15         MR. SCHLEGELMILCH:  Probably -- not in an admissible

16    form, but we have some Rule 408 materials from prior to --

17    during the investigative period, your Honor.

18         THE COURT:  When is that?

19         MR. SCHLEGELMILCH:  It would be from fall 2018, your

20    Honor.

21         THE COURT:  You could ask what KIK's been doing from

22    that time to this time, including any affiliates or

23    subsidiaries or other related companies.

24         MR. SCHLEGELMILCH:  Understood, your Honor.

25         MR. GIBBS:  May I speak to that, your Honor.

K1m1secc

1          THE COURT:  Yes.

2          MR. GIBBS:  The rationale that Mr. Schlegelmilch gave

3     you for this entire line of questioning was their desire to

4     seek injunctive relief to prevent future violations of the

5     federal securities laws.  I don't see what some separate entity

6     and what that entity may or may not be doing has to do with

7     that relief.  And also, it's a very good illustration of the --

8          THE COURT:  You may be right, or they may be

9     sufficiently connected that you're wrong.  He can do it.

10         Okay.  Finished?

11         MR. SCHLEGELMILCH:  Yes, your Honor.

12         THE COURT:  Anything more, Mr. Gibbs?

13         MR. GIBBS:  No, your Honor.

14         THE COURT:  Okay.  That's done.  What happens after

15    that?

16         MR. SCHLEGELMILCH:  Then --

17         THE COURT:  Expert report.  Why do you need an expert

18    report?

19         MR. SCHLEGELMILCH:  Your Honor, if you find during

20    summary judgment that there is a material question of fact, we

21    would like to present this case to the jury with the help --

22         THE COURT:  Maybe you should wait for summary judgment

23    first.

24         MR. SCHLEGELMILCH:  If that's what your Honor would

25    order.

K1m1secc

<table>
<tbody>
<tr><td>1</td><td>THE COURT:  I want to find out.  What do you want from</td></tr>
<tr><td>2</td><td>your expert?  That's not a question of law.</td></tr>
<tr><td>3</td><td>MR. SCHLEGELMILCH:  For example, we have an expert</td></tr>
<tr><td>4</td><td>that is an expert in finance technology, in how the blockchain</td></tr>
<tr><td>5</td><td>works, to explain how the blockchain works to lay members of</td></tr>
<tr><td>6</td><td>the jury, to explain --</td></tr>
<tr><td>7</td><td>THE COURT:  It's an injunction case, isn't it?</td></tr>
<tr><td>8</td><td>MR. SCHLEGELMILCH:  It is, your Honor, but it's also</td></tr>
<tr><td>9</td><td>one that I think --</td></tr>
<tr><td>10</td><td>THE COURT:  It's a disgorgement case.</td></tr>
<tr><td>11</td><td>Okay.  That's legitimate.  They'll explain blockchain.</td></tr>
<tr><td>12</td><td>But it doesn't tell me or the jury what Section 5 requires.</td></tr>
<tr><td>13</td><td>MR. SCHLEGELMILCH:  That is not my goal at all.</td></tr>
<tr><td>14</td><td>THE COURT:  Okay.  But that's not necessary for</td></tr>
<tr><td>15</td><td>summary judgment.  That's only necessary if you don't get</td></tr>
<tr><td>16</td><td>summary judgment.</td></tr>
<tr><td>17</td><td>MR. SCHLEGELMILCH:  We can do it in whatever order.</td></tr>
<tr><td>18</td><td>This is sort of the way we always do it, but we can do it in</td></tr>
<tr><td>19</td><td>whatever order you would prefer, your Honor.</td></tr>
<tr><td>20</td><td>THE COURT:  What would you like, Mr. Gibbs?</td></tr>
<tr><td>21</td><td>MR. GIBBS:  Your Honor, I think we would be fine with</td></tr>
<tr><td>22</td><td>holding off expert discovery and doing summary judgment first,</td></tr>
<tr><td>23</td><td>because I agree with your Honor.  I don't think any expert</td></tr>
<tr><td>24</td><td>testimony is going to affect summary judgment.</td></tr>
<tr><td>25</td><td>And if I may, your Honor, I just want to put a pin in</td></tr>
</tbody>
</table>

K1m1secc

1  this one further issue on the deposition I forgot to follow up

2  on with the Court.

