SEC1

FOIA Confidential Treatment Requested
By Kik Interactive, Inc.

## KIK - RFA RESPONSES

On this day, September 17, 2018, Kik interactive ("Kik") hereby responds, on a voluntary basis, to the following statements as if the responses were admissions or denials of requests for admissions under Fed. R. Civ. P. 36 or of allegations in an Order Instituting Proceedings under Rule 220 of the Commission's Rule of Practice (the "Responses"). Kik acknowledges that the Commission will rely on any admissions to its detriment by limiting investigation on those subjects. Kik consents to the entry of any admissions in any litigated proceedings brought by or on behalf of the Commission as if they were admissions under Fed. R. Civ. P. 36 and/or admissions to allegations to an order instituting proceedings under Rule 220 of the Commission's Rule of Practice.

The Responses are made to the best of Kik's present knowledge, information, and belief based on information reasonably available to Kik as of the date of this response. The Responses are at all times subject to such additional or different information that further investigation may disclose and, while based on the present state of Kik's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may results from further investigation. Kik reserves the right to supplement and amend these Responses, under the Federal Rules of Civil Procedure or otherwise, and, if necessary, to assert objections arising from further investigation.

### Admitted (Per the June 22, 2018 Requests for Admissions)

1.  Kik is a privately-held Canadian corporation with headquarters in Waterloo, Ontario and offices in New York City and Tel Aviv.

2.  The document produced by Kik with Bates number KIK000001-28 is a complete and accurate copy of the Kin white paper.

3.  Kik released the Kin white paper with Bates number KIK000001-28 to the public on or about May 25, 2017.

4.  The document produced by Kik with Bates number KIK0000029-36 is a complete and accurate copy of a Frequently Asked Questions document created by Kik.

5.  Kik released the Frequently Asked Questions document with Bates number KIK0000029-36 to the public in or around August 2017.

6.  The document produced by Kik with Bates number KIK000037-65 is a complete and accurate copy of the private placement memo that Kik provided to Private Sale purchasers.

7.  Kik provided the private placement memo with Bates number KIK000037-65 to Private Sale purchasers.

8.  The document produced by Kik with Bates number KIK000066-72 is a complete and accurate copy of the Simple Agreement for Future Tokens ("SAFT"), that entitled purchasers to the right to receive Kin in the event of a Network Launch (defined in the SAFT) upon the terms set forth in the SAFT.

1

FOIA Confidential Treatment Requested
By Kik Interactive, Inc.

9.  Kik provided the SAFT contract with Bates number KIK000066-72 to Private Sale purchasers, and Private Sale purchasers executed the SAFT contract.

10. The document produced by Kik with Bates number KIK000073-78 is a complete and accurate copy of the Form D that Kik filed with the U.S. Securities and Exchange Commission on or about September 11, 2017.

11. The document produced by Kik with Bates number KIK000079-97 is a complete and accurate copy of the Terms of Use Agreement drafted by Kik and last updated on September 11, 2017 for the Public Sale.

12. The Terms of Use Agreement with Bates number KIK000079-97 was publicly available, and Public Sale participants agreed to those terms.

13. The document produced by Kik with Bates number KIK000098-108 is a complete and accurate copy of the User Registration Guide drafted by Kik for the Public Sale.

14. Kik released the User Registration Guide document with Bates number KIK000098-108 to the public in August 2017.

15. The document produced by Kik with Bates number KIK_00007193-7229 is a complete and accurate copy of Kik's audited financial statements for the fiscal year that ended June 30, 2016.

16. The document produced by Kik with Bates number KIK_00007243-7279 is a complete and accurate copy of Kik's audited financial statements for the fiscal year that ended June 30, 2017.

18. In the Private Sale, participants paid U.S. dollars and received a contract between Kik and the participant called a "SAFT." The SAFT provided that Kik would issue Kin to the Private Sale participants in the event of a Network Launch (defined in the SAFT) upon the terms set forth in the SAFT.

19. In the Public Sale, the purchasers paid Ether and received Kin tokens.

20. The SAFTs were forwards.

21. As stated in the SAFT, the right created by the SAFT was a security.

22. The SAFT noted that the right created by the SAFT was a security and that the offer and sale of the right had not been registered under any country's securities laws.

23. *See* 22.

24. Kik filed a Form D with the Commission on September 11, 2017, noting that Kik had sold "rights to receive Kin tokens in the future via a Simple Agreement for Future Tokens (SAFTs)."

25. Kik did not provide Kik's audited financial statements to potential puchasers in the Private Sale or the Public Sale.

