# SEC2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

U.S. SECURITIES AND EXCHANGE    :

COMMISSION,

                                 :

          The Commission,

                                 :       Civil Action No. 19-cv-05244 (AKH)

      vs.                     :

                                     **KIK'S RESPONSES TO THE COMMISSION'S**
                                     **FIRST SET OF REQUESTS FOR ADMISSION**
KIK INTERACTIVE INC.,                  **(NOS. 1-150)**

                               :

          Defendant.

                                 :

-------------------------------------- X

**PROPOUNDING PARTY:**    **U.S. SECURITIES AND EXCHANGE COMMISSION**

**RESPONDING PARTY:**      **KIK INTERACTIVE, INC.**

**SET NO.:**      **ONE (NOS. 1-150)**

      Pursuant to Federal Rules of Civil Procedure 26 and 36, Defendant Kik Interactive, Inc. ("Kik" or the "Company") hereby responds to the U.S. Securities and Exchange Commission's (the "Commission") First Set of Requests for Admission (the "Requests") as follows:

## I.    GENERAL RESPONSES

      1.      Kik's responses to the Requests are made to the best of its current employees' present knowledge, information, and belief, and are at all times subject to such additional or different information that discovery or further investigation may disclose.  While based on the present state of Kik's recollection, Kik's responses are subject to refreshing of such recollection,

and such additional knowledge of facts, as may result from Kik's further discovery or investigation.

2.      Kik reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility its responses herein, as well as any documents cited herein, in any subsequent proceeding in, or trial of, this or any other action for any purpose whatsoever and any document or thing identified or provided in response to Plaintiff's Requests.

3.      To the extent Kik does not expressly admit to any or all of a Request, Kik denies such Request.

4.      No incidental or implied admissions are intended by these responses, and Kik's objection or response to any Request shall not be deemed an admission that Kik accepts or admits the existence of any facts set forth or assumed by such Request, or that such objection or response constitutes admissible evidence.

5.      To the extent Kik states it lacks sufficient personal knowledge to admit or deny a Request, Kik affirms that it has made a reasonable inquiry as to each such Request, and that the information it knows or can readily obtain is insufficient to admit or deny each such Request.

## II.    GENERAL OBJECTIONS

1.      Kik generally objects to the Commission's use of documents that were produced in the course of the Investigation.

2.      Per Kik's response to the SEC's Requests for Production, Set One, Kik will reproduce all documents that were produced in the course of the Investigation, subject to a protective order.

3.      Kik generally objects to the Commission's attempt to use these Requests to establish the admissibility of documents, recordings, testimony, and other statements.  There are "more convenient, less burdensome, and less expensive" means for the parties to resolve issues regarding authenticity and applicability of the business records exception to the hearsay rule.  *See*

Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought . . . can be obtained . . . from some other source that is more convenient, less burdensome, or less expensive").  Specifically, in order to facilitate efficient litigation, Kik is willing to agree to a joint stipulation addressing the applicability of the business records exception to the hearsay rule to specific statements, and authenticity issues as to certain documents.  Kik believes that the Court would prefer resolving admissibility issues in this fashion, as opposed to responding to voluminous and highly burdensome requests for admission.  *See Pasternak* v. *Dow Kim*, 2011 WL 4552389, at *6 n.6 (S.D.N.Y. Sept. 28, 2011) (ordering meet and confer where a "proposed stipulation, or some variation thereof, would save both time and expense to the parties and also provide an efficient presentation to the Court of matters not in dispute in the litigation"); *see also id.* ("Indeed, some have said that the device provided for in Rule 36 'might well have been named a "request for stipulations" since the term "admissions" suggests that evidence is being sought by the device.' A stipulation may well be able to resolve many of the issues presented herein.").

4.      Kik generally objects to the Requests insofar as each such Request is not full and complete in and of itself.

5.      Kik generally objects to the Requests insofar as each such Request contains subparts, or a compound, conjunctive, or disjunctive Request.

6.      Kik generally objects to the introductory definitions and instructions to the Requests to the extent said definitions or instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific Request on the ground that such enlargement, expansion, or alteration renders said Request vague, ambiguous, unintelligible, unduly broad, and uncertain.

7.      Kik further objects to all instructions, definitions, and Requests to the extent they seek to require Kik to admit the genuineness of original documents not currently in Kik's possession, custody or control, or to admit matters of fact involving persons, entities or events not known to Kik, on the grounds that such instructions, definitions, or Requests seek to require more

of Kik than any obligation imposed by law, would subject them to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Kik an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to the Commission.

### III.   SPECIFIC OBJECTIONS TO DEFINITIONS

1.      Kik further objects to the definitions of "Kik," "you," and "your" as overbroad and unduly burdensome to the extent that the Requests seek information from inaccessible or unknown parties and to the extent that they seek information that is not reasonably known or obtainable by Defendants.  Kik further objects to the definition of "you" and "your" to the extent it calls for privileged information from Kik's attorneys or other representatives.  Kik further objects with respect to the terms "you" and "your" to the extent the definition calls for information from persons "purporting to act on [Kik's] behalf," which Kik may not reasonably have access to.

2.      Kik further objects to the definition of "Requests" as vague and ambiguous, overbroad, and unintelligible, to the extent it calls for "all discovery requests and requests for admission that have been, or will be, submitted by the SEC in this Action."

3.      Kik further objects to the definition of "SAFT" as vague and ambiguous, overbroad, and unintelligible in the context for the Requests because, for example, this definition assumes the existence of a single SAFT agreement, whereas in reality, each pre-sale participant executed separate agreements with Kik.  Kik objects to the use of "the SAFT" in the singular because each SAFT entered into contained different terms depending on the pre-sale participant.

4.      Kik further objects to the definition of "SAFT participant" as vague and ambiguous, overbroad, and unintelligible in the context of certain Requests.

5.      Kik further objects to the definition of "Public sale" as vague and ambiguous, overbroad, and unintelligible, to the extent it calls for "process run by Kik from May to September 2017 through which Kik offered and sold Kin to the general public and arranged for the distribution of Kin to buyers on September 26, 2017."

6.      Kik further objects to the definitions of "Kik Messenger" and the "Kik app" as vague and ambiguous, overbroad, and unintelligible in the context of certain Requests.

## IV.    RESPONSES AND OBJECTIONS TO INDIVIDUAL REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that the video recording produced by the SEC to Kik in this Action, identified by Bates number SEC-KIK-LIT-E-0000333, is a genuine and authentic video recording of statements by persons including Kik CEO Edward Livingston at a public gathering in New York City called the "Token Summit," on May 25, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "genuine and authentic video recording" and "public gathering" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the use of the phrase "statements by persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Specifically, to the best of Kik's knowledge, Kik did not record the video referenced by this Request, nor is it in possession, custody, or control of the original recording.  Nor does Kik have sufficient knowledge to determine whether the video was altered in any way.  Further, Kik objects to the extent this Request calls for a legal conclusion, as well as to the extent it assumes Kik's admission of admissibility.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that the video with Bates number SEC-KIK-LIT-E-0000333 appears to be some version of a video recording of statements made by Kik CEO Edward Livingston and others at the "Token Summit" event on May 25, 2017.  Kik otherwise lacks

sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the statements of Kik CEO Edward Livingston at the May 25, 2017 Token Summit, contained in the recording identified by Bates number SEC-KIK-LIT-E-0000333, were on behalf of Kik, and were statements of Kik under Federal Rule of Evidence 801(d)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the term "on behalf of Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism. However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Mr. Livingston, and instead seeks the wholesale admission of entire transcripts as corporate admissions. *See Kolb v. County of Suffolk*, 109 F.R.D. 125, 128 (E.D.N.Y. 1985) ("[Rule 801(d)(2)(D)] is rarely applied to allow admission of whole depositions of witnesses who could easily appear at trial on a party's direct case."). Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge. Kik further objects to the extent this Request calls for a legal conclusion. Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism. Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests that Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the statements of persons including Kik CEO Edward Livingston at the May 25, 2017 Token Summit, contained in the recording identified by Bates number SEC-KIK-LIT-E-0000333, were available on the Internet by June 3, 2017, and were posted on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to use of the phrase "statements of persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge.  Specifically, Kik did not post the video referenced in this Request on YouTube.  Further, Kik objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that the video purportedly referenced by this request appears to be posted on a YouTube page by a user called "Token Summit," which appears to be dated June 3, 2017.  As Kik did not record, create, or post this video, Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 4:**

Admit that the transcripts produced by the SEC to Kik in this Action, identified by the Bates range SEC-KIK-LIT-E-0000181 to SEC-KIK-LIT-E-0000189, and Bates number SEC-KIK-LIT-E-0000260, are true and correct transcripts of the statements of persons including Kik CEO Edward Livingston at the May 25, 2017 Token Summit, as contained in the recording identified by Bates number SEC-KIK-LIT-E-0000333.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "true and correct transcripts" as vague and ambiguous, overbroad, and unintelligible.  Kik further objects to use of the phrase "statements of persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge.  Specifically, Kik did not prepare the transcript referenced by this Request.  Further, Kik objects to the extent this Request calls for a legal conclusion.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the video recording produced by the SEC to Kik in this Action, identified by Bates number SEC-KIK-LIT-E-0000339, is a genuine and authentic video recording of statements by persons including Kik CEO Edward Livingston and Kik board member Fred Wilson that were made publicly available on the website AVC.com by May 27, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "genuine and authentic video recording" and "public gathering" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the use of the phrase "statements by persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to this Request to

the extent it seeks information that is outside of Kik's personal knowledge.  Specifically, to the best of Kik's knowledge, Kik did not record the video referenced by this Request, nor is it in possession, custody, or control of the original recording.  Nor does Kik have sufficient knowledge to determine whether the video was altered in any way.  Further, Kik objects to the extent this Request calls for a legal conclusion, as well as to the extent it assumes Kik's admission of admissibility.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that a video that appears to be the video referenced by this Request, which was originally posted by the Kin Foundation, appears to be posted on the AVC.com website, which Kik does not control or operate, referencing a date posted of May 27, 2017.  Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 6:**

Admit that the website AVC.com is, and was from May to September 2017, a blogging forum for Kik board member Fred Wilson.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "blogging forum" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  while Kik's understanding is that posts written by Fred Wilson in his personal capacity appear on the website AVC.com, Kik lacks sufficient personal knowledge to either admit or deny this Request.  For example, Kik does not know who owns or operates the website AVC.com.  On that basis, among others, Kik denies the Request.

