UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>                                                    Plaintiff,<br><br>v.<br><br>KIK INTERACTIVE INC.,<br><br>                                                    Defendant. | Case No. 1:19-cv-05244 |

### PLAINTIFF'S BRIEF IN OPPOSITION TO THE BLOCKCHAIN ASSOCIATION'S MOTION FOR LEAVE TO FILE BRIEF AS AMICUS CURIAE

Plaintiff United States Securities and Exchange Commission (the "SEC") respectfully submits this brief in opposition to the Blockchain Association's Motion for Leave to file Brief as Amicus Curiae. (ECF No. 68). While the Blockchain Association may itself be a "not-for-profit organization," several of its "member companies" participated in the conduct on which the SEC's complaint is based or otherwise have a direct financial interest in the outcome of this case, having invested in either Defendant Kik Interactive Inc. ("Kik") or the Kin token. And, consistent with this overlap in interests, the proposed brief largely covers issues already addressed by the parties. Consequently, we submit that the proposed amicus brief offers no "aid to the court," and leave should be denied.

### STANDARD FOR AMICUS BRIEFS IN DISTRICT COURT PROCEEDINGS

"There is no governing standard, rule or statute 'prescrib[ing] the procedure for obtaining leave to file an amicus brief in the district court.'" *Onandaga Indian Nation v. State of New York*, No. 97–CV–445, 1997 WL 369389, at *2 (N.D.N.Y. June 25, 1997) (quoting *United States v. Gotti*, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991)). As such, the decision to grant leave to file an amicus brief is in the Court's broad discretion. *Jamaica Hosp. Med. Ctr., Inc. v. United Health Gp., Inc.*, 584 F. Supp. 2d 489,

497 (E.D.N.Y. 2008). "The usual rationale for amicus curiae submissions is that they are of aid to the court and offer insights not available from the parties." *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. and N.J.*, No. 11 Civ. 6746, 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011) (citing *United States v. El–Gabrowny*, 844 F. Supp. 955, 957 n.1 (S.D.N.Y.1994)). While an amici need not be totally disinterested, "the partiality of an amicus is a factor to consider in deciding whether to allow participation." *Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011) (citing *Waste Mgmt. of Penn., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D.Pa.1995)). And, amicus briefs are often found unhelpful when they are not "objective, dispassionate, [and] neutral" or when "the parties are well represented and [] their counsel do not need supplemental assistance." *Gotti*, 755 F. Supp. at 1159.

## ARGUMENT

The Blockchain Association's public website identifies 24 "member companies."[1]



Seven of those 24 companies – almost one third – have or had an interest in the offering of digital tokens that is at issue in this case: One Blockchain Association member (USV) presently has an equity

---

[1] https://theblockchainassociation.org/members/ (last visited Apr. 20, 2020). The Blockchain Association's motion cites "27 member companies," ECF No. 68 at 2, but the SEC is unaware of the identity of the three member companies not identified on the website.

investment in Kik;[2] four members (eToro, Protocol Labs, Polychain Capital, and Wicklow Capital) made a direct or indirect investment in the Kin token,[3] one of which (Polychain Capital) also allowed Kik to use its name to tout the offering;[4] another member (CoinList)[5] conducted due diligence for Kik during the offering; and another member (Cumberland) handled the liquidation of some of the proceeds of the Kin offering.[6]  In addition, an eighth member (Orchid) was founded by a partner in Pantera Capital, the largest single Kin purchaser.[7]  And, Jed McCaleb, who purchased Kin tokens via SAFT, founded a ninth member (Stellar) and was the former chief technology officer of a tenth (Ripple).[8]  Also, it is possible that the instant brief was financed, in whole or in part, by DefendCrypto, a litigation fund created by Kik in 2019 to "support[] legal initiatives that impact the crypto industry" and to "take on the SEC."[9]  The fund, which includes $2 million contributed by Kik,[10] is presently overseen by the Blockchain Association, the Kin Foundation,[11] and four other entities,[12] at least one of which (Arrington Capital)[13] also invested in Kik's 2017 offering of Kin tokens.  In sum, the

---

[2] SEC17 (ECF No. 60-17) at 14:3-15:24.
[3] SEC53 (ECF No. 60-63).  Wicklow Capital invested in Kin through Pantera Capital.  *Id.*
[4] SEC67 (ECF No. 79).  Specifically, Polychain Capital allowed Kik to use the following quote in its marketing:

> "Kik is by far the largest consumer company to enter the cryptocurrency space, and this is a seminal moment for the industry," said Ryan Zurrer, principal and venture partner at leading cryptocurrency hedge fund Polychain Capital. "We have been impressed with Kik's thoughtful approach to the creation and distribution of Kin, and have confidence that the team will execute their vision of creating a decentralized ecosystem of digital services through Kin."

*Id.*
[5] Philp Decl. (ECF No. 64-1) at ¶¶ 42-46.
[6] SEC93 (ECF No. 60-105) at ¶¶ 9-10.
[7] SEC53 (ECF No. 60-63).
[8] *Id.*
[9] https://www.defendcrypto.org/ (last visited Apr. 20, 2020).
[10] https://medium.com/@tanner.philp/defend-crypto-expanding-the-reach-and-impact-with-the-blockchain-association-70be168d775f (last visited Apr. 20, 2020).
[11] All Kin Foundation activities are conducted by Kik employees at Kik's cost.  *See* SEC6 (ECF No. 60-6) at 75:3-78:3.  All Kin Foundation decisions are made by Kik's CEO and William Mougayar, a Kik consultant who also purchased Kin tokens during the 2017 offering.  *See* SEC53 (ECF No. 60-63).
[12] https://www.defendcrypto.org/ (last visited Apr. 20, 2020).
[13] SEC53 (ECF No. 60-63).

Blockchain Association is hardly "objective, dispassionate, [or] neutral," *Gotti*, 755 F. Supp. at 1159, and its motion for leave to file its highly partisan brief should be denied.

Additionally, likely because the Blockchain Association's and Kik's interests largely overlap, the proposed amicus brief also focuses on issues already covered by the parties' fulsome (and ongoing) briefing in this matter. Kik, represented by experienced counsel, has vigorously defended this lawsuit, including by submitting a 130-page Answer (ECF No. 22) and a 53-page brief in support of Kik's motion for summary judgment (ECF No. 62). And, summary judgment briefing is ongoing; the SEC anticipates that Kik will file dozens more pages of briefing in advance of the April 24 and May 8 deadlines. While we suspect Kik would appreciate having its arguments parroted by a supposedly neutral third party, we submit that "the parties are well represented" here, and "their counsel do not need supplemental assistance." *Gotti*, 755 F. Supp. at 1159. Again, the Blockchain Association's motion for leave should be denied.

## CONCLUSION

For all the foregoing reasons, the SEC respectfully requests that the Court deny the Blockchain Association's motion for leave to file an amicus brief.

Dated: April 21, 2020                                 Respectfully submitted,

                                                      /s/ *Stephan J. Schlegelmilch*
Stephan J. Schlegelmilch
David S. Mendel
Laura D'Allaird
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-5971
202.551.4935 (Schlegelmilch)
301.623.1184 (facsimile)
SchlegelmilchS@SEC.gov
MendelD@SEC.gov
DAllairdL@SEC.gov
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I certify that on April 21, 2020, I caused the foregoing to be filed using the Court's CM/ECF system, which will send notification of such filing to each counsel of record.

                                                                           */s/ Stephan J. Schlegelmilch*
                                                                          One of Plaintiff's Attorneys