SEC104

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **Case No.  19-cv-5244 (AKH)** |
| **vs.** | |
| **KIK INTERACTIVE INC.** | |
| **Defendant.** | |

### SECOND DECLARATION OF BRENT MITCHELL

BRENT MITCHELL, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am a Senior Counsel with the Division of Enforcement of the United States Securities and Exchange Division (the "Commission").  I am submitting this Declaration in support of the Commission's Motion for Summary Judgment and the Commission's Memorandum in Opposition to Kik Interactive Inc.'s ("Kik") Motion for Summary Judgment.

2.      I make this Declaration based upon my personal knowledge of the events and records described herein and to summarize voluminous records pursuant to Federal Rule of Evidence 1006.  To the best of my information and belief, each of the records I summarize were produced by or to Kik during the Commission's investigation of Kik or during the above-captioned litigation, and each of these records are, therefore, available to Kik.

**KIK'S SALE OF KIN PURSUANT TO ITS SAFT**

3.      In connection with my summary of evidence relating to Kik's sale of Kin pursuant to its Simple Agreement for Future Tokens ("SAFT"), I have reviewed the following evidence, each of which was produced or otherwise created by Kik:

a.     Kik's August 6, 2019 Answer (ECF No. 22);

b.     Kik's September 17, 2018 Responses to the Commission's Investigative Requests for Admission ("Inv. RFA") (SEC1 (ECF NO. 60-1));

c.     A chart listing SAFT participants (KIK000283) marked as Testimony Exhibit 132 during the investigation and as Deposition Exhibit 39 during the litigation, which Kik admits is a complete and accurate list of the people and entities who entered into SAFTs with Kik; and

d.     A chart listing SAFT participants marked as Testimony Exhibit 133 during the investigation and as Deposition Exhibit 40 during the litigation (SEC53 (ECF No. 60-63)).  This chart is a printout of KIK001187, a native Excel file, which Kik admits is a complete and accurate list of the people and entities who entered into SAFTs with Kik, the amount of the purchase, and the date on which the SAFT was executed.

4.     Based upon my review of these records, I provide the following summary:

a.     On September 11, 2017, Kik entered into SAFT agreements with 10 purchasers, including a $1.2 million agreement with Blockchain Opportunity Fund LLC of Park Ridge, Illinois.

b.     The 10 SAFT agreements that Kik entered into on September 11, 2017 involved proceeds to Kik of $2.005 million.

**KIK'S SALE OF KIN TO THE GENERAL PUBLIC**

5.     In connection with my summary of evidence relating to Kik's sale of Kin to the general public, I have reviewed the following evidence, each of which was produced or otherwise created by Kik:

a.     Kik's August 6, 2019 Answer (ECF No. 22);

b.     Kik's September 17, 2018 Responses to the Commission's Investigative Requests for Admission ("Inv. RFA") (SEC1 (ECF No. 60-1));

c.     KIK001188, which Kik admits is a complete and accurate list of the approximately 10,000 people who purchased Kin in the public sale portion of the Kin token offering ("public buyers"), with, among other information, Ether address, Kin, amount of Ether, amount in U.S. dollars, postal country, and passport country of those individuals;

e.     A chart listing SAFT participants (KIK000283) marked as Testimony Exhibit 132 during the investigation and as Deposition Exhibit 39 during the litigation, which Kik admits is a complete and accurate list of the people and entities who entered into SAFTs with Kik;

d.     A chart listing SAFT participants marked as Testimony Exhibit 133 during the investigation and as Deposition Exhibit 40 during the litigation (SEC53 (ECF No. 60-63)).  This chart is a printout of KIK001187, a native Excel file, which Kik admits is a complete and accurate list of the people and entities who entered into SAFTs with Kik, the amount of the purchase, and the date on which the SAFT was executed;

e.     Investigative Testimony of Peter Heinke at 419:25-423:19 (SEC10 (ECF No. 60-10)); and

f.     Investigative Testimony of Harrison Wang at 14:14-18 (SEC73 (ECF No. 60-85)).

6.     Based upon my review of these records, I provide the following summary:

a.      Approximately 10,000 non-duplicative purchasers bought Kin from Kik in the sale of Kin to the general public in exchange for a total of 168,732 Ether, which was then worth approximately $49.2 million.

b.      Of the money spent on Kin by all public buyers, a total amount of less than $42,000 – or about 0.09% of the public sale total – was spent by buyers who paid $100 or less.

c.      About 746 people paid $100 or less for the Kin they bought in the public sale.  Those 746 people bought about $852 out of every $1,000,000 in Kin sold in the public sale.

d.      Of the money spent on Kin by all public buyers, a total amount of about $34.429 million – or about 70.6% of the public sale total – was spent by buyers who paid at least $5,000.

e.      About 1,024 people bought at least $5,000 in Kin in the public sale.  Those 1,024 people bought about $706,000 out of every $1,000,000 in Kin sold in the public sale.

f.      Of the money spent on Kin by all public buyers, a total amount of about $16.298 million – or about 33.42% of the public sale total – was spent by buyers who paid at least $100,000.

g.      About 56 people bought at least $100,000 in Kin in the public sale.  Those 56 people bought about $334,200 out of every $1,000,000 in Kin sold in the public sale.

h.      Of the money spent on Kin by all public buyers, a total amount of about $7.938 million – or about 66.89% of the public sale total – was spent by buyers who paid at least $500,000.

