# Exhibit EE

*Blakes*

Blake, Cassels & Graydon LLP
Barristers & Solicitors
Patent & Trade-mark Agents
199 Bay Street
Suite 4000, Commerce Court West
Toronto ON  M5L 1A9  Canada
Tel: 416-863-2400  Fax: 416-863-2653

**W. Ross F. McKee**
Dir: 416-863-3277
ross.mckee@blakes.com

November 2, 2017

VIA E-MAIL

Reference: 14382/1

Huston Loke
Director, Corporate Finance
Ontario Securities Commission
20 Queen Street West, 22nd floor
Toronto, ON  M5H 3S8

RE:    Kik Interactive Inc.

Dear Huston:

I'm writing on behalf of Kik Interactive Inc. ("Kik"), in response to your letter dated October 19, 2017, which requested additional details and information relating to the sale to the public of Kin (the "ITD").

We acknowledge your expression of OSC staff's current position that the ITD constituted an offering of securities. We continue to disagree with that characterization, although that is not the focus of this response. I do however wish to correct the record, where you indicated that OSC staff's position had been communicated to me in the meeting on August 14 and discussions on August 21.  Those statements are not entirely accurate nor fair to myself or Kik.

The meeting on August 14 was in fact inconclusive. Notes indicate that the closest the OSC staff present came to expressing a position was for Pat Chaukos to say, "I'm not sure we're where you are".

There was no discussion on August 21. There was an exchange of emails between myself and Ms. Chaukos on August 22, asking about a National Post article and about money services business registrations, after which Ms. Chaukos concluded: "We will come back to you on the public sale component." Based on the meeting and those comments, the reasonable understanding of myself and Kik was that the OSC staff were still considering our submissions and had not yet come to a definite position on the point.

In fact, the first time that the OSC staff definitively communicated a position that the ITD constituted an offering of securities was in the telephone call to me from Ms. Chaukos on September 5, shortly before the scheduled launch date.  In that call, I advised that, in that case, Kik intended to proceed with a distribution solely outside Canada in accordance with the principles of Interpretation Note 1. (This alternative plan had been communicated previously to the OSC staff on August 3 and August 14.)

Ms. Chaukos said on the call she thought Interpretation Note 1 had been replaced by the new OSC Rule 72-503 – *Distributions Outside Canada* ("OSCR 72-503"). I pointed out that OSCR 72-503 had only been published in draft for comment at that point. Ms. Chaukos stated that the Interpretation Note

12918715.5

TORONTO    CALGARY    VANCOUVER    MONTRÉAL    OTTAWA    NEW YORK    LONDON    RIYADH/AL-KHOBAR*    BAHRAIN    BEIJING
Blake, Cassels & Graydon LLP | *Associated Offices | **blakes.com**

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

KIK_00128199



Page 2

was old and the new rule represented staff's current thinking. I said that Kik could proceed also based upon the new guidance, since the general statement of principle of Interpretation Note 1 was continued in the draft Companion Policy 73-503 ("Policy 72-503").

Accordingly, in the ITD, we ensured the distribution complied with the statememt of principle in Interpretation Note 1 and draft Policy 72-503.

In your letter, you expressed concern that "it is not apparent to staff that Kik took reasonable steps to ensure that the Kin tokens would not be distributed or redistributed in Ontario or to Ontario residents."

Policy 72-503 is helpful in this regard, even if treated as a draft, since OSC staff said in their responses to comments, "To assist in applying the Statement of Principle, we have added some illustrative examples of reasonable steps that participants may take to ensure the securities come to rest outside Canada."

What follows is an explanation of the reasonable steps that Kik took for exactly that purpose, guided by the factors outlined in draft Policy 72-503.

Original participant identification

Key to geographic restrictions is knowing where participants are located. Kik took special care in this regard. Pre-registration for the ITD was required, including identity verification.

Kik engaged a third party identity verification service, IdentityMind Global, a leading RegTech firm in the business of client identity verification for regulatory compliance. More information about IdentityMind is available at the website, identitymind.com. I noted that a case study on that website promoted IdentityMind's work for GoldMoney, a TSX-listed bullion holding company.

As part of the registration verification process, participants were required to upload a scan of their government issued photo identification as well as a personal photograph for face matching. Most of the reviews were automated through the IdentityMind system, but some were put into manual review if the scan could not clearly be verified automatically, e.g., where there were glares on the photo. Kik employees did the manual reviews along with two third party consultants.

Ultimately, verified participants came from 126 different countries. A list of those countries is in Appendix 1.

Steps for Exclusion of Distribution to Canadian participants

When Kik decided to proceed by way of distributing Kin tokens only outside Canada, it took the following major steps.

1.  Kik amended the Terms of Use for the Kin tokens (the "Terms") to prohibit Canadian participation and to obtain resale restriction representations. A copy of those Terms, as amended, is set out in

12918715.5

TORONTO    CALGARY    VANCOUVER    MONTRÉAL    OTTAWA    NEW YORK    LONDON    RIYADH/AL-KHOBAR*    BAHRAIN    BEIJING
Blake, Cassels & Graydon LLP | *Associated Offices | blakes.com

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

KIK_00128200



Page 3

Appendix 2, with the most relevant portions highlighted. The Terms had to be expressly acknowledged by each subscriber participant and govern the terms of the sale and subsequent use of the Kin tokens.

The Terms specified that:

> "By accessing or using the Site and/or purchasing Kin Tokens, you agree to be bound by this Agreement and all of the terms incorporated herein by reference. If you do not agree to this Agreement, you may not access or use the Site or purchase the Kin Tokens. This Agreement governs your access and use of the Site and your purchase of the Kin Tokens."

The Terms also provided that:

> "Kin reserves the right to change or modify this Agreement at any time and in our sole discretion. If we make changes to this Agreement, we will provide notice of such changes, such as by sending an email notification, providing notice through the Site or updating the "Last Updated" date at the beginning of this Agreement. By continuing to access or use the Site or purchase Kin Tokens, you confirm your acceptance of the revised Agreement and all of the terms incorporated therein by reference. We encourage you to review the Agreement frequently to ensure that you understand the terms and conditions that apply when you access or use the Site or purchase Kin Tokens. If you do not agree to the revised Agreement, you may not access or use the Site or purchase Kin Tokens."

With respect to geographical restrictions, Kik's Terms provided that:

> "You acknowledge and agree that Kik reserves the right to prohibit persons and third party entities from participating in the Kin Token sale if they are domiciled in a jurisdiction (domestic or foreign) which prohibits or restricts such participation"

Pursuant to those Terms, to implement the restriction on Canadian purchasers, Kik amended the Terms applicable to all purchasers to include (in bold face) the following notice and representation:

> **"Pursuant to that right, Kik hereby gives you notice and you acknowledge and agree that the Kin Tokens have not been qualified for distribution by prospectus in Canada and may not be offered or sold in Canada during the course of their distribution except pursuant to a prospectus exemption, and accordingly by purchasing the Kin Tokens you are deemed to represent and warrant that (a) if you are located in Canada, you are purchasing pursuant to a prospectus exemption or (b) if you are located outside Canada, you are purchasing not for the purpose of making an immediate resale to a person you actually know to be located in Canada and, for a period of 90 days after the date of their purchase by you, you will not resell the Kin Tokens to a person you actually know to be located in Canada nor through the facilities of an exchange or market in Canada."**

2.  Since the decision was made after initial pre-registration had opened, there were already 865 verified participants pre-registered from Canada. Kik cancelled those registrations. This entailed

12918715.5

TORONTO    CALGARY    VANCOUVER    MONTRÉAL    OTTAWA    NEW YORK    LONDON    RIYADH/AL-KHOBAR*    BAHRAIN    BEIJING
Blake, Cassels & Graydon LLP | *Associated Offices | **blakes**.com

FOIA Confidential Treatment Requested
By Kik Interactive Inc.



cancelling and blocking all participants with Canadian addresses, and all participants with Canadian IP addresses.

