# Exhibit JJ

# Congress of the United States
## Washington, DC 20515

September 28, 2018

The Honorable Jay Clayton
Chairman
Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549

Dear Chairman Clayton:

We write to express our appreciation of the thoughtful and deliberate approach exhibited by the Securities and Exchange Commission (SEC) to the application of the securities laws to digital tokens and cryptocurrencies. In particular, we were pleased with the approach articulated by Director of the Division of Corporate Finance William Hinman in a speech on June 14th. We also appreciate the proactive views expressed by Commissioner Peirce on September 12th regarding the appropriate regulation of this technology.  Because the use of this technology is important to growth across many sectors of the American economy, we would like to solicit your answers to several questions related to this topic.

We share your view that digital assets that are offered and sold in a manner properly determined to cause the offers and sales to involve securities or investment contracts must comply with securities laws. We also agree that not all digital tokens are securities, and we believe that treating *all* digital tokens as securities would harm American innovation and leadership in the cryptocurrency and financial technology space. [1] Therefore, we believe it is important that all policy makers work toward developing clearer guidelines between those digital tokens that are securities, and those that are not, through better articulation of SEC policy, and, ultimately, through formal guidance or legislation.[2]  Current uncertainty surrounding the treatment of offers and sales of digital tokens is hindering innovation in the United States and will ultimately drive business elsewhere.

We believe that the SEC could do more to clarify its position. Additionally, we are concerned about the use of enforcement actions *alone* to clarify policy and believe that formal guidance may be an appropriate approach to clearing up legal uncertainties which are causing the environment for the development of innovative technologies in the United States to be unnecessarily fraught.

Recognizing that such guidance will, reasonably, take time, caution, and deep consideration, we request your views on the following foundational issues with respect to digital tokens to further a longer-term goal of developing formal guidance.

---

[1] *See* Token Alliance, Chamber of Dig. Commerce, Understanding Digital Tokens: Market Overviews & Guidelines for Policymakers (2018).

[2] https://coincenter.org/entry/principles-for-clarifying-sec-jurisdiction-over-cryptocurrencies-and-icos.

1. The SEC should clarify the criteria used to determine when offers and sales of digital tokens should properly be considered "investment contracts" and therefore offerings of securities.

    The public statements made by yourself, Commissioner Peirce, and Director Hinman are helpful indicia of the evolution of the SEC's views of digital token platforms. Please expand on what criteria the SEC is currently using – specific to digital tokens - to determine under what circumstances the offer and sale of a digital token should properly be considered an "investment contract" and, therefore, an offer or sale of "securities" under the Securities Acts and the *Howey* Test. The various criteria set out at the end of Director Hinman's speech are helpful; nevertheless, specific FAQ-type examples illustrating how these factors may be applied in practice could aid market participants in better understanding how these factors should be applied.

    An example of a digital token that is not considered to be a security is Bitcoin, whose value, functionality, and transferability is determined by a permissionless blockchain maintained by unaffiliated miners, code contributors, and spot-markets for trading. Nevertheless, the marketplace for digital tokens is expanding. Other digital tokens in existence today should also be deemed to fall outside the parameters used to define an investment contract under the securities laws. In the current environment, it is unclear which other unique characteristics of digital tokens are also considered by the SEC when making this determination.

2. Do you agree that a token originally sold in an investment contract can, nonetheless, be a non-security as Mr. Hinman stated? Can the resultant token be analyzed separately from the original purchase agreement, which may clearly be an investment contract? And, if so, could the resultant token, nonetheless be a non-security?

3. Please describe the tools available to the SEC to offer more concrete guidance to innovators on these topics.

When considering these topics, we caution that any agency should be mindful of the speed at which the industry is developing, and that new and dynamic circumstances could render stringent guidance obsolete. As a result, any response should strive to endure future evolution of the technology.

Thank you for your attention to this important matter.