# Exhibit WW

EXECUTION COPY

## SERVICES AGREEMENT
(the "**Agreement**")

**THIS AGREEMENT** made as of the 18th day of September, 2018, with legal effect from and after September 12, 2017 (the "**Effective Date**"),

BETWEEN:

> **KIK INTERACTIVE INC.**, a corporation existing under the federal laws of Canada ("**Kik**")
>
> - and -
>
> **KIN ECOSYSTEM FOUNDATION**, a corporation without share capital existing under the federal laws of Canada (the "**Foundation**" and, together with Kik, the "**Parties**" and each, a "**Party**")

**WHEREAS** Kik and the Foundation wish to enter into this Agreement to set out the principles that will govern the management services to be provided by Kik to the Foundation from and after the Effective Date.

**NOW THEREFORE,** in consideration of the mutual agreement herein contained and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**1     Objectives**

1.1     Best Interest. The Parties wish to work together in good faith and in a spirit of collaboration and cooperation to advance the best interests of the Parties.

1.2     Support to Foundation Activities. The Parties, while respecting their respective legal independence, wish to ensure that appropriate processes, structures and agreements are in place to ensure appropriate support is provided by Kik to the Foundation.

**2     Services, Service Fees and Related Matters**

2.1     Scope of Services. Kik shall provide to the Foundation the management services set out in Schedule "A" attached hereto (the "**Services**") and such other services agreed to in writing by the Parties.

2.2     Service Fees. As consideration for the provision of the Services by Kik to the Foundation, the Foundation shall pay Kik such fees as invoiced by Kik from time to time (the "**Service Fees**"), plus applicable taxes, provided that all Service Fees are calculated and charged at cost, plus eight percent (8%).  Kik may amend the Service Fees from time to time but on



EXHIBIT
268
19-cv-5244-AKH

DocuSign Envelope ID: BAAB33B2-5348-4938-9631-3ABAF71E91E6

EXECUTION COPY

no less than one hundred and twenty (120) days prior written notice.

2.3  <u>Level and Frequency of Services</u>. Kik covenants and agrees to provide the Services to the Foundation at a level and frequency and to a quality commensurate with the services Kik provides internally in support of its own activities and affairs.

2.4  <u>Foundation Covenants</u>. The Foundation covenants and agrees to:

    (i)    respect and follow any and all reasonable corporate policies and procedures related to the Services performed by Kik from time to time; and

    (ii)    promptly pay all undisputed Service Fees when due.

**3   Term and Termination**

3.1  <u>Term</u>. This Agreement shall commence as of the Effective Date and continue in full force and effect until September 30, 2022, unless earlier terminated in accordance with the provisions of this Agreement (the "**Term**").

3.2  <u>Termination</u>.

    (i)    Either Party may terminate this Agreement for any reason following three (3) months' prior written notice to the other Party.

    (ii)    Either Party may terminate this Agreement immediately following written notice to the other Party if:

        (a)    the other Party commits a material breach of any term of this Agreement and, in the case of a breach reasonably capable of being remedied, has not remedied such breach within fifteen (15) days of a written request to remedy same from the non-breaching Party;

        (b)    the other Party convenes a meeting of its creditors or if a proposal is made for a voluntary arrangement to liquidate or otherwise dissolve or wind-up the Party, or if it shall be the subject of any bankruptcy, receivership or similar proceedings or unable to pay its debts as they become due; or

        (c)    the other Party engages in conduct, including without limitation, acts of dishonesty or fraud, that is harmful to the reputation of a Party, objectively determined.

3.3  <u>Consequences of Termination</u>. Upon the termination of this Agreement for any reason Kik shall forthwith send a final invoice to the Foundation listing the outstanding Service Fees payable by the Foundation to Kik as of the date of termination of the Agreement, if any, and the Foundation shall pay the undisputed amount invoiced by Kik within thirty (30) days of receipt of such invoice.

DocuSign Envelope ID: BAAB33B2-5348-4938-9631-3ABAF71E91E6

EXECUTION COPY

**4      Confidential Information**

4.1      Definition. "**Confidential Information**" means this Agreement and any and all documents, correspondence, material and information shared between the Parties pursuant to this Agreement.

4.2      Non-Disclosure. Each Party will maintain the confidentiality of the other Party's Confidential Information using at least the same care as it takes to prevent the unauthorized disclosure of its own Confidential Information. Confidential Information will only be disclosed a Party's directors, officers, employees, professional advisors, contractors and agents under a similar obligation of confidentiality who require such access for the performance of the Party's obligations under this Agreement.

