# Exhibit XX

DocuSign Envelope ID: 1C0E7A3F-A2A2-40F6-9A41-D727A1A57E2E

## AGENCY AGREEMENT
(the "**Agreement**")

**THIS AGREEMENT** made as of the 10th day of October, 2018, with legal effect from and after September 12, 2017 (the "**Effective Date**"),

BETWEEN:

> **KIN ECOSYSTEM FOUNDATION**, a corporation without share capital existing under the federal laws of Canada
>
> (hereinafter called the "**Principal**")
>
> - and
>
> **KIK INTERACTIVE INC.**, a corporation existing under the federal laws of Canada
>
> (hereinafter called the "**Agent**")

WHEREAS:

1.  The Principal wishes to appoint the Agent to assist the Principal in certain activities set out in Schedule "A" attached hereto (the "**Activities**") subject to the terms and conditions set forth below.

2.  The Agent desires to act as agent of the Principal and assist the Principal with the Activities on the terms and conditions set forth below.

**NOW THEREFORE** this Agreement witnesses that for good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the parties agree as follows:

### ARTICLE 1: CONTROL OF ACTIVITIES

**NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT, THE PRINCIPAL SHALL MAINTAIN ULTIMATE CONTROL OF THE ACTIVITIES (INCLUDING THE RIGHT TO DISMISS THE AGENT ON NOTICE), AND FINANCIALLY BENEFIT FROM THE ACTIVITIES.**

### ARTICLE 2: APPOINTMENT OF AGENT

2.1   The Principal hereby appoints the Agent as its exclusive agent to assist the Principal in managing the Activities, subject to the terms set forth in this Agreement and subject always to the ultimate control of the Activities by the Principal (the "**Appointment**").

2.2   The Agent hereby accepts the Appointment and covenants to refrain from taking any action beyond the scope of authority granted by the Principal to the Agent hereunder.



EXHIBIT
269
19-cv-5244-AKH

DocuSign Envelope ID: 1C0E7A3F-A2A2-40F6-9A41-D727A1A57E2E

## ARTICLE 3: TERM AND TERMINATION

3.1     This Agreement shall be in effect from the date set out above and shall expire on September 30, 2022 (the "**Term**").

3.2     Despite the foregoing, this Agreement may be terminated by either the Principal or the Agent for any reason whatsoever upon written notice of no less than three (3) months or may be immediately terminated by either party in the event of a material breach of this Agreement, which breach has not been cured (or substantial steps having been taken to cure) within fifteen (15) days of the breaching party receiving written notice of the breach from the non-breaching party.

## ARTICLE 4: RIGHTS AND OBLIGATIONS OF PRINCIPAL

4.1     The Principal hereby confirms it retains ultimate responsibility for the operation of the Activities, reserves its unilateral right to make all fundamental decisions related to the Activities, solely bears the risk of operating the Activities and benefits financially from the proceeds of the Activities, and, subject to the terms of this Agreement, the Principal shall be responsible to third parties for any liabilities related to the Activities.

4.2     Given the Principal's responsibility for the Activities, the Principal shall have unrestricted access at all times to the Agent's books and records (but only those books and records related to the Activities), to ensure compliance with this Agreement. The Principal may engage a third party auditor to audit the books and records of the Agent at any time.

4.3     The Principal and Agent shall each appoint individuals of appropriate seniority to proactively and effectively manage the relationship created by this Agreement throughout the Term.

## ARTICLE 5: DUTIES OF AGENT

5.1     The Agent is hereby delegated the following duties related to the Activities, and all activities to implement the Agent's duties shall at all times be conducted in accordance with all applicable laws, industry best practices, and the direction of the Principal:

    (a)     to engage all personnel required to operate the Activities;

    (b)     to report on a monthly basis to the Principal in writing on the status of the Activities, in a form acceptable to the Principal, acting reasonably;

    (c)     to maintain complete and accurate books and records in connection with the Activities and to allow the Principal to inspect, audit and make copies of same at all reasonable times;

    (d)     to respond to inquiries from the Principal within five (5) business days or as otherwise agreed to by the parties; and

DocuSign Envelope ID: 1C0E7A3F-A2A2-40F6-9A41-D727A1A57E2E

    (e)     to carry out such further reasonable duties the Principal imposes on the Agent from time to time.

5.2    The Agent shall not subcontract or delegate any duties of the Agent without the prior written consent of the Principal.

