# Exhibit AAA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
U.S. SECURITIES AND EXCHANGE       :
COMMISSION,
                                   :
        Plaintiff,
                                   :   Civil Action No. 19-cv-5244
   vs.
                                   :
KIK INTERACTIVE INC.,
                                   :
        Defendant.
------------------------------------ X

**DECLARATION OF LUKE T. CADIGAN IN SUPPORT OF
DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 57)**

I, Luke T. Cadigan, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a partner at the law firm of Cooley LLP, counsel for Defendant Kik Interactive Inc. ("Kik") in the above captioned action. I am duly admitted to practice before this Court. I am familiar with the proceedings in this case. I make the following statements based on personal knowledge of the facts and circumstances set forth herein.

2.      In its Answer in this case, Kik asserted an affirmative defense that the phrase "investment contract" is unconstitutionally vague as applied to the facts at hand. See Answer, ECF No. 22, at 123-26. That is, as the Securities and Exchange Commission's ("SEC") has applied the law to Kik, it does not provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited and is so lacking in clear standards that it authorizes or encourages arbitrary and discriminatory enforcement by the SEC.

3.      On information and belief, the SEC has been aware of cryptocurrencies since as early as 2011—including hundreds of token sales occurring in 2016 and early 2017 alone—and

yet declined to pursue an enforcement action against token issuers until after Kik's token distribution event in September 2017.

4. It was not until April 3, 2019, well after Kik's sales of Kin at issue in this case, and after years of failing to provide clear guidance about whether and how to apply the Securities Act of 1933 to cryptocurrencies, that SEC staff finally released a "framework" of 38 non-"exhaustive" factors relevant to "evaluating whether a digital asset is an investment contract." *See* Landsvik Ex. KK, SEC, *Framework for 'Investment Contract' Analysis of Digital Assets* (Apr. 3, 2019) at 6. But the framework was expressly "not a rule, regulation, or statement of the Commission, and the Commission has neither approved nor disapproved its content." *Id.* at 7.

5. On May 9, 2019, in the wake of the staff's release of the framework and before this lawsuit was filed, an SEC Commissioner acknowledged that, "It is [ ] our duty as a regulator to provide the public with clear guidance as to how people can comply with our law. We have not yet fulfilled this duty." Hester Peirce, "How We Howey," Securities Enforcement Forum, east Palo Alto, CA (May 9, 2019), https://www.sec.gov/news/speech/peirce-how-we-howey-050919.

6. To gather evidence in support of its affirmative defense, Kik sought discovery through Interrogatories, Requests for Admission, Requests for Production of Documents, and the depositions of three SEC personnel and a 30(b)(6) witness. The SEC refused to produce any witnesses for deposition testimony, and objected to or refused to respond to many of Kik's written questions. *See* ECF No. 27 (Joint Letter Br.), ECF No. 34 (Kik Mot. for Recons.).

7. The limited answers the SEC provided confirmed that the it "has not proposed or adopted any rules that relate solely and specifically to Digital Assets or Virtual Currencies[.]" *See* ECF No. 34-4, Resp.to Req. No. 31 at 20.

8. Additionally, the SEC withheld some responsive information on grounds of privilege. For example, the SEC refused to clarify its position whether all digital assets constitute securities, refusing to answer on grounds of "governmental deliberative process and law enforcement privileges." ECF No. 34-4, Resp. to Req. No. 30 at 19.

9. When the parties could not resolve the discovery disputes, Kik and the SEC submitted a joint letter to this Court. ECF No. 27. This Court thereafter denied Kik additional discovery or depositions, and then denied Kik's subsequent Motion for Reconsideration. *See* ECF Nos. 30, 33-34, 36.

10. The SEC has now moved for summary judgment on Kik's affirmative defense, asserting that many of the topics on which it refused to provide discovery are now not only relevant, but material to the SEC's motion.