3          THE COURT:  Okay.  Go ahead.

4          MR. GIBBS:  May I?

5          THE COURT:  Yes.

6          MR. GIBBS:  Just so that people can make reasonably

7  solid travel plans, given what I think should be a relatively

8  narrow scope of this deposition, may we set a time limit of

9  something like two or three hours?

10          THE COURT:  No.  I don't set time limits, but counsel,

11  if he's repetitive, will not be acting properly and I'll take

12  that into consideration.

13          MR. GIBBS:  Well --

14          THE COURT:  I'm not assigning an arbitrary time limit.

15          MR. GIBBS:  That's fine, your Honor.

16          THE COURT:  I never do, and I don't believe in it.

17          MR. GIBBS:  That's fine.  I understand.

18          I have a follow-up question about scope, because now

19  I'm a little bit confused about whether we're talking --

20          THE COURT:  The scope is to find out what KIK did from

21  the time that the investigation ended until now.

22          MR. GIBBS:  My question is whether the rules should

23  be -- we should assume we're operating under Rule 30(b)(6),

24  meaning this deposition is limited to that scope --

25          THE COURT:  No.  I think Mr. Livingston is a witness.

K1m1secc

<pre>
 1    Tell us what he knows.  If he doesn't know, it will be very

 2    surprising to me, since he's the CEO of the company.  And if he

 3    doesn't know, Mr. Schlegelmilch should come back to me and

 4    maybe I'll give him somebody else.

 5              MR. GIBBS:  But, your Honor, if he's appearing as a

 6    fact witness, now I need to prep him on the entire scope of the

 7    case, which is what we were fully prepared to do back in

 8    November when the SEC --

 9              THE COURT:  I think I've heard enough.  You can take

10    the deposition Wednesday.  Let's finish with it.

11              Most of the summary judgment wants me to determine

12    that Section 5 is applicable.

13              MR. SCHLEGELMILCH:  Yes, your Honor.

14              THE COURT:  And you have all the facts necessary to

15    prove that, don't you?

16              MR. SCHLEGELMILCH:  That's our view, your Honor.

17              THE COURT:  So why go through the bother and expense

18    of experts to tell the jury what a blockchain is when you can

19    tell me in your brief?

20              MR. SCHLEGELMILCH:  I completely agree with you

21    regarding the blockchain expert.

22              Mr. Mendel just reminded me that we have a potential

23    additional expert who has -- one of the issues you're going to

24    have to decide, your Honor, is how KIK offered and sold, having

25    marketed the --
</pre>

K1m1secc

1          THE COURT:  It's a question of fact.

2          MR. SCHLEGELMILCH:  It is, and we are exploring having

3    an expert that is an expert in marketing to talk about an

4    objective view of what KIK said when it offered and sold these

5    tokens, and you may find that informative --

6          THE COURT:  Objective view of what someone said?

7          MR. SCHLEGELMILCH:  Yes, your Honor.

8          THE COURT:  The objective view of what someone said is

9    what someone said.

10          MR. SCHLEGELMILCH:  Yes, your Honor.  And we --

11          THE COURT:  The inference to be taken from that

12    belongs to me, or the jury, as the fact finder.

13          MR. SCHLEGELMILCH:  Understood, your Honor.  I think

14    it would be akin to a survey, a marketing expert in a trademark

15    infringement case that might testify regarding market

16    confusion.  That would be admissible evidence on what an

17    objective --

18          THE COURT:  Section 5 doesn't turn on market

19    confusion.

20          MR. SCHLEGELMILCH:  Correct.

21          THE COURT:  Section 5 turns on whether or not a

22    security is involved.