26.     Under the terms of the SAFT, Kik would issue to Private Sale participants a certain number Kin tokens in the event of a Network Launch (defined in the SAFT) upon the terms set forth in the SAFT. In such an event, Kik would deliver to the Private Sale Participants the required amount of Kin automatically, without further action required by the Private Sale Participants.

27.     Under the terms of the SAFT, Private Sale participants would receive Kin tokens at a discount price of 70% of the maximum price per Kin sold by Kik during the Public Sale.

28.     Under the terms of the SAFT, Kik would issue to Private Sale participants 50% of Kin tokens at the time of the Public Sale and the remaining 50% on the one-year anniversary of the Public Sale.

29.     The Private Sale Participants' contractual obligations were set forth in the terms of the SAFT, which explained when and how Kin would be distributed, if at all.

30.     *See* 29.

31.     Kik conducted KYC and AML processes to screen participants who desired to purchase Kin. Once that process was complete and participants in the public sale received tokens, Kik imposed no resale or use restrictions on Kin distributed at the time of the Public Sale. Upon vesting pursuant to the terms of the SAFT, the participants in the private sale receiving Kin were not, and will not be, subject to transfer or use restrictions on Kin.

32.     By selling the right created by the SAFTs, and Kin tokens during the Public Sale, Kik received about $100 million in U.S. dollars and Ether.

33.     In the Private Sale, Kik sold the right created by SAFTs for U.S. dollars from June 2017 to September 11, 2017. Kik sold to about 50 total purchasers for about $49.48 million.

34.     KIK001187 and KIK000283 contain an address column, listing 10 addresses in the State of New York with approximately $9.045 million contributed collectively.

35.     To the best of Kik's knowledge, the document produced by Kik with Bates number KIK001187 is a complete and accurate list of the people and entities who purchased SAFTs in the Private Sale, the amount of the purchase, and the date on which the SAFT was executed.

37.     To the best of Kik's knowledge, the document produced by Kik with Bates number KIK000283 is a complete and accurate list of people and entities who purchased the rights created by SAFTs in the Private Sale and the document contains columns with the following titles: amount, address, email, and phone.

39.     In the Public Sale, Kik sold Kin tokens for Ether from September 12 to 26, 2017. Kik sold to about 10,000 total purchasers for about $49.176 million in Ether. Of those purchasers, 3,456 who contributed a total of about $16.785 million in Ether, provided addresses with postal codes in the U.S. as part of the KYC process.

40.     In accordance with Kik's view that Kin tokens were not and are not securities under the federal securities laws, the Public Sale of Kin tokens was not registered under the Securities Act of 1933.

FOIA Confidential Treatment Requested
By Kik Interactive, Inc.

41.  To the best of Kik's knowledge, the document produced by Kik with Bates number KIK001188 is a complete and accurate list of the people who purchased Kin tokens in the Public Sale portion of the Kin token offering, with Ether address, Kin, amount of Ether, amount in U.S. dollars, IP address, age, postal country, and passport country of those individuals and whether the person linked their wallets holding Kin to their Kik accounts as of November 2017.

43.  *See* 31.

44.  On or about September 26, 2017, Kik delivered to Private Sale participants one-half of the Kin tokens that they were entitled to receive under the terms of the SAFT.

45.  On or about September 26, 2017, Kik delivered to Public Sale participants the Kin tokens that they were entitled to receive under the terms of the Public Sale. Kik itself received three trillion Kin tokens at the time of the Public Sale.

46.  Kik received revenue from the public sale in Ether, in its Ether wallet. Subsequent to the Public Sale, Kik converted some of the Ether into U.S. dollars, which were deposited in its account at Silvergate Bank, which is located in California. The revenue from the Private Sale was deposited in U.S. dollars in Kik's account at TD Bank, located in Canada.

47.  Kik has used revenue that was deposited in its California and Canadian bank accounts as working capital to fund Kik's business operations in addition to furthering its efforts as a participant in the Kin Ecosystem.

48.  *See* 46.

49.  *See* 47.

50.  *See* 46.

51.  *See* 46.

52.  *See* 47.

53.  Like other currencies, Kin tokens distributed at the time of the Public Sale are fungible.

54.  *See* 53.

55.  *See* 53.

56.  *See* 53.

57.  To the best of Kik's knowledge, as of November 17, 2017, 1,685 buyers during the Public Sale portion of the Kin token offering had linked their wallets holding Kin to their Kik accounts.

58.  Kik did not publish Kik's financial statements to participants in the Private Sale or Public Sale.

FOIA Confidential Treatment Requested
By Kik Interactive, Inc.