**REQUEST FOR ADMISSION NO. 7:**

Admit that the statements of Kik CEO Edward Livingston, contained in the video recording identified by Bates number SEC-KIK-LIT-E-0000339, were on behalf of Kik, and were statements of Kik under Federal Rule of Evidence 801(d) (2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "on behalf of Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Mr. Livingston, and instead seeks the wholesale admission of entire transcripts as corporate admissions.  *See Kolb*, 109 F.R.D. at 128.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism.  Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests that Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2).  Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 8:**

Admit that the transcripts produced by the SEC to Kik in this Action, identified by the Bates range SEC-KIK-LIT-E-0000248 to SEC-KIK-LIT-E-0000253, and Bates number SEC-KIK-LIT-E-0000269, are true and correct transcripts of the statements by persons including Kik CEO Edward Livingston and Kik board member Fred Wilson, as contained on the recording identified by Bates number SEC-KIK-LIT-E-0000339.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "true and correct transcripts" as vague and ambiguous, overbroad, and unintelligible.  Kik further objects to use of the phrase "statements by persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge.  Specifically, Kik did not prepare the transcript referenced by this Request.  Further, Kik objects to the extent this Request calls for a legal conclusion.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  because Kik did not prepare the transcripts at issue, Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 9:**

Admit that the video recording produced by the SEC to Kik in this Action, identified by Bates number SEC-KIK-LIT-E-0000305, is a genuine and authentic video recording of statements by persons including Kik CEO Edward Livingston at a public gathering in the People's Republic of China called "TechCrunch Shenzhen," on June 20, 2017, and the segment of the gathering in which Mr. Livingston made these statements was entitled "Kin Fireside Chat at TechCrunch Shenzhen."

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "genuine and authentic video recording" and "public gathering" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the use of the phrase "statements by persons," as the Commission does not identify such

persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Specifically, to the best of Kik's knowledge, Kik did not record the video referenced by this Request, nor is it in possession, custody, or control of the original recording.  Nor does Kik have sufficient knowledge to determine whether the video was altered in any way.  Further, Kik objects to the extent this Request calls for a legal conclusion, as well as to the extent it assumes Kik's admission of admissibility.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that the video with Bates number SEC-KIK-LIT-E-0000305 appears to be some version of a video recording of statements made by Kik CEO Edward Livingston and others at the "TechCrunch Shenzhen" event on June 20, 2017.  Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 10:**

Admit that the statements of Kik CEO Edward Livingston, contained in the video recording identified by Bates number SEC-KIK-LIT-E-0000305, were on behalf of Kik, and were statements of Kik under Federal Rule of Evidence 801(d) (2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "on behalf of Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Mr. Livingston, and instead seeks the wholesale admission of entire

transcripts as corporate admissions. *See Kolb*, 109 F.R.D at 128. Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge. Kik further objects to the extent this Request calls for a legal conclusion. Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism. Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests that Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 11:**

Admit that the transcripts produced by the SEC to Kik in this Action, identified by the Bates range SEC-KIK-LIT-E-000031 to SEC-KIK-LIT-E-0000044, and Bates number SEC-KIK-LIT-E-0000264, are true and correct transcripts of the statements by persons including Kik CEO Edward Livingston at the TechCrunch Shenzhen, on June 20, 2017, as contained in the recording identified by Bates number SEC-KIK-LIT-E-0000305.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the term "true and correct transcripts" as vague and ambiguous, overbroad, and unintelligible. Kik further objects to use of the phrase "statements by persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request. Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism. Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge. Specifically, Kik did not prepare the transcript referenced by this Request. Further, Kik objects to the extent this Request calls for a legal conclusion.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 12:**

Admit that the video recording produced by the SEC to Kik in this Action, identified by Bates number SEC-KIK-LIT-E-0000277, is a genuine and authentic video recording of statements by persons including Kik CEO Edward Livingston at a public gathering in San Francisco called the "San Francisco Bitcoin Meetup," on or about June 27, 2017, and the segment of this gathering in which Mr. Livingston made these comments was entitled "An Evening with Ted Livingston, CEO of Kik."

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "genuine and authentic video recording" and "public gathering" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the use of the phrase "statements by persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Specifically, to the best of Kik's knowledge, Kik did not record the video referenced by this Request, nor is it in possession, custody, or control of the original recording.  Nor does Kik have sufficient knowledge to determine whether the video was altered in any way.  Further, Kik objects to the extent this Request calls for a legal conclusion, as well as to the extent it assumes Kik's admission of admissibility.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik

responds as follows:  Kik admits that the video with Bates number SEC-KIK-LIT-E-0000277 appears to be some version of a video recording of statements made by Kik CEO Edward Livingston and others at the "San Francisco Bitcoin Meetup" event on June 27, 2017 during a segment called "An Evening with Ted Livingston, CEO of Kik."  Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 13:**

Admit that the statements of Kik CEO Edward Livingston on or about June 27, 2017, at the San Francisco Bitcoin Meetup, contained in the recording identified by Bates number SEC-KIK-LIT-E-0000277, were on behalf of Kik, and were statements of Kik under Federal Rule of Evidence 801(d) (2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "on behalf of Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Mr. Livingston, and instead seeks the wholesale admission of entire transcripts as corporate admissions.  *See Kolb*, 109 F.R.D. at 128.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism.  Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it

requests that Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 14:**

Admit that the statements of persons including Kik CEO Edward Livingston on or about June 27, 2017 at the San Francisco Bitcoin Meetup, contained in the recording identified by Bates number SEC-KIK-LIT-E-0000277, were streamed live on the Internet, were publicly available on the Internet as a recording by June 28, 2017, and were posted on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to use of the phrase "statements of persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge.  Specifically, Kik did not post the video referenced in this Request on YouTube.  Further, Kik objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that the video purportedly referenced by this request appears to be posted on a YouTube page by a user called "World Crypto Network," which appears to be dated June 27, 2017, and which references the fact that the video was streamed live on that same day. As Kik did not record, create, or post this video, Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the transcripts produced by the SEC to Kik in this Action, identified by the Bates range SEC-KIK-LIT-E-0000133 to SEC-KIK-LIT-E-0000162, and Bates number SEC-

KIK-LIT-E-0000254, are true and correct transcripts of the statements by persons including Kik CEO Edward Livingston during the Kin Fireside Chat at the San Francisco Bitcoin Meetup, on or about June 27, 2017, as contained in the recording identified by Bates number SEC-KIK-LIT-E-0000277.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the term "true and correct transcripts" as vague and ambiguous, overbroad, and unintelligible. Kik further objects to use of the phrase "statements by persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request. Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism. Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge. Specifically, Kik did not prepare the transcript referenced by this Request. Further, Kik objects to the extent this Request calls for a legal conclusion.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 16:**

Admit that the video recording produced by the SEC to Kik in this Action, identified by Bates number SEC-KIK-LIT-E-0000272, is a genuine and authentic video recording of statements by persons including Kik CEO Edward Livingston on August 1, 2017, on the "Finance Magnate's Blockchain Podcast."

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the terms "genuine and authentic video recording" and "public gathering" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Kik further

objects to the use of the phrase "statements by persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Specifically, to the best of Kik's knowledge, Kik did not record the video referenced by this Request, nor is it in possession, custody, or control of the original recording.  Nor does Kik have sufficient knowledge to determine whether the video was altered in any way.  Further, Kik objects to the extent this Request calls for a legal conclusion, as well as to the extent it assumes Kik's admission of admissibility.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that the video with Bates number SEC-KIK-LIT-E-0000272 appears to be some version of a video recording of statements made by Kik CEO Edward Livingston and others on the "Finance Magnate's Blockchain Podcast" event on August 1, 2017. Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 17:**

Admit that the statements of Kik CEO Edward Livingston on August 1, 2017, during the Finance Magnate's Blockchain Podcast, contained in the recording identified by Bates number SEC-KIK-LIT-E-0000272, were on behalf of Kik, and were statements of Kik under Federal Rule of Evidence 801(d) (2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "on behalf of Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a

proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Mr. Livingston, and instead seeks the wholesale admission of entire transcripts as corporate admissions.  *See Kolb*, 109 F.R.D. at 128.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism.  Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests that Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2).  Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 18:**

Admit that the statements of persons including Kik CEO Edward Livingston on August 1, 2017, on the Finance Magnates Blockchain Podcast, contained in the recording identified by Bates number SEC-KIK-LIT-E-0000272, were streamed live on the Internet and posted on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to use of the phrase "statements of persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge.  Specifically, Kik did not post the video referenced in this Request on YouTube.  Further, Kik objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that the video purportedly referenced by this request appears to be posted on a YouTube page by a user called "Finance Magnates," which appears to be dated August 1, 2017.  As Kik did not record, create, or post this video, Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the transcripts produced by the SEC to Kik in this Action, identified by the Bates range SEC-KIK-LIT-E-0000119 to SEC-KIK-LIT-E-0000132, and Bates number SEC-KIK-LIT-E-0000256, are true and correct transcripts of the statements by persons including Kik CEO Edward Livingston on the August 1, 2017 Finance Magnates Blockchain Podcast, as contained in the recording identified by Bates number SEC-KIK-LIT-E-0000272.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "true and correct transcripts" as vague and ambiguous, overbroad, and unintelligible.  Kik further objects to use of the phrase "statements of persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge. Specifically, Kik did not prepare the transcripts referenced by this Request.  Further, Kik objects to the extent this Request calls for a legal conclusion.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 20:**

Admit that the video recording produced by the SEC to Kik in this Action, identified by Bates number SEC-KIK-LIT-E-0000275, is a genuine and authentic video recording of statements by persons including Kik CEO Edward Livingston and an individual named William Mougayar, on August 14, 2017, at a public gathering called the "Fintech Canada Bitcoin Ethereum Summit."