4

    i.      Eight people bought at least $500,000 in Kin in the public sale.  Those eight people bought about $162,700 out of every $1,000,000 in Kin sold in the public sale.

    j.      If one were to look at the entire sale of Kin, including both sales pursuant to SAFT and sales not pursuant to SAFT, a total amount of less than $42,000 – or about 0.04% of the approximately $98.3 million total – was spent by buyers who paid $100 or less.  The 746 people who paid $100 or less bought about $422 out of every $1,000,000 in Kin sold during the entire sale of Kin.

## KIK'S USE OF THE SALE PROCEEDS

7.      In connection with my summary of evidence relating to Kik's use of the sale proceeds, I have reviewed the following evidence:

    a.      Kik's October 20, 2017 letter to SEC staff (SEC64 (ECF No. 60-76));

    b.      Emails from Kik's counsel to SEC staff dated (i) January 2, 2018, (ii) January 4, 2018, (iii) January 17, 2018, (iv) January 18, 2018, (v) Janaury 24, 2018, (vi) February 7, 2018, (vii) February 14, 2018, (viii) February 21, 2018, (ix) March 1, 2018, (x) March 8, 2018, (xi) March 16, 2018, (xii) April 19, 2018, (xiii) May 23, 2018, and (xiv) August 8, 2018;

    c.      Kik's September 17, 2018 Responses to the Commission's Investigative Requests for Admission ("Inv. RFA") at RFAs #33, 46-47 (SEC1 (ECF No. 60-1));

    d.      Kik's August 6, 2019 Answer (ECF No. 22);

    e.      The February 5, 2020 Rule 30(b)(6) Deposition of Kik Interactive Inc. (SEC6 (ECF No. 60-6)); and

f.   Monthly bank statements for the periods ending September 29, 2017 through

March, 30 2018, produced to the Commission pursuant to subpoena

(Deposition Exhibit 263).

8.   Based upon my review of these records, I provide the following summary:

a.   Kik deposited the proceeds from the sale of Kin into two Kik bank accounts

and Kik's Ether wallet.

b.   Kik held the proceeds of the sales of Kin via SAFTs in U.S. dollars in an

account at TD Bank in Ontario, Canada.

c.   As of January 4, 2018,  Kik held $34.9 million in proceeds from the sales of

Kin via SAFTs at TD Bank.

d.   Kik reported to the SEC staff the following balances for its TD Bank

account:

|  | TD Bank, Canada (US$) |
|---|---|
| Jan. 4, 2018 | $34.9 million |
| Jan. 17, 2018 | $32.87 million |
| Jan. 24, 2018 | $32.26 million |
| Feb. 7, 2018 | $30.63 million |
| Feb. 14, 2018 | $29.60 million |
| Feb. 21, 2018 | $29.08 million |
| Feb. 28, 2018 | $28.7 million |
| March 7, 2018 | $27.2 million |
| March 14, 2008 | $25.99 million |
| April 19, 2018 | $21.22 million |
| May 23, 2018 | $19.52 million |
| Aug. 8, 2018 | $15.97 million |

e.      The following chart shows the TD Bank Canada (US$) balance from January

to August 2018, as reported to the SEC by Kik:



**KIK'S PAYMENTS TO PERFECT365, INC.**

9.      In connection with my summary of evidence relating to Kik's payments from its

account at Silvergate Bank, I have reviewed the following evidence:

a.      Monthly bank statements for the periods ending September 29, 2017 through

October 31, 2019, produced to the Commission pursuant to subpoena

(Deposition Exhibit 263); and

b.       The February 5, 2020 Rule 30(b)(6) Deposition of Kik Interactive Inc.

(SEC6 (ECF No. 60-6)).

10.      Based upon my review of these records, I provide the following summary:

a.      On October 15, 2018, Kik paid $75,000 to an application developer called

Perfect365, Inc.

    b.      On November 26, 2018, Kik paid $50,000 to Perfect365, Inc., for a total of $125,000.

## LOVE & LOUD RADIO

11.     In connection with my summary of evidence relating to Love & Loud Radio, I have reviewed the following evidence:

    a.      The LinkedIn profile of Kevin Rego Ricoy at

                                  ████████████████████████ (last visited on April 22, 2020);

    b.      The "Resolution" of Love and Loud Music, LLC, filed with the Maryland State Department of Assessments and Taxation on August 25, 2015, and publicly available at https://egov.maryland.gov/BusinessExpress/EntitySearch/BusinessInformation/W16652059 (last visited on April 22, 2020);

    c.      The February 5, 2020 Rule 30(b)(6) Deposition of Kik Interactive Inc. (SEC6 (ECF No. 60-6));

    d.      The December 6, 2019 Deposition of William Mougayar (SEC22 (ECF No. 60-22);

    e.      Kik's September 17, 2018 Responses to the Commission's Investigative Requests for Admission ("Inv. RFA") (SEC1 (ECF No. 60-1)).

12.     Based upon my review of these records, I provide the following summary:

    a.      Kevin Rego Ricoy has publicly identified himself as the "Communications Manager" of "Kin Ecosystem" and the "Founder & Product Manager" of Love & Loud Music Corp.

b.      Mr. Ricoy is a Kik employee and serves as Kik's communications manager. (Kik 30(b)(6) Deposition at 13:5-14:22.)

c.      None of Kik's 18 employees are also employees of other entities, including the Kin Foundation.  (Kik 30(b)(6) Deposition at 9:25-10:3.)

d.      The Kin Foundation has no employees.  (RFA ¶ 44; Mougayar Deposition at 234:17-19).

e.      Accordingly, the founder of the Love & Loud Music application is a Kik employee.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 22 2020                          _/s/  Brent Mitchell_____
                                                   Brent Mitchell
                                                   U.S. Securities and Exchange Commission
                                                   Division of Enforcement
                                                   100 F Street, N.E.
                                                   Washington, DC 20549