3. Of the Canadian pre-registrants, there were 8 living in Canada who were Kik employees. If we assume for the moment that the Kin tokens were securities, the distribution of Kin tokens to those Canadian employees  was exempt from the prospectus requirement pursuant to section 2.24 of National Instrument 45-106 – *Prospectus Exemptions* ("NI 45-106").

4. To ensure that the amended Terms were brought to the attention of the affected registrants located in Canada, the email notice copied in Appendix 3 was sent on September 7, 2017 to all 865 Canadian registrants, notifying them that the Kin token distribution event will not be available to Canadian residents.

5. To ensure that the amended Terms were brought to the attention of all registrants and potential participants,  the amended Terms were included on the Kin offering website and the notice you mentioned in your letter was posted on September 7, 2017, on the Kin Foundation's Medium channel, at:

https://medium.com/kinfoundation/canadian-residents-excluded-from-next-weeks-kin-tde-fdaded41ffdb

This notice was also posted to the Kin Foundation's Twitter, Reddit and Slack channels. The cancellation of Kik's Canadian offering received wide media attention.

6. The Kin tokens have not been listed by Kik, nor any third party of which Kik is aware, on any Canadian token exchanges. Of course, independent exchanges are free to list whichever cryptocurrency they choose, but Kik has not taken any proactive approach for such Canadian exchange listings.

7. In preparation of the purchaser analysis in Appendix 1, Kik discovered that two purchasers with Canadian addresses had somehow escaped the above filtering process and had acquired Kin in the ITD, in the amounts of $1,317 and $1,266 respectively, representing in total 0.0053% percent of the Kin sold in the ITD. Such purchases were contrary to the Terms. Due to the immutability of the blockchain, those purchases of Kin now cannot be canceled. However, as a further reasonable steps to ensure compliance with its Terms and the applicable law, Kik has sent a demand letter to each purchaser to reacquire the Kin tokens from those purchasers, offering a refund of the Ether paid. Since the price of Ether has increased since the launch date, Kik would anticipate that the refunds would be accepted.

**Analysis of Reasonable Steps**

With that factual background, let's examine the reasonableness of the steps taken by Kik so that Kin tokens would not be distributed or redistributed in Ontario or to Ontario residents.

Policy 72-503 prescribes six factors and examples of reasonable steps, copied below, that may be taken in support of an issuer's reliance on its Statement of Principle.

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.



(1) *A restriction in the underwriting, banking group or selling group agreement that prohibits the sale of securities to any person or company in Canada, except pursuant to a Canadian prospectus or prospectus exemption;*

Kik had no underwriter or dealer for the sale, so this factor is not applicable in this case. Kik relied upon the non-application of the business trigger for issuers, as discussed in Companion Policy 31-103 – *Registration Requirements, Exemptions and Ongoing Registrant Obligations* ("Policy 31-103"), section 1.3 *Fundamental concepts, Business trigger for trading and advising, Business trigger examples, (a) Securities issuers*. This reliance was discussed in the meeting on August 14.

(2) *Clear statements in the offering document that the securities: (i) have not been qualified for distribution by prospectus in Canada, and (ii) may not be offered or sold in Canada during the course of their distribution except pursuant to a Canadian prospectus or prospectus exemption;*

The offering document was a combination of the Kin white paper and the Terms. The white paper was published on May 17, 2017, at https://kin.kik.com/papers/Kin_Whitepaper_V1_English.pdf, but did not include any ITD offering details at that time. The Terms which did provide offering details were amended to clearly state as required, in bold face at the beginning of the Terms, that:

> **"the Kin Tokens have not been qualified for distribution by prospectus in Canada and may not be offered or sold in Canada during the course of their distribution except pursuant to a prospectus exemption… by purchasing the Kin Tokens you are deemed to represent and warrant that (a) if you are located in Canada, you are purchasing pursuant to a prospectus exemption"**

(3) *The class or series of securities being distributed have an existing trading market outside Canada that would not be materially less advantageous for investors outside Canada than making resales on any exchange or market in Canada on which the securities may also be traded;*

Since the ITD, three exchanges outside Canada have listed Kin:  EtherDelta, Mercatox and COSS. There is no exchange or market in Canada on which Kin tokens may be traded (outside of use in the Kin Ecosystem as described in the white paper). It is expected that since the ITD was a global offering, trading will take place primarily outside Canada. The Canadian participants whose pre-registrations were cancelled, if they had been allowed to participate in the ITD, would have accounted for only approximately 8% of total global participants by number. As a result, such trading will not be materially less advantageous for investors outside Canada than making resales on any exchange or market in Canada.

(4) *The distribution is conducted as a broad-based public offering in one or more countries outside Canada and, if there is no existing trading market outside of Canada, it is reasonable to expect that a trading market for the offered securities outside Canada will develop;*

The ITD was conducted to a total of 10,121 individual participants, from 126 countries. It would be hard for a traditional securities offering to be conducted any more broadly.  Participants were 99.9% outside Canada (Canadian participants being the 8 employees and the 2 errant participants).

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

KIK_00128203



Since the ITD, three exchanges outside Canada have listed Kin:  EtherDelta, Mercatox and COSS, so currently the only trading market is outside Canada.

(5) *Purchasers outside Canada provide representations and warranties, or are given notice that their purchase of the securities will be deemed to constitute a representation and warranty, that they are purchasing with investment intent and not for the purpose of making an immediate resale;*

It would not have been appropriate in this particular case to require purchasers of Kin tokens to represent that they were purchasing the tokens with investment intent. The Kin tokens were not sold as investments in the first place, but as a currency intended to be used as a currency within the Kin Ecosystem. It would be paradoxical to sell a currency and require purchasers not to use it.

However, the Terms did give notice and expressly require the purchasers to state that:

> "**by purchasing the Kin Tokens you are deemed to represent and warrant that … (b) if you are located outside Canada, you are purchasing not for the purpose of making an immediate resale to a person you actually know to be located in Canada**"

Policy 72-503 acknowledges that "this list of factors and examples of reasonable steps is provided for illustrative purposes, and is not intended to be a definitive list of any or all of the factors or steps that participants may take into account in order to conclude that reasonable steps have been taken to ensure that securities have come to rest outside Canada."

Thus we submit that this factor was appropriately addressed in Kik's circumstances.

(6) *Purchasers outside Canada provide representations and warranties, or are given notice that their purchase of the securities will constitute a representation and warranty, that they will not resell the security to a person they actually know to be located in Canada or through the facilities of an exchange or market in Canada, for a period of 90 days from the date of their purchase.*

The Terms applicable to all purchasers gave notice and clearly stated, in bold face at the beginning of the Terms, that:

> "**by purchasing the Kin Tokens you are deemed to represent and warrant that … (b) if you are located outside Canada, you are purchasing not for the purpose of making an immediate resale to a person you actually know to be located in Canada and, for a period of 90 days after the date of their purchase by you, you will not resell the Kin Tokens to a person you actually know to be located in Canada nor through the facilities of an exchange or market in Canada**"

Accordingly, after reviewing each of the foregoing factors enumerated in draft Policy 72-503, we respectfully submit that Kik met all of the recommended factors to establish the reasonableness of the steps taken by Kik so that Kin tokens would not be distributed or redistributed in Ontario or to Ontario residents, and not merely in Ontario but in Canada as a whole.

12918715.5

TORONTO   CALGARY   VANCOUVER   MONTRÉAL   OTTAWA   NEW YORK   LONDON   RIYADH/AL-KHOBAR*   BAHRAIN   BEIJING
Blake, Cassels & Graydon LLP | *Associated Offices | **blakes.com**

FOIA Confidential Treatment Requested
By Kik Interactive Inc.



Through the email and notices referred to earlier, which received wide publicity, Kik made every practical effort to bring these geographic restrictions on the ITD and redistribution relating to Canada to the attention of, and binding upon, participants, and in particular Canada-based participants, and has taken, and continues to take, rigorous steps to ensure that the restrictions were applied in practice.