4.3      Exception. The obligations of confidentiality set forth in this Section 4 will not apply to Confidential Information that:

(i)      is or becomes generally available to the public other than as a result of disclosure by the receiving Party;

(ii)     was in the possession of the receiving Party prior to disclosure or was developed independently from the Confidential Information; and

(iii)    was lawfully obtained from a third party without breach of this Agreement and otherwise not in violation of the disclosing Party's rights.

4.4      Compelled Disclosure. In the event that Confidential Information is required to be disclosed by a receiving Party under a court order, the receiving Party shall be allowed to do so, provided that it shall, without delay, inform the disclosing Party in writing of receipt of such order and assist the disclosing Party in seeking protection against such order.

**5      Personal Information**

5.1      Definition. "**Personal Information**" means information about an identifiable individual.

5.2      Transfer of Personal Information. The Foundation will transfer Personal Information to Kik for the purposes of allowing Kik to provide the Services.

5.3      Compliance with the Foundation's Privacy Policies. Kik shall comply with the Foundation's privacy policies, if any, and refrain from using or disclosing Personal Information other than in compliance with such policies. More specifically, Kik shall only use the Personal Information provided by the Foundation for the purposes of providing the Services. Kik may use the Personal Information provided by the Foundation for other purposes provided that they are clearly stated in the privacy policies, if any, and that individuals are allowed to withdraw their consent to such uses of their Personal Information.

DocuSign Envelope ID: BAAB33B2-5348-4938-9631-3ABAF71E91E6

EXECUTION COPY

5.4     Security Measures. Kik agrees to maintain appropriate administrative, technical and physical safeguards and other security measures designed to ensure the security and confidentiality of the Personal Information.

5.5     Data Incidents. Kik shall immediately notify the Foundation of any reasonable suspected or actual loss of data or breach of its security measures which has or may result in the loss of or unauthorized access to Personal Information, and shall cooperate fully with the Foundation in all reasonable efforts to mitigate the adverse effects of any such data incident and to prevent any recurrence.

**6       General**

6.1     Notices.

(i)     Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be delivered in person or sent by registered mail, charges prepaid or email addressed as follows:

if to Kik:

Address: 420 Weber St. North, Suite I
Waterloo, Ontario N2L 4E7
Attention: Brandon Brunet, Controller
Email: brandon.brunet@kik.com

if to the Foundation:

Address:
C/O Jeff Graham, Esq.
Borden Ladner Gervais LLP
22 Adelaide Street West
Toronto, Ontario M5H 4E3

(ii)    Any such notice or other communication shall be deemed to have been given and received on the day on which it was delivered (or, if such day is not a business day, on the next following business day) or, if mailed, on the third (3rd) business day following the date of mailing; provided, however, that if at the time of mailing or within three (3) business days thereafter there is or occurs a labour dispute or other event that might reasonably be expected to disrupt the delivery of documents by mail, any notice or other communication hereunder shall be delivered personally.

(iii)   Either Party may at any time change its address for service from time to time by giving notice to the other Party in accordance with this Section 6.1.

6.2     Further Assurances. Each Party shall promptly do, execute, deliver or cause to be done, executed or delivered all further acts, documents and matters in connection with this Agreement that the other Party may reasonably require, for the purposes of giving effect to this Agreement.

DocuSign Envelope ID: BAAB33B2-5348-4938-9631-3ABAF71E91E6

EXECUTION COPY

6.3     Schedules. The following schedules are attached to and form part of this Agreement:

        Schedule "A" —        Services

6.4     Entire Agreement. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersede all prior agreements, understandings, negotiations and discussions, whether written or oral. There are no conditions, covenants, agreements, representations, warranties or other provisions, express or implied, collateral, statutory or otherwise, relating to the subject matter hereof except as herein or therein provided.

6.5     Time of the Essence. Time shall be of the essence of this Agreement.

6.6     Governing Law. This Agreement shall be construed, interpreted and enforced in accordance with, and the respective rights and obligations of the Parties shall be governed by, the laws of the Province of Ontario and the federal laws of Canada applicable in Ontario.