## ARTICLE 6: NO PARTNERSHIP

6.1    This Agreement does not constitute a partnership or joint venture between the Principal and Agent. Other than as expressly provided for in this Agreement, the Agent shall have no right to bind the Principal in any manner whatsoever; in this regard, the Agent hereby indemnifies and holds the Principal harmless from and against any liability related to the Agent purporting to bind the Principal in a manner inconsistent with the terms of the Agreement.

6.2    The Agent shall not make any public statement on behalf of the Principal without the prior written consent of the Principal.

6.3    Other than with respect to the agency relationship set forth in this Agreement, the parties agree each are independent contractors. In this regard, the Principal acknowledges the Agent shall employ such personnel and utilize such resources it deems appropriate to carry out the duties of the Agent set forth in this Agreement. Each party acknowledges and agrees that its assets, intellectual property and proprietary or confidential information (including customer, supplier and donor lists, as applicable) remain the exclusive property of each respective party. For greater certainty neither party shall be required to provide the other party with access to its proprietary or confidential information unless expressly provided for in this Agreement.

## ARTICLE 7: FEES AND EXPENSES

7.1    Principal shall pay to Agent an annual agency fee equal to $100,000.00 USD plus applicable taxes each year (the "**Fee**"). The Agent shall invoice the Principal annually and such invoice shall be paid by the Principal within thirty (30) days of receipt of same.

7.2    The Fee is all inclusive and the Agent is not entitled to recover or be reimbursed for any further fees or expenses in its capacity as Agent.

## ARTICLE 8: DISPUTE RESOLUTION

8.1    If the parties are unable to settle a dispute by negotiation, a party may deliver written notice of its intention to refer the matter to arbitration (the "**Arbitration Notice**") to the other party and thereafter the dispute shall be referred to arbitration for final settlement binding on the parties in accordance with the provisions of the *Arbitration Act (1991)* (Ontario), subject to the following:

    (a)     the arbitration tribunal shall consist of one (1) arbitrator (the "**Arbitrator**") who shall be jointly selected by the parties. If the parties cannot agree on the identity of the Arbitrator within fifteen (15) days after the delivery of the Arbitration Notice,

3

DocuSign Envelope ID: 1C0E7A3F-A2A2-40F6-9A41-D727A1A57E2E

then either Party may apply to a court of competent jurisdiction to appoint the Arbitrator;

(b) the Arbitrator shall be instructed that the arbitration is confidential and that time is of the essence in proceeding with the determination of any dispute;

(c) the arbitration shall be conducted in English, the Arbitrator shall determine and communicate the rules governing the arbitration prior to its commencement to each party, and all hearings shall take place in Toronto, Ontario unless otherwise determined by the Arbitrator;

(d) the arbitration award shall be given in writing and shall be final, binding on the parties, not subject to any appeal or review, and shall deal with the question of costs of arbitration, pre-award interest and all other matters related thereto;

(e) judgment upon the award rendered may be entered into any court of competent jurisdiction, or application may be made to such Court for a judicial recognition of the award or an order of enforcement thereof, as the case may be.

## ARTICLE 9: REPRESENTATIONS AND WARRANTIES OF THE AGENT

9.1 The Agent hereby represents, warrants and covenants, on the date this Agreement is entered into and during the Term, as follows:

(a) it is a valid and subsisting corporation, duly incorporated and in good standing under the laws of the jurisdiction in which it is existing;

(b) it has duly authorized the entry into this Agreement, which shall, following execution and delivery, be binding on and legally enforceable against the Agent;

(c) it has the requisite skill, expertise and resources necessary to carry out the duties of the Agent;

(d) it shall use its best efforts to carry out its duties as Agent under this Agreement in a professional and business-like manner;

(e) it shall conduct all its affairs, including its obligations under this Agreement, in accordance with all applicable laws;

(f) it shall maintain adequate insurance in connection with the Activities; and

(g) it is registered for GST/HST purposes and its GST/HST registration number is 805697299RT0001.

## ARTICLE 10: INDEMNIFICATION

10.1 The Agent agrees to indemnify and hold the Principal harmless from, and defend the Principal and its officers, directors, members, agents and employees from and against any

4

DocuSign Envelope ID: 1C0E7A3F-A2A2-40F6-9A41-D727A1A57E2E

and all claims, demands, causes of action, suits, liabilities or damages (including reasonable legal fees and expenses) ("**Claims**") arising out of or in connection with: (i) any failure by the Agent to abide by the terms of this Agreement (including, without limitation, any breach of a representation, warranty or covenant of the Agent herein); (ii) any acts of any personnel or contractor employed or otherwise engaged by the Agent to perform the Agent's obligations under this Agreement; and (iii) any failure of the Activities to comply with applicable laws; except to the extent that any such Claims are directly caused or contributed to by the negligence or wilful misconduct of the Principal. The Agent shall, at the written request of the Principal, assume the defence of any Claim brought against the Principal and shall promptly pay, forthwith on written demand by the Principal, any and all demands assessed against or that are payable by the Principal as a result of the disposition thereof.