11. For example, the SEC asserts that in February 2017 or before, Kik knew that its offering and sale of Kin could be considered a security, and asserts that Kik was on notice that the sale of Kin would constitute a securities violation. ECF No. 59 at ¶¶ 217-230. While Kik continues to assert that the sale of Kin did not constitute a securities violation, it also asserts that the SEC had provided no guidance prior to the Kin launch about application of the securities laws to cryptocurrencies, leading to much confusion within the industry and within Kik. *See* Kik Resp. to SEC 56.1 ¶¶ 217-219 ("SEC has yet given no guidance that any particular token offering is a security, and this guidance is not expected in the near future.").

12. The SEC also states that its issuance of the DAO Report "provided Kik additional notice weeks before the conclusion of the offering" that its sale of Kin could constitute an investment contract. ECF No. 58 at 60. But when Kik requested the SEC's documents relating to the DAO report, how the SEC applied it, and why the SEC did not bring an enforcement action

there, the SEC denied that request as "not relevant to any party's claim or defense." *See* ECF No. 34-3, Pl's Resp. to Req. No. 12.

13. To the extent the Court determines to consider Kik's affirmative defense at this stage in the proceedings, Kik asserts that the information sought by Kik during the discovery period in this case, and which the SEC refused to provide, is directly relevant to its affirmative defense and would have assisted Kik in responding on that issue. This information sought by Kik includes that concerning:

  a. The SEC's position or policy, and any changes thereto, concerning the application of federal securities laws to cryptocurrencies, and the sale of the same from 2013 on, including specifically, to Bitcoin and Ether;

  b. Communications between the SEC and other governmental agencies or departments (including the U.S. Department of Treasury and the Ontario Securities Commission ("OSC")) about whether the federal securities laws, or other laws, applied to cryptocurrencies, including Kik; and

  c. SEC enforcement actions and investigations concerning application of the securities laws to cryptocurrencies since 2013 and the SEC's process for determining whether to pursue or initiate those actions.

14. The above requested discovery would have disclosed facts that go to the heart of Kik's affirmative defense and would have assisted Kik in opposing the SEC's Motion on that issue. More specifically, it would have highlighted exactly how the SEC had chosen to interpret, apply, and enforce the federal securities laws as to cryptocurrencies prior to Kik's launch of Kin and whether that interpretation, application, and enforcement was inconsistent or arbitrary. Among other things, it would have shed light on why the SEC opted to enforce the securities laws with respect to Kin when it did not do so with respect to Bitcoin, Ether, or hundreds of other tokens that it was aware of.

15. With respect to the communications with the OSC, it would have provided evidence regarding Kik's meeting with the OSC, which the SEC has attempted to claim is relevant to this

matter, and more specially, it would have revealed what the OSC actually told the SEC about what was said at the meeting and what if any relevance the SEC and OSC believed the OSC's position on Ontario law had to the application of US securities law.

16. In addition, Kik requested information concerning:

   a. The SEC's decision whether or not to issue public guidance about application of the federal securities laws to cryptocurrencies or their sales;

   b. The reasons why the SEC has not proposed or adopted any rules relating to digital assets or virtual currencies;

   c. The reasons the SEC has not issued more no action letters concerning cryptocurrencies and their sales and the SEC's process and considerations for determining whether to issue no action letters; and

   d. The DAO Report and the SEC's basis for not pursuing enforcement actions against the entities and individuals identified therein.

17. The above information would have provided evidence regarding the SEC's awareness, if any, of the lack of clarity regarding the application of federal securities laws to cryptocurrencies and the public criticism for that lack of clarity. It would also have provided evidence regarding why the SEC declined to do more to clarify the standard and whether that decision was motivated by a desire to preserve as much latitude in its charging decisions as possible. *See* Kik Mot. Recons., ECF No. 34 at 16-19.

I respectfully submit this declaration in support of Kik's Opposition to Plaintiff's Motion for Summary Judgement (ECF No. 57). I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 24, 2019 in Boston, Massachusetts.

*/s/ Luke T. Cadigan*
Luke T. Cadigan

## **CERTIFICATE OF SERVICE**

I, Luke T. Cadigan, hereby certify that a true and correct copy of the foregoing document was served on counsel of record via ECF on this 24th day of April, 2020.

*/s/ Luke T. Cadigan*
Luke T. Cadigan