23          MR. SCHLEGELMILCH:  Correct.  Absolutely, your Honor.

24          THE COURT:  You folks are going to be arguing under

25    SEC and how it views that.

K1m1secc

|     |                                                                  |
|-----|------------------------------------------------------------------|
| 1   | MR. SCHLEGELMILCH:  Yes, your Honor.                              |
| 2   | THE COURT:  You don't need an expert.                            |
| 3   | All right.  Go off the record.  Talk to Mr. Gibbs.               |
| 4   | Assuming that you're going to finish discovery on January 28,    |
| 5   | fact discovery on January 28 or reasonably soon after, come      |
| 6   | back and give me the dates that you're going to file, that       |
| 7   | Mr. Gibbs is going to oppose.                                     |
| 8   | Are you going to make any motions also, Mr. Gibbs?               |
| 9   | MR. GIBBS:  Yes, your Honor.                                      |
| 10  | THE COURT:  All motions will have to be filed on the             |
| 11  | same day.                                                         |
| 12  | MR. GIBBS:  Yes, your Honor.                                      |
| 13  | THE COURT:  If you're going to make a motion, you have           |
| 14  | the same filing date as Mr. Schlegelmilch.                       |
| 15  | MR. GIBBS:  Understood, your Honor.                              |
| 16  | THE COURT:  All right.  Off the record.  Go ahead and            |
| 17  | talk.                                                             |
| 18  | (Counsel conferring)                                             |
| 19  | THE COURT:  Yes, Mr. Schlegelmilch.                              |
| 20  | MR. SCHLEGELMILCH:  Your Honor, we would propose                 |
| 21  | opening briefs be due on March 20, which is a Friday.            |
| 22  | THE COURT:  Motion has to be filed, with supporting             |
| 23  | briefs, by March 20.  All motions.                               |
| 24  | MR. SCHLEGELMILCH:  Thank you, your Honor.                       |
| 25  | THE COURT:  And opposition?                                      |

K1m1secc

1          MR. SCHLEGELMILCH:   April 24.

2          THE COURT:   Reply?

3          MR. SCHLEGELMILCH:   May 13.

4          THE COURT:   Too long.

5          MR. SCHLEGELMILCH:   May 8th.

6          THE COURT:   May 8th.   Okay.

7          All motions and supporting papers are to be filed by

8     March 20; opposition is by April 24; reply is by May 8th.

9          MR. SCHLEGELMILCH:   Thank you, your Honor.

10         THE COURT:   That's going to follow your deposition,

11    which will be a witness deposition of Mr. Livingston.

12         MR. GIBBS:   Your Honor, I've conferred with

13    Mr. Schlegelmilch during the break.   I think the person best

14    equipped to answer what I think are the questions he wants to

15    ask is Mr. Tanner Philp, P-H-I-L-P.

16         THE COURT:   Say again louder.

17         MR. GIBBS:   The person I think is best equipped to

18    answer the questions I think Mr. Schlegelmilch wants to ask is

19    Tanner Philp.   T-A-N-N-E-R --

20         THE COURT:   T-A-N-N-E-R?   What's the fist name?

21         MR. GIBBS:   That's the first name.   The last name is

22    Philp, P-H-I-L-P.

23         THE COURT:   P-H-I?

24         MR. GIBBS:   L-P.   P-H-I-L-P.   Philp.   I've conferred

25    with Mr. Schlegelmilch --

K1m1secc

| 1 | THE COURT:  What's his position? |

MR. GIBBS:  I don't remember his precise title, but
Mr. Schlegelmilch has taken testimony from him before.

MR. SCHLEGELMILCH:  What I would say, your Honor, is I
don't know Mr. Philp's exact title either, but I do know from
the investigation that he has the relevant information.

THE COURT:  He has to consent, and the company has to
consent that he'd be a 30(b)(6) witness.

MR. GIBBS:  That's fine, your Honor.  I just need to
know whether it's a 30(b)(6) or an individual.

THE COURT:  I think for Mr. Tanner, you want a
30(b)(6) deposition.

MR. SCHLEGELMILCH:  Understood, your Honor.

THE COURT:  So it will be a 30(b)(6) deposition of
Mr. Tanner Philp.  If there's any objection by the company or
Mr. Philp, that should be conveyed to Mr. Schlegelmilch by
close of business tomorrow:  And the subject will be the nature
of the business of defendant KIK Interactive Inc., from what
date?

MR. SCHLEGELMILCH:  Your Honor, I don't have a
specific date in 2018.  My request would be --

THE COURT:  From 2018 through the current date.

MR. SCHLEGELMILCH:  Thank you, your Honor.

THE COURT:  Including any business conducted through
affiliates or the like.  Okay?  And that deposition will take

K1m1secc

1   place Wednesday?

2          MR. GIBBS:  Subject to witness availability, your

3   Honor.

4          MR. SCHLEGELMILCH:  Yes.

5          THE COURT:  Or another date that you choose reasonably

6   proximate to it.

7          MR. SCHLEGELMILCH:  Thank you, your Honor.

8          THE COURT:  And I think we're finished.  Thank you

9   very much.

10         ALL COUNSEL:  Thank you, your Honor.

11                              o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25