## Admitted – Re The Foundation (Per the April 9, 2018 Requests for Admissions)

38.     The Kin Ecosystem Foundation was founded on September 12, 2017.

42.     From its founding through May 9, 2018, the Kin Ecosystem Foundation had two directors– Kik Interactive's CEO Ted Livingston and Kik's CFO and SVP Corporate Development Peter Heinke. Effective May 9, 2018, William Mougayar was appointed to the Kin Ecosystem Foundation Board and Peter Heinke resigned from the Board.

43.     From its founding through May 9, 2018, the Kin Ecosystem Foundation has had no members.

44.     From its founding through the present, the Kin Ecosystem Foundation had no employees.

45.     The Kin Ecosystem Foundation has six trillion Kin tokens and has not distributed those six trillion Kin tokens as of May 9, 2018.

46.     From its founding through the present, Kin Ecosystem Foundation entered into contracts from its founding through the present relating to insurance coverage, with consultants, and a Services Contract with Kik.

47.     William Raduchel is not a director or employee of the Kin Ecosystem Foundation and has not been a director or employee from the Foundation's founding through the present.

51.     On behalf of the Kin Ecosystem Foundation, under a Services Contract and Agency Agreement with Kik, Kik employees created social media accounts under the Kin Ecosystem Foundation's name and wrote posts on those media channels that appear under the Foundation's name, including Twitter, Reddit, and Telegram.

52.     *See* 51.

53.     *See* 51.

54.     *See* 51.

55.     Kik Interactive controls the Kik messaging application, and, from its founding through the present, the Kin Ecosystem Foundation has no right or power to make changes to the Kik messaging application.

56.     From its founding through the present, the Kin Ecosystem Foundation has not made changes to the Kik messaging application. That work has been done by Kik Interactive or its other agents.

59.     The Kin Ecosystem Foundation has worked on designing systems or software architecture that would enable transactions in Kin tokens to be conducted off the Ethereum blockchain under a Services Contract with Kik.

FOIA Confidential Treatment Requested
By Kik Interactive, Inc.

### Denied (Per the June 22, 2018 Requests for Admissions)

17. Kik planned for the Kin token offering to have two parts - an initial stage where it would sell only to wealthy people that it could determine would qualify as "accredited investors" under the securities laws (the "Private Sale") and a second stage where it would sell to the general public (the "Public Sale").

36. The document produced by Kik with Bates number KIK001186 is a record of regularly conducted activity under Federal Rule of Evidence 803(6).

38. The document produced by Kik with Bates number KIK000283 is a record of regularly conducted activity under Federal Rule of Evidence 803(6).

42. The document produced by Kik with Bates number KIK001188 is a record of regularly conducted activity under Federal Rule of Evidence 803(6).

59. Kik did not provide purchasers in the Private Sale or Public Sale with detailed information about how Kik would use the proceeds of the Kin token offering.

60. At the time of the Public Sale, Kik had not developed a schedule for how it would spend the proceeds of the Kin token offering to develop the Kin Ecosystem.

61. The Kin Ecosystem did not exist as of the time of the Public Sale.

62. The Kin Ecosystem does not exist at the time of the execution of this document.

### Denied – Re the Foundation (Per the April 9, 2018 Requests for Admissions)

41. Kik Interactive instructed the attorney to create the Kin Ecosystem Foundation and instructed the attorney to name Kik's CEO Ted Livingston and Kik's COO Peter Heinke as directors of the Kin Ecosystem Foundation.

48. From its founding through the present, the Kin Ecosystem Foundation has not been independent of Kik Interactive.

49. From its founding through the present, the Kin Ecosystem Foundation has been an agent of Kik Interactive.

50. Kik Interactive has controlled the Kin Ecosystem Foundation since its founding and has controlled all of the acts of the Kin Ecosystem Foundation.

57. From its founding through the present, the Kin Ecosystem Foundation has not worked on creating an Application Programming Interface (API) or any other software package that lets developers add Kin tokens to their products.

58. From its founding through the present, the Kin Ecosystem Foundation has not worked on an implementation of the Kin Rewards Engine or a decentralized identity service for users of Kin.

FOIA Confidential Treatment Requested
By Kik Interactive, Inc.

60.     From its founding through the present, the Kin Ecosystem Foundation has not worked on creating the "rewards engine."

61.     From its founding through the present, the Kin Ecosystem Foundation has not worked on recruiting partners to the Kin Ecosystem described in statements such as the Kin white paper – including but not limited to partners who would conduct transactions using Kin tokens or who would allow their users to conduct transactions using Kin tokens.

**KIK INTERACTIVE INC.**

By: _____
Patrick E. Gibbs
COOLEY LLP
Counsel for Kik Interactive, Inc.

7