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "genuine and authentic video recording" and "public gathering" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the use of the phrase "statements by persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Specifically, to the best of Kik's knowledge, Kik did not record the video referenced by this Request, nor is it in possession, custody, or control of the original recording.  Nor does Kik have sufficient knowledge to determine whether the video was altered in any way.  Further, Kik objects to the extent this Request calls for a legal conclusion, as well as to the extent it assumes Kik's admission of admissibility.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that the video with Bates number SEC-KIK-LIT-E-0000275 appears to be some version of a video recording of statements made by Kik CEO Edward Livingston and others at the "Fintech Canada Bitcoin Ethereum Summit" event on August 14, 2017.  Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 21:**

Admit that the statements of Kik CEO Edward Livingston on August 14, 2017, during the Fintech Canada Bitcoin Ethereum Summit, contained in the recording identified by Bates number SEC-KIK-LIT-E-0000275, were on behalf of Kik, and were statements of Kik under Federal Rule of Evidence 801(d) (2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the term "on behalf of Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism. However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Mr. Livingston, and instead seeks the wholesale admission of entire transcripts as corporate admissions. *See Kolb*, 109 F.R.D. at 128. Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge. Kik further objects to the extent this Request calls for a legal conclusion. Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism. Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests that Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 22:**

Admit that the statements of persons including Kik CEO Edward Livingston and William Mougayar on August 14, 2017, at the Fintech Canada Bitcoin Ethereum Summit, contained in the recording identified by Bates number SEC-KIK-LIT-E-0000275, were publicly available on the website AVC.com by September 9, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to use of the phrase "statements of persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge.  Specifically, Kik did not post the video referenced in this Request on YouTube, nor does it own or operate the website AVC.com.  Further, Kik objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that the video purportedly referenced by this request appears to be posted on a YouTube page by a user called "Fintech Canada," which appears to be dated October 30, 2017, and that said video was posted on the website AVC.com with a referenced date of September 8, 2017.  As Kik did not record, create, or post this video, Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 23:**

Admit that the transcripts produced by the SEC to Kik in this Action, identified by the Bates range SEC-KIK-LIT-E-0000077 to SEC-KIK-LIT-E-0000090, and Bates number SEC-KIK-LIT-E-0000258, are true and correct transcripts of the statements by persons including Kik CEO Edward Livingston and William Mougayar on August 14, 2017, at the Fintech Canada Bitcoin Ethereum Summit, as contained in the recording identified by Bates number SEC-KIK-LIT-E-0000275.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "true and correct transcripts" as vague and ambiguous, overbroad, and unintelligible.  Kik further objects to use of the phrase "statements of persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, this is an improper and inefficient use of this procedural mechanism.  Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge.  Specifically, Kik did not prepare the transcripts referenced by this Request.  Further, Kik objects to the extent this Request calls for a legal conclusion.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 24:**

Admit that the video recording produced by the SEC to Kik in this Action in the electronic Web Capture folder "HO-13388 233083 07-03-19" (see Addendum to SEC August 16, 2019 Index of Produced Documents: List of Web Captures) and has the file name "NYC Ethereum Cryptocurrency u0026 Consumer Media September 7th 2017," is a genuine and authentic video recording of statements by persons including Kik CEO Edward Livingston on September 7, 2017, at a public gathering sponsored by Spotify called the "Ethereum NYC Meetup."

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "genuine and authentic video recording" and "public gathering" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the use of the phrase "statements by persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and

unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Specifically, to the best of Kik's knowledge, Kik did not record the video referenced by this Request, nor is it in possession, custody, or control of the original recording.  Nor does Kik have sufficient knowledge to determine whether the video was altered in any way.  Further, Kik objects to the extent this Request calls for a legal conclusion, as well as to the extent it assumes Kik's admission of admissibility.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that the video in the electronic Web Capture folder "HO-13388 233083 07-03-19" (see Addendum to SEC August 16, 2019 Index of Produced Documents: List of Web Captures) and has the file name "NYC Ethereum Cryptocurrency u0026 Consumer Media September 7th 2017," appears to be some version of a video recording of statements made by Kik CEO Edward Livingston and others at the "Ethereum NYC Meetup" event on September 7, 2017. Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 25:**

Admit that the statements of Kik CEO Edward Livingston on September 7, 2017, during the Ethereum NYC Meetup, as contained in the recording identified in the Request directly above, were on behalf of Kik, and were statements of Kik under Federal Rule of Evidence 801(d)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "on behalf of Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify

specific statements by Mr. Livingston, and instead seeks the wholesale admission of entire transcripts as corporate admissions.  *See Kolb*, 109 F.R.D. at 128.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism.  Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests that Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 26:**

Admit that the statements of persons including Kik CEO Edward Livingston on September 7, 2017, 2017, at the Ethereum NYC Meetup, as contained in the above-identified recording, was livestreamed on the Internet and posted on YouTube by September 8, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to use of the phrase "statements of persons," as the Commission does not identify such persons, and Kik further objects that the phrase is vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  Kik further objects to the extent this Request seeks information outside of Kik's personal knowledge.  Specifically, Kik did not post the video referenced in this Request on YouTube.  Further, Kik objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik

responds as follows:  Kik admits that the video purportedly referenced by this request appears to be posted on a YouTube page by a user called "NYC Ethereum," which appears to be dated September 8, 2017.  This video does not specify whether it was live streamed.  As Kik did not record, create, or post this video, Kik otherwise lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 27:**

Admit that Kik CEO Edward Livingston's investigative testimony on November 7 and 8, 2018, concerned matters within the scope of his employment by Kik, and Mr. Livingston's statements during such testimony were the statements of Kik under Federal Rule of Evidence 801(d) (2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "within the scope of his employment by Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this  Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Mr. Livingston, and instead seeks the wholesale admission of entire transcripts as corporate admissions.  *Kolb*, 109 F.R.D. at 128.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism.  Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2).  Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 28:**

Admit that Erin Clift's July 26, 2018, investigative testimony concerned matters within the scope of her employment by Kik, and Ms. Clift's statements during such testimony were the statements of Kik under Federal Rule of Evidence 801(d)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "within the scope of his employment by Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Ms. Clift, and instead seeks the wholesale admission of entire transcripts as corporate admissions.  *Kolb*, 109 F.R.D. at 128.  Moreover, Kik objects on the basis that Ms. Clift was not employed by Kik at the time these statements were made.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to the extent this Request calls for a legal conclusion. Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism.  Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 29:**

Admit that Phillip Yang's August 16, 2018, investigative testimony concerned matters within the scope of his employment by Kik, and Mr. Yang's statements during such testimony were the statements of Kik under Federal Rule of Evidence 801(d)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "on behalf of Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Mr. Yang, and instead seeks the wholesale admission of entire transcripts as corporate admissions.  *Kolb*, 109 F.R.D. at 128.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism.  Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2).  Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 30:**

Admit that Tanner Philp's investigative testimony on August 20 and 21, 2018, concerned matters within the scope of his employment by Kik, and Mr. Philp's statements during such testimony were the statements of Kik under Federal Rule of Evidence 801(d)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "on behalf of Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify

specific statements by Mr. Philp, and instead seeks the wholesale admission of entire transcripts as corporate admissions.  *Kolb*, 109 F.R.D. at 128.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism.  Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2).  Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 31:**

Admit that Eileen Lyon's investigative testimony on August 30, 2018, concerned matters within the scope of her employment by Kik, and Ms. Lyon's statements during such testimony were the statements of Kik under Federal Rule of Evidence 801(d) (2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "on behalf of Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Ms. Lyon, and instead seeks the wholesale admission of entire transcripts as corporate admissions.  *Kolb*, 109 F.R.D. at 128.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism.  Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 32:**

Admit that as of September 20-21, 2018, Peter Heinke provided services to Kik pursuant to a consulting agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the terms "provided services" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that Peter Heinke entered into a consulting agreement with Kik on July 1, 2018, and that such consulting agreement was in effect as of September 20-21, 2018. Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 33:**

Admit that Peter Heinke provided investigative testimony on September 20 and 21, 2018, as part of his consulting agreement with Kik.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "as part of his consulting agreement" as vague and ambiguous,

overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that Peter Heinke provided testimony to the Commission on September 20 and 21, 2018.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 34:**

Admit that Peter Heinke's investigative testimony on September 20 and 21, 2018, concerned matters within the scope of his employment by Kik, and Mr. Heinke's statements during such testimony were the statements of Kik under Federal Rule of Evidence 801(d)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "within the scope of his employment by Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Mr. Heinke, and instead seeks the wholesale admission of entire transcripts as corporate admissions.  *Kolb*, 109 F.R.D. at 128.  Moreover, Kik objects on the basis that Mr. Heinke was not employed by Kik at the time these statements were made.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism.  Kik cannot

adequately consider such a request as the Commission fails to identify the specific statements it requests Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 35:**

Admit that Eran Ben-Ari's October 23, 2018, investigative testimony concerned matters within the scope of his employment by Kik, and Mr. Ben-Ari's statements during such testimony were the statements of Kik under Federal Rule of Evidence 801(d) (2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the term "within the scope of his employment by Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism. However, even if this Request was a proper use of this procedural mechanism, Kik further objects to this Request as it fails to identify specific statements by Mr. Ben-Ari, and instead seeks the wholesale admission of entire transcripts as corporate admissions. *Kolb*, 109 F.R.D. at 128. Moreover, Kik objects on the basis that Mr. Ben-Ari was not employed by Kik at the time these statements were made. Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge. Kik further objects to the extent this Request calls for a legal conclusion. Kik further objects to this Request as it assumes Kik's admission of authenticity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: this Request is an improper use of this procedural mechanism. Kik cannot adequately consider such a request as the Commission fails to identify the specific statements it requests Kik deem corporate admissions pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 36:**

Admit that between February 22, 2017 and September 17, 2018, Kik was a privately-held Canadian corporation with headquarters in Waterloo, Ontario and offices in New York City and Tel Aviv.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "was a privately-held Canadian corporation" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, between February 22, 2017 and September 17, 2018, Kik was a privately-held Canadian corporation with its headquarters in Waterloo, Ontario and offices in New York and Tel Aviv.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 37:**

Admit that the document produced by Kik with Bates number KIK000001-28 is a complete and accurate copy of the Kin white paper.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

Kik incorporates its General Responses and Objections by reference herein.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism. However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 38:**

Admit that Kik released the Kin white paper with Bates number KIK000001-28 to the public on or about May 25, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Kik incorporates its General Responses and Objections by reference herein.  Further, this is an improper and inefficient use of this procedural mechanism.  However, even if this were a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that Kik released the Kin white paper with Bates number KIK00000l-28 to the public on or about May 25, 2017, by simultaneously publishing the white paper online and releasing a press release announcing the Kin project.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 39:**

Admit that the document produced by Kik with Bates number KIK0000029-36 is a complete and accurate copy of a Frequently Asked Questions document created by Kik.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Kik incorporates its General Responses and Objections by reference herein.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 40:**

Admit that Kik released the Frequently Asked Questions document with Bates number KIK0000029-36 to the public in or around August 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Kik incorporates its General Responses and Objections by reference herein.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits this Request.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the document produced by Kik with Bates number KIK000037-65 is a complete and accurate copy of the private placement memo that Kik provided to SAFT participants.