From the many steps taken by Kik to verify identity and subsequently to exclude Canadian participation through effective restrictions, both in law and procedure, and to ensure wide notice of the restrictions, it must be apparent that the distribution exclusively outside Canada with restrictions on redistribution in Canada was made by Kik entirely in good faith and not as part of a plan or scheme to conduct an indirect distribution to a person or company in Canada.

**CEO Notice**

In your letter, you made particular mention of the comment by Kik's Founder and CEO Ted Livingston in the announcement of the Canadian exclusion, that: "Given the nature of crypto, you will be able to join the project later in the secondary market, but you will not be able to be there from the start."

"Later" just means at some unspecified, indefinite later date. It does not mean "immediately" nor even "within 90 days". Mr. Livingston was addressing family (including some of his immediate family members) and friends, knowing they would all be extremely surprised and disappointed that this opportunity was being taken from them. He was telling them that eventually they could join the Kin Ecosystem (the "project" to which he was referring), just not in the initial distribution.

That comment is actually an accurate statement of the law of Ontario. The operation of the Statement of Principle, whether under Interpretation Note 1 or draft Policy 72-503, is that if securities are sold in a distribution outside Canada, and they come to rest there, then eventually (i.e., later), their trading is considered secondary market trading. At that point, they could be traded with Canadian residents as routine trading in the secondary market, not a redistribution.

This secondary market trading is expressly contemplated by the representations which Policy 72-503 requires be made by purchasers outside Canada: (a) that they are not buying for the purpose of making an immediate resale to a person they actually know to be located in Canada, and (b) that for a period of 90 days after the date of purchase, they will neither resell the securities to a person they actually know to be located in Canada, nor over an exchange located in Canada. So therefore, purchasers outside Canada could resell securities immediately to a person they did not actually know to be located in Canada, and after 90 days they could resell such securities to a person even if they did know that person to be located in Canada.

The "nature of crypto" just means that it is globally traded, so that Canadian residents could be expected to engage at that later date in the secondary market and their access would not necessarily be prejudiced by a late start.

TORONTO   CALGARY   VANCOUVER   MONTRÉAL   OTTAWA   NEW YORK   LONDON   RIYADH/AL-KHOBAR*   BAHRAIN   BEIJING
Blake, Cassels & Graydon LLP | *Associated Offices | **blakes.com**

FOIA Confidential Treatment Requested
By Kik Interactive Inc.



Page 8

**Information Requests**

Finally, in your letter you had requested certain specific information.

1. Kin is pre-mined and therefore the total number of Kin ever to be created have been minted and allocated. A majority of the Kin created was allocated to and is held by the Kin Foundation. As contemplated in the Kin white paper, as part of the operation of the Kin Ecosystem, the balance of Kin held by the Kin Foundation will be released over time through the Kin Rewards Engine; however, at the discretion of the Kin Foundation, a percentage, approximately 15%, may be sold to fund the operations of the Kin Foundation. Kin Rewards will not be issued in exchange for fiat or cryptocurrency payment, but rather, introduced into circulation as periodic rewards pursuant to an autonomous smart contract earned or gifted among ecosystem partners as periodic incentive payments. Kik also retained a portion of the total number of Kin. Kik's portion of Kin is subject to a vesting period. To the extent that either Kik or the Kin Foundation distributes, sells or exchanges its Kin in the future, it would do so in compliance with all applicable laws, including the applicable securities laws of Ontario.

2. We can confirm on behalf of Kik that no investors in Ontario or Canada participated in the ITD, other than (a) investors who participated in the pre-sale SAFT pursuant to the accredited investor prospectus exemption in section 2.3 of NI 45-106; (b) employees of Kik who acquired Kin tokens pursuant to the employee prospectus exemption in section 2.24 of NI 45-106; and (c) the two errant purchasers who inadvertently were able to acquire Kin contrary to the Terms and whose Kin are in the process of being re-acquired. The specific steps that were taken to ensure that investors in Ontario or Canada did not participate in the ITD have been elaborated above.

3. (a) The total proceeds of the ITD (not including the proceeds from the pre-sale SAFT to accredited investors) was USD$48,735,649.

3. (b) The countries in which purchasers bought Kin in the ITD, and for each country, the aggregate participant count and aggregate proceeds, is set out in Appendix 1, ranked by participant count.

I trust this responds satisfactorily to address any concerns you might have had.

Yours very truly,

Ross McKee

WRFM

12918715.5

TORONTO    CALGARY    VANCOUVER    MONTRÉAL    OTTAWA    NEW YORK    LONDON    RIYADH/AL-KHOBAR*    BAHRAIN    BEIJING

Blake, Cassels & Graydon LLP | *Associated Offices | blakes.com

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

KIK_00128206

CONFIDENTIAL

Appendix 1

Kin ITD Participant Country data
(*ranked by participant count*)

| Country | Count | Participation Amount USD |
|---|---|---|
| United States of America | 3,500 | $16,770,532 |
| United Kingdom | 758 | $3,896,786 |
| Russian Federation | 511 | $1,665,728 |
| Germany | 449 | $1,348,522 |
| Netherlands | 389 | $805,856 |
| Australia | 368 | $1,553,761 |
| Japan | 361 | $2,123,853 |
| Korea (South) | 329 | $1,626,726 |
| India | 241 | $773,856 |
| France | 206 | $623,855 |
| Ukraine | 147 | $725,704 |
| Italy | 139 | $672,457 |
| Singapore | 128 | $600,059 |
| Thailand | 126 | $919,190 |
| Switzerland | 124 | $564,657 |
| Israel | 114 | $1,962,255 |
| Spain | 111 | $217,312 |
| Belgium | 101 | $198,876 |
| Taiwan, Republic of China | 98 | $704,905 |
| South Africa | 91 | $583,796 |
| Slovenia | 88 | $186,265 |
| Sweden | 88 | $1,625,711 |
| Brazil | 79 | $172,708 |
| Poland | 74 | $264,459 |
| Austria | 70 | $226,329 |
| Malaysia | 66 | $842,652 |
| United Arab Emirates | 66 | $261,118 |
| Ireland | 64 | $174,524 |
| Romania | 62 | $288,550 |
| Hong Kong | 53 | $347,978 |
| Mexico | 53 | $105,870 |
| Viet Nam | 51 | $333,137 |
| Czech Republic | 47 | $177,347 |
| Turkey | 47 | $98,044 |
| Norway | 46 | $142,025 |
| Bulgaria | 45 | $123,435 |
| Serbia | 44 | $160,170 |
| Argentina | 43 | $130,774 |
| Denmark | 43 | $99,129 |
| Philippines | 43 | $788,104 |
| Belarus | 39 | $103,021 |
| Morocco | 32 | $164,142 |
| New Zealand | 32 | $97,361 |
| Colombia | 29 | $78,984 |
| Nigeria | 28 | $82,577 |
| Finland | 25 | $85,015 |
| Pakistan | 23 | $624,988 |