6.7     Dispute Resolution. If the Parties are unable to settle a dispute arising under or in connection with this Agreement by good faith negotiation, a Party shall not commence litigation proceedings in court but may deliver written notice of its intention to refer the matter to arbitration (the "**Arbitration Notice**") to the other Party and thereafter the dispute shall be referred to arbitration for final settlement, binding on the Parties in accordance with the provisions of the *Arbitration Act, 1991* (Ontario), subject to the following:

    (i)      the arbitration tribunal shall consist of one (1) arbitrator (the "**Arbitrator**") who shall be jointly selected by the Parties. If the Parties cannot agree on the identity of the Arbitrator within fifteen (15) days after the delivery of the Arbitration Notice, then either Party may apply to a court of competent jurisdiction to appoint the Arbitrator;

    (ii)     the Arbitrator shall be instructed that the arbitration is strictly confidential and that time is of the essence in proceeding with the determination of any dispute;

    (iii)    the arbitration shall be conducted in English, the Arbitrator shall determine and communicate the rules governing the arbitration prior to its commencement to each Party, and all hearings shall take place in Toronto, Ontario unless otherwise determined by the Arbitrator;

    (iv)    the arbitration award shall be given in writing and shall be final, binding on the Parties, not subject to any appeal or review, and shall deal with the question of costs of arbitration, pre award interest and all other matters related thereto; and

    (v)     judgment upon the award rendered may be entered into any court of competent jurisdiction, or application may be made to such court for a judicial recognition of the award or an order of enforcement thereof, as the case may be.

DocuSign Envelope ID: BAAB33B2-5348-4938-9631-3ABAF71E91E6

EXECUTION COPY

6.8     Enurement and Assignment. This Agreement shall enure to the benefit of and shall be binding on and enforceable by the Parties and their respective successors and permitted assigns. Neither Party may assign any of its rights or obligations hereunder without the prior written consent of the other Party.

6.9     Amendment and Waiver. No amendment or waiver of any provision of this Agreement shall be binding on either Party unless agreed to in writing by such Party. No waiver of any provision of this Agreement shall constitute a waiver of any other provision, nor shall any waiver constitute a continuing waiver unless otherwise provided.

6.10    Severability. If any provision of this Agreement is determined to be unenforceable or invalid for any reason whatsoever, such unenforceability or invalidity shall not affect the enforceability or validity of the remaining portions of this Agreement and such unenforceable or invalid provision shall be severable from the remainder of this Agreement.

6.11    Independent Legal Advice. Each of the Parties acknowledges and agrees that it has been afforded the opportunity to receive independent legal advice concerning this Agreement before executing it, and in the event that either Party has executed this Agreement without the benefit of independent legal advice, such Party hereby waives the right to receive such independent legal advice.

6.12    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall constitute one agreement. Delivery of an executed counterpart of this Agreement by facsimile or transmitted electronically in legible form, including without limitation in a tagged image file format (TIFF) or portable document format (PDF), shall be equally effective as delivery of a manually executed counterpart of this Agreement.

[Signature Page Follows]

TOR01: 7437311: v6

DocuSign Envelope ID: BAAB33B2-5348-4938-9631-3ABAF71E91E6

**IN WITNESS WHEREOF** this Agreement has been executed by the Parties as of the Effective Date.

**KIK INTERACTIVE INC.**

By: _Brandon Brunet_

Print Name: Brandon Brunet

Print Title:  Controller

(I have authority to bind the corporation)

**KIN ECOSYSTEM FOUNDATION**

By: _Ted Livingston_

Print Name: Ted Livingston

Print Title:  CEO

(I have authority to bind the corporation)

(Signature page to Services Agreement between Kik Interactive Inc. and Kin Ecosystem Foundation)

DocuSign Envelope ID: BAAB33B2-5348-4938-9631-3ABAF71E91E6

Schedule "A"

## MANAGEMENT SERVICES

Contract Administration

- Management of vendor relationships of the Foundation
- Contract negotiation and administration support

Corporate Services

- Meeting management and coordination
- Regulatory compliance and legal
- Corporate record keeping

Business Services

- Senior management oversight
- Decision support
- CFO support
- Risk management including insurance
- Human resources and organizational development
- Marketing and communications
- Research
- Government relations

Administration/Facilities

- Mailroom functions as required
- Telephone support
- Leasehold issues as necessary

Tax/Accounting

- Treasury function over the Foundation's cash and cryptocurrency holdings

DocuSign Envelope ID: BAAB33B2-5348-4938-9631-3ABAF71E91E6

EXECUTION COPY

- Facilitate assurance engagements required by the Foundation

- Processing of accounts payable and accounts receivable

- Tax filing and updating, preparation and advice

- Budget preparation and analysis of performance

- Maintenance of financial books and records

- Payroll Processing

- Collections

<u>Facility services</u>

- Space planning and renovations as required (at additional cost)

- Space cleaning and repair