## ARTICLE 11: NOTICE

11.1    All notices given under any of the provisions of this Agreement may be given personally or by mail or courier, in the latter case notice shall be deemed to have been duly given four (4) days following mailing if mailed by pre-paid registered mail or courier as follows:

| | |
|---|---|
| To Agent at: | 420 Weber St. North, Suite 1<br>Waterloo, Ontario N2L 4E7<br>Attention: Brandon Brunet, Controller<br>Email: brandon.brunet@kik.com |
| To Principal at: | C/O Jeff Graham, Esq.<br>Borden Ladner Gervais LLP<br>22 Adelaide Street West<br>Toronto, Ontario M5H 4E3 |

## ARTICLE 12: GENERAL

12.1    This Agreement may not be assigned in whole or in part by either party hereto without the prior written consent of the other party.

12.2    This Agreement is confidential and neither party may disclose the contents of the Agreement or any matters in connection therewith to any third party without the prior consent of the other party; provided, however, that such consent shall not be unreasonably withheld by a party if the disclosure is required by a court of competent jurisdiction, arbitrator appointed under the terms of this Agreement, or a government authority having a legal right to request such disclosure.

12.3    Any waiver of, or consent to depart from, the requirements of any provision of this Agreement shall be effective only if it is in writing and signed by the party giving it, and only in the specific instance and for the specific purpose for which it has been given. No failure on the part of any party to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver of such right. No single or partial exercise of any such right shall preclude any other or further exercise of such right or the exercise of any other right.

DocuSign Envelope ID: 1C0E7A3F-A2A2-40F6-9A41-D727A1A57E2E

12.4    Time shall be of the essence of this Agreement.

12.5    Each of the parties agree to do such further acts and things and to sign such further instruments and documents as may be necessary or desirable in order to give full force and effect to this Agreement.

12.6    This Agreement shall enure to the benefit of the parties hereto and their respective successors and permitted assigns.

12.7    This Agreement may only be amended by written instrument signed by authorized representatives of each party. This Agreement is the entire agreement between the parties related to the subject matter hereof and supersedes all other arrangements and agreements, whether written or oral.

12.8    This Agreement may be executed in counterparts, each of which shall be deemed to be an original and both of which together shall constitute one and the same instrument.

[Signature Page Follows]

TOR01: 7584712: v2

DocuSign Envelope ID: 1C0E7A3F-A2A2-40F6-9A41-D727A1A57E2E

**IN WITNESS WHEREOF** the parties have executed this Agreement as of the Effective Date.

**KIN ECOSYSTEM FOUNDATION**

By: *Ted Livingston*

Print Name: Ted Livingston

Print Title:  CEO

(I have authority to bind the corporation)

El

**KIK INTERACTIVE INC.**

By: *Brandon Brunet*

Print Name: Brandon Brunet

Print Title:  Controller

(I have authority to bind the corporation)

7

DocuSign Envelope ID: 1C0E7A3F-A2A2-40F6-9A41-D727A1A57E2E

## Schedule "A"

## ACTIVITIES

(a)      Assist Principal in its objectives of establishing an open, decentralized blockchain infrastructure and fostering and incentivizing an environment of innovation within the Kin ecosystem of digital services ("Ecosystem) by, among other things, identifying and locating participants to operate validation nodes and integrate Kin tokens into their platform, including digital service providers, software developers, and brand partners ("Participants").

(b)      Assist Principal in negotiating with Participants with respect to grants, awards, terms, and conditions for blockchain and digital services related to the Ecosystem. Principal shall make all final decisions regarding the Ecosystem. Agent has no authority to bind Principal in any manner except upon Principal's written authorization.

(c)      Maintain complete and accurate books and records relating to the provision of services under this Agreement, including but not limited to, Participants profiles, copies of agreements with Participants.

(d)      Permit Principal to inspect and/or copy Agent's books and records related to Agent's services under this Agreement.

(e)      Perform any and all other services and activities that are reasonably related to the foregoing activities and agreed to in writing by and between the Parties.