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that the document produced by Kik with Bates number KIK000037-65 is a complete and accurate copy of the private placement memo that Kik provided to pre-sale participants.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 42:**

Admit that Kik provided the private placement memo with Bates number KIK000037-65 to SAFT participants.

**RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that Kik provided the private placement memo with Bates number KIK000037-65 to pre-sale participants.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 43:**

Admit that the document produced by Kik with Bates number KIK000066-72 is a complete and accurate copy of the SAFT that entitled purchasers to receive Kin in the event of a Network Launch (defined in the SAFT) upon the terms set forth in the SAFT.

**RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

      Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "the SAFT" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

      Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that the document produced by Kik with Bates number KIK000066-72 is a complete and accurate copy of the form Simple Agreement for Future Tokens ("SAFT"), under which pre-sale participants would be issued 50 percent of their Kin tokens if and when a Network Launch occurred and a number of other conditions were satisfied, and the remaining 50 percent of their Kin tokens on the one-year anniversary of the Network Launch. Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 44:**

      Admit that Kik provided the SAFT contract with Bates number KIK000066-72 to SAFT participants, and SAFT participants executed the SAFT contract.

**RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

      Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants" and "the SAFT contract" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the

Investigation.   Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that Kik provided individualized SAFTs to pre-sale participants, and pre-sale participants chose whether to execute their individualized SAFTs.   Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 45:**

Admit that the document produced by Kik with Bates number KIK000073-78 is a complete and accurate copy of the Form D that Kik filed with the U.S. Securities and Exchange Commission on or about September 11, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

Kik incorporates its General Responses and Objections by reference herein.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism. However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.   Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 46:**

Admit that the document produced by Kik with Bates number KIK000098-108 is a complete and accurate copy of the User Registration Guide drafted by Kik for the public sale.

**RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "drafted by Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that the document produced by Kik with Bates number KIK000098-108 is a complete and accurate copy of the User Registration Guide drafted by Kik for the Token Distribution Event (the "TDE").  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 47:**

Admit that Kik released the User Registration Guide document with Bates number KIK000098-108 to the public in August 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

Kik incorporates its General Responses and Objections by reference herein.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 48:**

Admit that the document produced by Kik with Bates number KIK 00007193-7229 is a complete and accurate copy of Kik's audited financial statements for the fiscal year that ended June 30, 2016.

**RESPONSE TO REQUEST FOR ADMISSION NO. 48:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "audited financial statements" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism.  However, even if this Request was a proper use of this procedural mechanism, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 49:**

Admit that the document produced by Kik with Bates number KIK00007243-7279 is a complete and accurate copy of Kik's audited financial statements for the fiscal year that ended June 30, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 49:**

Kik incorporates its General Responses and Objections by reference herein.  Further, Kik objects that this Request represents an improper and inefficient use of this procedural mechanism. However, even if this Request was a proper use of this procedural mechanism, Kik objects to the

extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 50:**

Admit that Kik did not provide Kik's audited financial statements to SAFT participants before the participants entered the SAFTs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 50:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the term "SAFT participants" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it did not provide any of its audited financial statements to SAFT participants prior to entering into the SAFTs because the pre-sale was conducted pursuant to Rule 506(c), Kik was not obligated to disclose information regarding its financial condition, budget, or use of proceeds to pre-sale participants.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 51:**

Admit that Kik did not provide Kik's audited financial statements to potential Kin purchasers before the public sale.

**RESPONSE TO REQUEST FOR ADMISSION NO. 51:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "public sale" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, because the TDE did not fall under the purview of the federal securities laws, Kik was under no obligation to disclose information regarding its financial condition, budget, or use of proceeds or revenue to potential participants in the TDE.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 52:**

Admit that upon entering a SAFT, a SAFT participant paid U.S. dollars to Kik as set forth in the SAFT.

**RESPONSE TO REQUEST FOR ADMISSION NO. 52:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participant" and "upon entering a SAFT" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that pre-sale participants paid U.S. dollars to Kik in exchange for the conditional rights as set forth in their particular SAFT.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 53:**

Admit that under the terms of the SAFT, Kik would issue to SAFT participants a certain number Kin tokens in the event of a Network Launch (defined in the SAFT) upon the terms set forth in the SAFT. In such an event, Kik would deliver to the SAFT participants the required amount of Kin automatically, without further action required by the SAFT participants.

**RESPONSE TO REQUEST FOR ADMISSION NO. 53:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "the SAFT" and "automatically, without further action required by the SAFT participants," as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that, in the event of a Network Launch, pre-sale participants would receive the amount of Kin they were entitled to under the terms of their SAFT per the terms of their particular SAFT.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 54:**

Admit that under the terms of the SAFT, SAFT participants would receive Kin tokens at a discounted price of 70 percent of the maximum price per Kin sold by Kik during the public sale.

**RESPONSE TO REQUEST FOR ADMISSION NO. 54:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants" and "the SAFT" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, under the terms of the form SAFT with Bates number KIK000066-72, pre-sale participants would ultimately receive Kin tokens at a discounted price of 70 percent of the maximum price per Kin sold by Kik during the TDE upon the occurrence of a number of conditions.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 55:**

Admit that under the terms of the SAFT, Kik would issue to SAFT participants 50 percent of Kin tokens at the time of the public sale and the remaining 50 percent on the one-year anniversary of the public sale.

**RESPONSE TO REQUEST FOR ADMISSION NO. 55:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "the SAFT,"  "SAFT participants," "public sale," and "one-year anniversary of the public sale," as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, under the terms of the form SAFT and upon the occurrence of a number of conditions, pre-sale participants would be issued 50 percent of their Kin tokens if and when a Network Launch occurred, and the remaining 50 percent of their Kin tokens on the one-year anniversary of the Network Launch.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 56:**

Admit that the SAFT participants' contractual obligations were set forth in the terms of the SAFT, which explained when and how Kin would be distributed, if at all.

**RESPONSE TO REQUEST FOR ADMISSION NO. 56:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants' contractual obligations" and "the SAFT" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that each pre-sale participant's contractual obligations were set forth in each participant's SAFT.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 57:**

Admit that in the public sale, the purchasers paid Ether and received Kin tokens.

**RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "public sale" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that participants in the TDE paid Ether in exchange for Kin tokens. Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 58:**

Admit that Kik conducted KYC and AML processes to screen participants who desired to purchase Kin.  Once that process was complete and participants in the public sale received tokens, Kik imposed no resale or use restrictions on Kin distributed at the time of the public sale.  Upon vesting pursuant to the terms of the SAFT, the SAFT participants receiving Kin were not, and will not be, subject to transfer or use restrictions on Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 58:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "the SAFT," "SAFT participants," "resale or use restrictions," and "transfer or use restrictions" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that Kik conducted KYC and AML processes to screen potential participants who desired to purchase Kin.  Kik further admits that, with respect to the TDE, and consistent with the Terms of Use, which state that Kin tokens were sold "as is," Kik did not impose resale or use restrictions on Kin.  With respect to the pre-sale, Kik further admits that it did not impose resale or use restrictions on Kin distributed to pre-sale participants pursuant to the terms of each participant's SAFT, as pre-sale participants also received full ownership over their Kin.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 59:**

Admit that Kik barred prospective Kin purchasers in some countries from the public sale based on information about the locations of those prospective purchasers that had been gathered through Kik's KYC and AML processes.

**RESPONSE TO REQUEST FOR ADMISSION NO. 59:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "barred," "location," and "public sale" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, in the TDE, Kik declined to sell Kin to potential participants from certain countries, including China, Canada, Cuba, and North Korea.  Kik further admits that it relied on the KYC and AML processes to identify potential participants' citizenship, as well as their country or state of residence, in deciding which potential participants were or were not eligible to purchase Kin.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 60:**

Admit that by entering into SAFTs and selling Kin tokens during the public sale, Kik received about $100 million in U.S. dollars and Ether.

**RESPONSE TO REQUEST FOR ADMISSION NO. 60:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "public sale" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, Kik received $49.05 million in U.S. dollars from selling the conditional contractual rights created by SAFTs in the pre-sale, and that Kik separately received Ether then worth $49.2 million by selling Kin tokens in the TDE.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 61:**

Admit that from July 2017 to September 11, 2017, Kik entered into SAFTs with SAFT participants who paid U.S. dollars to Kik. Kik sold to about 50 total purchasers for about $49.48 million.