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

CONFIDENTIAL

| Country | Count | Participation Amount USD |
|---|---|---|
| Kazakhstan | 21 | $42,521 |
| Latvia | 21 | $56,274 |
| Portugal | 19 | $208,290 |
| Hungary | 18 | $399,383 |
| Slovakia | 17 | $46,915 |
| Croatia | 15 | $11,243 |
| Indonesia | 14 | $113,039 |
| Peru | 13 | $13,074 |
| Chile | 12 | $68,087 |
| Estonia | 12 | $33,359 |
| Greece | 12 | $86,811 |
| Lithuania | 12 | $50,113 |
| Moldova | 12 | $166,051 |
| Saudi Arabia | 12 | $25,484 |
| Malta | 11 | $36,787 |
| Canada | 10 | $14,172 |
| Venezuela | 10 | $24,474 |
| Armenia | 9 | $29,808 |
| Bangladesh | 8 | $20,692 |
| Cayman Islands | 8 | $39,261 |
| Dominican Republic | 8 | $14,992 |
| Jordan | 8 | $4,254 |
| Panama | 8 | $12,495 |
| Qatar | 8 | $10,084 |
| Afghanistan | 6 | $128,677 |
| Barbados | 6 | $40,423 |
| Cyprus | 6 | $13,990 |
| Egypt | 6 | $2,634 |
| Gibraltar | 6 | $60,376 |
| Jamaica | 6 | $5,318 |
| Luxembourg | 6 | $8,928 |
| Uzbekistan | 6 | $4,706 |
| Azerbaijan | 5 | $6,552 |
| Ecuador | 5 | $5,137 |
| Iceland | 5 | $11,692 |
| Kenya | 5 | $11,839 |
| Uruguay | 5 | $20,808 |
| Bahrain | 4 | $3,794 |
| Bermuda | 4 | $23,696 |
| China | 4 | $50,748 |
| Costa Rica | 4 | $9,071 |
| Georgia | 4 | $475,260 |
| Kuwait | 4 | $20,222 |
| Sri Lanka | 4 | $12,196 |
| Trinidad and Tobago | 4 | $5,709 |
| Nepal | 3 | $43,289 |
| Albania | 2 | $408 |
| Algeria | 2 | $10,887 |
| Andorra | 2 | $14,566 |
| Côte d'Ivoire | 2 | $186 |
| Ghana | 2 | $343 |

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

CONFIDENTIAL

| Country | Count | Participation Amount USD |
|---|---|---|
| Guam | 2 | $6,943 |
| Montenegro | 2 | $8,786 |
| Paraguay | 2 | $4,242 |
| Puerto Rico | 2 | $581 |
| Senegal | 2 | $5,485 |
| Tunisia | 2 | $10,171 |
| Belize | 1 | $19,363 |
| Bolivia | 1 | $475 |
| Bosnia and Herzegovina | 1 | $1,445 |
| Botswana | 1 | $2,081 |
| British Virgin Islands | 1 | $10,173 |
| Cameroon | 1 | $347 |
| Guatemala | 1 | $71 |
| Haiti | 1 | $578 |
| Kyrgyzstan | 1 | $838 |
| Lebanon | 1 | $636 |
| Libya | 1 | $4,393 |
| Macedonia | 1 | $159 |
| Madagascar | 1 | $9 |
| Martinique | 1 | $111 |
| Mauritius | 1 | $114 |
| Netherlands Antilles | 1 | $289 |
| Oman | 1 | $1,200 |
| Réunion | 1 | $5,836 |
| Tajikistan | 1 | $3,294 |
| Uganda | 1 | $1,066 |
| Virgin Islands, US | 1 | $4,334 |
| Zimbabwe | 1 | $409 |

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

Appendix 2

**Kin Terms of Use Agreement**

Welcome to the Kin.KIK.COM ("Kik", "we," "us" or "our") website ("Site"). The purpose of the Site is to determine whether you are qualified to participate in our sale of Kin Tokens (DEFINED IN SECTION 1 BELOW), and if so, to enable your purchase of Kin Tokens. This Terms of Use Agreement ("Agreement") is important and affects your legal rights, so please read it carefully. Note that Section 16 of this Agreement contains a mandatory arbitration provision that requires the use of arbitration on an individual basis and limits the remedies available to you in the event of certain disputes.

By accessing or using the Site and/or purchasing Kin Tokens, you agree to be bound by this Agreement and all of the terms incorporated herein by reference. If you do not agree to this Agreement, you may not access or use the Site or purchase the Kin Tokens. This Agreement governs your access and use of the Site and your purchase of the Kin Tokens.

This Agreement does not alter in any way the terms or conditions of any other agreement you may have with us in respect of any products, services or otherwise. You represent and warrant that you are participating in the Kin Token sale in your individual capacity as the prospective beneficial owner of the Kin Tokens and not as a representative or agent of a third party or a third party entity (i.e. non-natural person) and you acknowledge and agree that Kik reserves the right to prohibit persons and third party entities from participating in the Kin Token sale if they are domiciled in a jurisdiction (domestic or foreign) which prohibits and restricts such participation, including but not limited to any sanctions program administered by the Office of Foreign Assets Control ("OFAC") of the U.S. Department of Treasury.

**The Site is not intended for use by anyone under the age of 18. Kin Tokens may not be purchased through the Site by anyone under the age of 18. By using the Site and/or purchasing Kin Tokens through this Site, you represent and warrant that you (a) are 18 years of age or older, (b) purchasing the Kin Tokens in your individual capacity as the beneficial owner thereof and not as a representative or agent of a third party or a third party entity (i.e., non-natural person, (c) have not been previously suspended or removed from the Site, or engaged in any activity that could result in suspension or removal from the Site, (d) have not previously registered on the Site and/or been informed that your application to purchase Kin Tokens was not approved, (e) do not have more than one Account (defined in Section 4 below), and (f) have full power and authority to enter into this Agreement and in so doing will not violate any other agreement to which you are a party. You acknowledge and agree that Kik reserves the right to prohibit persons and third party entities from participating in the Kin Token sale if they are domiciled in a jurisdiction (domestic or foreign) which prohibits or restricts such participation, including but not limited to any sanctions program administered by the U.S. Pursuant to that right, Kik hereby gives you notice and you acknowledge and agree that the Kin Tokens have not been qualified for distribution by prospectus in Canada and may not be offered or sold in Canada during the course of their distribution except pursuant to a prospectus exemption, and accordingly by purchasing the Kin Tokens you are deemed to represent and warrant that (a) if you are located in Canada, you are purchasing pursuant to a prospectus exemption or (b) if you are located outside Canada, you are purchasing not for the purpose of making an immediate resale to a person you actually know to be located in Canada and, for a period of 90 days after the date of their purchase by you, you will not resell the Kin Tokens to a person you actually know to be located in Canada nor through the facilities of an exchange or market in Canada.**

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

Kin reserves the right to change or modify this Agreement at any time and in our sole discretion. If we make changes to this Agreement, we will provide notice of such changes, such as by sending an email notification, providing notice through the Site or updating the "Last Updated" date at the beginning of this Agreement. By continuing to access or use the Site or purchase Kin Tokens, you confirm your acceptance of the revised Agreement and all of the terms incorporated therein by reference. We encourage you to review the Agreement frequently to ensure that you understand the terms and conditions that apply when you access or use the Site or purchase Kin Tokens. If you do not agree to the revised Agreement, you may not access or use the Site or purchase Kin Tokens.

## Definitions

For purposes of this Agreement, "Kin Tokens" refers to a general purpose cryptocurrency, implemented on the public Ethereum blockchain (the "Ethereum Platform") as an ERC20 token, and intended for use in everyday digital services. Kin Tokens are intended to be used for all transactions within a Kin ecosystem comprised of digital services that participate in the right and opportunity to innovate and compete for compensation in the form of Kin Tokens (the "Kin Ecosystem"). The Kin Ecosystem Foundation, a to-be formed not for profit corporation, will act as the governance body for the Kin Ecosystem.

## Anti-Money Laundering Regulations

If, at any time, Kik determines that it must or should comply with applicable law, regulations or guidance for money services businesses operating in the United States or Canada, Kik may be required to file details of account activity to the Financial Crimes Enforcement Network ("FinCEN") from time to time. We may also be required to provide information as required by law to other state or federal agencies in the United States and Canada and other jurisdictions including but not limited to reporting suspicious transactions of $2,000 or more to FinCEN, and maintaining records regarding transactions of $3,000 or more (the "Recordkeeping Requirements").

Since we do not accept transactions, we maintain a KYC policy to comply with the Recordkeeping Requirements. Kik aims to reasonably identify each prospective purchaser of Kin Tokens by cross-checking user data against governmental watch lists, including but not limited to the Specifically Designated Nationals and Blocked Persons List maintained by OFAC, as well as third-party identity verification and authentication services. If your proposed purchase is flagged through our internal controls, we may require additional proof of identification from you, and we have the right to not permit any purchases until additional and verifiable proof of identity to our satisfaction is received and you have been approved as a prospective purchaser.