**RESPONSE TO REQUEST FOR ADMISSION NO. 61:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants" and "about" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik

responds as follows: Kik admits that, in the pre-sale, Kik sold the conditional contractual rights in the form of individualized SAFTs in exchange for U.S. dollars from June 2017 through September 11, 2017.  Kik further admits that it sold the conditional contractual rights in individualized SAFTs to 50 pre-sale participants for a total of $49.05 million.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 62:**

Admit that KIK001187 and KIK000283 contain an address column, listing 10 addresses in the State of New York with approximately $9.045 million contributed collectively.

**RESPONSE TO REQUEST FOR ADMISSION NO. 62:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "collectively" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that a document purportedly bates-labeled KIK001187, which was reproduced by the Commission as EPROD-SEC-KIK-000043407, and a document purportedly bates-labeled KIK000283, which was reproduced by the Commission as EPROD-SEC-KIK-000043109 contain an address column, listing 10 addresses in the State of New York with approximately $9.050 million contributed collectively.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 63:**

Admit that to the best of Kik's knowledge, the document produced by Kik with Bates number KIK001187 is a complete and accurate list of the people and entities who entered into SAFTs with Kik, the amount of the purchase, and the date on which the SAFT was executed.

**RESPONSE TO REQUEST FOR ADMISSION NO. 63:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "the SAFT" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: to the best of Kik's knowledge, Kik admits that document purportedly bates-labeled KIK001187, which was reproduced by the Commission as EPROD-SEC-KIK-000043407, is a complete and accurate list of the people and entities who entered into SAFTs with Kik in the pre-sale, the amount of the purchase, and the date on which the particular SAFT was executed. Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 64:**

Admit that to the best of Kik's knowledge, the document produced by Kik with Bates number KIK000283 is a complete and accurate list of people and entities who entered into SAFTs with Kik and the document contains columns with the following titles: amount, address, email, and phone.

**RESPONSE TO REQUEST FOR ADMISSION NO. 64:**

Kik incorporates its General Responses and Objections by reference herein.  Further, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 65:**

Admit that in the public sale, Kik sold Kin tokens for Ether from September 12 to 26, 2017. Kik sold to about 10,000 total purchasers for about $49.176 million in Ether. Of those purchasers, 3,456 who contributed a total of about $16.785 million in Ether, provided addresses with postal codes in the U.S. as part of the KYC process.

**RESPONSE TO REQUEST FOR ADMISSION NO. 65:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "about" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, in the TDE, Kik sold Kin tokens for Ether from September 12 to 26, 2017.  Kik further admits that it sold Kin to about 10,000 participants for what was then $49.2 million worth of Ether.  Of those participants, Kik admits that 3,456 contributed a total of $16.8 million in Ether, and provided addresses with postal codes in the U.S. as part of the KYC process.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 66:**

Admit that the public sale of Kin tokens was not registered under the Securities Act of 1933.

**RESPONSE TO REQUEST FOR ADMISSION NO. 66:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "public sale" as vague and ambiguous, overbroad, and unintelligible

in the context of this Request.  Kik further objects to the extent the information Requested is equally available to the Commission.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, because Kik's sale of Kin tokens was not a sale of securities under the federal securities laws, the sale of Kin tokens in the TDE was not registered under the Securities Act of 1933.  Except as expressly admitted herein, Kik denies this Request**.**

**REQUEST FOR ADMISSION NO. 67:**

Admit that to the best of Kik's knowledge, the document produced by Kik with Bates number KIK001188 is a complete and accurate list of the people who purchased Kin tokens in the public sale portion of the Kin token offering, with Ether address, Kin, amount of Ether, amount in U.S. dollars, IP address, age, postal country, and country of those individuals and whether the person linked their wallets holding Kin to their Kik accounts as of November 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "public sale portion" and "Kin token offering" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Further, Kik objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation. Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, to the

best of Kik's knowledge, Kik responds as follows: Kik admits that the document produced by Kik in the Investigation with Bates number KIK001188 is a complete and accurate list of the people or entities who purchased Kin tokens in the TDE, along with the Ether address, Kin received, amount of Ether paid, amount paid in U.S. dollars, IP address, age, postal country, and country, as well as a column indicating whether the person linked their wallet to their Kik accounts as of November 2017.  Except as expressly admitted herein, Kik denies this Request**.**

**REQUEST FOR ADMISSION NO. 68:**

Admit that on or about September 26, 2017, Kik delivered to SAFT participants one-half of the Kin tokens that they were entitled to receive under the terms of the SAFT.

**RESPONSE TO REQUEST FOR ADMISSION NO. 68:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants," "the SAFT," and "entitled to receive" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, on or about September 26, 2017, Kik delivered to pre-sale participants one-half of the Kin tokens that they were entitled to receive under the terms of their particular SAFT.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 69:**

Admit that on or about September 26, 2017, Kik delivered to public sale participants the Kin tokens that they were entitled to receive under the terms of the public sale. Kik itself received three trillion Kin tokens at the time of the public sale.

**RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "public sale" as vague and ambiguous, overbroad, and unintelligible

in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, on or about September 26, 2017, TDE participants automatically received the Kin tokens that they were entitled to receive under the terms of the TDE pursuant to a smart contract that was created by a third party.  Kik further admits that it received three trillion Kin tokens at the time of the TDE.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 70:**

Admit that Kik received payments from the public sale in Ether, in its Ether wallet. Subsequent to the public sale, Kik converted some of the Ether into U.S. dollars, which were deposited in its account at Silvergate Bank, which is located in California. The payments received from SAFT participants were deposited in U.S. dollars in Kik's account at TD Bank, located in Canada.

**RESPONSE TO REQUEST FOR ADMISSION NO. 70:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants" and "public sale" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that Kik received revenue from the TDE in Ether, in its Ether wallet.  Kik further admits that, subsequent to the TDE, Kik converted some of the Ether into U.S. dollars, which were deposited in Kik's account at Silvergate Bank, located in California.  Kik

further admits that proceeds from the pre-sale was deposited in U.S. dollars in Kik's account at TD Bank, located in Canada.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 71:**

Admit that Kik has used a portion of the sale proceeds that were deposited in its California and Canadian bank accounts as working capital to fund Kik's business operations.

**RESPONSE TO REQUEST FOR ADMISSION NO. 71:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "sale proceeds," "working capital," and "business operations" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it has used proceeds generated by the pre-sale and revenue generated by the TDE, which were first deposited in Kik's California and Canadian bank accounts, as working capital to fund Kik's business operations.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 72:**

Admit that Kik has used a portion of the sale proceeds that were deposited in its California and Canadian bank accounts to develop the Kin Ecosystem and to complete tasks described in the Kin white paper.

**RESPONSE TO REQUEST FOR ADMISSION NO. 72:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "sale proceeds," "develop," and "tasks" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it used funds that were first deposited in Kik's Silvergate Bank account to further its efforts as a participant in the Kin Ecosystem.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 73:**

Admit that to start to create the Kin Ecosystem and to complete tasks described in the Kin white paper, Kik used, among other funds, funds from its account at Silvergate Bank into which proceeds from the public sale had been deposited.

**RESPONSE TO REQUEST FOR ADMISSION NO. 73:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "proceeds," "public sale," "create," and "tasks" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it used funds that were first deposited in Kik's Silvergate Bank account to further its efforts as a participant in the Kin Ecosystem.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 74:**

Admit that Kik exchanged most, but not all, of the Ether that it received in its Ether Wallet from the public sale for U.S. dollars, which were deposited in Kik's account at Silvergate Bank.

**RESPONSE TO REQUEST FOR ADMISSION NO. 74:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "most, but not all" and "public sale" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to

the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that Kik received revenue from the TDE in Ether, in its Ether wallet.  Subsequent to the TDE, Kik converted some of the Ether into U.S. dollars, which were then deposited in Kik's account at Silvergate Bank, which is located in California.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 75:**

Admit that to start to create the Kin Ecosystem and to complete tasks described in the Kin white paper, Kik used, among other funds, funds from its account at TD Bank into which proceeds from SAFT participants had been deposited.

**RESPONSE TO REQUEST FOR ADMISSION NO. 75:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "start," "proceeds," "create," "tasks," and "SAFT participants" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it used funds from Kik's TD Bank account to further its efforts as a participant in the Kin Ecosystem.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 76:**

Admit that all Kin tokens distributed at the time of the public sale are fungible.

**RESPONSE TO REQUEST FOR ADMISSION NO. 76:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "public sale" and "fungible" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, like all currencies, Kin tokens distributed at the time of the TDE were fungible.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 77:**

Admit that Kik did not publish Kik's financial statements to SAFT or public sale participants.

**RESPONSE TO REQUEST FOR ADMISSION NO. 77:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "publish" and "SAFT or public sale participants" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it is duplicative of Request Nos. 50 and 51.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it did not provide any of its audited financial statements to SAFT participants prior to entering into the SAFTs because the pre-sale was conducted pursuant to Rule 506(c), Kik was not obligated to disclose information regarding its financial condition, budget, or use of proceeds to pre-sale participants.  Kik further admits that, because the TDE did not fall under the purview of the federal securities laws, Kik was under no obligation to disclose

information regarding its financial condition, budget, or use of proceeds to potential participants in the TDE.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 78:**

Admit that the Kin Ecosystem Foundation was founded on September 12, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 78:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik admits that, to the best of its knowledge, the Kin Ecosystem Foundation was founded on September 12, 2017.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 79:**

Admit that from its founding through May 9, 2018, the Kin Ecosystem Foundation had two directors – Kik CEO Ted Livingston and Kik's CFO and SVP Corporate Development Peter Heinke.

**RESPONSE TO REQUEST FOR ADMISSION NO. 79:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik

responds as follows: Kik admits that, effective May 9, 2018, William Mougayar was appointed to the Kin Ecosystem Foundation's Board and Peter Heinke resigned from the Board.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 80:**

Admit that from its founding through May 9, 2018, the Kin Ecosystem Foundation had no members.

**RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the term "members" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik respond as follows: Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 81:**

Admit that from its founding through at least September 17, 2018, the Kin Ecosystem Foundation had no employees.

**RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**Kik REQUEST FOR ADMISSION NO. 82:**

Admit that from its founding through at least December 31, 2017, the Kin Ecosystem Foundation's only asset was the six trillion Kin tokens it received on September 26, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 83:**

Admit that from its founding through September 17, 2018, the Kin Ecosystem Foundation entered into contracts relating to insurance coverage, with consultants, and a Services Contract with Kik.

**RESPONSE TO REQUEST FOR ADMISSION NO. 83:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that the Kin Ecosystem Foundation entered into a Services Contract between Kik and the Foundation.  Kik is without personal knowledge sufficient to either admit or deny the remainder of this Request, and on that basis denies the remainder of the Request.

**REQUEST FOR ADMISSION NO. 84:**

Admit that on behalf of the Kin Ecosystem Foundation, under a Services Contract and Agency Agreement with Kik, Kik employees created social media accounts under the Kin Ecosystem Foundation's name and wrote posts on those media channels that appear under the Foundation's name, including Twitter, Reddit, and Telegram.

**RESPONSE TO REQUEST FOR ADMISSION NO. 84:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, on behalf of the Kin Ecosystem Foundation, and under a Services Contract between Kik and the Foundation, Kik employees created social media accounts under the Kin Ecosystem Foundation's name and wrote posts on those media channels that appear

under the Kin Ecosystem Foundation's name, including Twitter, Reddit, and Telegram.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 85:**

Admit that Kik controls the Kik messaging application, and, from its founding through at least September 17, 2018, the Kin Ecosystem Foundation had no right or power to make changes to the Kik messaging application.

**RESPONSE TO REQUEST FOR ADMISSION NO. 85:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "make changes" and "Kik messaging application" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 86:**

Admit that from its founding through September 17, 2018, the Kin Ecosystem Foundation did not compensate Kik for services provided to the Kin Ecosystem Foundation by Kik pursuant to the Services Contract with Kik.

**RESPONSE TO REQUEST FOR ADMISSION NO. 86:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "compensate" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik denies this Request.

**REQUEST FOR ADMISSION NO. 87:**

Admit that from its founding through at least September 17, 2018, the Kin Ecosystem Foundation did not make changes to the Kik messaging application. That work was done by Kik Interactive or Kik's other agents.

**RESPONSE TO REQUEST FOR ADMISSION NO. 87:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "make changes" and "Kik messaging application" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.  Kik further objects to this Request to the extent it is duplicative of Request No. 85.  Kik further objects to this Request as it is compound.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 88:**

Admit that from its founding through at least September 17, 2018, the Kin Ecosystem Foundation did not make changes to any blockchain on which Kin could be transferred or exchanged. That work was done by Kik or Kik's other agents.

**RESPONSE TO REQUEST FOR ADMISSION NO. 88:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "make changes" and "that work" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks

information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.  Kik further objects to this Request as it is compound.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik respond as follows:  Kik denies this Request.

**REQUEST FOR ADMISSION NO. 89:**

Admit that from its founding through at least September 17, 2018, the Kin Ecosystem Foundation did not develop, or make changes to, any transaction service on which Kin could be transferred or exchanged. That work was done by Kik or Kik's other agents.

**RESPONSE TO REQUEST FOR ADMISSION NO. 89:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "develop, or make changes to, any transaction service" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.  Kik further objects to this Request as it is compound.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: because this Request is so vague and ambiguous as to be unintelligible, Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 90:**

Admit that none of the companies that were contacted by the investment banker that Kik hired in late 2016, as referenced in your Answer to paragraph 6 of the Complaint, made an offer to buy Kik.

**RESPONSE TO REQUEST FOR ADMISSION NO. 90:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "the investment banker that Kik hired in late 2016" and "made an offer to buy Kik" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: because this Request is so vague and ambiguous as to be unintelligible, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 91:**

Admit that in the communication from Kik's consultant to Kik that you quote in your Answer to Paragraph 17 of the Complaint, Kik's consultant discussed whether a crypto currency "[i]n the case of community currency" potentially could be a security.

**RESPONSE TO REQUEST FOR ADMISSION NO. 91:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "discussed" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik denies this Request.

**REQUEST FOR ADMISSION NO. 92:**

Admit that from May through September 2017, Kik offered Kin to people in the United States.

**RESPONSE TO REQUEST FOR ADMISSION NO. 92:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the terms "offered" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Kik further objects to the extent this Request calls for a legal conclusion. Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it commenced its sale of Kin on September 12, 2017, and that its sale continued through September 27, 2017, and that it ultimately sold about $50 million in Kin to approximately 10,000 TDE participants, less than one third of whom were residents of the United States. Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 93:**

Admit that from July through September 11, 2017, Kik entered into SAFTs with persons or entities located in the United States.

**RESPONSE TO REQUEST FOR ADMISSION NO. 93:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, from July through September 11, 2017, Kik entered into individualized SAFTs with pre-sale participants across the globe, including the United States.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 94:**

Admit that in at least September 2017, Kik sold Kin to people in the United States.

**RESPONSE TO REQUEST FOR ADMISSION NO. 94:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, from September 12, 2017 through September 27, 2017, Kik sold Kin to participants from over 117 countries in the TDE, including those from in the United States.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 95:**

Admit that between May and September 2017, members of Kik's management travelled to multiple cities in the United States to market Kin to prospective purchasers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 95:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik's management" and "market Kin" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits

that, between May and September 2017, members of Kik's management team from Canada travelled to certain cities around the world, including in the United States, to talk about the Kin project.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 96:**

Admit that starting in early July 2017 and continuing through September 11, 2017, Kik entered into SAFTs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 96:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "entered into SAFTs" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it entered into individualized SAFT agreements with certain pre-sale participants.

**REQUEST FOR ADMISSION NO. 97:**

Admit that all SAFT participants received the Kin they were due under the SAFT.

**RESPONSE TO REQUEST FOR ADMISSION NO. 97:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants," "received the Kin they were due," and "the SAFT" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits

that all pre-sale participants received Kin pursuant to the terms of their particular SAFT.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 98:**

Admit that no SAFT participant declined to receive Kin that the participant was owed under the SAFT.

**RESPONSE TO REQUEST FOR ADMISSION NO. 98:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "declined," "SAFT participant," "Kin that the participant was owed," and "the SAFT" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 99:**

Admit that once a SAFT participant complied with all requirements for entering the SAFT – namely, executing and delivering all transaction documents, providing Kik with a network address for the allocation of Kin, and making the required payment to Kik – the participant's receipt of Kin under the SAFT was not contingent upon any additional action by the participant.

**RESPONSE TO REQUEST FOR ADMISSION NO. 99:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participant," "contingent upon any additional action," "executing and delivering all transaction documents," "network address," and "the SAFT" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further

objects to this Request to the extent it is duplicative of Request No. 53.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that once a pre-sale participant satisfied all of the requirements set forth in that participant's particular SAFT, that participant would receive Kin tokens upon the occurrence of the remaining contingencies set forth in their SAFT.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 100:**

Admit that under the SAFT, if the network launch did not occur by the SAFT's deadline, Kik was obligated to return 70 percent of the purchase amounts previously paid by the SAFT participants.

**RESPONSE TO REQUEST FOR ADMISSION NO. 100:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "deadline," "the SAFT," and "SAFT participants" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, if the Network Launch did not occur, Kik would have been required to return 70 percent of the amount paid by SAFT participants.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 101:**

Admit that Kik and SAFT participants were in a common enterprise.

**RESPONSE TO REQUEST FOR ADMISSION NO. 101:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "SAFT participants" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that the terms of the form SAFT state that the SAFT is a security.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 102:**

Admit that the Kin delivered to SAFT participants on September 26, 2017 were no different than the Kin delivered to public sale participants on that same date.

**RESPONSE TO REQUEST FOR ADMISSION NO. 102:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants" and "no different than" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that all Kin that were distributed were fungible.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 103:**

Admit that the Kin tokens that Kik retained in September 2017 were no different than the Kin tokens delivered to public sale participants and SAFT participants.

**RESPONSE TO REQUEST FOR ADMISSION NO. 103:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants" and "no different than" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.  Kik further objects to the extent this Request is duplicative of Request No. 102.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that all Kin that were distributed were fungible.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 104:**

Admit that each Kin token obtained by public sale participants or SAFT participants had equal value and had a value that was equal to each and every other Kin token that was issued.

**RESPONSE TO REQUEST FOR ADMISSION NO. 104:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "SAFT participants" and "equal value and had a value that was equal to each and every other Kin token that was issued" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.  Kik further objects to the extent this Request is duplicative of Requests Nos. 102-103.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that all Kin that were distributed were fungible.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 105:**

Admit that no individual Kin token has greater rights or value than any other Kin token.

**RESPONSE TO REQUEST FOR ADMISSION NO. 105:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "greater rights" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.  Kik further objects to this Request to the extent it is duplicative of Request Nos. 102-104.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that all Kin that were distributed were fungible.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 106:**

Admit that any change in the market value of Kin after Kin's distribution on September 26, 2017, equally affected the value of each Kin token held by public sale participants, SAFT participants, and Kik.

**RESPONSE TO REQUEST FOR ADMISSION NO. 106:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "affected" and "SAFT participants" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks

information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.  Kik further objects to this Request to the extent it is duplicative of Request Nos. 102-105.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that all Kin that were distributed were fungible.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 107:**

Admit that the description of the risk factors that appears in the PPM (KIK000051- 57) did not appear in substantially the same form in the Terms of Use, to which you refer in your Answer to paragraph 79 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 107:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "description of the risk factors" and "substantially the same form" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.  Kik further objects to the extent this Request refers to a document that was produced outside the scope of this Action during the Investigation.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that the descriptions of the risk factors that appear in the PPM are different from those that are contained in the Terms of Use, precisely because of the numerous differences between Kik's sale of contractual rights pursuant to SAFT agreements and the TDE. Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 108:**

Admit that between May 25 and September 26, 2017, Kik promoted the offer and sale of Kin through thousands of statements made in hundreds of speaking engagements, conferences, interviews, blog posts, articles, and other public communications.