By agreeing to this Agreement, you acknowledge and agree that that we maintain verification levels that require user participation and verification to obtain, with leveled permissions based on user-supplied information, our ability to verify it, and our internal policies. You accept that you may not be able to achieve your desired level of verification, and we reserve the right in our sole discretion, to determine the appropriate verification level for any user, as well as the right to downgrade users without notice. We may, from time to time, implement policies restricting verification levels by nationality, country of residence, or any other factor. This may affect your right to purchase Kin Tokens or withdraw Kin Tokens in your Account, and you indemnify Kik against any losses associated with an inability to purchase or withdraw Kin Tokens based on your verification level.

## Privacy Policy; User Participation Guide;

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

Please refer to our Privacy Policy for information about how we collect, use and share information about you.

Please refer to our User Participation Guide for more information about how Kin Tokens will be used within the Kin Ecosystem.

**Registration, Account and Communication Preferences**

To purchase Kin Tokens, you will need to register for a Kin Account on the Site ("Account"). By creating an Account, you agree to (a) provide accurate, current and complete Account information about yourself, (b) maintain and promptly update from time to time as necessary your Account information, (c) maintain the security of your password and accept all risks of unauthorized access to your Account and the information you provide to us, and (d) immediately notify us if you discover or otherwise suspect any security breaches related to the Site, the Kin Tokens, or your Account. Kik will block multiple accounts of the same user.

You acknowledge and agree that to ensure the safety of the users' accounts, to counteract money laundering and to enforce is internal security policy Kik by default shall use internal controls and programs for such control to be maintained. Kik, through these programs and controls, shall collect and store information about the users and their transactions, including personal information about you, provided to us upon registration of your Account or requested by us upon transactions effected, as well as indirect information, including IP-addresses, information about the operating system used, software configuration and other information collected with the use of "cookies" technology to create statistical reports.

Kik may require identification information depending in case of any suspicious activity that may be indicative of illegal activity. Identification of bank accounts may also be required. You accept and agree that in cases where Kik has valid reasons to believe that your Account is used for money laundering or for any other illegal activity, or that you have concealed or reported false identification information and other details, and also if there is a valid reason to believe that the transactions effected via your Account were effected in breach of this Agreement, Kik shall be entitled to require you to provide any additional information and documents to clarify the circumstances. Transactions may be frozen until the documents are reviewed by us and accepted as satisfying the requirements of the legislation for counteracting laundering of incomes from criminal activities and financing or terrorism.

Kik can request from you any additional identifying information and support documents at any time at the request of any competent authority or in case of application of any applicable law or regulation, including laws related to anti-laundering (legalization) of incomes obtained by criminal means, or for counteracting financing of terrorism. In this case, if you do provide incomplete or false information and documents, Kik shall be free to unilaterally refuse to provide its services to you.

By creating an Account, you also consent to receive electronic communications from us (e.g., via email or by posting notices to the Site). These communications may include notices about your Account (e.g., password changes and other transactional information) and are part of your relationship with us. You agree that any notices, agreements, disclosures or other communications that we send to you electronically will satisfy any legal communication requirements, including, but not limited to, that such communications be in writing. You should maintain copies of electronic communications from us by printing a paper copy or saving an electronic copy. Kik may also send you promotional communications via email, including, but not limited to, newsletters, special offers, surveys and other news and information we think will be of interest to you. You may opt out of receiving these promotional emails at any time by following the unsubscribe instructions provided therein.

12918715.5

**License to Access and Use Our Site and Content**

Unless otherwise indicated in writing by us, the Site and all content and other materials contained therein, including, without limitation, the Kin logo and all designs, text, graphics, pictures, information, data, software, sound files, other files and the selection and arrangement thereof (collectively, "Content") are the proprietary property of Kik or our affiliates, licensors or users, as applicable, and are protected by Canadian, U.S. and international copyright laws.

You are hereby granted a limited, nonexclusive, nontransferable, nonsublicensable license to access and use the Site and Content. However, such license is subject to this Agreement and does not include any right to (a) sell, resell or use commercially the Site or Content, (b) distribute, publicly perform or publicly display any Content, (c) modify or otherwise make any derivative uses of the Site or Content, or any portion thereof, (d) use any data mining, robots or similar data gathering or extraction methods, (e) download (other than page caching) any portion of the Site or Content, except as expressly permitted by us, and (f) use the Site or Content other than for their intended purposes. Any use of the Site or Content other than as specifically authorized herein, without our prior written permission, is strictly prohibited and will terminate the license granted herein. Such unauthorized use may also violate applicable laws, including, without limitation, copyright and trademark laws and applicable communications regulations and statutes. Unless explicitly stated by us, nothing in this Agreement shall be construed as conferring any right or license to any patent, trademark, copyright or other proprietary rights of Kik or any third party, whether by estoppel, implication or otherwise. This license is revocable at any time.

Notwithstanding anything to the contrary in this Agreement, the Site and Content may include software components provided by Kik or its affiliates or a third party that are subject to separate license terms, in which case those license terms will govern such software components.

**Trademarks**

The Kin logo and any Kik product or service names, logos or slogans that may appear on the Site are trademarks of Kik or our affiliates and may not be copied, imitated or used, in whole or in part, without our prior written permission. You may not use any metatags or other "hidden text" utilizing "Kin" or any other name, trademark or product or service name of Kik or our affiliates without our prior written permission. In addition, the look and feel of the Site, including, without limitation, all page headers, custom graphics, button icons and scripts, constitute the service mark, trademark or trade dress of Kik and may not be copied, imitated or used, in whole or in part, without our prior written permission. All other trademarks, registered trademarks, product names and company names or logos mentioned on the Site are the property of their respective owners and may not be copied, imitated or used, in whole or in part, without the permission of the applicable trademark holder. Reference to any products, services, processes or other information by name, trademark, manufacturer, supplier or otherwise does not constitute or imply endorsement, sponsorship or recommendation by Kik.

**Hyperlinks**

You are granted a limited, nonexclusive, nontransferable right to create a text hyperlink to the Site for noncommercial purposes, provided that such link does not portray Kik or our affiliates or any of our products or services in a false, misleading, derogatory or otherwise defamatory manner, and provided further that the linking site does not contain any adult or illegal material or any material that is offensive, harassing or otherwise objectionable. This limited right may be revoked at any time. You may not use a Kin logo or other proprietary graphic of Kik to link to the Site or Content without our express written permission. Further, you may not use, frame or utilize framing techniques to enclose any Kik

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

trademark, logo or other proprietary information, including the images found on the Site, the content of any text or the layout or design of any page, or form contained on a page, on the Site without our express written consent. Kik makes no claim or representation regarding, and accepts no responsibility for, the quality, content, nature or reliability of third party websites accessible by hyperlink from the Site or of websites linking to the Site ("Third Party Sites and/or Services"). Such Third Party Sites and/or Services are not under our control, and we are not responsible for the contents of any Third Party Sites and/or Services, any link contained in Third Party Sites and/or Services, or any review, changes or updates to such Third Party Sites and/or Services. We provide these links to you only as a convenience, and the inclusion of any link does not imply our affiliation, endorsement or adoption of any site or any information contained therein. When you leave our Site, you should be aware that our terms and policies no longer govern. You should review the applicable terms and policies, including privacy and data gathering practices, of any Third Party Sites and/or Services to which you navigate from our Site.

Third Party Content

We may display content from third parties through the Site and Content (collectively, "Third Party Content"). We do not control, endorse or adopt any Third Party Content, and we make no representations or warranties of any kind regarding such Third Party Content, including, without limitation, regarding its accuracy or completeness. You acknowledge and agree that your interactions with third parties providing Third Party Content are solely between you and such third parties, and that Kik is not responsible or liable in any manner for such interactions or Third Party Content.