**RESPONSE TO REQUEST FOR ADMISSION NO. 108:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "offer and sale" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that between May 25 and September 26, 2017, Kik made many statements in numerous speaking engagements, conferences, interviews, blog posts, articles, and other public communications regarding Kin.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 109:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that Kik would take steps to encourage increased demand for Kin after Kin was issued.

**RESPONSE TO REQUEST FOR ADMISSION NO. 109:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik made multiple public statements" and "would take steps to encourage increased demand" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Further, Kik objects to the Commission's characterization of Kik's purported statements.  Kik

further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik denies this Request.

**REQUEST FOR ADMISSION NO. 110:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that, after Kin was issued, Kik would try to generate interest in adoption of Kin by consumers as a medium of exchange.

**RESPONSE TO REQUEST FOR ADMISSION NO. 110:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik made multiple public statements" and "generate interest in adoption of Kin by consumers as a medium of exchange" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Further, Kik objects to the Commission's characterization of Kik's purported statements.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik denies this Request.

**REQUEST FOR ADMISSION NO. 111:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that either Kik expected Kin to trade on exchanges or exchanges had indicated they would list Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 111:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik made multiple public statements," "expected," "indicated,"

and "list Kin" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Further, Kik objects to the Commission's characterization of Kik's purported statements.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, between May 25 and September 26, 2017, Kik made at least one public statement that Kik understood that Kin could trade on exchanges, or that exchanges had independently indicated they would list Kin.  Kik further admits that any such statements were made in the context of Kik's additional statements that whether Kin was listed on exchanges was up to the exchanges, not Kik.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 112:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that Kik would be involved in building the underlying infrastructure for Kin after Kin was issued.

**RESPONSE TO REQUEST FOR ADMISSION NO. 112:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "involved" and "building the underlying infrastructure" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects to the Commission's characterization of Kik's purported statements.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, between May 25 and September 26, 2017, Kik stated publicly that, while Kik was involved as a participant in the Kin Ecosystem, Kik alone would not and could not support the Kin economy, the success of which depended on a diverse community of consumers and developers, aside from Kik, adopting Kin as a medium of exchange in this new digital economy.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 113:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that Kik would be involved in trying to address the technological limitations of the Ethereum blockchain after Kin was issued.

**RESPONSE TO REQUEST FOR ADMISSION NO. 113:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "multiple public statements," "involved," and "trying to address the technological limitations" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects to the Commission's characterization of Kik's purported statements.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it publicly stated that it "welcomed the opportunity to work with the blockchain technology community" in addressing the limitations of the Ethereum blockchain.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 114:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that Kik would work to integrate Kin with Kik Messenger after Kin was issued.

**RESPONSE TO REQUEST FOR ADMISSION NO. 114:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik made multiple public statements" and "work to" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects to the Commission's characterization of Kik's purported statements.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, as in the White Paper, Kik publicly stated that "[t]he foundation will commence the [TDE] once Kik has completed the technology upgrade to integrate

with Kin, and the cryptocurrency can be used functionally within Kik." Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 115:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that work on the Rewards Engine would occur after Kin was issued.

**RESPONSE TO REQUEST FOR ADMISSION NO. 115:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the term "work on" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Further, Kik objects to the Commission's characterization of Kik's purported statements.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 116:**

Admit that between May 25 and September 2017, Kik made multiple public statements that it would limit the supply of Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 116:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the terms "Kik made multiple public statements" and "limit the supply" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Further, Kik objects to the Commission's characterization of Kik's purported statements.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that Kik publicly stated that, when Kin was minted, there would be a fixed supply of 10 trillion tokens. Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 117:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that, if the supply of Kin were capped, an increase in the demand for Kin would lead to an increase in the value of Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 117:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik made multiple public statements" and "capped" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects to the Commission's characterization of Kik's purported statements.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, between May 25 and September 26, 2017, Kik executives made public statements that Kin token prices could increase or decrease based on basic economic principles of supply and demand that apply to any asset.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 118:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that Kik hoped to benefit alongside other Kin holders from an increase in the value of Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 118:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik made multiple public statements," "benefit," and "hoped" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects to the Commission's characterization of Kik's purported statements.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, between May 25 and September 26, 2017, Kik publicly stated

that, if Kin's price increased, the price of the collective Kin it owned would increase as well since Kin were fungible.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 119:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that the funds raised in the offer and sale of Kin would be used to develop the Kin Ecosystem.

**RESPONSE TO REQUEST FOR ADMISSION NO. 119:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik made multiple public statements," "offer and sale of Kin," and "develop" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Further, Kik objects to the Commission's characterization of Kik's purported statements.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik publicly stated that the revenue from the TDE would at least be used in part to further its participation in the Kin Ecosystem.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 120:**

Admit that between May 25 and September 26, 2017, Kik made multiple public statements that Kik would support or influence the Kin Ecosystem Foundation after Kin was issued.

**RESPONSE TO REQUEST FOR ADMISSION NO. 120:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik multiple public statements" and "support or influence" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Further, Kik objects to the Commission's characterization of Kik's purported statements.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik denies this Request.

**REQUEST FOR ADMISSION NO. 121:**

Admit that between May 25 and September 26, 2017, Kik did not make any public statement that identified a good or service that could then be bought with Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 121:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "good or service" and "could then be bought" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik denies this Request because Kin had not yet been launched between May 25 and September 26, 2017, and there were therefore no goods or services that could be bought with Kin.

**REQUEST FOR ADMISSION NO. 122:**

Admit that between May 25 and September 26, 2017, Kik did not make any public statement that identified a good or service that Kin holders would be able to buy with Kin in the future.

**RESPONSE TO REQUEST FOR ADMISSION NO. 122:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "a good or service" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik denies this Request.

**REQUEST FOR ADMISSION NO. 123:**

Admit that between May 25 and September 26, 2017, Kik did not make any public statement that identified an application through which, at the time Kin was to be distributed to public sale participants, a Kin holder would be able to purchase goods or services with Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 123:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik did not make any public statement that identified an application through which" and "purchase goods or services" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, between May 25 and September 26, 2017, Kik publicly stated that Kin would be integrated into Kik Messenger at the time of the TDE.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 124:**

Admit that between May 25 and September 26, 2017, Kik did not make any public statement that identified an application other than Kik Messenger through which, at the time Kin was to be distributed to public sale participants, a Kin holder would be able to purchase goods or services with Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 124:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik did not make any public statement that identified an application through which" and "purchase goods or services" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, between May 25 and September 26, 2017, Kik publicly stated that other companies and developers would be able to integrate Kin into their applications once the Kin token was distributed.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 125:**

Admit that between May 25 and September 26, 2017, Kik did not make any public statement that identified a company other than Kik which, at the time Kin was to be distributed to public sale participants, would sell goods or services for Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 125:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik did not make any public statement" and "goods or services" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that between May 25 and September 26, 2017, Kik publicly stated that other companies and developers would be able to integrate Kin into their applications once the Kin token was distributed.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 126:**

Admit that from May 25 to September 26, 2017, Kik's website did not contain information about declining usage of the Kik messenger app.

**RESPONSE TO REQUEST FOR ADMISSION NO. 126:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the extent this Request exceeds the scope of permissible discovery and seeks irrelevant information not proportional to the needs of the case.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik admits that, while Kik's website did not contain information about declining usage of the Kik Messenger app, Kik made public statements disclosing that fact.  (*See, e.g.*, https://www.vox.com/2016/9/29/13099924/kik-messenger-growth-total-users).   Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 127:**

Admit that Kik employees have worked on the Kin Rewards Engine.

**RESPONSE TO REQUEST FOR ADMISSION NO. 127:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "Kik employees" and "worked on" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, on behalf of the Kin Ecosystem Foundation, and under a Services Contract between Kik and the Foundation, Kik employees have performed various services for the Kin Ecosystem Foundation, including work on the Kin Rewards Engine.  Kik further admits that the Kin Rewards Engine would initially be administered by the Kin Ecosystem Foundation, and that, over time, the Kin Rewards Engine would run autonomously on smart contract technology.   Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 128:**

Admit that Kik instructed certain of its employees to work on the Kin Rewards Engine with the goal of providing a financial incentive for developers which over time would "create a network effect."

**RESPONSE TO REQUEST FOR ADMISSION NO. 128:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "work on," "financial incentive," and "create a network effect" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects

to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, on behalf of the Kin Ecosystem Foundation, and under a Services Contract between Kik and the Foundation, Kik employees have performed various services for the Kin Ecosystem Foundation, including work on the Kin Rewards Engine.  Kik further admits that the Kin Rewards Engine was designed to compensate developers for the work the provided.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 129:**

Admit that through at least August 2018, the only individuals who worked on the Kin Rewards Engine were Kik employees or agents, or persons working under the direction of Kik employees or agents.

**RESPONSE TO REQUEST FOR ADMISSION NO. 129:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "worked on" and "under the direction of" as vague and ambiguous, overbroad, and unintelligible in the context of this Request. Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, on behalf of the Kin Ecosystem Foundation, and under a Services Contract between Kik and the Foundation, Kik employees or agents have performed various services for the Kin Ecosystem Foundation, including work on the Kin Rewards Engine. Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 130:**

Admit that Kik CEO Edward Livingston read the DAO report within days of its issuance on July 25, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 130:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "within days of its issuance" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that Edward Livingston was aware of and reviewed the DAO Report within days of its issuance.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 131:**

Admit that persons from the United States who purchased Kin in the public sale included: (a) two purchasers who paid Ether then worth about $1.6 million and about $970,000 respectively;(b) 20 purchasers who paid Ether then worth about or more than $100,000; (d) 223 who paid Ether then worth about or more than $10,000; and (d) 1,853 purchasers who paid Ether then worth about or more than $1,000.

**RESPONSE TO REQUEST FOR ADMISSION NO. 131:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "about" and "about or more than" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik

responds as follows: (a) Kik admits that, to the best of Kik's knowledge, two TDE participants paid Ether then worth roughly $1.553 million and $970,231, respectively; (b) that roughly 21 TDE participants paid roughly $100,000 in Ether; (d) that roughly 223 TDE participants paid Ether then worth roughly $10,000; and (d) roughly 1,866  TDE participants paid Ether then worth roughly $1,000. Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 132:**

Admit that Kik converted most of the Ether that it received from the public sale of Kin into U.S. Dollars.