User Conduct

You agree that you will not violate any law, contract, intellectual property or other third party right or commit a tort, and that you are solely responsible for your conduct, while accessing or using the Site or using Kin Tokens. You agree that you will abide by this Agreement and will not:

- Provide false or misleading information to Kik;

- Use or attempt to use another user's account without authorization from such user and Kik;

- Use the Site or Kin Tokens in any manner that could interfere with, disrupt, negatively affect or inhibit other users from fully enjoying the Site or Kin Tokens, or that could damage, disable, overburden or impair the functioning of the Site or Kin Tokens in any manner;

- Develop, utilize, or disseminate any software, or interact with our API in any manner, that could damage, harm, or impair the Site or Kin Tokens;

- Reverse engineer any aspect of the Site, or do anything that might discover source code or bypass or circumvent measures employed to prevent or limit access to any Content, area or code of the Site;

- Attempt to circumvent any content-filtering techniques we employ, or attempt to access any feature or area of the Site or Kin Tokens that you are not authorized to access;

- Use any robot, spider, crawler, scraper, script, browser extension, offline reader or other automated means or interface not authorized by us to access the Site and Kin Tokens, extract data or otherwise interfere with or modify the rendering of Site pages or functionality;

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

- Use data collected from our Site and Kin Tokens to contact individuals, companies, or other persons or entities;

- Use data collected from our Site and Kin Tokens for any direct marketing activity (including without limitation, email marketing, SMS marketing, telemarketing, and direct marketing);

- Bypass or ignore instructions that control all automated access to the Site or Kin Tokens; or

- Use the Site or Kin Tokens for any illegal or unauthorized purpose, or engage in, encourage or promote any activity that violates this Agreement.

- Use the Ethereum Platform to carry out any illegal activities, including but not limited to money laundering, terrorist financing or deliberately engaging in activities designed to adversely affect the performance of the Ethereum Platform, the Kin Tokens or the Kin Ecosystem.

You represent and warrant that (a) you are the rightful owner and entitled to use all Kin Tokens purchased by you; (b) your purchase of Kin Tokens does not violate the rights of any third party or applicable law; and (c) the currency used to buy Kin Tokens corresponds to your actual assets and arrives from legal sources.

Feedback

You can submit questions, comments, suggestions, ideas, original or creative materials or other information about Kik, the Site or the Kin Tokens (collectively, "Feedback"). You agree that submission of Feedback is at your own risk and that Kik has no obligations (including without limitation obligations of confidentiality) with respect to such Feedback. You represent and warrant that you have all rights necessary to submit the Feedback. You hereby grant Kik a fully paid, royalty-free, perpetual, irrevocable, worldwide, non-exclusive, and fully sublicensable right and license to use, reproduce, perform, display, distribute, adapt, modify, reformat, create derivative works of, and otherwise commercially or non-commercially exploit in any manner, any and all Feedback, and to sublicense the foregoing rights in connection with the operation and maintenance of the Site and Kin Tokens.

Indemnification

To the fullest extent permitted by applicable law, you agree to indemnify, defend and hold harmless Kik, and our respective past, present and future employees, officers, directors, contractors, consultants, equity holders, suppliers, vendors, service providers, parent companies, subsidiaries, affiliates, agents, representatives, predecessors, successors and assigns (individually and collectively, the "Kik Parties "), from and against all actual or alleged Kik Party or third party claims, damages, awards, judgments, losses, liabilities, obligations, penalties, interest, fees, expenses (including, without limitation, attorneys' fees and expenses) and costs (including, without limitation, court costs, costs of settlement and costs of pursuing indemnification and insurance), of every kind and nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, or suspected or unsuspected, in law or equity, whether in tort, contract or otherwise (collectively, "Claims"), including, but not limited to, damages to property or personal injury, that are caused by, arise out of or are related to (a) your use or misuse of the Site, Content or Kin Tokens, (b) any Feedback you provide, (c) your violation of this Agreement, and (d) your violation of the rights of another. You agree to promptly notify Kik of any third party Claims and cooperate with the Kik Parties in defending such Claims. You further agree that the Kik Parties shall have control of the defense or settlement of any third party Claims. This indemnity is in addition to, and not in lieu of, any other indemnities set forth in a written agreement between you and Kik.

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

KIK_00128215

**Disclaimers**

EXCEPT AS EXPRESSLY PROVIDED TO THE CONTRARY IN A WRITING BY KIK, THE SITE CONTENT CONTAINED THEREIN, AND KIN TOKENS ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS WITHOUT WARRANTIES OR CONDITIONS OF ANY KIND, EITHER EXPRESS OR IMPLIED. KIK DISCLAIMS ALL OTHER WARRANTIES OR CONDITIONS, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT AS TO THE SITE, CONTENT CONTAINED THEREIN AND KIN TOKENS. KIK DOES NOT REPRESENT OR WARRANT THAT CONTENT ON THE SITE IS ACCURATE, COMPLETE, RELIABLE, CURRENT OR ERROR-FREE. KIK WILL NOT BE LIABLE FOR ANY LOSS OF ANY KIND FROM ANY ACTION TAKEN OR TAKEN IN RELIANCE ON MATERIAL OR INFORMATION, CONTAINED ON THE SITE. WHILE KIK ATTEMPTS TO MAKE YOUR ACCESS TO AND USE OF THE SITE, CONTENT AND KIN TOKENS SAFE, KIK CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SITE, CONTENT, KIN TOKENS OR OUR SERVERS ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS; THEREFORE, YOU SHOULD USE INDUSTRY-RECOGNIZED SOFTWARE TO DETECT AND DISINFECT VIRUSES FROM ANY DOWNLOAD. KIK CANNOT GUARANTEE THE SECURITY OF ANY DATA THAT YOU DISCLOSE ONLINE. YOU ACCEPT THE INHERENT SECURITY RISKS OF PROVIDING INFORMATION AND DEALING ONLINE OVER THE INTERNET AND WILL NOT HOLD US RESPONSIBLE FOR ANY BREACH OF SECURITY UNLESS IT IS DUE TO OUR GROSS NEGLIGENCE.

KIK WILL NOT BE RESPONSIBLE OR LIABLE TO YOU FOR ANY LOSS AND TAKE NO RESPONSIBILITY FOR AND WILL NOT BE LIABLE TO YOU FOR ANY USE OF KIN TOKENS, INCLUDING BUT NOT LIMITED TO ANY LOSSES, DAMAGES OR CLAIMS ARISING FROM: (A) USER ERROR SUCH AS FORGOTTEN PASSWORDS, INCORRECTLY CONSTRUCTED TRANSACTIONS, OR MISTYPED ADDRESSES; (B) SERVER FAILURE OR DATA LOSS; (C) CORRUPTED WALLET FILES; (D) UNAUTHORIZED ACCESS TO APPLICATIONS; (E) ANY UNAUTHORIZED THIRD PARTY ACTIVITIES, INCLUDING WITHOUT LIMITATION THE USE OF VIRUSES, PHISHING, BRUTEFORCING OR OTHER MEANS OF ATTACK AGAINST THE SITE OR KIN TOKENS. NOTHING IN THIS AGREEMENT EXCLUDES OR LIMITS LIABILITY FOR DEATH OR PERSONAL INJURY CAUSED BY NEGLIGENCE, FRAUDULENT MISREPRESENTATION OR ANY OTHER LIABILITY WHICH MAY NOT OTHERWISE BE LIMITED OR EXCLUDED UNDER APPLICABLE LAW.

KIN IS AN INTANGIBLE DIGITAL ASSET. KIN TOKENS EXIST ONLY BY VIRTUE OF THE OWNERSHIP RECORD MAINTAINED IN THE ETHEREUM NETWORK. ANY TRANSFER OF TITLE THAT MIGHT OCCUR IN ANY KIN TOKENS OCCURS ON THE DECENTRALIZED LEDGER WITHIN THE ETHEREUM PLATFORM. KIK DOES NOT GUARANTEE THAT KIK OR ANY KIK PARTY CAN EFFECT THE TRANSFER OF TITLE OR RIGHT IN ANY KIN TOKENS.

Kik is not responsible for sustained casualties due to vulnerability or any kind of failure, abnormal behavior of software (note, wallet, contract), blockchains or any other features of the Kin Tokens. Kik is not responsible for casualties due to late report by developers or representatives (or no report at all) of any issues with Kin Tokens including forks, technical node issues or any other issues having fund losses as a result.