**RESPONSE TO REQUEST FOR ADMISSION NO. 132:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "most" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request is duplicative of Requests No. 70 and 74.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: because this Request is so vague and ambiguous as to be unintelligible, Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 133:**

Admit that at the time Kin was distributed on September 26, 2017, it was impossible for a user of Kik Messenger who obtained Kin to create a digital wallet inside the Kik app.

**RESPONSE TO REQUEST FOR ADMISSION NO. 133:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "create a digital wallet inside the Kin app" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik

responds as follows: because this Request is so vague and ambiguous as to be unintelligible, Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 134:**

Admit that at the time Kin was distributed on September 26, 2017, there was no digital wallet within Kik Messenger that would enable users to hold or conduct transactions with Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 134:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "no digital wallet within Kik Messenger" as vague and ambiguous, overbroad, and unintelligible.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: because this Request is so vague and ambiguous as to be unintelligible, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 135:**

Admit that at the time Kin was distributed on September 26, 2017, it was impossible for users of Kik Messenger to exchange Kin for a good or service inside the Kik app.

**RESPONSE TO REQUEST FOR ADMISSION NO. 135:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "good or service" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the forgoing General and Specific Responses and Objections, Kik responds as follows: Kik admits that, at the time Kin was distributed in the TDE on September 26, 2017, there was initial functionality to utilize Kin to access premium content in the form of sticker packs.  Kik further admits that the functionality to exchange Kin for a "good or service" existed from the moment Kin were distributed in the TDE.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 136:**

Admit that at the time Kin was distributed on September 26, 2017, Kin could not be used to purchase digital stickers inside the Kik Messenger app.

**RESPONSE TO REQUEST FOR ADMISSION NO. 136:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the terms "used to purchase digital stickers" and "Kik Messenger app" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, at the time Kin was distributed in the TDE on September 26, 2017, Kin could be used to access digital stickers inside the Kik Messenger app. Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 137:**

Admit that at the time Kin was distributed on September 26, 2017, Kin's functionality within Kik Messenger was limited to the ability of Kin holders (a) to link their external digital wallets to their Kik accounts and display their Kin balances; and (b) to access sticker that were unlocked depending on the amount of Kin owned.

**RESPONSE TO REQUEST FOR ADMISSION NO. 137:**

Kik incorporates its General Responses and Objections by reference herein. Kik further objects to the use of the term "functionality" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 138:**

Admit that neither the purchase nor ownership of Kin gave Kin holders any authority or control over the Kin Ecosystem Foundation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 138:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "authority" and "control" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits this Request.

**REQUEST FOR ADMISSION NO. 139:**

Admit that neither the purchase nor ownership of Kin gave Kin holders any authority or control over any other person's work to develop the Kin Ecosystem.

**RESPONSE TO REQUEST FOR ADMISSION NO. 139:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "authority" and "control" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it does not have control over third party consumers and developers who chose to participate in the Kin economy.  Kik further admits that owning or holding Kin does not convey any associated right of control over other participants in the Kin economy.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 140:**

Admit that Kik is aware of no good or service that could be bought with Kin at the time Kin was distributed on September 26, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 140:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "good or service" and "bought with Kin" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that Kin could be used as a medium of exchange at the time it was distributed in the TDE on September 26, 2017, and could be used to purchase goods or services with peer-to-peer transactions at that time.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 141:**

Admit that the sunglasses that you contend could be purchased using Kin were not available for sale using Kin when Kin was distributed on September 26, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 141:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "could be purchased" and "available for sale using Kin" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows:  Kik lacks sufficient personal knowledge to either admit or deny this Request, and on that basis, among others, denies the Request.

**REQUEST FOR ADMISSION NO. 142:**

Admit that at the time Kin was distributed on September 26, 2017, the Kin Rewards Engine did not autonomously run on smart contract technology.

**RESPONSE TO REQUEST FOR ADMISSION NO. 142:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the term "autonomously run on smart contract technology" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, at the time Kin was distributed in the TDE on September 26, 2017, to the best of Kik's knowledge, the Kin Rewards Engine would have to have been operated through manual distributions of Kin to developers.  Kik further admits that although the smart contract technology was being incorporated within the Kin Rewards Engine at the time of the TDE, it had not yet been launched within the economy.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 143:**

Admit that at the time Kin was distributed on September 26, 2017, the only available method for rewarding a developer with Kin was to manually distribute Kin to the developer.

**RESPONSE TO REQUEST FOR ADMISSION NO. 143:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "manually distribute" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request

to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that, at the time of the September 26, 2017 TDE, to the best of its knowledge, Kik believes that the Kin Rewards Engine would have to have been operated through manual distributions of Kin to developers.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 144:**

Admit that at the time Kin was distributed on September 26, 2017, the Kin Foundation did not employ any individual who could manually distribute Kin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 144:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "employ" and "manually distribute" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik respond as follows:  Kik admits that, on behalf of the Kin Ecosystem Foundation, and under a Services Contract between Kik and the Foundation, Kik employees have performed various services for the Kin Ecosystem Foundation, including the manual distribution of Kin.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 145:**

Admit that at no time before Kin was distributed on September 26, 2017 did Kik publicly announce a date by which the Kin Foundation would be "fully autonomous" or "totally independent" of Kik.

**RESPONSE TO REQUEST FOR ADMISSION NO. 145:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "fully autonomous" and "totally independent" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: admits that, prior to the TDE on September 26, 2017, Kik did not publicly announce a specific date by which the Kin Foundation would be "fully autonomous," but only that the Kin Ecosystem Foundation would be fully decentralized as soon as it could be safely operated as a "fully autonomous" entity.  Kik further admits that the Kin Ecosystem Foundation was independent from its inception.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 146:**

Admit that after receiving Ether in its Ether Wallet during the public sale, Kik treated the Ether interchangeably and did not track the Ether by Kin purchaser.

**RESPONSE TO REQUEST FOR ADMISSION NO. 146:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "interchangeably" and "track" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is

outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: because this Request is so vague and ambiguous as to be unintelligible, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 147:**

Admit that after receiving Ether in its Ether Wallet during the public sale, Kik used the Ether for corporate purposes and without regard to which Kin purchaser had paid the Ether to Kik.

**RESPONSE TO REQUEST FOR ADMISSION NO. 147:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "used" and "corporate purposes" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: because this Request is so vague and ambiguous as to be unintelligible, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 148:**

Admit that after Kik converted Ether that it had received during the public sale into U.S. dollars and deposited the dollars into Kik's account at Silvergate bank, Kik used the funds interchangeably for corporate purposes and without regard to which Kin purchaser had sourced the funds.

**RESPONSE TO REQUEST FOR ADMISSION NO. 148:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the use of the terms "interchangeably for corporate purposes" as vague and ambiguous, overbroad, and unintelligible in the context of this Request.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: Kik admits that it converted Ether into U.S. dollars and thereafter deposited the dollars into Kik's account at Silvergate bank.  Except as expressly admitted herein, Kik denies this Request.

**REQUEST FOR ADMISSION NO. 149:**

Admit that under the current composition of the Kin Foundation's board of directors, where the only directors are Edward Livingston and William Mougayar, Mr. Livingston alone can veto any Kin Foundation action being considered by the board.

**RESPONSE TO REQUEST FOR ADMISSION NO. 149:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to the extent this Request exceeds the scope of permissible discovery and seeks irrelevant information not proportional to the needs of the case.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik

responds as follows: to the best of Kik's knowledge, Mr. Livingston could not approve any action without Mr. Mougayar approving it as well, and vice-versa, unless a conflict of interest caused either board member to recuse himself.  Except as expressly admitted herein, Kik denies this request.

**REQUEST FOR ADMISSION NO. 150:**

Admit that under the current composition of the Kin Foundation's board of directors, where the only directors are Edward Livingston and William Mougayar, Mr. Livingston alone can approve any Kin Foundation action for which Mr. Mougayar has a conflict of interest.

**RESPONSE TO REQUEST FOR ADMISSION NO. 150:**

Kik incorporates its General Responses and Objections by reference herein.  Kik further objects to the extent this Request calls for a legal conclusion.  Kik further objects to this Request to the extent it seeks information that is outside of Kik's personal knowledge.  Kik further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.

Subject to and without waiving the foregoing General and Specific Responses and Objections, and based on Kik's understanding and reasonable interpretation of this Request, Kik responds as follows: to the best of Kik's knowledge, Mr. Livingston could not approve any action without Mr. Mougayar approving it as well, and vice-versa, unless a conflict of interest caused either board member to recuse himself.  Except as expressly admitted herein, Kik denies this request.

Dated: October 7, 2019     Respectfully submitted,


By: */s/ Patrick E. Gibbs*
  Patrick E. Gibbs (183174)
  Sarah M Lightdale (4395661)
  Luke T. Cadigan (561117)
  Brett H. De Jarnette (292919)

  Cooley LLP
  3175 Hanover Street
  Palo Alto, CA  94304-1130
  Phone: (650) 843-5000
  Fax: (650) 849-7400
  Email: pgibbs@cooley.com;
  slightdal@cooley.com;
  lcadigan@cooley.com;
  bdejarnette@cooley.com

  Attorneys for Defendant
  KIK INTERACTIVE INC.

## CERTIFICATE OF SERVICE

I, Jenna Bailey, am over the age of eighteen years, and not party to the within action.  I solemnly swear and state that on October 7, 2019, **K**IK'S **R**ESPONSES TO **T**HE **C**OMMISSION'S **F**IRST **S**ET OF **R**EQUESTS FOR **A**DMISSION (**N**OS. 1-150) was served by email on the following:

Stephan J. Schlegelmilch
David S. Mendel
Laura M. D'Allaird
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-5971
202.551.4418 (Mendel)
MendelD@SEC.gov

*Attorneys for Plaintiff*


Dated:  October 7, 2019

_____
                    */s/ Jenna Bailey*

Jenna Bailey