Nothing in this Agreement shall exclude or limit liability of either party for fraud, death or bodily injury caused by negligence, violation of laws, or any other activity that cannot be limited or excluded by legitimate means.

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

KIK_00128216

SOME JURISDICTIONS MAY NOT ALLOW THE DISCLAIMER OF IMPLIED TERMS IN CONTRACTS WITH CONSUMERS, SO SOME OR ALL OF THE DISCLAIMERS IN THIS SECTION MAY NOT APPLY TO YOU.

KIK MAKES NO WARRANTIES OR CONDITIONS, EXPRESS OR IMPLIED, WITH RESPECT TO THIRD PARTY CONTENT OR THIRD PARTY SITES AND/OR SERVICES, AND EXPRESSLY DISCLAIMS ANY WARRANTY OR CONDITION OF MERCHANTABILITY, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT WILL KIK BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, OR COVER DAMAGES ARISING OUT OF YOUR USE OF OR INABILITY TO USE THIRD PARTY CONTENT OR THIRD PARTY SITES AND/OR SERVICES OR ANY AMOUNT IN EXCESS OF THE AMOUNT PAID BY YOU FOR THE THIRD PARTY CONTENT OR THIRD PARTY SITES AND/OR SERVICES THAT GIVE RISE TO ANY CLAIM.

We reserve the right to change any and all Content and to modify, suspend or stop providing access to the Site or Content (or any features or functionality of the Site) at any time without notice and without obligation or liability to you.

Reference to any products, services, processes or other information by trade name, trademark, manufacturer, supplier, vendor or otherwise does not constitute or imply endorsement, sponsorship or recommendation thereof, or any affiliation therewith, by us.

**Assumption of Risk**

You accept and acknowledge

- Purchasers of Kin Tokens should expect prices to have large range fluctuations. The information published on the Site cannot guarantee that participants will not lose money.

- You are solely responsible for determining what, if any, taxes apply to your Kin Token transactions. Neither Kik nor any other Kik Party is responsible for determining the taxes that apply to Kin Token transactions.

- Our Site does not store, send, or receive Kin Tokens. This is because the Kin Tokens exist only by virtue of the ownership record maintained in the Ethereum Platform. Any transfer of Kin Tokens occurs within the Ethereum Platform and not on this Site.

- There are risks associated with using an Internet based currency, including but not limited to, the risk of hardware, software and Internet connections, the risk of malicious software introduction, and the risk that third parties may obtain unauthorized access to information stored within your wallet. You accept and acknowledge that Kik will not be responsible for any communication failures, disruptions, errors, distortions or delays you may experience when using the Kin Tokens, however caused.

- A lack of use or public interest in the creation and development of distributed ecosystems could negatively impact the development of the Kin Ecosystem and therefore the potential utility of Kin Tokens.

- As a result of the open source structure of the Kin Ecosystem protocol, the Kin Ecosystem may be susceptible to developments by users or contributors that could damage the Kin Ecosystem and affect the use of the Kin Ecosystem and Kin Tokens.

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

- The Kin Ecosystem will rely on third-party platforms such as the Apple App Store and the Google Play Store to distribute the applications through which users will access the Kin Ecosystem. If the Kin Ecosystem is unable to maintain a good relationship with such platform providers; if the terms and conditions or pricing of such platform providers change; if the Kin Ecosystem providers violate or cannot comply with the terms and conditions of such platforms; or if any of such platforms loses market share or falls out of favor or is unavailable for a prolonged period of time, access to and use of the Kin Ecosystem and Kin Tokens will suffer.

- Upgrades by Ethereum to the Ethereum Platform, a hard fork in the Ethereum Platform, or a change in how transactions are confirmed on the Ethereum Platform may have unintended, adverse effects on all blockchains using the ERC-20 standard, including the Kin Ecosystem.

- The regulatory regime governing blockchain technologies, cryptocurrencies, and tokens is uncertain, and new regulations or policies may materially adversely affect the development of the Kin Ecosystem and the utility of Kin Tokens.

- The prices of blockchain assets are extremely volatile. Fluctuations in the price of Ether or other digital assets could materially and adversely affect the Kin Tokens, which may also be subject to significant price volatility.

**Limitation of Liability; Release**

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT SHALL KIK OR ANY OF THE OTHER KIK PARTIES BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES OF ANY KIND OR FOR LOSS OF REVENUE, INCOME OR PROFITS, LOSS OF USE OR DATA, LOSS OR DIMINUTION IN VALUE OF ASSETS OR SECURITIES, OR DAMAGES FOR BUSINESS INTERRUPTION ARISING OUT OF OR IN ANY WAY RELATED TO THE ACCESS OR USE OF THE SITES, CONTENT OR KIN TOKENS OR OTHERWISE RELATED TO THIS AGREEMENT (INCLUDING, BUT NOT LIMITED TO, ANY DAMAGES CAUSED BY OR RESULTING FROM RELIANCE BY ANY USER ON ANY INFORMATION OBTAINED FROM KIN DIGITAL, OR FROM MISTAKES, OMISSIONS, INTERRUPTIONS, DELETIONS OF FILES OR EMAILS, ERRORS, DEFECTS, BUGS, VIRUSES, TROJAN HORSES, DELAYS IN OPERATION OR TRANSMISSION OR ANY FAILURE OF PERFORMANCE, WHETHER OR NOT RESULTING FROM ACTS OF GOD, COMMUNICATIONS FAILURE, THEFT, DESTRUCTION OR UNAUTHORIZED ACCESS TO KIK'S RECORDS, PROGRAMS OR SYSTEMS), REGARDLESS OF THE FORM OF ACTION, WHETHER BASED IN CONTRACT, TORT (INCLUDING, BUT NOT LIMITED TO, SIMPLE NEGLIGENCE, WHETHER ACTIVE, PASSIVE OR IMPUTED), OR ANY OTHER LEGAL OR EQUITABLE THEORY (EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE).

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT SHALL THE MAXIMUM AGGREGATE LIABILITY OF US ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, THE ACCESS TO AND USE OF THE SITE CONTENT, KIN TOKENS, OR ANY PRODUCTS OR SERVICES PURCHASED FROM US EXCEED THE GREATER OF $100 AND THE AMOUNT RECEIVED BY US FROM THE SALE OF KIN TOKENS THAT ARE THE SUBJECT OF THE CLAIM.

Some jurisdictions do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. Some jurisdictions also limit disclaimers or

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

KIK_00128218

limitations of liability for personal injury from consumer products, so this limitation may not apply to personal injury claims.

## Modifications to the Site and Kin Tokens

We reserve the right in our sole discretion to modify, suspend or discontinue, temporarily or permanently, the Sites (or any features or parts thereof) or suspend or discontinue issuance of Kin Tokens at any time and without liability therefor.

**Dispute Resolution; Arbitration. Please read the following arbitration agreement in this Section ("Arbitration Agreement") carefully. It requires you to arbitrate disputes with Kik and limits the manner in which you can seek relief from us.**

**16.1 Applicability of Arbitration Agreement.** You agree that any dispute or claim relating in any way to your access or use of the Site or Content, to the Kin Tokens, or to any aspect of your relationship with Company, will be resolved by binding arbitration, rather than in court, except that (1) you may assert claims in small claims court if your claims qualify, so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis; and (2) you or Kik may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents).

IF YOU AGREE TO ARBITRATION WITH KIK, YOU ARE AGREEING IN ADVANCE THAT YOU WILL NOT PARTICIPATE IN OR SEEK TO RECOVER MONETARY OR OTHER RELIEF IN ANY LAWSUIT FILED AGAINST US ALLEGING CLASS, COLLECTIVE, AND/OR REPRESENTATIVE CLAIMS ON YOUR BEHALF. INSTEAD, BY AGREEING TO ARBITRATION, YOU MAY BRING YOUR CLAIMS AGAINST US IN AN INDIVIDUAL ARBITRATION PROCEEDING. IF SUCCESSFUL ON SUCH CLAIMS, YOU COULD BE AWARDED MONEY OR OTHER RELIEF BY AN ARBITRATOR. YOU ACKNOWLEDGE THAT YOU HAVE BEEN ADVISED THAT YOU MAY CONSULT WITH AN ATTORNEY IN DECIDING WHETHER TO ACCEPT THIS AGREEMENT, INCLUDING THIS ARBITRATION AGREEMENT.

**16.2 Arbitration Rules and Forum.** The Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement. To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent, Peter Heinke, Kik Interactive Inc., 420 Weber St. N., Waterloo, ON. The arbitration will be conducted by JAMS, an established alternative dispute resolution provider. Disputes involving claims and counterclaims under $250,000, not inclusive of attorneys' fees and interest, shall be subject to JAMS's most current version of the Streamlined Arbitration Rules and procedures available at http://www.jamsadr.com/rules-streamlined-arbitration/; all other claims shall be subject to JAMS's most current version of the Comprehensive Arbitration Rules and Procedures, available at http://www.jamsadr.com/rules-comprehensive-arbitration/. JAMS's rules are also available at www.jamsadr.com or by calling JAMS at 800-352-5267. If JAMS is not available to arbitrate, the parties will select an alternative arbitral forum. If the arbitrator finds that you cannot afford to pay JAMS's filing, administrative, hearing and/or other fees and cannot obtain a waiver from JAMS, Kik will pay them for you. In addition, Kik will reimburse all such JAMS's filing, administrative, hearing and/or other fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous. Likewise, Kik will not seek attorneys' fees and costs in arbitration unless the arbitrator determines the claims are frivolous.

You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the country where you live or at another mutually agreed location. Any judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction.

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

KIK_00128219

**16.3 Authority of Arbitrator.** The arbitrator, and not any federal, state or local court or agency shall have exclusive authority (a) determine the scope and enforceability of this arbitration agreement and (b) to resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable. The arbitration will decide the rights and liabilities, if any, of you and Kik. The arbitration proceeding will not be consolidated with any other matters or joined with any other cases or parties. The arbitrator shall have the authority to grant motions dispositive of all or part of any claim. The arbitrator shall have the authority to award monetary damages and to grant any non-monetary remedy or relief available to an individual under applicable law, the arbitral forum's rules, and the Agreement (including the Arbitration Agreement). The arbitrator shall issue a written award and statement of decision describing the essential findings and conclusions on which the award is based, including the calculation of any damages awarded. The arbitrator has the same authority to award relief on an individual basis that a judge in a court of law would have. The award of the arbitrator is final and binding upon you and us.

**16.4 Waiver of Jury Trial.** YOU AND KIK HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY. You and Kik are instead electing that all claims and disputes shall be resolved by arbitration under this Arbitration Agreement, except as specified in Section 16.1 above. An arbitrator can award on an individual basis the same damages and relief as a court and must follow this Agreement as a court would. However, there is no judge or jury in arbitration, and court review of an arbitration award is subject to very limited review.

**16.5 Waiver of Class or Consolidated Actions.** ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS, ONLY INDIVIDUAL RELIEF IS AVAILABLE, AND CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER. Notwithstanding anything to the contrary herein, (a) representative actions for public injunctive relief may be arbitrated on a class basis, and (b) in the event that the foregoing sentence is deemed invalid or unenforceable with respect to a particular claim or dispute for recovery of damages, neither you nor we shall be entitled to arbitration of such claim or dispute and instead the applicable claim or dispute shall be resolved in a court as set forth in Section 17.

**16.6 30-Day Right to Opt Out.** You have the right to opt out of the provisions of this Arbitration Agreement by sending written notice of your decision to opt out to the following address: Kik Interactive Inc., 420 Weber St. N., Waterloo, ON, or privacy@kik.com, within 30 days after first becoming subject to this Arbitration. Your notice must include your name and address, the email address you used to set up your Account (if you have one), and an unequivocal statement that you want to opt out of this Arbitration Agreement. If you opt out of this Arbitration Agreement, all other parts of this Agreement will continue to apply to you. Opting out of this Arbitration Agreement has no effect on any other arbitration agreements that you may currently have, or may enter in the future, with us.

**16.7 Severability.** If any part or parts of this Arbitration Agreement are found under the law to be invalid or unenforceable, then such specific part or parts shall be of no force and effect and shall be severed and the remainder of the Arbitration Agreement shall continue in full force and effect.

**16.8 Survival of Agreement.** This Arbitration Agreement will survive the termination of your relationship with Kik.

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

**16.9 Modification.** Notwithstanding any provision in this Agreement to the contrary, we agree that if Kik makes any future material change to this Arbitration Agreement, it will not apply to any individual claim(s) that you had already provided notice of to Kik.

## Governing Law and Venue

This Agreement, your access to and use of the Sites, Services and Content, and your purchase and use of the Kin Tokens shall be governed by and construed and enforced in accordance with the laws of the state of Delaware, without regard to conflict of law rules or principles of the state of Delaware, or any other jurisdiction) that would cause the application of the laws of any other jurisdiction. Any Dispute between the parties that is not subject to arbitration or cannot be heard in small claims court, shall be resolved in the state or federal courts of the state of Delaware, and the United States, respectively, sitting in the state of Delaware.

## Termination

Notwithstanding anything contained in this Agreement, we reserve the right, without notice and in our sole discretion, to terminate your right to access or use the Site and Content, at any time and for any or no reason, and you acknowledge and agree that Kik shall have no liability or obligation to you in such event and that you will not be entitled to a refund of any amounts that you have already paid to us, to the fullest extent permitted by applicable law.

## Severability

If any term, clause or provision of this Agreement is held invalid or unenforceable, then that term, clause or provision will be severable from this Agreement and will not affect the validity or enforceability of any remaining part of that term, clause or provision, or any other term, clause or provision of this Agreement.

## Survival

The following sections will survive the expiration or termination of this Agreement and the termination of your Account: all defined terms and Sections 1, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21.

## Miscellaneous

This Agreement constitutes the entire agreement between you and Kik relating to your access to and use of the Sites, and Content and your purchase and use of the Kin Tokens. This Agreement, and any rights and licenses granted hereunder, may not be transferred or assigned by you without the prior written consent of Kik, and Kik's failure to assert any right or provision under this Agreement shall not constitute a waiver of such right or provision. Except as otherwise provided herein, this Agreement is intended solely for the benefit of the parties and are not intended to confer third party beneficiary rights upon any other person or entity.

©2017 Kik Interactive. All rights reserved.

12918715.5

Appendix 3

Notification Email sent to 875 people.

Kin token distribution event will not be available to Canadian residents.

View this email in your browser



12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

Hello--

Thank you for your interest in the Kin token distribution event (TDE) and for taking the time to register for the event.

It is with great disappointment that we have made the decision to exclude Canadian residents from next week's TDE. We've had discussions with the Ontario Securities Commission (OSC), and despite our best efforts, they've failed to give us clear direction on when Canadian securities law will or, more importantly, will not apply. Thus, we have decided to move forward without Canada.

Here is a Medium post by Kik's Founder and CEO Ted Livingston with more details.

We encourage you to follow Kin and stay active in our channels. If you would like your registration information removed from our systems, please email kin.registration@kik.com with the subject: "Canadian resident - please remove from your system."

- The Kin Team

*Kin Digital Services, Inc. reserves the right to prohibit persons (both natural and non-natural) from participating in either the Kin TDE, and/or Kin network, who are domiciled in jurisdictions (both domestic and foreign) in accordance with legal and/or regulatory concerns or obligations, such as sanctions programs administered by the U.S. Department of Treasury's Office of Foreign Assets Control.*

12918715.5

FOIA Confidential Treatment Requested
By Kik Interactive Inc.

KIK_00128223



This is
Exhibit No. 121
on the examination of:
Pat Choukos in
US Securities v Kik
held on 5 Dec 2019

VICTORY VERBATIM
Reporting Services
Toronto, Ont.